## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 1:18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation,

      Plaintiff,

v.

MANUEL V. FEIJOO,
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

      Defendants.

_____/

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm Mutual"), brings this Amended Complaint against Manuel V. Feijoo ("Feijoo"), and Manuel V. Feijoo, M.D., P.A. (the "Clinic") (sometimes collectively referred to as the "Defendants"), and alleges as follows:

### NATURE OF THE CASE

1.      This action seeks to recover damages under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") for Defendants' submission of false or misleading bills to State Farm Mutual for medical services allegedly provided by Defendants to certain persons involved in automobile accidents who were insured under insurance policies issued by State Farm Mutual (singularly, the "Insured" and collectively, the "Insureds").

2.      By this action State Farm Mutual also seeks relief from any duty, obligation, or requirement to pay any Personal Injury Protection ("PIP") or medical payments coverage ("MPC")

benefits for Defendants' unpaid charges and unpaid claims due to the above-referenced false and misleading invoices.

3.     As set forth more fully below, as early as August 18, 2014, and through May 17, 2018, Defendants engaged in the unlawful billing of services allegedly rendered at the Clinic, including, but not limited to falsely and misleadingly: (1) upcoding for initial and follow up evaluations; (2) unbundling range of motion testing from Feijoo's patient evaluations and thereby charging State Farm Mutual twice for them; and (3) billing for x-ray consultations that were not rendered.  In connection with this scheme, Defendants submitted, or caused to be submitted, false and misleading bills, medical records, and supporting documentation to State Farm Mutual in support of these services with the goal of inducing State Farm Mutual to issue payments for PIP and, where applicable, MPC benefits even though Defendants had not provided the services as indicated on their bills. As a result of this scheme, the bills submitted by Defendants were, and are, non-compensable under Florida law.

## PARTIES

### I.     Plaintiff

4.     Plaintiff, State Farm Mutual Automobile Insurance Company, is a citizen of the State of Illinois.  It is incorporated under the laws of the State of Illinois with its principal place of business in Bloomington, Illinois. State Farm Mutual is registered to conduct business in Florida and issues automobile insurance policies in the State of Florida.

### II.     Defendants

5.     Defendant, Manuel V. Feijoo ("Feijoo"), is an individual residing in Florida, who at all times relevant to this action was licensed to practice medicine in Florida and was governed in the practice of medicine by the statutes set forth in Chapter 458, Florida Statutes, and regulations

promulgated thereunder.

6.     Defendant, Manuel V. Feijoo, M.D., P.A. (the "Clinic"), is a Florida professional corporation owned by Feijoo and his wife, which operates a medical clinic in Miami-Dade County, Florida that is the subject of this action.

7.     While performing all of the acts and omissions described herein, Feijoo was a direct and knowing participant in the improper conduct described herein, and at all times material, Feijoo directly controlled the actions and omissions of the Clinic alleged herein. As an owner and officer of the Clinic, Feijoo stood to profit from the Clinic's unlawful practices and was legally responsible for ensuring the Clinic's compliance with all federal and state laws.

**JURISDICTION, VENUE, AND CONDITIONS PRECEDENT**

8.     Pursuant to 28 U.S.C. § 1332(a)(1), this Court has diversity jurisdiction over this action because it is between citizens of different states, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs, as established by the following facts:

a)     State Farm Mutual is an Illinois corporation with its principal place of business in Illinois and is, therefore, a corporate citizen of Illinois;

b)     the Clinic is a Florida professional corporation with its principal place of business located in Miami-Dade County, Florida, whose sole shareholders, Feijoo and his wife, Lordes Feijoo, are citizens of Florida, and the Clinic is, therefore, a corporate citizen of Florida;

c)     Feijoo is a citizen of the State of Florida who resides in a homestead located in Broward County, Florida; and

d)     the total amount in controversy in this action exceeds $200,000 exclusive of interest and costs.

9.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of Florida

because the Clinic operates its office in the district, Feijoo resides in this district, and the events or omissions giving rise to State Farm Mutual's claims occurred within this district.

10.     All conditions precedent to the maintenance of this action have been performed, have occurred, or have been waived.

## RELEVANT BACKGROUND

### I.     Automobile Insurance Benefits under Florida Law

11.     Under Florida law, each automobile owner or lessee is required to maintain, and each insurer is required to issue, a minimum amount of insurance coverage that is payable without regard to who is at fault in causing a motor vehicle accident ("No-Fault Benefits" or "PIP Benefits"). *See* Fla. Stat. § 627.730, *et seq.* Auto insurers like State Farm Mutual are required to provide No-Fault Benefits of at least $2,500.00, and up to $10,000.00 if the patient is determined to have an emergency medical condition,[1] for losses resulting from injuries arising out of the ownership, maintenance, or use of a motor vehicle.

12.     For purposes of No-Fault Benefits, insurers are required to pay 80% of all reasonable expenses for medically necessary medical, surgical, x-ray, dental, and rehabilitative services related to injuries caused by the accident, and which are otherwise compensable under Florida's "PIP statute," Florida Statute § 627.736 ("§ 627.736").

13.     Section 627.736 imposes strict time limits on processing and evaluation of claims for No-Fault Benefits. Insurers such as State Farm Mutual are required to pay or deny claims for No-Fault Benefits within 30 days, and they may be ordered to pay interest and attorney's fees if they fail to pay the amount determined to be owed within that time period.

14.     Neither an insurer nor an insured is required to pay a claim or charge: (a) for services or treatment that were not lawful at the time rendered; or (b) to any person who knowingly

---

[1]   Effective January 1, 2013, patients must present with an emergency medical condition, appropriately reflected in the medical records, in order to qualify for $10,000.00 in No-Fault Benefits. Prior to that time, every patient was entitled to up to $10,000.00 in No-Fault Benefits without an emergency medical condition determination.

submits a false or misleading statement relating to the claim.  Fla. Stat §§ 627.736(5)(b)1.b. and c.  Pursuant to Florida Statute § 627.732(11), "lawful or lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." Pursuant to Florida Statute § 627.732(10), "knowingly" "means that a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the information, and proof of specific intent to defraud is not required."

15.     In addition, neither an insurer nor insured is required to pay a claim or charges with respect to a bill or statement that does not substantially meet the applicable requirements of § 627.736(5)(d), which includes, *inter alia*, a requirement that all bills must comply with the American Medical Association ("AMA") CPT Editorial Panel and must follow the AMA's Physicians' Current Procedural Terminology ("CPT").

16.     MPC is an optional coverage that provides reimbursement benefits in addition to the No-Fault Benefits.

17.     MPC covers the co-payment required for No-Fault Benefits and also allows an insured to elect to extend medical coverage above the coverage limits mandated by Florida law.

18.     Similar to the law governing No-Fault Benefits, pursuant to State Farm Mutual's applicable policies, MPC coverage is only available for medical services that are properly compensable under the Insureds' PIP coverage.

## II.     Florida Law Prohibits Preparation and Submission of False, Inaccurate, or Misleading Information in Connection with Claims for Insurance Benefits

19.     Florida's Insurance Fraud Statute, Florida Statute § 817.234 ("§ 817.234") also broadly prohibits false or fraudulent insurance claims.

20.     Specifically, § 817.234 states that a person commits insurance fraud if that person "with the intent to injure, defraud, or deceive any insurer: (1) [p]resents or causes to be presented

any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy or a health maintenance organization subscriber or provider contract, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim." Fla. Stat. § 817.234(1)(a)1. A medical provider also engages in insurance fraud by engaging in "systematic upcoding . . . with the intent to obtain reimbursement otherwise not due from an insurer." Fla. Stat. § 817.234(2)(b).

21.     As used in § 817.234, the term "statement" is defined to include, but is not limited to, "any notice, statement, proof of loss, bill of lading, invoice, account, estimate of property damages, bill for services, diagnosis, prescription, hospital or doctor records, x-ray, test result, or other evidence of loss, injury, or expense."  Fla. Stat. § 817.234(6).

22.     A violation of Florida's Insurance Fraud Statute or § 627.736(5)b.1.c. constitutes a *per se* violation of the Florida Unfair and Deceptive Trade Practices Statute, Florida Statute § 501.201 *et seq*., as set forth in more detail below.

23.     Likewise, Florida's Unfair Insurance Practices Act, sections 626.951 – 626.99, Florida Statutes, also broadly prohibits false or fraudulent insurance claims.

24.     For instance, knowingly presenting or causing to be presented, with intent to defraud, any written statement known to contain materially false information to an insurer as part of, or in support of, a claim for payment or other benefit pursuant to any insurance policy constitutes a "fraudulent insurance act" under Florida law. Fla. Stat. § 626.989(1)(a)1.

25.     Moreover, the Unfair Insurance Practices Act provides that the submission of a false claim for payment to an insurer constitutes a deceptive act or practice. Fla. Stat. § 626.9541(1)u.

26.     In light of the prohibitions on the submission of false or misleading claims for

insurance benefits reflected in the foregoing statutes, health care providers such as the Clinic and Feijoo have an affirmative duty to ensure the information they submit in connection with and/or support of claims for payment is truthful and accurate.  This affirmative duty is echoed in Florida laws concerning professional licensure of physicians and other health care professionals. *See, e.g.*, Fla. Stat. § 456.0635(1) (prohibiting health care fraud of any kind in the practice of a health care profession); Fla. Stat. § 456.072(1)(a) & (m) (prohibiting health care professionals from making deceptive, untrue, or fraudulent representations in or related to the practice of a profession or employing a trick or scheme in or related to the practice of a profession); Fla. Stat. § 458.331(1)(k) (forbidding the making of deceptive, untrue, or fraudulent representations in or related to the practice of medicine).

## ALLEGATIONS COMMON TO ALL COUNTS

### I.   The Clinic

27.    Feijoo co-owns with his wife, and operates, the Clinic, which purports to provide medical services to persons who have been injured in automobile accidents. While working as an officer and agent of the Clinic on various dates from August 18, 2014, through at least May 17, 2018, Feijoo allegedly provided medical evaluations to State Farm Mutual's Insureds.

### II.   The Policies

28.    Since January 2013, State Farm Mutual has issued policies of automotive insurance with mandatory PIP coverage governed by the Florida Motor Vehicle No-Fault Law, sections 627.730 - 627.7405, Florida Statutes (the "No-Fault Law"), including, but not limited to, § 627.736, under a policy form identified as Policy Form 9810A (the "Policies"). A true and correct exemplar copy of State Farm Mutual's Policies is attached hereto as composite Exhibit "A."

29.    The mandatory PIP coverage in State Farm Mutual's Policies covers 80% of all

reasonable and necessary medical expenses related to an automobile accident, regardless of fault, and which otherwise qualify for reimbursement under § 627.736 and the Policies.

30.     The Policies may also provide voluntary MPC, which, if selected, covers the 20% co-pay for covered and compensable medical expenses that are reimbursable at 80% under PIP coverage.

## III.     The Appropriate Use of CPT Coding

31.     As mentioned above, this case involves the Clinic's submission of false or misleading CPT Codes to State Farm Mutual by and through the actions of Feijoo. CPT Codes are five-character codes set forth in the CPT promulgated by the AMA that correspond to and describe virtually every kind of health care service that can be rendered to a patient. Each CPT Code has a corresponding charge determined by the health care provider for the services allegedly rendered. The codes are then used by insurers, along with other factors, to determine the amount of reimbursement a service provider will receive for performance of the specified medical service. Florida's No-Fault Law requires health care providers seeking PIP benefits to use CPT Codes in order to ensure accuracy and uniformity in medical billing for PIP benefits. Fla. Stat. § 627.736(5)(d).

## A.     Initial Evaluations

32.     A medical provider must perform a legitimate initial evaluation to arrive at a legitimate diagnosis for a patient reporting pain resulting from a motor vehicle accident. In a legitimate treatment setting, the level of initial and follow up evaluations should vary depending on the unique circumstances of each patient.

33.     When charging for an initial evaluation under the AMA's CPT, a medical provider must use one of five different CPT Codes ranging from 99201 to 99205, in lowest-to-highest order,

based various factors set forth in the AMA's CPT. CPT Code 99204 is an Evaluation and Management ("E&M") Code used for reporting a new (initial) outpatient visit, and it is the second highest code a provider can chose.

34.     Under the AMA's CPT, the physician's evaluation of the patient must contain all three of the following components in order to properly bill CPT Code 99204 for it: (1) a comprehensive medical history report of the patient; (2) a comprehensive physical examination of the patient; and (3) medical decision-making of moderate complexity.

35.     Under the AMA's CPT, a comprehensive history is one that includes a chief complaint, which is a concise statement from the patient defining the reason for the office visit (e.g., neck pain, headache, etc.); a history of present illness which contains at least four separate and distinct elements describing the chief complaint (e.g., nature, location, severity, duration, associated symptoms, modifying factors, etc.). The history must also contain past medical history which must include all current medications, surgical procedures, allergies, recent or chronic illnesses, a family history and social history. Additionally, a review of systems composed of at least 10 of the 14 organ systems is required for a comprehensive history sufficient to bill a 99204.

36.     Under the AMA's CPT, a comprehensive examination must include vital signs, height, weight, general appearance, gait, station and an inspection, palpation, or checking range of motion, stability, muscle tone and strength of four areas of the body (head/neck, spine, both arms and both legs) and include an examination of reflexes and sensation.

37.     Under the AMA's CPT, medical decision making of moderate complexity requires the presence of at least two of the three following components: a) multiple possible diagnoses and/or management options; b) a moderate amount and/or complexity of medical data to be reviewed; and c) a moderate risk to the patient of significant complications, morbidity and/or

mortality, as well as comorbidities, associated with the patient's presenting problem(s), the diagnostic procedure(s), and/or the possible management options.

**B.      Follow up Evaluations**

38.     Similar to an initial evaluation, a follow up outpatient evaluation is coded with one of five different E&M Codes under the CPT depending on the detail obtained in the examination of the patient, the patient's medical history, and the complexity of the physician's decision-making.  CPT Codes for follow up visits range from 99211 to 99215.

39.     CPT Code 99214 is a code used to report the physician services of a level 4 return (established) outpatient visit, and it is the second highest code a provide can choose.

40.     Under the AMA's CPT, the physician's evaluation of the patient must contain at least two of these three components in order to properly bill CPT Code 99214 for it: (1) a detailed history of the patient's medical condition and injuries; (2) a detailed physical examination of the patient; and (3) medical decision-making of moderate complexity, as discussed in Paragraph 37.

41.     Under the AMA's CPT, a detailed history is one that includes a chief complaint, which is a concise statement from the patient defining the reason for the office visit (e.g., neck pain, headache, etc.); an extended history of present illness; a problem pertinent system review extended to include a limited a review of a limited number of additional systems; pertinent past, family, and/or social history directly related to the patient's problems.

42.     Under the AMA's CPT, a detailed examination must include an extended examination of the affected body area or organ system and other symptomatic or related organ systems.

43.     CPT Code 99215 is a code used to report the physician services of a level 5 return (established) outpatient visit. This is the highest level of complexity in this code range.

44.     Under the AMA's CPT, the physician's follow up evaluation of the patient must contain at least two of these three components in order to properly bill CPT Code 99215: (1) a comprehensive history of the patient's medical condition and injuries, as discussed above in Paragraph 35; (2) a comprehensive physical examination of the patient, as discussed above in Paragraph 36; and (3) medical decision-making of high complexity.

45.     Under the AMA's CPT, medical decision making of high complexity requires the presence of at least two of the three following components: a) an extensive number of possible diagnoses and/or management options; b) an extensive amount and/or complexity of medical data to be reviewed; and c) a high risk to the patient of significant complications, morbidity and/or mortality, as well as comorbidities, associated with the patient's presenting problem(s), the diagnostic procedure(s), and/or the possible management options.

**C.     Separate Range of Motion Testing with Report**

46.     CPT Code 95851 is used to report range of motion ("ROM") testing described as follows: "Range of motion measurements and report (separate procedure), each extremity (excluding hand) or each trunk section."

47.     In order to properly bill CPT Code 95851, ROM testing must meet certain mandatory requirements, especially when it is performed on the same patient, and on the same date of service, during which the healthcare provider performs and evaluation of the patient and bills an E&M Code under the CPT (*i.e.*, 99201 – 99205 or 99211 – 99215) for the evaluation. Under the AMA's CPT, a healthcare provider cannot properly bill a 95851 charge for ROM testing together with an E&M code for a patient evaluation on the same date of service unless: a) ROM testing performed by the provider is separately identifiable from the patient examination; b) the provider prepares and signs two distinctly identifiable written reports documenting the medical

need for the separate examination and ROM testing; and c) the provider documents any abnormal findings in the separate ROM report including, by way of example and without limitation, limited ROM, pain, and crepitus through the various planes of motion.

48.     Moreover, under the AMA's CPT, a healthcare provider cannot properly bill a 95851 charge for ROM testing together with an E&M code for a patient evaluation on the same date of service if the ROM testing is an integral component of the provider's examination of the patient. If the provider does so, he or she bills the payor twice for the same service because ROM testing is already charged as part of the patient examination and evaluation billed under the E&M code.

### D.     X-Ray Consultations

49.     Under the AMA's CPT, the 76140 code describes a medical service in which a physician's opinion or advice regarding an x-ray film is requested by another physician (*i.e.*, a "consultation"), and, upon examining the x-ray film, the consulting physician renders his or her opinion or advice in a written report delivered to the requesting physician.

50.     Medical providers cannot properly bill the 76140 code for their review of x-ray films or reports prepared somewhere else when they perform the review as a component of their examination of the patient for which they are billing an E&M code such as, by way of example, 99204, 99214, or 99215.

### E.     Verification of CPT Coding

51.     The Clinic's bills seeking payment of No-Fault Benefits for medical services allegedly provided to the Insureds are governed by § 627.736(5)(d) including, but not limited to, its requirements that the bills comply with the AMA CPT Editorial Panel and follow the CPT Code when identifying the medical procedures the Clinic performed on the Insureds, for which the Clinic

is charging and demanding reimbursement from State Farm Mutual.

52.     Additionally, Florida's No-Fault Law requires that, at each initial visit, medical providers to complete a Disclosure and Acknowledgment Form ("D&A Form") identifying the services provided to the patient.  *See* Fla. Stat. § 627.736(5)(e). The D&A Form identifies the services provided at the initial visit and contains an affirmation in which the provider affirms that the patient was not solicited to make a claim for benefits; the services were explained to the patient; the accompanying statement or bill was properly completed in a "truthfully, accurately and in a substantially complete manner"; and that the CPT coding of the services is proper, meaning that "**no service has been upcoded, unbundled**, or constitutes an invalid or **no medically necessary diagnostic test** as defined by Section 627.732(15) and (16), Florida Statutes or Section 627.736(5)(b)(6), Florida Statutes." Florida Office of Insurance Regulation, Standard Disclosure and Acknowledgement Form OIR-B1-1571 (2004), *available at* www.floir.com/siteDocuments/OIR-B1-1571.pdf (emphasis in original).

53.     As stated in § 627.736, "[t]he licensed medical professional rendering treatment for which payment is being claimed must sign, by his or her own hand, the form complying with this paragraph." Fla. Stat. § 627.736(5)(e)4. The need for the requirement that the physician sign each form "by his or own hand" is simple: Florida's No Fault Law is prone to fraud and abuse, and, therefore, the licensed medical professional who allegedly rendered the treatment must actually execute the form mandated by the Legislature. *See Florida Session Law Service*, Chapter 2001-271 (discussing and adopting the findings of the Second Interim Report of the Fifteenth Statewide Grand Jury re: Report on Insurance Fraud Related to Personal Injury Protection); *Florida Session Law Service*, Chapter 2003-411 (discussing reasons for the 2033 anti-fraud amendments to § 627.736). A true and correct copy of the Second Interim Report of the Fifteenth Statewide Grand

13

Jury re: Report on Insurance Fraud Related to Personal Injury Protection adopted by the Florida Legislature is attached hereto as Exhibit "B."

**IV.     The Clinic's Billing of State Farm Mutual**

54.     Each of the Insureds assigned his or her PIP benefits and, where applicable, MPC benefits to the Clinic in consideration for the Clinic's medical services. An exemplar Assignment of Benefits executed by the Insureds in favor of the Clinic is attached hereto as Exhibit "C."

55.     Pursuant to the Insureds' assignments of their insurance benefits, the Clinic submitted medical bills, records, and supporting documentation (collectively, the "Records") directly to State Farm Mutual, which reported charges for the medical evaluations Feijoo allegedly provided to the Insureds with CPT Codes.

56.     The Clinic submitted all of its bills to State Farm Mutual included within the Records on Centers for Medicare and Medicaid 1500 forms. An exemplar of this form is attached hereto as Exhibit "D."

57.     As the Clinic's owner and operator, Feijoo directed and/or materially participated in, and was legally responsible for, the Clinic's preparation and review of the Records, as well as the Clinic's submission of the Records, including but not limited to the bills, to State Farm Mutual. In particular and without limitation:

a)     In an application filed with Florida's Agency for Health Care Administration to secure an exemption for his Clinic from the requirement of obtaining a health care clinic license under Florida's Health Care Clinic Act, Florida Statute § 400.990, *et. seq.*, Feijoo affirmed that he is legally responsible for the Clinic's compliance with all federal and state laws. A true and correct copy of the application is attached hereto as Exhibit "E."

b)     Feijoo's name and medical license numbers appear in Box 31 of the bills,

which identifies him as the physician who performed the medical services reported therein.

    c)  Feijoo claims to have the right to personally collect payments made by insurers on charges issued by his Clinic pursuant to an "arrangement" between Feijoo and the Clinic. An affidavit of the Clinic's office manager, Anielka Castillo, testifying to this arrangement is attached hereto as Exhibit "F."

## V.  The Scheme

    58.  Every one of the Clinic's PIP claims for medical services allegedly provided to the Insureds includes one or more false or misleading CPT Code charges submitted by the Clinic to State Farm Mutual under Feijoo's direction and control.

    59.  Attached hereto as Exhibit "G" is a chart incorporated herein by reference that accurately sets forth the following information: a) the Insureds identified by their initials and the claim number State Farm Mutual assigned to their claims; b) the date of loss (*i.e.*, the auto accident); c) the date range of the medical services the Clinic purportedly provided to each Insured following the subject loss; d) the identity and frequency of the CPT-Code procedures that the Clinic billed State Farm Mutual for medical services allegedly rendered to the Insureds; e) the "Total Billed" by the Clinic for medical services allegedly rendered to the Insureds following the subject loss; f) the "Total Approved" amount for each of the claims submitted by the Clinic for medical services provided to the Insureds, which represents State Farm's total allowed reimbursement for the medical services reported in each claim, on which State Farm based its payment of PIP and MP benefits; and g) the total amount of benefits PIP, or PIP and MPC, benefits paid by State Farm Mutual to the Clinic for medical services allegedly rendered to the Insureds in the subject claims.

    60.  The false and/or misleading CPT Code charges that Feijoo caused the Clinic to

submit to State Farm Mutual in its claims for PIP (and where applicable MPC) benefits identified in Exhibit "G" hereto are more particularly described below in Paragraphs 61 - 83.

### A. Upcoding Patient Evaluations

61.     In order to cause State Farm Mutual to pay more for his evaluations of the Insureds than was appropriate, Feijoo caused the Clinic to report upcoded CPT Codes for those E&M services in the bills submitted to State Farm Mutual.

62.     Under Florida law, upcoding occurs when a health care provider submits a CPT code that would result in a higher payment amount than what would be paid if the health care provider used a billing code that accurately described the services performed on the patient. Fla. Stat. § 627.732(14).

63.     The CPT Codes for E&M services are organized from lower numbered codes, reflecting that the provider rendered basic services, to higher numbered codes, reflecting an increase in the complexity of the services rendered.  Thus, providers are compensated at a greater rate for higher level codes due to the increase in the complexity of the E&M services they provide to patients.

64.     In order to receive insurance payments they were not entitled to receive, Feijoo caused the Clinic to bill initial and follow up evaluations of the Insureds under CPT Codes that deceptively, falsely, and misleadingly described the nature of the services as being much more complex than they actually were.

### i. Initial Evaluations

65.     In at least 470 separate instances from August 18, 2014, through May 17, 2018, the Clinic reported a $475 charge for a medical service identified as CPT Code 99204, which represented to State Farm Mutual that the Clinic, by and through Feijoo, had performed an initial

evaluation and management of the Insured, who was a new patient of the Clinic, with all three of the key components described above in Paragraphs 34 - 37: i) a comprehensive history; ii) a comprehensive examination; and iii) medical decision making of moderate complexity.

66.     In all 470 of these instances, the initial evaluations performed by Feijoo failed to contain even one of these three mandatory components for billing CPT Code 99204. Particularly and without limitation:

a)     The histories of the Insureds taken by Feijoo during his evaluations were not comprehensive as defined by the AMA's CPT, which is evidenced by facts that include, and are not limited to, the patient histories were basic, did not include a review of at least 10 of 14 organ systems, and did not contain a sufficient review of the history of present illness. For example, on January 26, 2017, Feijoo performed an initial evaluation of Insured H.P, claim no. 59874B689, who was a ten year old female with no medical history other than her complaints from the subject auto accident. True and correct copies of the Clinic's bill reporting CPT Code 99204 for Feijoo's January 26, 2017, evaluation of Insured H.P. and his handwritten and typewritten reports documenting it are attached hereto as composite Exhibit "H." This type of problem focused history is not a comprehensive history, and it is uniformly documented in the Clinic's records of Feijoo's initial evaluations of the Insureds listed in Exhibit "G" hereto for which he reported CPT Code 99204.

b)     Feijoo's examinations of the Insureds in his initial evaluations were not comprehensive as defined in the AMA's CPT, which is evidenced by facts that include, and are not limited to, the examinations were basic, focused on the specific orthopedic complaints of the Insured, and did not include checking of the Insureds' vital signs, gait, reflexes, or sensation. For example, on May 19, 2016, Feijoo performed an initial examination of Insured E.G.A., claim no.

59874B689, who reported having high blood pressure, but Feijoo nonetheless did not check her blood pressure; he also did not check her pulse, body temperature, or other vital signs. True and correct copies of the Clinic's bill reporting CPT Code 99204 for Feijoo's May 19, 2016, evaluation of Insured E.G.A. and his handwritten and typewritten reports documenting it are attached hereto as composite Exhibit "I." This type of problem focused examination is not a comprehensive examination, and it is uniformly documented in the Clinic's records of Feijoo's initial evaluations of the Insureds listed in Exhibit "G" hereto for which he reported CPT Code 99204.

        c)      The level of complexity of the decision making required by Feijoo at his initial evaluations of the Insureds was not moderate as defined in the AMA's CPT, which is evidenced by facts that include, and are not limited to, the Insureds' conditions did not present a sufficient number of diagnoses or management options to qualify for a moderate level of complexity, the medical data reviewed by Feijoo and necessary for his decision making was not of sufficient quantity or substance to qualify for a moderate level of complexity, and the diagnoses and management options for the Insureds did not pose a moderate risk to the Insureds sufficient to qualify for a moderate level of complexity. For example, Feijoo's medical decision making in his initial evaluations of Insured H.P, a ten year old, and Insured E.G.A., a 39 year old, who were different automobile accidents was very basic and remarkably similar. In both evaluations, Feijoo: i) advised H.P. and E.G.A. to "[l]imit overall activities," "[u]se a low pillow," and "[a]void heavy lifting; bend the knees not the back when picking up anything from the floor"; ii) ordered x-rays in the areas of their pain complaints; iii) made a templated, generalized finding that they had an emergency medical conditions for purposes of § 627.736(1)(a)3. without any specific description of their medical conditions that supposedly constituted an emergency; and iv) recommended that they return for a follow up visit in a month. *See* "Recommendation's" section of typewritten Initial

Orthopedic Evaluation Reports included in composite Exhibits "H" and "I" hereto. This type of straightforward medical decision making is not of moderate complexity, and it is uniformly documented in the Clinic's records of Feijoo's initial evaluations of the Insureds listed in Exhibit "G" hereto.

67.     Based on the foregoing, in every one of these 470 instances Feijoo's Clinic deceptively, falsely, and misleadingly upcoded his initial evaluations of the Insureds by reporting CPT Code 99204 in bills submitted to State Farm Mutual instead of a lower level E&M code that would have accurately described the initial evaluations Feijoo actually performed on the Insureds. The Clinic's reporting of these false and misleading 99204 CPT Codes misled State Farm Mutual and induced it to issue payments to the Clinic for the 99204 CPT Codes, and the high level medical evaluations they represent, in the claims listed in Exhibit "G" hereto even though Feijoo did not provide the type of high level medical evaluations described in the 99204 CPT Codes to the Insureds.

### ii.     Follow Up Evaluations

68.     A similar billing pattern repeated itself for the Clinic's billing for follow up evaluations of its patients under Feijoo's direction and control.  In at least 153 separate instances from August 18, 2014, through May 17, 2018, the Clinic reported a $275 charge for a medical service identified as CPT Code 99214, which represented to State Farm Mutual that the Clinic, by and through Feijoo, had performed a follow up evaluation of the Insured, who was an established patient of the Clinic, with at least two of the three key components described above in Paragraphs 38 - 42: i) a detailed history; ii) a detailed examination; and iii) medical decision making of moderate complexity.

69.     In all 153 of these instances, the follow up evaluations performed by Feijoo did not

contain even one of these three components. Particularly and without limitation:

a)      The histories of the Insureds taken by Feijoo during these follow up evaluations were not detailed as defined by the AMA's CPT, which is evidenced by facts that include, and are not limited to, the patient histories were basic, and did not contain a sufficient review of the history of present illness. For example, the patient histories documented in Feijoo's typewritten reports of his follow up evaluations of Insureds H.P. and E.G.A. do not include any past medical history, are identical, and consist of one very generalized sentence: "The patient has been receiving physiotherapy treatment and refers is feeling better, but still complaining of pain on the aforementioned areas." True and correct copies of the Clinic's bill reporting CPT Code 99214 for Feijoo's follow up evaluations of Insureds H.P. and E.G.A., and his handwritten and typewritten reports documenting them are attached hereto as composite Exhibits "J" and "K," respectively. *See* "History of Present Illness" section of typewritten Follow up Orthopedic Evaluation Reports included these exhibits. This type of very limited patient history is not a detailed history, and it is uniformly documented in the Clinic's records of Feijoo's follow up evaluations of the Insureds listed in Exhibit "G" hereto for which the Clinic billed CPT Code 99214.

b)      Feijoo's follow up examinations of the Insureds were not detailed as defined in the AMA's CPT, which is evidenced by facts that include, and are not limited to, the examinations were basic, focused on the specific orthopedic complaints of the Insured, did not include an extended examination of the affected body area or organ system, and did not include checking of the Insureds' vital signs, gait, reflexes, or sensation. For example, in both of Feijoo's follow up office visits with Insureds H.P. and E.G.A., for which the Clinic billed CPT Code 99214, he performed only a limited orthopedic examination of the specific areas of the body affected by

the auto accident, and he did not perform a systems review or check their vital signs, gait, reflexes, or sensation. *See* Exhibits "J" and "K" hereto. This type of problem-focused examination is not a detailed examination, and it is uniformly documented in the Clinic's records of Feijoo's follow up evaluations of the Insureds listed in Exhibit "G" hereto for which the Clinic billed CPT Code 99214.

        c)      The level of complexity of the decision making required by Feijoo at his follow up evaluations was not moderate as defined by the AMA's CPT, which is evidenced by facts that include, and are not limited to, the Insureds' conditions did not present a sufficient number of diagnoses or management options to qualify for a moderate level of complexity, the medical data reviewed by Feijoo and necessary for his decision making was not sufficient to qualify for a moderate level of complexity, and the diagnoses and management options for the Insureds did not pose a moderate risk to the Insureds sufficient to qualify for a moderate level of complexity. For example, Feijoo's medical decision making in his follow up evaluations for Insureds H.P. and E.G.A. was remarkably similar and straightforward. In both evaluations, Feijoo: i) simply repeated his earlier advice to "[l]imit overall activities," "[u]se a low pillow," and "[a]void heavy lifting; bend the knees not the back when picking up anything from the floor"; ii) stated that H.P. and E.G.A were both "highly recommended to continue with the physiotherapy treatment on the affected areas" and iii) recommended that they return for a follow up visit in a month. *See* "Recommendation's" section of typewritten Initial Orthopedic Evaluation Reports included in composite Exhibits "J" and "K" hereto. The only difference in Feijoo's medical decision making for H.P. and E.G.A. is that he prescribed cervical and lumbar MRIs for E.G.A. even though she had no radicular symptoms, which E.G.A. never had performed, and which are never again mentioned in Feijoo's records, including those of his final evaluation of E.G.A. This

type of very straightforward medical decision making is not of moderate complexity, and it is uniformly documented in the Clinic's records of Feijoo's follow up evaluations of the Insureds listed in Exhibit "G" hereto for which the Clinic reported CPT Code 99214.

70.     Based on the foregoing, in every one of these 153 instances Feijoo's Clinic deceptively, falsely and misleadingly upcoded his follow up evaluations of the Insureds by reporting CPT Code 99214 in bills submitted to State Farm Mutual instead of a lower level E&M code that would have accurately described the follow up evaluations Feijoo actually performed on the Insureds. The Clinic's reporting of these false and misleading 99214 CPT Codes misled State Farm Mutual and induced it to issue payments to the Clinic for the 99214 CPT Codes, and the high level medical evaluations they represent, in the claims listed in Exhibit "G" hereto even though Feijoo did not provide the type of high level medical evaluations described in the 99214 CPT Codes to the Insureds.

71.     In at least 156 separate instances from August 18, 2014, through May 17, 2018, the Clinic reported a $425 charge for a medical service identified as CPT Code 99215, the highest possible level, which represented to State Farm Mutual that the Clinic, by and through Feijoo, had performed a follow up evaluation and management of the Insured, who was an established patient of the Clinic, with at least two of three key components described above in Paragraph 35 – 36 and 44 - 45 above: i) a comprehensive history; ii) a comprehensive examination; and iii) medical decision making of high complexity.

72.     In all 156 of these instances, the follow up evaluations performed by Feijoo did not contain even one of these three components. Particularly and without limitation:

        a)      The histories of the Insureds taken by Feijoo during his follow up evaluations were not comprehensive as defined by the AMA's CPT, which is evidenced by facts

22

that include, and are not limited to the patient histories were basic, did not include a review of at least 10 of 14 organ systems, and did not contain a sufficient review of the history of present illness. For example, the patient history documented in Feijoo's typewritten report of his follow up evaluation of Insured H.P. on March 20, 2017, does not include any past medical history and consists of one very generalized sentence: "The patient has been receiving physiotherapy treatment and refers is feeling better, and today she is asymptomatic." The patient history documented in Feijoo's typewritten report of his follow up evaluation of Insured E.G.A. on December 15, 2016, also does not include any past medical history and simply copies-and-pastes the same single, generalized sentence in the report of his previous follow up evaluations of E.G.A.: "The patient has been receiving physiotherapy treatment and refers is feeling better, but still complaining of pain on the aforementioned areas." This type of very limited patient history is not a comprehensive history, and it is uniformly documented in the Clinic's records of Feijoo's follow up evaluations of the Insureds listed in Exhibit "G" hereto for which the Clinic billed CPT Code 99215. True and correct copies of the Clinic's bill reporting CPT Code 99215 for Feijoo's second follow up evaluations of Insureds H.P. and E.G.A., and his handwritten and typewritten reports documenting them are attached hereto as composite Exhibits "L" and "M," respectively.

b)      Feijoo's follow up examinations of the Insureds were not comprehensive as defined by the AMA CPT, which is evidenced by facts that include, and are not limited to, the examinations were basic, focused on the specific orthopedic complaints of the Insured, and did not include checking of the Insureds' vital signs, gait, reflexes, or sensation. For example, in both of Feijoo's follow up office visits with Insureds H.P. and E.G.A. for which the Clinic billed CPT Code 99215, Feijoo performed only a limited orthopedic examination of the specific areas of the body affected by the auto accident, and he did not perform a systems review or check their vital

signs, gait, reflexes, or sensation. This type of problem-focused examination is not a comprehensive examination, and it is uniformly documented in the Clinic's records of Feijoo's follow up evaluations of the Insureds listed in Exhibit "G" hereto for which the Clinic billed CPT Code 99215.

       c)      The level of complexity of the decision making required by Feijoo at his follow up evaluations was not high as defined by the AMA's CPT, which is evidenced by facts that include, and are not limited to, the Insureds' conditions did not present a sufficient number of diagnoses or management options to qualify for a high level of complexity, the medical data reviewed by Feijoo and necessary for his decision making was not sufficient to qualify for a high level of complexity, and the diagnoses and management options for the Insureds did not pose a moderate risk to the Insureds sufficient to qualify for a high level of complexity. For example, in Feijoo's March 20, 2017, follow up evaluation of Insured H.P. for which the Clinic billed State Farm Mutual CPT Code 99215 (again, the highest possible level), Feijoo noted that H.P.'s chief complaint was "pain less" [sic] and discharged her from his care. For the vast majority of Insureds listed on Exhibit "G" hereto, the purpose of Feijoo's follow up evaluations for which the Clinic billed State Farm Mutual 99215 was for Feijoo to assign them a permanent impairment rating for use in their auto-negligence cases. In order to be assigned a permanent impairment rating, a patient must be at maximum medical improvement or "MMI" which means that no further medical treatment will improve his or her condition. Accordingly, there was little to no medical decision making by Feijoo in the follow up evaluations of the Insureds identified in Exhibit "G" hereto for which the Clinic billed State Farm Mutual CPT Code 99215.

       73.     Based on the foregoing, in every one of these 156 instances Feijoo's Clinic deceptively, falsely and misleadingly upcoded his follow up evaluations of the Insureds by

reporting CPT Code 99215 in bills submitted to State Farm Mutual instead of a lower level E&M code that would have accurately described the follow up evaluations Feijoo actually performed on the Insureds. The Clinic's reporting of these false and misleading 99215 CPT Codes misled State Farm Mutual and induced it to issue payments to the Clinic for the 99215 CPT Codes, and the high level medical evaluations they represent, in the claims listed in Exhibit "G" hereto even though Feijoo did not provide the type of high level medical evaluations described in the 99215 CPT Codes to the Insureds.

74.     In sum, Feijoo consistently, repeatedly, and uniformly caused the Clinic to report E&M Codes under the CPT that correspond to evaluations of thoroughness and complexity that did not accurately reflect the services Feijoo rendered to the Insureds in his initial and follow up evaluations.

**B.     Unbundling ROM Testing from the Patient Evaluations**

75.     As discussed above in Paragraphs 46 - 48, the CPT Code 95851 reporting ROM testing cannot be billed with an E&M code for a patient evaluation on the same date of service unless: a) the ROM testing performed by the provider is separately identifiable from the patient examination; b) the provider prepares and signs two distinctly identifiable written reports documenting the medical need for the separate examination and ROM testing; and c) the provider documents any abnormal findings in the separate ROM Testing report including, by way of example and without limitation, limited ROM, pain, and crepitus through the various planes of motion. Further, CPT Code 95851 cannot be billed with an E&M code for a patient examination on the same date of service if the ROM testing is an integral component of the examination.

76.     In at least 779 separate instances from August 18, 2014, through May 17, 2018, the Clinic reported a $100 charge for a medical service identified as CPT Code 95851, which

represented to State Farm Mutual that the Clinic, by and through Feijoo, had performed a procedure on the Insured described by the CPT Code as "Range of motion measurements and report (separate procedure); each extremity (excluding hand) or each trunk section (spine)." In every one of these 779 instances, the Clinic reported a $100 charge for the 95851 procedure together with an additional charge for one of the following CPT codes for E&M Services, 99204, 99214, or 99215, which the Clinic billed for Feijoo's evaluations of the Insureds on the same date of service.

77.     In every one of these 779 instances, Feijoo: a) performed basic ROM testing as an integral component of the examinations included in his evaluations of the Insureds for which he billed State Farm Mutual CPT codes 99204, 99214, or 99215; b) Feijoo documented his findings from the ROM testing in the same reports documenting his overall findings in the examinations of the Insureds; c) did not prepare a separately identifiable report of the ROM testing setting forth abnormal findings such as pain or crepitus, or that is otherwise sufficient to properly bill a 95851 procedure together with a patient examination that is part of an evaluation billed under CPT Code 99204, 99214, or 99215; and d) performed the ROM testing as an integral component of his examinations of the Insureds, not as a separately identifiable and reportable service.

78.     Based on the foregoing, in every one of these 179 instances Feijoo's Clinic deceptively, falsely and misleadingly unbundled and separated the ROM testing billed as 95851 from the patient evaluations billed as 99204, 99214, and 99215 in bills submitted to State Farm Mutual and, in so doing, improperly charged State Farm Mutual twice for the same ROM testing. The Clinic's reporting of these false and misleading 95851 CPT Codes misled State Farm Mutual and induced it to issue payments to the Clinic for the 95851 CPT Codes, and the specifically identifiable ROM testing they represent, in each of the claims listed in Exhibit "G" even though

Feijoo did not provide the ROM testing described in the 95851 CPT codes to the Insureds.

### C. Billing for X-Ray Consultations Not Performed

79. As discussed above in Paragraphs 49 - 50, CPT Code 76140 is used to report a physician's consultation regarding an x-ray examination made elsewhere. In order to report this code, the reporting physician must have been asked by another physician to read the x-ray and issue an interpretation of it (*e.g.*, a second opinion) and must also write a formal report on his interpretation and send a copy of it to the requesting physician. Furthermore, medical providers cannot properly bill the 76140 code for their review of x-ray films or reports prepared somewhere else when the review is performed as a component of their examination of the patient as part of the evaluation for which they are billing an E&M code such as 99204, 99214, or 99215.

80. In at least 225 separate instances from August 18, 2014, through May 17, 2018, the Clinic reported a $100 charge for a medical service identified as CPT Code 76140, which represented to State Farm Mutual that the Clinic, by and through Feijoo, had performed a procedure on the Insured described by the CPT Code as "Consultation on X-ray examination made elsewhere, written report." In every one of these 225 instances, the Clinic reported its $100 charge for the 76140 procedure together with an additional charge for one of the E&M codes 99204, 99214 or 99215 for the same date of service, which Feijoo billed for his evaluations of the Insureds. In every one of these 225 instances, Feijoo: a) was not asked to provide a consultation on an x-ray film by another physician, and he did not do so; and b) instead simply reviewed x-ray films or written x-ray reports prepared somewhere else as a component of his examinations of the Insureds.

81. Based on the foregoing, in every one of these 225 instances Feijoo caused the Clinic to deceptively, falsely, and misleadingly: a) bill for services not rendered by reporting the 76140 code; and b) charge State Farm Mutual twice for the same review of x-ray films or reports by

reporting the 76140 charge together with the E&M codes of 99204, 99214, or 99215 that Feijoo used to bill for his evaluations of the Insureds. The Clinic's reporting of these false and misleading 76140 CPT Codes misled State Farm Mutual and induced it to issue payments to the Clinic for the 76140 CPT Codes, and the x-ray consultations they represent, in each of the claims listed in Exhibit "G" even though Feijoo did not perform the x-ray consultations described in the 76140 CPT codes.

82.     In every one of the instances described in the preceding paragraphs (*i.e.* - Section V), the medical services described by the deceptive, false, and misleading CPT Codes that the Clinic reported in bills submitted to State Farm Mutual called for a higher reimbursement by State Farm Mutual than would be payable for the medical services Feijoo actually provided to the Insureds.

83.     Feijoo knowingly caused the Clinic to report the deceptive, false, and misleading CPT-Code charges described above in Section V. for the purpose of inducing State Farm Mutual to pay the Clinic PIP and MPC benefits for medical procedures that the Clinic did not, in fact, perform on the Insureds, or for which the Clinic was not otherwise entitled to be paid at all, or in the amount charged by the Clinic.

**VI.     CAUSATION AND INDUCMENT**

84.     Florida's No-Fault Law requires that insurers make a decision on whether to pay a medical provider's bill for PIP benefits within thirty (30) days of receiving it. As explained above, Florida law also imposes an affirmative duty on providers to ensure all claims for insurance benefits are complete, truthful, and accurate. *See supra* ¶s 14 – 15 and 19 - 26. Likewise, CMS 1500 forms require a billing provider to certify that the information reflected on the form "is true, accurate and complete." *See* Exhibit "C" hereto.

85.     While State Farm Mutual evaluates each claim on its merits, State Farm Mutual is

entitled to accept the truthfulness and accuracy of the information set forth in bills and records submitted by medical providers in support of their claims for PIP benefits as discussed above in Paragraphs 14 – 15 and 19 – 26.

86. When deciding whether, and how much, to pay the Clinic for the medical services Feijoo provided to the Insureds listed in Exhibit "G" hereto, State Farm Mutual reviewed and evaluated the documentation submitted in connection with each claim and was induced by the Clinic's representations in the bills that the CPT Codes reported therein properly and accurately described the medical services actually provided by Feijoo to the Insureds. The Clinic's deceptive, false, and misleading billing for CPT Codes 95981, 99204, 76140, 99215, and 99214 in the manner described in above in Section V misled State Farm Mutual into believing and understanding that Feijoo had actually performed the medical services described by those CPT Codes, and induced State Farm Mutual to issue payments for PIP and, where applicable, MPC benefits to the Clinic for those CPT Codes, when Feijoo had not in fact provided the medical services described by CPT Code charges for 95981, 99204, 76140, 99215, and 99214 to the Insureds.

**CLAIMS FOR RELIEF**

**COUNT I**
**VIOLATION OF FLORIDA'S DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT**

87. State Farm Mutual realleges the allegations set forth in Paragraphs 1 - 86 above as if fully set forth herein.

88. Under Feijoo's direction and control, the Clinic "knowingly," as defined in Florida Statutes § 627.732(10), submitted false or misleading statements to State Farm Mutual relating to the Clinic's claims and charges for medical services allegedly provided to the Insureds.

89. Feijoo knew the CPT Codes billed by the Clinic were false and misleading when

he authorized and caused them to be submitted to State Farm Mutual. As the Clinic's owner, Feijoo benefited from the monies paid by State Farm Mutual as a result of the false and misleading bills. Pursuant to Feijoo's arrangement with his Clinic documented in Exhibit "F" hereto, Feijoo was also entitled to be personally paid 100% of the monies paid by State Farm Mutual for the deceptive, false, and misleading CPT code charges.

90.     In each claim identified in Exhibit "G" hereto, the Clinic, by and through Feijoo, engaged in deceptive acts and practices in the conduct of trade and commerce, in violation of FDUTPA, Florida Statute § 502.201 *et seq*.

91.     The Clinic and Feijoo's deceptive practices include:

a)     falsely and misleadingly upcoding initial evaluations of Insureds by reporting CPT Code 99204 in bills submitted to State Farm Mutual instead of a lower level E&M code that would have accurately described the initial evaluations Feijoo actually performed on the Insureds;

b)     falsely and misleadingly upcoding follow up evaluations of Insureds by reporting CPT Codes 99214 and 99215 in bills submitted to State Farm Mutual instead of a lower level E&M code that would have accurately described the follow up evaluations Defendants actually performed on the Insureds;

c)     falsely and misleadingly unbundling and separating the ROM testing billed as CPT Code 95851 from patient evaluations billed under CPT Codes 99204, 99214, or 99215 in bills submitted to State Farm Mutual, thereby charging State Farm Mutual twice for the same ROM testing; and

d)     falsely and misleadingly: i) billing for services not rendered by reporting the 76140 code; and ii) charging State Farm Mutual twice for the same review of x-ray films or

reports by issuing the 76140 charge together with the E&M codes of 99204, 99214, or 99215 that Defendants used to bill for evaluations of the Insureds.

## FDUTPA *Per Se*

92.     Defendants' acts and practices set forth in Paragraphs 58 - 83 above constitute a *per se* violation of FDUTPA.

93.     One commits a *per se* violation of FDUTPA by violating "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c).

94.     Florida Statute §   817.234 states that a person commits insurance fraud if that person "with the intent to injury, defraud, or deceive any insurer: (1) [p]resents or causes to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy or a health maintenance organization subscriber or provider contract, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim." Fla. Stat. § 817.234(1)(a)(1).

95.     A medical provider also engages in insurance fraud by engaging in "systematic upcoding . . . with the intent to obtain reimbursement otherwise not due from an insurer." Fla. Stat. § 817.234(2)(b).

96.     Additionally, § 627.736(5)(b)1.c. prohibits medical providers from knowingly (as defined in § 627.736(10)) submitting a false or misleading statement relating to their claim or charges for No-Fault Benefits.

97.     Each instance in the Clinic submitted a bill for services with false or misleading CPT Codes to State Farm Mutual, Defendants knowingly presented a false claim for payment in violation of Florida Statute §§ 626.9541, 817.234, and 627.736(5)(b)1.c. Moreover, the Clinic's

repeated and systematic submission of bills with upcoded charges to State Farm Mutual also violated Florida Statute § 817.234(2)(b). Based on these statutory violations the Clinic and Feijoo's acts and practices are *per se* deceptive under FDUTPA.

## Traditional FDUTPA

98.     In addition, Defendants' conduct set forth in paragraphs 58 - 83 above also constitutes a traditional violation of FDUTPA because the Clinic's bills for services with false or misleading CPT Codes are likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment. Courts apply an objective standard when determining whether an act or practice is deceptive for purposes of a traditional FDUTPA violation.

99.     Pursuant to §§ 627.736(5)(b)1.b., 627.736(5)(b)1.c., 627.736(5)(b)1.d., 627.736(5)(b)1.e., and/or 627.736(5)(d),  the Clinic's submission to State Farm of the above-described false or misleading CPT-Code charges regarding medical services allegedly provided to the Insureds invalidated, and rendered valueless, the entirety of the Clinic's claims for the medical services allegedly provided to the Insureds identified in Exhibit "G" hereto, and relieved State Farm Mutual of any and all requirement, duty, or obligation to pay any of the charges contained within those claims.

100.     Defendants' deceptive acts and practices as set forth in paragraph 58 - 83 has caused State Farm Mutual to be aggrieved, and suffer losses and actual damages, including and not limited to those resulting from State Farm Mutual's payment to the Clinic for medical services: a) that were not performed; b) for which the Clinic charged State Farm Mutual an inflated amount; c) for which the Clinic charged State Farm twice, and/or d) that are non-compensable under §§ 627.736(5)(b)1.b., 627.736(5)(b)1.c., 627.736(5)(b)1.d., 627.736(5)(b)1.e., and/or 627.736(5)(d), or otherwise.

101.    State Farm Mutual has retained the undersigned law firm to prosecute this action and is obligated to pay the firm a reasonable fee for its services. State Farm Mutual is entitled to recover its attorneys' fees and costs from the Clinic and Feijoo pursuant to section 501.2105(1), Florida Statutes.

WHEREFORE, Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, demands judgment, jointly and severally, against Defendants, MANUEL V. FEIJOO, M.D., and MANUEL V. FEIJOO, M.D., P.A, for damages, interest, attorneys' fees, costs and any such other relief the Court deems necessary and proper.

## COUNT II
### REQUEST FOR JUDGMENT DECLARING THAT THE CLINIC'S UNPAID CHARGES AND UNPAID CLAIMS ARE NOT COMPENSABLE

102.    State Farm Mutual realleges the allegations set forth in Paragraphs 1 – 86 and 101 above as if fully set forth herein.

103.    This is a claim for declaratory relief pursuant to 28 USC § 2201 and section 501.211(1), Florida Statutes.

104.    As set forth in Exhibit "G" hereto, State Farm Mutual denied, or reduced and paid a portion of, some of the CPT-Code charges the Clinic submitted to State Farm Mutual for medical services allegedly provided to the Insureds (collectively the "Unpaid Charges").

105.    State Farm Mutual has also denied, in full, other claims submitted by the Clinic from September 2, 2014, through May 7, 2018, for medical services allegedly provided to additional Insureds under State Farm Mutual Policies (collectively the "Unpaid Claims").

106.    The Unpaid Claims submitted by the Clinic under Feijoo's direction and control include the same billing improprieties regarding the Clinic's reporting of the deceptive, false, or misleading CPT-Code charges of 95981, 99204, 76140, 99215, and 99214 described above in

Paragraphs 58 - 83.

107.    Attached hereto as Exhibit "N" is a chart incorporated herein by reference that accurately sets forth the following information regarding the Unpaid Claims: a) each Insured identified by his or her initials and the claim number State Farm Mutual assigned to his or her claim following the automobile accident; b) the date of loss (*i.e.*, the auto accident); c) the date range of the medical services the Clinic purportedly provided to each Insured following the subject loss; d) the identity and frequency of the CPT-Code procedures that the Clinic billed State Farm Mutual for medical services allegedly rendered to the Insureds; e) the "Total Billed" by the Clinic for medical services allegedly rendered to the Insureds following the subject loss; and f) the "Total Approved" amount for each of the claims submitted by the Clinic for medical services provided to the Insureds, which represents State Farm's total allowed reimbursement for the medical services reported in each claim had they been compensable.

108.    As described in the Affidavit of Anielka Castillo attached hereto as Exhibit "F," Feijoo claims to have the right to personally collect payments made by insurers on charges issued by the Clinic pursuant to an "arrangement" between Feijoo and the Clinic.

109.    State Farm Mutual has been aggrieved by the Clinic's reporting of CPT-Code charges of 95981, 99204, 76140, 99215, and 99214 that are false and/or misleading, and violate §§ 627.736(5)(b)1.b., 627.736(5)(b)1.c., 627.736(5)(b)1.d., 627.736(5)(b)1.e., 627.736(5)(d), 626.989(1)(a), and/or 817.234 for the Unpaid Charges and within the Unpaid Claims, as the Clinic has demanded payment for medical charges that are not owed, and thereby subjected State Farm to the threat of lawsuits to recover PIP and, where applicable, MPC benefits for the Unpaid Charges and Unpaid Claims, along with the attendant penalties of interest, costs, and attorneys' fees.

110.     State Farm Mutual believes and contends that it does not owe the Clinic or Feijoo any PIP or MPC benefits for the Unpaid Charges or Unpaid Claims because: a) the Clinic knowingly (as defined in § 627.732(10)) made the above-described false or misleading statements regarding the CPT-Code procedures it reported for the Unpaid Charges and Unpaid Claims, which has relieved State Farm Mutual of any duty, obligation, or requirement to pay PIP or MPC benefits for any portion of the Unpaid Charges or Unpaid Claims pursuant to § 627.736(5)(b)1.c.; b) State Farm Mutual is relieved of any duty, obligation, or requirement to pay PIP or MPC benefits for any portion of the Unpaid Charges or Unpaid Claims because they violate  §§ 627.736(5)(b)1.b., 627.736(5)(b)1.d.,  627.736(5)(b)1.e.,  627.736(5)(d),  626.989(1)(a),  and/or  817.234;  and/or  c) Feijoo and the Clinic's acts violating one or more of these statutes constitute traditional and /or *per se* violations of § 501.204.

111.     Defendants dispute and disagree with State Farm Mutual's beliefs and contentions set forth in the preceding paragraph, and, therefore, there is an actual, present controversy between State Farm Mutual and Defendants over them.

112.     As a result of the above-described controversy, State Farm Mutual and Defendants are in doubt as to their respective rights and obligations, and there is a bona fide, actual, present and practical need for a declaration by this Court to resolve such controversy.

113.     All interested parties are before the Court.

WHEREFORE, Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, respectfully requests the Court to enter a judgment: a) declaring that Defendants, MANUEL V. FEIJOO, and MANUEL V. FEIJOO, M.D., P.A, knowingly made false or misleading statements that have relieved Plaintiff of any duty, obligation, or requirement to pay any PIP or MPC benefits for the Unpaid Charges and Unpaid Claims under § 627.736(5)(b)1.c.

and the Policies; b) awarding Plaintiff the attorneys' fees and costs incurred in this action; and c) granting Plaintiff any such other relief supplemental to such declarations that may be necessary and proper.

**DEMAND FOR JURY TRIAL**

State Farm Mutual demands a jury trial on all issues so triable.

Dated:  June 16, 2019

Respectfully submitted,

/s/ *Kenneth P. Hazouri*
Kenneth P. Hazouri (Fla. Bar No. 019800)
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
Andrew S. Ballentine (Fla. Bar No. 118075)
aballentine@dsklawgroup.com
skuharske@dsklawgroup.com
deBeaubien, Simmons, Knight,
  Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone:  (407) 422-2454
Attorneys for Plaintiff