**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:18-cv-23329-RAR**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Plaintiff,

v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

     Defendants.

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm Mutual"), by counsel and pursuant to Federal Rule of Civil Procedure 56, hereby moves for final summary judgment on the claims set forth in Counts I and II of its Amended Complaint against Defendants, MANUEL V. FEIJOO ("Feijoo") and MANUEL V. FEIJOO, M.D., P.A. (the "Clinic"), (collectively, the "Defendants"), and in support thereof states as follows:

### Summary of Argument

Feijoo caused the Clinic to submit hundreds of false, misleading, and deceptive claims (the "Subject Claims") demanding payment of personal injury protection ("PIP") benefits for medical services Feijoo allegedly provided to persons covered under insurance policies issued by State Farm Mutual (collectively, the "Insureds"). In doing so, the Clinic violated multiple anti-fraud provisions in Florida's "PIP statute," Florida Statute § 627.736 ("§ 627.736"). As a matter of law, those statutory violations invalidate the entirety of Clinic's PIP claims and constitute *per se* and traditional violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

1

Accordingly, State Farm Mutual is entitled to recover damages in its FDUTPA claim equal to the amount of PIP and medical payments coverage ("MPC") benefits paid on the Subject Claims. State Farm Mutual is also entitled to a declaration that it does not owe any PIP and MPC benefits for unpaid claims submitted by the Clinic.

**The PIP Statute's Anti-Fraud Provisions**

In 2001, the Florida Legislature amended § 627.736 in an effort to combat rampant fraud and abuse in Florida's no-fault system of automobile insurance. *Florida Session Law Service*, Chapter 2001-271. This legislation declared that the system's purpose "has been frustrated at significant cost and harm to consumers by, among other things, fraud, medically inappropriate over-utilization of treatments and diagnostic services, <u>inflated charges</u>, and other practices . . . ." *Id.* (emphasis supplied).

The Legislature amended the PIP statute again in 2003 in a further effort to stem the tide of PIP fraud and abuse. *Florida Session Law Service*, Chapter 2003-411. In doing so, the Legislature made the following declarations regarding the purpose of its amendments:

> (2) The Legislature finds and declares that:
> 
> \* \* \*
> 
> (g) It is further a matter of great public importance that, in order to protect the public's health, safety, and welfare, it is necessary to enact the provisions contained in this act in order to prevent PIP insurance fraud and abuse and to curb escalating medical, legal, and other related costs, and the Legislature finds that the provisions of this act are the least restrictive actions necessary to achieve this goal.
> 
> (h) Therefore, the purpose of this act is to restore the health of the PIP insurance market in Florida by addressing these issues, preserving the no-fault system, and realizing cost-savings for all people in this state.

*Id.* In order to accomplish this objective, the Legislature's 2003 amendments added the anti-fraud provisions of §§ 627.736(5)(d) and 627.736(5)(b)1.c. to the PIP statute.

Section 627.736(5)(d) imposes strict requirements for the form and content of medical

providers' bills to PIP insurers and states in pertinent part as follows:

> (d) All statements and bills for medical services rendered by any physician . . . shall be submitted to the insurer on a properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form . . . . <u>All billings for such services rendered by providers shall, to the extent applicable, follow the Physicians' Current Procedural Terminology (CPT)</u> or Healthcare Correct Procedural Coding System (HCPCS), or ICD-9 in effect for the year in which services are rendered <u>and comply with</u> the Centers for Medicare and Medicaid Services (CMS) 1500 form instructions and <u>the American Medical Association Current Procedural Terminology (CPT) Editorial Panel</u> and Healthcare Correct Procedural Coding System (HCPCS). . . . <u>In determining compliance with applicable CPT</u> and HCPCS <u>coding, guidance shall be provided by the Physicians' Current Procedural Terminology (CPT)</u> or the Healthcare Correct Procedural Coding System (HCPCS) in effect for the year in which services were rendered . . . . <u>For purposes of paragraph (4)(b), an insurer shall not be considered to have been furnished with notice of the amount of covered loss or medical bills due unless the statements or bills comply with this paragraph, and unless the statements or bills are properly completed in their entirety as to all material provisions, with all relevant information being provided therein.</u>

Fla. Stat. § 627.736(5)(d) (emphasis supplied). As used in this statute, the term "properly completed" is statutorily defined to mean "providing truthful, substantially complete, and substantially accurate responses as to all material elements to each applicable request for information or statement by a means that may lawfully be provided and that complies with this section, or as agreed by the parties." Fla. Stat. § 627.732(13).

Section 627.736(5)(b)1.c. states that "[a]n insurer or insured is not required to pay a claim or charges . . . [t]o any person who knowingly submits a false or misleading statement relating to the claim or charges." As used in this statute, the term "knowingly" is statutorily defined to mean "that a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the information, and proof of specific intent to defraud is not required." Fla. Stat. § 627.732(10). Thus, a provider who recklessly submits a false or misleading statement relating to its claim for PIP benefits acts "knowingly" for purposes of § 627.736(5)(b)1.c.

As explained below, every one of the medical bills the Clinic submitted to State Farm Mutual within its Subject Claims for PIP benefits indisputably contains one or more false or misleading charges that misrepresent the medical services Feijoo provided to the Insureds. All of those bills are not "properly completed" and are, therefore, not compensable under § 627.736(5)(d). Moreover, the Clinic was at least reckless in systematically submitting hundreds of false and misleading charges. As such, the entirety of the Clinic's Subject Claims for PIP benefits are invalidated under § 627.736(5)(b)1.c.

## Material Facts that are Not in Dispute or Cannot Be Disputed

Contemporaneously with the filing of this motion, State Farm Mutual has filed its Statement of Material Facts in compliance with Local Rule 56.1, which State Farm Mutual incorporates herein by reference. The facts summarized in this section are drawn from the Statement of Material Facts and evidence supporting it.

That evidence includes the Affidavit of Timothy Banahan, a copy of which is attached hereto as Exhibit "A." Mr. Banahan's affidavit establishes all of the material facts regarding the Clinic's submission, and State Farm Mutual's payment, of the Subject Claims.

State Farm Mutual has also filed the Affidavit of Patrick Jacob, M.D., a copy of which is attached hereto as Exhibit "B." Dr. Jacob is board certified in neurological surgery, and he has significant knowledge, experience, and expertise regarding the American Medical Association's ("AMA") Current Procedural Terminology ("CPT"), which is at the center of this case. From 2014 – 2018, Dr. Jacob served as a physician member of the AMA's CPT Editorial Panel, which annually promulgates and publishes the CPT codebook. He has also served as a member of the AMA's CPT Editorial Panel Executive Committee and a representative to the CPT Editorial Panel on behalf of the American Association of Neurological Surgeons. Dr. Jacob's affidavit

4

details the Clinic's systematic reporting of false and misleading CPT code charges in every one of the medical bills included within the Subject Claims.

The CPT codebook lists hundreds of five-digit codes that describe virtually every kind of health care service that can be rendered to a patient. To ensure the proper and accurate use of the CPT codes in medical billing, the CPT codebook instructs practitioners to consult other reference materials published by the AMA, including a publication entitled the *CPT Assistant*:

> When reporting codes for services provided, <u>it is important to assure the accuracy and quality of coding through verification of the intent of the code by use of the related guidelines</u>, parenthetical instructions, and coding resources, <u>including *CPT Assistant*</u> and other publications resulting from the collaborative efforts of the American Medical Association with the medical specialty societies (i.e., *Clinical Examples in Radiology*).

[Aff. of P. Jacob, M.D., Ex. C; emphasis supplied] The CPT codebook's descriptions of the CPT codes often contain citations to *CPT Assistant* articles that provide guidance on their proper use. As quoted above, § 627.736(5)(d) requires medical providers to submit medical bills with CPT codes that accurately describe the services for which they are seeking payment of PIP benefits.

Feijoo is a doctor who owns and controls the Clinic and is legally responsible for its compliance with all federal and state laws. Continuously from at least August 2014 to August 2018, Feijoo caused the Clinic to submit hundreds of medical bills within the Subject Claims to State Farm Mutual for orthopedic evaluations performed on the Insureds following their auto accidents.

Feijoo performed the evaluations while sitting at his desk across from the Insureds. As an integral and standard part of his evaluations, Feijoo checked the Insureds' range of motion ("ROM") in the areas of the spine or extremities where they reported injuries. He did so by asking them to move the affected body areas through planes of motion such as, by way of example, forward-backward and side-to-side. Feijoo then visually gauged whether there was any

limitation in the Insured's range of motion and noted any pain reported by the Insureds. Feijoo has a device called an inclinometer that measures ROM, but he does not use it because he believes it takes too long, is too complicated, and bores the patient.

During his evaluations, Feijoo sometimes had written reports or films of x-rays prepared by other medical practitioners available for his review. When they were available, Feijoo reviewed them as an integral part of his orthopedic evaluations of the Insureds.

Feijoo prepared typewritten reports of his evaluations documenting the Insureds' history, his examinations of the Insureds, and his diagnoses. All of these hundreds of reports also list the same generalized recommendations of: "Limit overall activities"; "Use a low pillow"; and "Avoid heavy lifting; bend the knees not the back when picking up anything from the floor." Importantly, Feijoo's reports of his evaluations also document his visual ROM testing and review of available x-ray reports or films. This further establishes that his ROM testing and x-ray reviews (reports or films) were an integral component of his evaluations of the Insureds.

Not even one of the Clinic's hundreds of medical bills submitted to State Farm Mutual for Feijoo's evaluations complied with the AMA's CPT as required by § 627.736(5)(d). This is because Feijoo caused the Clinic to systematically submit bills with CPT codes that misrepresented the medical services he provided to the Insureds in order to improperly inflate the Clinic's charges. Feijoo and the Clinic carried out this scheme through the use five CPT code charges: 76140, 95851, 99204, 99215, and 99214.

Every one of the Clinic's medical bills report a charge for CPT code 99204, 99214, or 99215, which describe evaluation and management ("E/M") services provided to a patient. An E/M service is an evaluation of the patient that includes a history, examination, and diagnosis such as, by way of example, the orthopedic evaluations Feijoo performed on the Insureds. The

CPT codes for E/M services are arranged in five levels, with the lowest level ending in a "1" (*e.g.*, 99201 or 99211) and the highest level ending in a "5" (*e.g.*, 99205 or 99215). Each ascending level indicates a patient evaluation of increasing complexity and, in turn, justifies higher compensation. By billing CPT code 99204 for his initial evaluations, and CPT codes 99214 and 99215 for follow up evaluations, Feijoo chose the two highest possible levels of E/M codes, which, as explained by Dr. Jacob, misrepresented their level and complexity in a manner that called for higher compensation.

Feijoo did not, however, just upcode his evaluations of the Insureds by using CPT codes 99204, 99214, and 99215. Every medical bill the Clinic submitted to State Farm Mutual within the Subject Claims also reports a $100 charge for CPT code 95851. The Clinic submitted these charges under CPT code 95851 for Feijoo's visual ROM testing of the Insureds even though he performed the testing as part of the orthopedic evaluations for which the Clinic billed CPT code 99204, 99214, or 99215. Feijoo also added another $100 charge for CPT code 76140 to the bills every time he reviewed an x-ray (or MRI) report or film during an evaluation. The Clinic's billing of CPT codes 95851 and 76140 in these circumstances does not comply with the AMA's CPT and misrepresents the services Feijoo provided to the Insureds.

First and perhaps most obviously, Feijoo did not perform any service that is properly reported with CPT code 76140. The CPT codebook describes CPT code 76140 as a "[c]onsultation on x-ray examination made elsewhere, written report." The only *CPT Assistant* article cited in this description states as follows:

Using Code 76140

76140 Consultation on x-ray examination made elsewhere.

You would use this code when a physician's opinion or advice regarding a specific film is requested by another physician and upon examination of the film,

the consulting physician renders his or her consultation (i.e., or his/her opinion or advice) to the requesting physician in the form of a written report.

[Aff. of P. Jacob, M.D., Ex. G] It is undisputed that Feijoo was not asked to provide, and did not provide, any such x-ray consultations requested by another physician.

Instead, as Feijoo himself testified the Clinic billed CPT code 76140 whenever he reviewed an x-ray report or film as part of his orthopedic evaluations. The same *CPT Assistant* article addresses this exact situation:

> If a patient presents to an office for a new visit and brings to the physician his or her medical records, including x-rays, <u>you should not report code 76140.</u> Although the x-rays may have been taken **elsewhere**, <u>the physician does not perform the consultation as intended by code 76140. Rather, the review or re-read of the x-rays would be considered part of the face-to-face E/M service provided to the patient.</u> Again, the E/M codes include work done before, during, or after the E/M visit. <u>Review of x-rays is part of the E/M service.</u> Remember, 76140 represents a consultation, in which a physician only renders an opinion or gives advice regarding the film in the form of a written report. <u>In general, when reporting 76140, the physician is not concurrently providing an E/M face-to-face service to the patient.</u>

[Aff. of P. Jacob, M.D., Ex. G; bold emphasis in original; underlined emphasis supplied] The Clinic's repeated billing of State Farm Mutual for CPT code 76140, in addition to the E/M codes of 99204, 99214, or 99215, directly violates these instructions.

The Clinic violated the AMA's CPT in a similar fashion by billing CPT code 95851 together with CPT code 99204, 99214, or 99215 in every one of the medical bills included within the Subject Claims. The CPT codebook describes CPT code 95851 as: "Range of motion measurements and report (separate procedure), each extremity (excluding hand) or each trunk section (spine)." As used in this description, the parenthetical "(separate procedure)" has a specific meaning and significance. As explained in the CPT codebook:

**Separate Procedures**

> Some of the procedures or services listed in the CPT codebook that are commonly carried out as an integral component of a total service or procedure

have been identified by the inclusion of the "separate procedure." The codes designated as "separate procedures" should not be reported in addition to the code for the total procedure or service of which it is considered an integral component.

[Aff. of P. Jacob, M.D., Ex. J] The reason CPT code 95851 is designated as a "separate procedure" is that ROM testing is "commonly carried out as an integral component" of an E/M service. When this occurs, CPT code 95851 cannot be properly billed together with an CPT code for an E/M service, including 99204, 99214, and 99215. A *CPT Assistant* article cited in the CPT codebook's description of CPT code 95851 explains this prohibition:

> CPT codes . . . 95851-95852 are designated as "separate procedures." Therefore, if in the process of performing the work described in an E/M service code, the physician also performs the work described in codes . . . 95851-95852, then it would not be appropriate to report those codes in addition to the E/M service codes.

[Aff. of P. Jacob, M.D., Ex. K]

Feijoo indisputably performed his visual ROM testing "as an integral component" of, and "in the process of performing," his orthopedic evaluations of the Insureds. As such, the ROM testing was included within the E/M services for which the Clinic billed State Farm Mutual CPT codes 99204, 99214, and 99215, and the Clinic's submission of the additional $100 charges for CPT code 95851 falls squarely within the above-quoted prohibition. Indeed, this is a classic case of the deceptive billing practice of "unbundling," which is statutorily defined to mean "an action that submits a billing code that is properly billed under one billing code, but that has been separated into two or more billing codes, and would result in payment greater in amount than would be paid using one billing code." Fla. Stat. § 627.732(15). By systematically misusing CPT code 95851 in this fashion, the Clinic double-billed State Farm Mutual for Feijoo's visual ROM testing in every one of the hundreds of medical bills submitted within the Subject Claims.

## Argument

I.     AS A MATTER OF LAW, THE CLINIC'S IMPROPER BILLING PRACTICES UNDER THE AMA'S CPT VIOLATE § 627.736(5)(d) AND RENDER ALL OF THE CLINIC'S MEDICAL BILLS NON-COMPENSABLE UNDER THIS STATUTE.

As quoted above, § 627.736(5)(d) requires providers to report charges that follow the AMA's CPT in medical bills seeking payment of PIP benefits. If a medical bills reports charges that do not comply with the AMA's CPT, it is not "properly completed" under § 627.736(5)(d) and is, therefore, rendered non-compensable as a matter of law. *See State Farm Mut. Auto, Ins. Co. v. R.J. Trapana, M.D., P.A.., (a/a/o Noemi Marquez)*, 23 Fla. L. Weekly Supp. 98a (Fla. 17th Cir. Ct. 2015); *see also Chiropractic One, Inc. v. State Farm Mut. Auto. Ins. Co.*, 92 So. 3d 871, 875 n. 1 (Fla. Dist. Ct. App. 2012)(affirming partial summary judgments ruling that the charges in the provider's medical bills did not comply with the AMA's CPT and were, therefore, not "properly completed" or compensable under § 627.736(5)(d)).

*Trapana* explains this legal outcome in the context of a billing practice that is literally identical to the Clinic's improper reporting of CPT code 76140 in the medical bills it submitted to State Farm Mutual. *Trapana* involved a claim for PIP and MPC benefits submitted by a physician for his orthopedic evaluation of an insured referred to him by a chiropractor. *Trapana*, 23 Fla. L. Weekly Supp. 98a at *1. As part of his evaluation, the physician examined the insured and reviewed three x-rays of her spine obtained by the chiropractor. *Id.* He also "prepared an evaluation/management report, which included [his] opinion on the x-rays." *Id.* For these services, the physician issued a bill to the PIP insurer with a charge under CPT code 99204 for his orthopedic evaluation, and three additional charges under CPT code 76140 for his review of the three x-rays. *Id.* The insurer paid the CPT code charge 99204 for the evaluation but denied payment of the three charges for CPT code 76140 for the x-ray review. *Id.* The physician then

sued the insurer for payment of the charges billed under CPT code 76140. *Id.*

The trial court denied the insurer's motion for summary judgment on its defense that the physician's billing of the CPT codes 76140 together with CPT code 99204 "constituted unbundling and did not comply with Florida law" because "CPT code 99204 encompassed the review of X-rays, and such review should not have been billed separately under CPT 76140." *Id.* After the trial court entered judgment for the physician, the insurer appealed. *Id.*

On appeal, the circuit court analyzed the physician's medical bills under the requirements of § 627.736(5)(d) and explained this statute's application as follows:

> To determine whether Trapana inappropriately billed and unbundled the review of the X-rays, this Court examined the PIP statute, the CPT manual [*i.e.*, codebook] and the CPT Assistant. Section 627.736(5)(d), Florida Statutes provides that . . . billings for services must, to the extent applicable, follow the Physician's Current Procedural Terminology (CPT) and comply with the American Medical Association Current Terminology Editorial Panel. Section 627.736(5)(d) also provides for the use of the CPT manual in determining compliance with applicable CPT coding; therefore, the CPT Manual is incorporated by reference into the statute. The CPT Assistant publication is incorporated by reference into the CPT Manual and so, while it is not binding, it can be used as a guide and to clarify information found in the CPT Manual.

*Id.* at *2 (emphasis supplied; citations omitted). The Court then quoted the CPT codebook's descriptions of CPT codes 99204 and 76140 and an article from the *CPT Assistant* explaining the proper use of CPT code 76140. *Id.* at *2 - 3. Applying these publications to the facts before it, the court ruled as follows:

> [B]ased on the clarification of CPT Code 76140 [*in the CPT Assistant*] Trapana's evaluation and management of the Insured necessitated that Trapana personally review the X-rays, and so, the review of the X-rays was subsumed under CPT Code 99204. CPT Code 76140 would have been appropriate if Abeckjerr [the referring chiropractor] (1) only sent the X-rays to Trapana (without sending the Insured for an orthopedic evaluation), (2) asked Trapana to offer his opinion on the X-rays, and (3) Trapana wrote a report solely about his interpretation of the X-rays and sent such report to Abeckjerr. This is not what occurred here, as Abeckjerr sent Insured for an orthopedic evaluation, which necessitated the review of the X-Rays as part of Trapana's comprehensive evaluation of Insured.

Thus, Trapana's billing does not comply with the CPT Manual or CPT Assistant. *Id.* at *3. Based on these rulings, the circuit court reversed the summary judgment for the physician and directed the trial court to enter judgment for the insurer. *Id.*

Just like the physician in *Trapana*, Feijoo reviewed x-ray reports or films of the Insureds as part of the orthopedic evaluations for which the Clinic billed State Farm Mutual CPT codes 99204, 99214, or 99215. As explained in *Trapana*, Feijoo's repeated billing of CPT code 76140 for his review of x-ray reports or films as part of his evaluations does not, as a matter of law, comply with the AMA's CPT. Accordingly, every one of the Clinic's 234 medical bills that report charges for CPT code 76140 together with CPT Code 99205, 99214, or 99215 are not "properly completed" pursuant to the requirements of § 627.736(5)(d). Under this same statute, State Farm Mutual is deemed to have not even received those bills from the Clinic, which renders them non-compensable.

*Trapana* explains that courts are required to use the CPT codebook, and may use the *CPT Assistant*, to determine if a provider's medical bills are "properly completed" under § 627.736(5)(d). *See also Chiropractic One*, 92 So. 3d at 873 (noting that the provider's "inappropriate practices [in PIP billings] are primarily rooted in the appellant's intentional or recklessly improper use of Current Procedural Terminology codes, including billings for services not rendered, wrongly billed, or undocumented"); *Maduk a/a/o Lynn Kus v. Progressive Express Ins. Co.*, 11 Fla. L. Weekly Supp. 408b (Fla. 13th Cir. Ct. 2004)(affirming admission of a *CPT Assistant* article as evidence of the provider's improper billing of CPT code 76140). These publications' above-quoted explanations of CPT code 95851 establish that every one of the Clinic's 846 medical bills reporting CPT Code 95851, in addition to CPT codes 99204, 99214, or 99215, violated § 627.736(5)(d) as a matter of law.

As explained above, the CPT codebook designates CPT code 95851 as a "separate procedure" because it is "commonly carried out as an integral component" of an E/M service, such as the orthopedic evaluations Feijoo performed on the Insureds. When providers perform ROM testing as part of an E/M service, they cannot properly bill CPT code 95851 together with a CPT code for the E/M service such as 99204, 99214, or 99215. Feijoo himself testified that he performed his visual ROM testing on the Insureds as a standard component of his orthopedic evaluations, and his reports of those evaluations further confirm this fact. As a matter of law, therefore, every one of the Clinic's medical bills within the Subject Claims is not "properly completed" and, therefore, not compensable under § 627.736(5)(d).

II.  **PURSUANT TO § 627.736(5)(b)1.c., THE ENTIRETY OF THE CLINIC'S SUBJECT CLAIMS FOR SERVICES PROVIDED TO THE INSUREDS ARE INVALIDATED BY THE CLINIC'S REPEATED AND SYSTEMATIC SUBMISSION OF THE FALSE AND MISLEADING CPT CODE CHARGES.**

In addition to being deemed non-compensable under § 627.736(5)(d), all of the Clinic's medical bills within the Subject Claims are, as a matter of law, invalidated under § 627.736(5)(b)1.c. To reiterate, this statute mandates that "[a]n insurer or insured is not required to pay a claim or charges . . . [t]o any person who knowingly submits a false or misleading statement relating to the claim or charges." As used in this statute, the term "knowingly" includes the reckless submission of a false or misleading statement. Fla. Stat. § 627.732(10). In *Chiropractic One,* Florida's Fifth District Court of Appeal provided a detailed description of this statute's policy and proper application in claims for PIP benefits.

*Chiropractic One* involved a medical provider's violation of § 627.736(5)(b)1.c. through its "intentional or recklessly improper use of Current Procedural Terminology codes" in PIP claims submitted to the insurer. 92 So. 3d at 873. The provider argued that despite these violations, the insurer was required to pay the CPT code charges within its claims for PIP

benefits that were not false and misleading. *Id.* at 872. In opposition, the insurer argued that the provider's violation of § 627.736(5)(b)1.c. relieved it from the duty to pay any of the charges within the provider's PIP claims, even those that complied with the AMA's CPT. *Id.* The trial court granted summary judgment for the insurer on this issue, and the provider appealed. *Id.*

Early in its analysis, the district court explained that "[a]ny knowingly misleading or false charge, by definition, is unreasonable, not medically necessary, and in excess of permitted amounts" payable under the PIP statute. *Id.* at 874. The court then discussed the language of § 627.736(5)(b)1.c.:

> [T]he plain language of § 627.736(5)(b)1.c. supports the invalidation of the claims. The statute relieves both the insurer and the insured from paying the claims of "any person who knowingly submits a false or misleading statement relating to the claim or charges." . . . [I]t is logical to conclude that the Legislature established that dichotomy to be certain that not only the specific individual offensive "charges" were invalidated, but also that the entire "claim," i.e., the collective of all charges, was invalidated, as well.

*Id.* at 874. Next, the court set forth a detailed discussion of the statute's policy. *Id.* It began by explaining that the "Legislature adopted § 627.736(5)(b)1.c. to address what it perceived to be significant dishonesty in connection with the claiming of PIP benefits." *Id.* The court then extensively quoted the legislative bills enacting the 2001 and 2003 anti-fraud amendments to the PIP statute. *Id.* at 874 – 75. The court concluded this discussion as follows:

> The revision of the PIP statute had as a goal, among other things, the curtailment of the perceived fraud in the PIP billing of medical services. It is perfectly consistent with that goal for the Legislature to intend to invalidate a billed claim if there is any knowing submission of false or misleading statements relating to the claim or charges submitted by a provider. We conclude, therefore, that should be interpreted in that fashion.

*Id.* at 875. In *State Farm Mut. Auto. Ins. Co. v. Williams*, 563 F. App'x 665, 670 (11th Cir. 2014), the Eleventh Circuit quoted, adopted, and applied this holding from *Chiropractic One*.

As explained in *Williams* and *Chiropractic One*, § 627.736(5)(b)1.c. invalidates the

entirety of the Clinic's Subject Claims for PIP benefits based on its submission of hundreds of false and misleading statements within them. Every time the Clinic reported CPT code 76140, it billed State Farm Mutual for services Feijoo did not render because he did not provide x-ray consultations at the request of another physician. The undisputed evidence also establishes that Feijoo performed his visual ROM testing as an integral part of his orthopedic evaluations of the Insureds. Under the AMA's CPT and § 627.736(5)(d), the Clinic could not bill CPT code 95851 together with CPT code 99204, 99214, or 99215, for those evaluations. The Clinic did so anyways -- in every single bill it submitted to State Farm Mutual within the Subject Claims.

At a bare a minimum, the Clinic acted recklessly by systematically submitting the false and misleading charges for CPT codes 95851 and 76140 to State Farm Mutual continuously over a four year period. This fact, in turn, establishes that the Clinic acted "knowingly" for purposes of § 627.736(5)(b)1.c. based on the statutory definition of this term set forth § 627.732(10). Thus, the record evidence proves all of the elements of the Clinic's violation of § 627.736(5)(b)1.c. beyond any legitimate factual dispute. As was the case with the providers in *Williams* and *Chiropractic One*, this violation invalidates, and renders worthless, the entirety of the Clinic's medical bills and charges for services provided to the Insureds.

III.    FEIJOO AND THE CLINIC'S SUBMISSION OF THE OBJECTIVELY DECEPTIVE, CPT CODE CHARGES CONSTITUTES BOTH A *PER SE* AND TRADITIONAL FDUTPA VIOLATION AND ENTITLES TO STATE FARM MUTUAL TO DAMAGES AND DECLARATORY RELIEF AS REQUESTED IN COUNTS I AND II OF ITS AMENDED COMPLAINT.

FDUTPA broadly declares unlawful ". . . deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. The act also creates a private cause of action for persons who have suffered a loss as a result of a FDUTPA violation. Fla. Stat. § 501.211(2). The elements of a FDUTPA claim for damages are a "(1) a deceptive act or unfair trade practice; (2)

causation; and (3) actual damages." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326–27 (S.D. Fla. 2017). The first element may be established by proving the defendant committed either a *per se* or traditional violation FDUTPA. *Id.* at 1326.

The violation of any "law, statute, rule, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" may constitute a *per se* FDUPTA violation. Fla. Stat. § 501.203(3)(c). In the absence of language expressly identifying a statute as a predicate for a FDUTPA violation, the court may finding that it is one if the statute "proscribes unfair and deceptive trade practices and therefore operates as an implied FDUPTA predicate." *Parr v. Maesbury Homes, Inc.*, No. 609CV-1268-ORL-19GJK, 2009 WL 5171770, at *1 & *7 (M.D. Fla. Dec. 22, 2009). Without question, §§ 627.736(5)(b)1.c. and  627.736(5)(d) satisfy this standard.

As explained above, the 2003 legislation enacting these statutes declares that their purpose is "to protect the public's health, safety, and welfare, . . . prevent PIP insurance fraud and abuse and [] curb escalating medical, legal, and other related costs." *See supra* p. 2. *Chiropractic One* and *Williams* also explain that the Legislature passed § 627.736(5)(b)1.c. in an effort to accomplish these objectives. Thus, Feijoo and the Clinic's violation of §§ 627.736(5)(b)1.c. and 627.736(5)(d) by systematically submitting hundreds of false and misleading CPT code charges to State Farm Mutual also establishes their commission of a *per se* FDUTPA violation.

These same deceptive acts and practices constitute a traditional FDUTPA violation. As explained in *Performance*, a "traditional violation [includes]…deceptive acts or practices in the conduct of any trade or commerce.'" *Id.* (citing Fla. Stat. § 501.204(1)). *Performance* further described traditional FDUTPA violations as follows:

> Although the statute does not define "unfair and deceptive act or practice," the provisions of the act are to be "construed liberally." *Intercoastal Realty, Inc. v. Tracy*, 706 F.Supp.2d 1325, 1333 (S.D. Fla. 2010) (quoting Fla. Stat. § 501.202(2)). . . . A deceptive act occurs when a defendant makes "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach*, 169 So.3d 164, 169 (Fla. Dist. Ct. App. 2015). Importantly, "deception may be accomplished by innuendo" and through omissions "rather than outright false statements." *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So.2d 1256, 1264 (Fla. Dist. Ct. App. 2000).

*Id.* at 1326 – 27. Finally, *Performance* explained that "misrepresentations regarding invoices may support FDUTPA claims." *Id*. Feijoo and the Clinic's systematic reporting of literally hundreds of deceptive CPT code charges in invoices (*i.e.*, medical bills) submitted to State Farm Mutual clearly constitutes a traditional FDUTPA violation under these standards.

The second and third elements of State Farm Mutual's FDUTPA claim, causation and actual damages, are established by the indisputable fact that Feijoo and the Clinic induced State Farm to issue payments of PIP and MPC benefits for the medical bills containing the false, misleading, and deceptive CPT code charges. *See, e.g., Performance*, 278 F. Supp. 3d. at 1327; *Fitzpatrick v. Gen. Mills, Inc.*, 635 F. 3d 1279, 1282 - 83 (11th Cir. 2011); *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297 (S.D. Fla. 2011). Since the Clinic's Subject Claims have been invalidated and rendered worthless as a result of its violations of §§ 627.736(5)(b)1.c. and 627.736(5)(d), State Farm Mutual is entitled to recover actual damages against the Clinic and Feijoo equal to all of the PIP and MPC benefits paid on those claims. *See State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d 1343 (S.D. Fla. 2015)(awarding insurer the full amount of PIP benefits it paid to the provider as damages on its FDUTPA claim where all the provider's charges were non-compensable under § 627.736(5)(b)1.b.)

Importantly, the existence of the elements of a FDUTPA claim for damages are determined by the application of an objective standard, under which the plaintiff is not required to demonstrate subjective reliance on the defendant's deceptive trade practice. The absence of any such requirement renders the plaintiff's mental state, and even his or her knowledge or understanding of the defendant's deceptive practices, irrelevant to a FDUTPA claim. The Eleventh Circuit has explained these rules of law as follows:

> Because a plaintiff asserting a FDUTPA claim "need not show actual reliance on the representation or omission at issue," *Davis*, 776 So. 2d at 973, the mental state of each class member is irrelevant." In *Davis,* the First District Court of Appeal of Florida recognized that the absence of a reliance requirement means "the impediment to class litigation that exists for multiple intrinsic fraud claims does not exist" in FDUTPA cases. *Id.* Thus, General Motors is incorrect to suggest that the plaintiffs must prove that every class member saw the sticker and was subjectively deceived by it. As the district court correctly observed, these arguments simply seek a reliance inquiry by another name. Instead, under FDUTPA, the plaintiff must only establish three <u>objective</u> elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.

*Carriuolo v. Gen. Motors Co.*, 823 F. 3d 977, 985 - 86 (11th Cir. 2016) (emphasis in original). *Carriuolo* later reiterates that a FDUTPA plaintiff's "subjective sophistication or knowledge <u>is irrelevant</u> because the liability inquiry states objective elements." *Id.* at 900 (emphasis supplied).

The Eleventh Circuit reached these same conclusions in *Democratic Republic of the Congo v. Air Capital Group, LLC*, 614 F. App'x 360 (11th Cir. 2015). There, the defendants tried to defend a FDUTPA claim by arguing the plaintiff was "too sophisticated to fall for defendants' deceits." Flatly rejecting this argument, the court explained:

> This argument builds on a flawed understanding of the statute. As noted before, the FDUTPA bans "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). By claiming that plaintiff was too savvy to be swindled, defendants imply that the statute espouses a subjective standard of deceit—that is, they would hold a defendant liable only if the victim suffered harm in actual reliance on a deceptive act or practice. But this is not the law. A FDUTPA claim, unlike a claim for fraud, requires proof that defendant's

act would likely "mislead the [objective] consumer acting reasonably in the circumstances." No proof of subjective reliance is needed.

*Id.* at 469 – 70 (citations to cases omitted). In a later footnote, the court explicitly rejected the "subjective element" some courts have "injected . . . into FDUTPA claims for unfair practices" and reiterated that "deception is judged from an objective point of view" for purposes of FDUTPA. *Id.* at 475 n. 7 (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So. 2d 773, 777 (Fla. 2003)).

In *State Farm Mutual Automobile Insurance Company v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291 (S.D. Fla. 2019) ("*Performance II*"), this Court reached the same conclusions when adjudicating the parties' cross motions for summary judgment on the insurer's FDUTPA claim against medical providers based on their deceptive charges. The defendants argued that the insurer could not prevail on its FDUPTA claim because it had actual knowledge of their deceptive billing practices. *Id.* at 1309. Under the heading of "Does State Farm's Alleged Knowledge Preclude the FDUTPA Claim?," this Court emphatically rejected this argument based on *Carriuolo*:

> Defendants argue that State Farm failed to establish causation because State Farm knew of the Arrangement and adjusted its claims accordingly. As State Farm argues however, the FDUTPA requires only an objective inquiry because injury "is not determined by the plaintiffs' subjective reliance on the alleged inaccuracy." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983, 985–86 (11th Cir. 2016); *Vazquez v. Gen. Motors, LLC*, No. 17-cv-22209, 2018 WL 447644, at *7 (S.D. Fla. Jan. 16, 2018) (Because the FDUTPA requires only an objective inquiry, it is immaterial whether plaintiff relied on defendant's deceptive act or unfair practice). Indeed, a "party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Carriuolo*, 823 F.3d at 984. Thus, State Farm's knowledge has no bearing on the FDUTPA claim.

*Id.* at 1309 – 10 (emphasis supplied).

Pursuant to *Carriuolo*, *Democratic Republic*, and *Performance II*, the determination of

whether the defendant committed a traditional FDUTPA violation by engaging in deceptive acts causing the plaintiff to suffer damages is governed by a purely objective standard. This standard renders the plaintiff's subjective mental state, and even its actual knowledge of the defendant's deceptive practices, wholly irrelevant to a FDUTPA claim for damages. Any argument to the contrary by the Clinic and Feijoo directly contravenes *Carriuolo*, *Democratic Republic*, and *Performance II* and a host of other authorities.

IV.    STATE FARM IS ENTITLED TO A JUDGMENT DECLARING THAT IT DOES NOT OWE THE CLINIC'S PIP OR MPC BENEFITS ON ITS UNPAID CLAIMS.

Count II of State Farm Mutual's Amended the Complaint requests a judgment declaring that State Farm Mutual does not owe the Clinic PIP and MPC benefits on the portion of the Subject Claims that State Farm Mutual has not paid. Such declaratory relief is authorized under 28 USC § 2201. *See*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714 (11th Cir. 2011), *rev'd in part sub nom. State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F. 3d 1311 (11th Cir. 2014). FDUTPA also authorizes State Farm Mutual to "obtain a declaratory judgment that" the Clinic and Feijoo's deceptive billing practices violate FDUTPA. Fla. Stat. § 501.211(1). Based on their above-described violations of § 627.736(5)(d), § 627.735(5)(b)1.c., and FDUTPA, State Farm Mutual is entitled to a judgment declaring that it does not owe the Clinic or Feijoo any PIP or MPC benefits on their unpaid claims.

**Conclusion**

Based on all of the foregoing, State Farm Mutual respectfully requests the Court to enter final summary judgment against the Clinic and Feijoo on Counts I and II of the Amended Complaint.

**Request for Hearing Pursuant to Local Rule 7.1(b)**

State Farm Mutual requests a hearing on this motion as oral argument will give the

parties a more complete opportunity to explain the issues and arguments encompassed within this dispositive motion and answer any questions the Court may have regarding them.

Dated: June 28, 2019.

Respectfully submitted,

/s/ *Kenneth P. Hazouri*
Kenneth P. Hazouri, B.C.S. (Fla. Bar No. 019800)
Trial Counsel
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
Andrew S. Ballentine (Fla. Bar No. 118075)
aballentine@dsklawgroup.com
skuharske@dsklawgroup.com
deBeaubien, Simmons, Knight,
 Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone:  (407) 422-2454
Attorneys for Plaintiff