UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:18-cv-23329

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,

v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants.
_____/

**PLAINTIFF'S MOTION IN LIMINE AND**
**INCORPORATED MEMORANDUM OF LAW**

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm Mutual"), by counsel and pursuant to *Federal Rules of Civil Procedure* and the Local Rules, hereby moves in limine in regard to the following evidentiary issues or other matters relating to the trial of this case against Defendants, MANUEL V. FEIJOO, M.D., P.A. ("Feijoo PA" or the "Clinic"), and MANUEL V. FEIJOO ("Feijoo")(collectively, the "Defendants"), states as follows:

**Factual and Procedural Background**

This lawsuit arises out of the Defendants' submission of auto insurance claims demanding payment of personal injury protection ("PIP") and, where applicable, medical payments ("MPC") benefits for basic medical evaluations Feijoo allegedly provided to persons covered under automotive-insurance policies issued by State Farm Mutual (collectively, the "Insureds"). Feijoo is a non-board certified medical doctor practicing in Miami, Florida. He performs simple patient examinations for the primary purpose of providing "emergency medical condition" determinations

necessary for physical therapy and chiropractic clinics to bill $10,000 in PIP benefits.

Feijoo performed only simple, non-complex medical examinations of State Farm Mutual's Insureds, the vast majority of whom had uncomplicated soft-tissue injuries. Despite this fact, Feijoo billed State Farm Mutual for allegedly highly complex examinations of the Insureds. In addition to upcoding the charges for his initial and follow-up examinations, Feijoo also billed separate charges for range of motion testing and a second opinion or "over read" of x-rays.

State Farm Mutual initiated this action by filing a two-count Complaint against Defendants. The Court denied in part, and granted in part, the Defendants' Motion to Dismiss. Importantly, the Court ruled that a) State Farm Mutual has standing to assert its FDUTPA claim and does not have to be a "consumer" in order to do so; b) State Farm Mutual's FDUTPA claim is not barred by the exemption set forth in § 501.212(4)(a); c) State Farm Mutual properly pled damages recoverable under FDUTPA; d) State Farm Mutual's claim for declaratory relief was properly pled; and e) State Farm Mutual properly named Dr. Feijoo as a defendant in its declaratory claim.

On June 16, 2019, State Farm Mutual filed its Amended Complaint. The Amended Complaint asserts a count pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and alleges, among other things, that Defendants violated §§ 627.736(5)(b)1.c. and (5)(d) by repeatedly and systematically submitting claims for PIP benefits using false and misleading CPT codes. The Amended Complaint also includes a count for declaratory judgment on all pending and unclaimed claims that also include false and misleading CPT codes. The case is not yet at issue.

## Argument

A district court has broad discretion to determine the admissibility of evidence under the Federal Rules of Evidence. See *United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003).

A motion in limine, whether made before or during trial, seeks to exclude anticipated prejudicial evidence before the evidence is actually offered. See *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *State Farm Mut. Auto. Ins. Co. v. John Romano, D.C.*, No. 12-20438-Civ, 2013 WL 12061865, *1 (S.D. Fla. Oct. 30, 2013). Even "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-Civ, 2011 WL 2295269, at *1 (S.D. Fla. June 8, 2011) (citations and internal quotations omitted).

    1.    <u>The Court should preclude Defendants from making any argument that Plaintiff has to prove reliance or that Plaintiff's claims are barred because State Farm Mutual knew or should have known that Defendants were committing a fraud.</u>

It is believed that Defendants will attempt to make arguments at trial that State Farm Mutual subjectively knew that Defendants were engaged in a scheme to submit false and misleading bills so it cannot recover in this action, or that State Farm Mutual has to prove reliance as if this were a fraud case, or that State Farm Mutual cannot prove its claim because Defendants violations of FDUTPA were so obvious that State Farm Mutual should have recognized it in every claim and refused to pay at the time the medical documentation and bills were submitted.

There are multiple decisions from the Eleventh Circuit and this Court holding that: a) the determination of whether a FDUTPA defendant's acts are deceptive is based on an objective standard; b) a FDUTPA plaintiff is not required to prove that he or she actually relied on the deceptive trade practice as an element of the FDUTPA claim; and c) the plaintiff's mental state, including his or her understanding of the defendant's deceptive acts or practices, is irrelevant to a

FDUTPA claim.  *Carriuolo v. General Motors Company*, 823 F. 3d 977, 985 - 86 (11th Cir. 2016); *Democratic Republic of the Congo v. Air Capital Group, LLC*, 614 Fed Appx. 360, 469 - 70 (11th Cir. 2015); *State Farm Mutual Automobile Insurance Company v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307 (S.D. Fla. 2017); *Guerrero v. Target Corp.*, 889 F. Supp. 2d. 1348, 1354-55 (S.D. Fla. 2012); *Galstaldi v. Sunvest Communities USA*, 637 F. Supp. 2d. 1045 (S.D. Fla. 2009). For example, in *Carriuolo* the Eleventh Circuit explained these rules of law as follows:

> "Because a plaintiff asserting a FDUTPA claim "need not show actual reliance on the representation or omission at issue," *Davis*, 776 So. 2d at 973, the mental state of each class member is irrelevant." In *Davis,* the First District Court of Appeal of Florida recognized that the absence of a reliance requirement means "the impediment to class litigation that exists for multiple intrinsic fraud claims does not exist" in FDUTPA cases. *Id.* Thus, General Motors is incorrect to suggest that the plaintiffs must prove that every class member saw the sticker and was subjectively deceived by it. As the district court correctly observed, these arguments simply seek a reliance inquiry by another name. Instead, under FDUTPA, the plaintiff must only establish three <u>objective</u> elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." 823 F. 3d at 985-86 (emphasis in original).

The *Carriuolo* court later reiterated that a FDUTPA plaintiff's "subjective sophistication or knowledge <u>is irrelevant</u> because the liability inquiry states objective elements." *Id.* at 900 (emphasis supplied).  As such, the Defendants should not be permitted to make any argument, or elicit any testimony, relating to State Farm Mutual's subjective beliefs, reliance or state of mind in adjusting, handling and paying the claims submitted by Defendant.

Further, these arguments, or any fact or expert testimony related to these arguments, must also be excluded as a matter of law because State Farm Mutual does do not need to plead or prove fraud, or the elements of fraud, in order to establish a traditional FDUTPA violation. E.g., *Democratic Republic of the Congo v. Air Capital Grp., LLC*, 614 Fed. Appx. 460, 470 (11th Cir. 2015); *Guerrero v. Target Corp.*, 889 F. Supp. 2d. 1348, 1354-55 (S.D. Fla. 2012); *Galstaldi v.*

4

*Sunvest Communities USA, LLC*, 637 F. Supp. 2d. 1045 (S.D. Fla. 2009). The Amended Complaint alleges the Defendants' committed per se FDUTPA violations by repeatedly violating §627.736(5)(b)1.c. This statute proscribes deceptive or misleading statements by medical providers when submitting PIP claims to insurers and is, therefore, a predicate statute for a per se FDUTPA violation under section 501.203(3)(c), Florida Statutes. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d. 1307, 1326 (S.D. Fla. 2017).

Specifically, § 627.736(5)(b)1.c. states that "[a]n insurer or insured is not required to pay a claim or charges . . . [t]o any person who knowingly submits a false or misleading statement relating to the claim or charges." Fla. Stat. § 627.736(5)(b)1.c. (2014) (emphasis supplied). A medical provider's violation of this statute invalidates, and renders noncompensable, its entire PIP claim -- the collective of all charges for services provided to the patient/insured following an auto accident. *State Farm Mut. Auto. Ins. Co. v. Williams*, 563 Fed. Appx. 665 (11th. Cir. 2014) (quoting *Chiropractic One*, 92 So. 3d at 874); see also *Performance*, 278 F. Supp. 3d. at 1330 & 1333 n. 26 (quoting § 627.736(5)(b)1.c. and explaining its application).

As used in §627.736(5)(b)1.c., the word "knowingly" is statutorily defined as follows: "'Knowingly' means that a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the information, and proof of specific intent to defraud is not required." Fla. Stat. § 627.732(10) (2014) (emphasis supplied). With this definition, the Legislature has: a) explicitly relieved insurers of any requirement to prove a medical provider committed fraud when claiming a violation of § 627.736(5)(b)1.c.; and b) authorized insurers to establish § 627.736(5)(b)1.c.'s "knowingly" element by proving the provider acted recklessly, as opposed to intentionally, when submitting false or misleading statements in its PIP claim(s). Since State Farm Mutual has not

brought and fraud count, and because State Farm Mutual's per se FDUTPA claim based on Defendants' violations of § 627.736(5)(b)1.c. does not require proof of, or sound in, fraud, any argument or testimony about "reliance" should be prohibited.

    2.     <u>The Court should preclude the Defendants from asserting or arguing that State Farm Mutual selected only certain claims for this litigation.</u>

Defendants should not be permitted to introduce evidence or otherwise insinuate that State Farm Mutual only filed suit on a certain group of claims but not all claims from 2014 to 2018. Any such reference would serve no relevant basis and cause confusion to the jury that State Farm Mutual only sued on a portion of bills submitted to it.  Additionally, Defendants should not be permitted to submit evidence or elicit testimony regarding any claims, whether they involved State Farm Mutual or not, that are outside the claims in this lawsuit. Such a reference at trial would serve only to imply that State Farm Mutual somehow "cherry-picked" claims and that claims outside the purview of this lawsuit somehow legitimizes Defendants' false and misleading billing practices in the PIP claims at issue.  *See Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 745 F. Supp. 2d 1380, 1384 (S.D. Fla. 2010) (granting motion in limine to exclude evidence of other claims or defenses not a part of the Plaintiff's action).

    3.     <u>The Court should preclude Defendants from referring to State Farm's net worth, the financial resources or market influence of State Farm Mutual or the respective financial positions of the parties.</u>

To avoid the umbrage of unfair prejudice and the confusion as may result from the interjection of irrelevant matter into the record, State Farm Mutual asks the Court to preclude Defendants and their counsel from making reference at trial to the financial resources or size of State Farm Mutual as a corporate entity. Statements relating to the size, financial resources, and market power of State Farm Mutual, or any comparison between the parties, are completely irrelevant to the matters at issue in this case.  The foregoing statements have no place before a jury

and should be excluded. *Illano v. H & R Block Eastern Enter.*, No. 09-22531-CIV, 2011 WL 1897431 *1 (S.D. Fla. May 18, 2011) (precluding any reference to defendant's wealth or power and any relative disparity between the parties); *see also Alimenta (U.S.A.), Inc. v. Cargill Inc.*, 861 F.2d 650, 652 (11th Cir. 1988) (affirming order granting motion in limine to exclude irrelevant and prejudicial references to defendant's size and resources). In *Alimenta*, the Eleventh Circuit explained that "net sales or net worth" of the large corporate party had no bearing upon the predominant issues at trial in that case. *Id.*

Even if such statements or characterizations had some degree of relevance to the case, the Court should still exclude them under Federal Rule of Evidence 403 because their probative value is substantially outweighed by the prejudicial effect of such characterizations, *i.e.*, portraying State Farm Mutual as having "deep pockets." *See St. Cyr v. Flying J Inc.*, 2007 WL 2696791, at *2 (M.D. Fla. 2007) (granting defendant's motion in limine and finding "that it would be inappropriate, and unfairly prejudicial to Defendant to allow the Plaintiffs to refer to Defendant's net worth, revenues, profits, and financial condition"); *Rollins v. State Farm Fire & Cas. Co.*, No. 4:10-CV-40-HLM, 2011 WL 13234788 *4 (N.D. Ga. Jul. 5, 2011) (granting defendant's motion in limine and noting "any relevance of evidence about Defendant's size and revenue is substantially outweighed by the risk of prejudice."); *see also Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22 (1991) (cautioning against allowing the jury to consider the wealth of a corporate defendant because "the fact finder must be guided by more than the defendant's net worth" in determining liability and damages). The concern here is that a jury might refuse to find liability or to award damages based on the false impression that it would have little or no effect on State Farm Mutual because of its size and financial wherewithal. Also, if presented with information about or references to State Farm Mutual's or financial resources, the jury may be tempted to deny

recovery to State Farm Mutual on the basis of that information alone. *See St. Cyr*, 2007 WL 2696791, at *2. The financial resources, size, and power of State Farm Mutual are simply not relevant to any of the issues that the fact finder is charged with determining in this case, and would otherwise be highly prejudicial.

    4.    <u>The Court should preclude the Defendants from arguing that State Farm Mutual is a big powerful company or similar arguments.</u>

Defendants should not be permitted to argue or present evidence that State Farm Mutual is a big company, dominates the insurance market, is the biggest insurer in Florida (or the United States) or the like. *See Kapral v. GEICO Indem. Co.,* 8:13-CV-2967-T-36EAJ, 2016 WL 7238909, at *2 (M.D. Fla. June 17, 2016) (granting GEICO's motion in limine to prevent references to status as "billion-dollar company" or a "profit center"); *Advanced Cartridge Techs., LLC. v. Lexmark Intern., Inc.*, 8:10-CV-486-T-23TGW, 2012 WL 12096443, at *2 (M.D. Fla. Mar. 26, 2012) (granting request for relief from disparaging and suggestive characterization directed to party's corporate size). Any such argument may mislead the jury into thinking that it cannot or should not enter a verdict in its favor. Further, by making this argument the Defendants may try to create sympathy for the "little guy" even though the parties are equal before the law. As such, any such argument should be precluded.

    5.    <u>The Court should preclude the Defendants from making any argument that Feijoo is not personally liable or did not receive a direct benefit from the operations of his clinic.</u>

State Farm Mutual sought financial discovery showing that money flowed to Feijoo directly from the Clinic to see how much money Feijoo, individually, received from the subject PIP claims. The Defendants objected to this discovery and the Court did not permit State Farm Mutual to get this information. [Dkt. 39, p. 3] The Defendants successfully shielded Feijoo from having to provide financial discovery that would show his financial benefit from the payments

made by State Farm Mutual. The Defendants are, therefore, judicially estopped from taking a position at trial that Feijoo should not have a judgment entered against him because he did not derive a personal benefit, or get any money as a result of, the payment of the PIP claims. The Defendants are jointly and severally liable for the full amount of any judgment awarded. To permit any other argument at trial would improperly allow the Defendants to use their discovery shield as a sword to gain a tactical advantage at trial.

6. <u>The Court should preclude the Defendants from arguing that State Farm Mutual does not have valid claims because no criminal charges have been brought against Feijoo.</u>

This is a civil case and State Farm Mutual does not have the ability to criminally prosecute Feijoo. The fact that someone was, or was not, charged with a crime is inadmissible in a civil case. *Brown v. NCL (Bahamas) Ltd.,* 15-21732-CIV, 2016 WL 8730147, at *3 (S.D. Fla. Oct. 13, 2016) (granting Plaintiff's Motion in Limine to exclude evidence that Defendant was not arrested or prosecuted for an incident). As such, Defendants should not be permitted to argue or infer that because there are no criminal or administrative proceedings against Feijoo he is not civilly liable in this action.

7. <u>The Court should preclude the Defendants from introducing any evidence pertaining to or referencing any case evaluation tools or computer programs used by State Farm Mutual in handling claims.</u>

To avoid unfair prejudice and confusion that may result from the interjection of irrelevant matter into the record, State Farm Mutual asks the Court to preclude Defendants and their counsel from making reference at trial to any computer programs, computerized tools, or claims adjusting software or processes that State Farm using in adjusting individual claims. Based on the document requests from the Defendants, State Farm Mutual has produced approximately 500,000 pages of documents from the electronic claim system which include the documents within the individual

PIP claim files and the redacted log notes showing the claims handling and decision-making process in each PIP claim on Feijoo's bills.  State Farm Mutual anticipates that Defendants intend to advance arguments and evidence suggesting that State Farm Mutual was not damaged by Defendants' scheme because of the use of some fraud management tools.  Further, Defendants may argue that tools used for purposes of adjusting bodily injury claims show State Farm Mutual should not have paid Feijoo's PIP claims.  In reality, each and every claim was handled on its own merits and the claims handling was documented by a person in the records produced.  The Defendants, therefore, should not be permitted to try to argue that computerized tools not used in the actual adjustment of the subject claims are somehow relevant to any issue to be tried.

       8.    <u>The Court should preclude Defendants' experts to attack Dr. Jacob and such testimony should not be permitted.</u>

The Defendants' experts, if permitted to testify at all, should not be allowed to criticize or critique the opinions of Plaintiff's expert, Dr. Jacob.  An expert can criticize the methodology of an opposing expert, but launching attacks on the opposing expert's credibility is inappropriate. *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, No. 6:06-CV-1757ORLGJK, 2009 WL 6357793, at *24 (M.D. Fla. Jan. 9, 2009) (refusing to permit a coding expert to testify or attack the credibility of an opposing expert); *Gray v. State of Fla.,* No. 3:06-CV-990J20MCR, 2007 WL 2225815, at *3 (M.D. Fla. July 31, 2007) (holding that expert testimony regarding the credibility of a witness or party inadmissible); *United States v. Falcon*, 245 F. Supp. 2d 1239, 1245 (S.D. Fla. 2003) (*citing United States v. Beasley,* 72 F.3d 1518, 1528 (11th Cir.1996)).  The Defendants, therefore, should be prohibit from putting on any expert testimony that attacks the opinions of Dr. Jacob.

9. <u>State Farm Mutual hereby preserves and reserves all of its arguments in opposition to the admissibility of testimony from Michael Miscoe and J'Amy Kluender, who Defendants disclosed as expert witnesses on the last day of expert discovery.</u>

Defendants disclosed Michael Miscoe and J'Amy Kluender as expert witnesses late in the afternoon of June 20, 2019, the last day for expert discovery, and Defendants have refused State Farm's request to depose them. In response, State Farm Mutual has filed a motion to compel their depositions and extend the deadline to file *Daubert* motions directed to their testimony. [Doc. 69] State Farm hereby reserves and preserves all of its arguments regarding the admissibility of Mr. Miscoe's and Ms. Kluender's testimony pending resolution of their motion to compel, completion of any depositions authorized by the Court, and disposition of any *Daubert* motions.

WHEREFORE, Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, respectfully requests the Court to enter an Order in limine on the issues set forth above and provide any such other relief the Court deems necessary and proper.

**Certificate of Good Faith Conference Pursuant to Local Rule 7.1(a)(3)**

The undersigned hereby certifies that he attempted to confer by telephone with Defendants' counsel at 8:59 a.m., on June 28, 2019 and by email transmission to Jerry Pivnik, Andrew Baratta and Kenneth Schurr on June 28, 2019, in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

Dated this 28th day of June, 2019.

Respectfully submitted,

*/s/ Kenneth P. Hazouri*
KENNETH P. HAZOURI
Trial Counsel
Fla. Bar No. 019800
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075

aballentine@dsklawgroup.com
lmorales@dsklawgroup.com
deBeaubien, Simmons, Knight,
 Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by service through the CM/ECF portal to: JEROME PIVNIK, The Pivnik Law Firm, 7700 N. Kendal Drive, Suite 703, Miami, Florida 33156 (pivniklaw@aol.com and cdiezpivniklaw@aol.com); and ANDREW BARATTA, Baratta, Russell & Baratta, 3500 Reading Way, Huntingdon Valley, P.A., 19006 (andrew@barratarussell.com), and all others receiving notice, on this 28th day of June, 2019.

/s/ Bart R. Valdes
KENNETH P. HAZOURI
Trial Counsel
Fla. Bar No. 019800
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075
aballentine@dsklawgroup.com
lmorales@dsklawgroup.com
deBeaubien, Simmons, Knight,
 Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454

BART R. VALDES
Florida Bar Number: 323380
bvaldes@dsklawgroup.com
DSK LAW GROUP

aballentine@dsklawgroup.com
lmorales@dsklawgroup.com
deBeaubien, Simmons, Knight,
 Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by service through the CM/ECF portal to: JEROME PIVNIK, The Pivnik Law Firm, 7700 N. Kendal Drive, Suite 703, Miami, Florida 33156 (pivniklaw@aol.com and cdiezpivniklaw@aol.com); and ANDREW BARATTA, Baratta, Russell & Baratta, 3500 Reading Way, Huntingdon Valley, P.A., 19006 (andrew@barratarussell.com), and all others receiving notice, on this 28th day of June, 2019.

/s/ Bart R. Valdes
KENNETH P. HAZOURI
Trial Counsel
Fla. Bar No. 019800
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075
aballentine@dsklawgroup.com
lmorales@dsklawgroup.com
deBeaubien, Simmons, Knight,
 Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454

BART R. VALDES
Florida Bar Number: 323380
bvaldes@dsklawgroup.com
DSK LAW GROUP

de Beaubien, Simmons, Knight,
  Mantzaris & Neal, LLP
609 West Horatio Street
Tampa, Florida 33606
Telephone: (813) 251-5825
Facsimile: (813) 254-1063
Attorneys for Plaintiff