UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:18-cv-23329

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,

v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants.
_____/

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO EXTEND DEADLINE TO FILE *DAUBERT* MOTIONS, AND MOTION TO ALLOW OR COMPEL DEPOSITIONS OF DEFENDANTS' EXPERTS, OR IN THE ALTERNATIVE, TO STRIKE DEFENDANTS' EXPERTS**

| | |
|---|---|
| KENNETH P. HAZOURI | BART R. VALDES |
| Trial Counsel | Florida Bar Number: 323380 |
| Fla. Bar No. 019800 | bvaldes@dsklawgroup.com |
| khazouri@dsklawgroup.com | DSK LAW GROUP |
| lquezada@dsklawgroup.com | de Beaubien, Simmons, Knight, |
| ANDREW S. BALLENTINE | Mantzaris & Neal, LLP |
| Fla. Bar No. 118075 | 609 West Horatio Street |
| aballentine@dsklawgroup.com | Tamp a, Florida 33606 |
| skuharske@dsklawgroup.com | Telephone: (813) 251-5825 |
| de Beaubien, Simmons, Knight, | Facsimile: (813) 254-1063 |
| Mantzaris & Neal, LLP | Attorneys for Plaintiff |
| 332 North Magnolia Avenue | |
| Orlando, Florida 32801 | |
| Telephone: (407) 422-2454 | |

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("Plaintiff"), hereby files this Reply to Defendants, MANUEL V. FEIJOO, M.D., P.A. (the "Clinic"), and MANUEL V. FEIJOO's ("Feijoo") (collectively "Defendants"), Response to Plaintiff's Motion to Extend Deadline to File *Daubert* Motions, and Motion to Allow or Compel Depositions of Defendants' Experts, or in the Alternative, to Strike Defendants' Experts [Doc. 76] and states as follows:

I. DEFENDANTS' RESPONSE ESTABLISHES THAT THE REASON FOR THEIR DISCLOSURE OF EXPERT WITNESSES ON THE JUNE 20, 2019, DEADLINE FOR EXPERT DISCOVERY WAS THEIR CONSCIOUS DECISION TO WAIT UNTIL AFTER THE JUNE 17, 2019, MEDIATION TO RETAIN THEM.

Defendants' decision to wait until a mere two days before the June 20, 2019, deadline to even retain their expert witnesses had nothing to do with discovery issues, or any action or inaction of Plaintiff. This fact is established by Defendants' own Response, which states that they "made the necessarily practical economic decision to hold off on incurring the expense of formally retaining experts until after the Mediation," which occurred on June 17, 2019. [Doc. 76, p. 5] Accordingly, Defendants' position is that they are entitled to: a) wait until two days before the expert-discovery deadline to even retain experts in an effort to avoid having to incur expert costs; b) disclose their experts literally hours before expiration of the deadline to complete all expert discovery, including depositions; c) refuse to produce their experts for depositions after the deadline; and d) thereby unilaterally deny Plaintiff the right and ability to depose their expert witnesses in preparation for trial.

Defendants' position directly violates Federal Rule of Civil Procedure 26(b)(4)(A), which clearly states that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." Moreover, Defendants' position is so facially baseless from a common sense and fairness perspective that it requires no further elaboration.

2

II.   IN AN ATTEMPT TO OBFUSCATE THEIR OWN DILATORY CONDUCT IN RETAINING AND DISCLOSING EXPERT WITNESSES, AND UNJUSTIFIED REFUSAL TO PRODUCE THEM FOR DEPOSITION, DEFENDANTS' RESPONSE MAKES REPEATED MISREPRESENTATIONS AND GROSS MISCHARACTERIZATIONS OF PLAINTIFF'S CONDUCT IN DISCOVERY.

In an attempt to distract from their own unilateral decisions described in the preceding section, Defendants' Response repeatedly misrepresents State Farm Mutual's actions in discovery. To the extent possible with page limitations, those misrepresentations are explained below.

Section I.A. of Defendants' Response first accuses Plaintiff of intentionally delaying the production of documents in response to Defendants' First Request for Production and intentionally breaking apart claim files produced by Defendant in order to make them more difficult to review. These accusations are false, and frankly, outrageous.

After filing successive motions to stay discovery [Docs. 28, 32] that were summarily denied by the Court, with the second denial including an admonishment [Docs. 30, 33], Defendants served their first Request for Production of Documents ("Request to Produce"), a copy of which is attached hereto as Exhibit "A."  Defendants' Request to Produce asked for a tremendous volume of documents. For example, even though State Farm Mutual's claims involve only the treatment and billing practices of Feijoo's Clinic, Defendants asked for the entire contents of the claim files for the 525 claims of the Insureds listed in Exhibits "B" and "C" of the original Complaint, the vast majority of which have nothing to do with Feijoo or his Clinic.

Plaintiff was required to perform a privilege review on all 525 of those claim files, many of which contain thousands of pages of documents and hundreds of pages of notes and entries often reflecting attorney/client communications or work product, to ensure that privileged or work product documents and line items of protected information were removed and redacted, respectively. As soon as these extremely time consuming tasks were completed for batches of

claims files, they were produced to Defendants on a rolling basis. In total, State Farm Mutual has produced over 473,755 pages of documents to Defendants and privilege logged approximately 13,472 line items of privileged or work product materials.

A rolling production is standard in a document-intensive case like this one because it is the most expeditious procedure for producing documents to the requesting party. Without a rolling production, Plaintiff would have to wait until it completed its privilege review of all 525 claim files -- hundreds of thousands of pages of documents -- before producing any of them to Defendants (which would undoubtedly result in accusations of delay and document dumping from Defendants). State Farm Mutual did not inject one minute of intentional delay into this process. As soon as the privilege reviews and redactions of claim-file batches were completed, they were produced to Defendants. Although State Farm Mutual had no obligation to do so, it also agreed to produce the claim files in searchable format at Defendants' request.[1]

The privilege review of the claim files and requirement of a privilege log listing the withheld documents also explains, for the most part, why Plaintiff sometimes supplemented its original production of a claim file with additional documents contained therein. Upon production of a claim file, Plaintiff then had fourteen days to serve a privilege log identifying the privileged or work product documents contained therein that were being withheld. *See* Local Rule 26.1(e)(2)(D). When preparing the privilege log, Plaintiff reviewed the documents that had been coded as privileged during the initial review and, in some cases, identified documents that were not, in fact, privileged or work product. Accordingly, Plaintiff removed the privilege designations from those documents and produced them to Defendants in a supplemental production.

---

[1] The parties' Joint Scheduling and Rule 26 Conference Report states they will produce documents in Adobe PDF format without any obligation to make the PDF's searchable. [Doc. 13, p. 2, ¶ C]

This judicious assertion of privilege and work product protection for documents contained in the claim files sometimes caused Plaintiff to produce a small portion of claim file materials as a supplemental production. In any other case, the additional claim file materials provided to Defendants were the type of supplemental productions that inevitably arise in productions involving hundreds of thousands of pages of documents. The undersigned explained all of these facts to Defendants' counsel in an e-mail, a copy of which is attached hereto as Exhibit "B." *See* Ex. B, p. 1, ¶ (2). Nonetheless, Defendants have chosen to falsely represent to this Court that Plaintiff intentionally broke up its claim files in an effort obfuscate their own discovery misconduct relating to their expert witnesses.

Exhibit "B" hereto also addresses an issue raised in footnote one of Defendants' Response. [Doc. 76, p. 2, n. 1] In this e-mail string and other communications, Defendants' counsel repeatedly demanded that Plaintiff produce transcripts of depositions of Feijoo and the Clinic's office manager, Anielka Castillo ("Castillo"), that Plaintiff had proactively disclosed in a supplemental Rule 26 disclosure. To the extent Plaintiff used the deposition transcripts solely for impeachment purposes, which was its intention, it had no duty to disclose them in the first place. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii). In an abundance of caution and in order to be as forthright as possible in discovery, however, Plaintiff decided to proactively disclose the transcripts to Defendants.

Despite being put on notice of the transcripts, Defendants never served a request for production asking for them, and their time to do so passed. Refusing to recognize their own inadvertence, Defendants' counsel repeatedly demanded that Plaintiff produce the transcripts and, as usual, falsely accused Plaintiff and its attorneys of misconduct for not doing so. In response, the undersigned correctly advised Defendants' counsel that in the absence of a request for production asking for the transcripts, Plaintiff had complied with all of its discovery obligations relating to

them by identifying them in a Rule 26 disclosure. *See Ferguson v. Destefano*, No. 10-80385-CIV, 2011 WL 146716 at *4 (S.D. Fla. 2011). The undersigned also noted that one of Defendants' attorneys in this case, Kenneth Schurr, represented Feijoo and Castillo at all of the depositions, and he should, therefore, be able to obtain the transcripts from the court reporters.

When Mr. Schurr reported back that he was somehow unable to do so, Plaintiff decided to voluntarily give the transcripts to Defendants. However, the undersigned recognized -- quite presciently as it turns out -- that Defendants' counsel would likely try to spin this show of good faith into an admission that Plaintiff had been wrong in not producing the transcripts earlier. Accordingly, the undersigned sent an e-mail to Defendants' counsel advising that Plaintiff was prepared to voluntarily deliver the transcripts to them on the following conditions:

> As a mandatory condition of State Farm doing so, however, the Defendants must agree that State Farm's voluntary delivery of the deposition transcripts is not in any way an admission that State Farm was in the wrong for not previously producing the transcripts to Defendants, and Defendants shall not make any such argument to the Court. For example (and without limitation), <u>Defendants shall not assert to the Court (orally or in written filings) that State Farm Mutual wrongfully withheld the transcripts until delivering them to Defendants on such and so date, or make any like arguments. Put another way, Defendants shall not attempt to use State Farm Mutual's decision to voluntarily deliver the transcripts to the Defendants as a courtesy against State Farm Mutual in the case.</u> Please confirm Defendants' agreements to these terms with a return e-mail and, upon receipt of it, we will electronically deliver the deposition transcripts to you and your co-counsel.

(Ex. C., p. 2, ¶ 3; e.s.) Defendant's counsel confirmed their agreement to these terms with a return e-mail expressly stating "we will not suggest that State Farm improperly withheld the transcripts." (Ex. C., p. 1) A copy of this e-mail exchange is attached hereto as Exhibit "C."

Footnote one of Defendant's Response both misrepresents the events relating to the deposition transcripts and directly violates the above-quoted agreement. The footnote's entire purpose is to falsely accuse Plaintiff of misconduct by not producing the transcripts earlier. In doing so, Defendants falsely state that it was their threat to file a motion to compel that caused

6

Plaintiff to produce the transcripts, and that Plaintiff engaged in "unnecessary and obviously calculated delay in producing" them. These misrepresentations and direct violation of the parties' agreement is simply one part of an ongoing course of conduct of Defendants' counsel. That course of conduct now includes not disclosing expert witnesses until hours before the expiration of the expert-discovery deadline, refusing to produce the late-disclosed experts for deposition, and attempting to support that willful and unjustifiable conduct with a court filing full of misrepresentations regarding matters that have nothing to do with Defendants' own, unilateral decision to wait until after the June 17, 2019, mediation to even retain their experts.

Exhibit "B" hereto also documents Defendants' counsel's request that the undersigned certify Plaintiff's document production was complete, which is discussed in the Response. [Doc. 76, p. 3] In the second e-mail in the string (p. 6), Defendants' counsel asked the undersigned to personally review all of the documents Plaintiff had produced to Defendants, certify the production was complete, and state the basis for the certification. Since there is no requirement to provide such a certification in the Federal Rules of Civil Procedure or otherwise, and the request would require the undersigned to personally review the 470,930 pages of documents produced to Defendants at that point, the undersigned politely declined the request. In doing so, the undersigned also stated "[i]f you perceive other issues with State Farm Mutual's document production going forward, please contact us, and we will work with you them as we have done every time you have raised an issue with document production thus far." *See* Ex. B, p. 5, ¶ 5. In his responsive e-mail, Defendants' counsel accused Plaintiff of failing to produce a "screener tool" that was later found not to exist and demanded production of 14 claim files that are not at issue in this case and were not requested in Defendants' Request to Produce. *See* Ex. B, pp. 1 - 2.

At page three of their Response, Defendants commence a discussion regarding the

scheduling of depositions of Plaintiff's representatives, which is also inaccurate. Defendants' counsel first advised the undersigned that they were unavailable for the entire month of May 2019 to take those depositions. After Defendants' counsel secured an extension of the June 10, 2019, discovery deadline to take the depositions based on their unavailability, the undersigned and Defendants' counsel, Jerry Pivnik, coordinated their requested depositions of Plaintiff's employees Bob Connelly, Jennifer Fuller, Isis Alsina, and a corporate representative for June 14th, 18th, 19th and 20th, respectively. These dates were confirmed in an April 30, 2019, e-mail exchange, which ends with Mr. Pivnik stating that he would be serving notices for these depositions "shortly." A copy of this e-mail exchange is attached hereto as Exhibit "D." No deposition notices were, however, forthcoming from Defendants.

Instead, Mr. Pivinik's co-counsel, Andrew Baratta, sent a May 2, 2019, e-mail stating that his "schedule has freed up in May" and Defendants wanted to change the deponents and deposition schedule the undersigned had coordinated with Mr. Pivnik at his request. In addition to deposing Jennifer Fuller, Mr. Baratta asked for the deposition of two new persons, Lisa Varela, and Fred Williams (retired from Plaintiff), within the next 10 – 17 days. In this regard, Defendants' Response states that "it was not until Defendants offered to conduct the depositions of [Ms. Fuller and Ms. Varela] on the same day that State Farm would agree to produce them <u>on a date within the month of May.</u>" [Doc. 76, pp. 3 – 4; e.s.] This statement is false.

Following his May 2, 2019, e-mail, Mr. Baratta sent additional e-mails demanding that he be provided with "<u>two consecutive days in May</u> for the depositions of Lisa Varela and Jennifer Fuller." (e.s.) In response, the undersigned advised that based on the very short notice and multiple calendars that needed to be coordinated, it was not possible to provide <u>consecutive days</u> in May for the depositions. Mr. Baratta responded by accusing the undersigned of "being adversarial and

8

transparently attempting to manufacture delay and unnecessary expense." After making this false accusation, Mr. Baratta later sent the undersigned an unsolicited e-mail advising that he did not need two consecutive dates for the depositions of Ms. Fuller and Ms. Varela after all, because he could he could complete both depositions in one day. The depositions were then scheduled for, and completed on, May 21, 2019, <u>19 days after they were first requested</u>. Mr. Baratta was never told that Ms. Fuller and Ms. Varella could not be deposed in May. He was told that it was not possible to provide <u>consecutive days</u> in May for the depositions, which he did not need anyways. The e-mail exchange between Mr. Baratta and the undersigned documenting these communications is attached hereto as Exhibit "E."

As for the deposition of Timothy Banahan, Defendants' Response states that he "was offered by State Farm to appear as <u>both a fact witness and corporate designee on June 7, 2019.</u>" [Doc. 76, p. 4; e.s.] This statement is false. Plaintiff offered to produce Mr. Banahan for deposition <u>as a fact witness only</u> on June 7, 2019. The parties had discussed the possibility of Mr. Banahan also serving as Plaintiff's corporate designee once Defendants finally identified the final topics on which they wanted testimony. On May 28, 2019, Mr. Baratta sent the undersigned an e-mail designating those topics and stating that "**if** Mr. Banahan can be prepared to testify on June 7th as the designee" on those topics, his combined deposition as a fact witness and corporate designee could be taken on that date. (e.s.) The undersigned responded by advising that Mr. Banahan could not be prepared to testify on the designated topics by June 7th and offering June 14th, 18th, 19th, and 20th for his combined fact witness/corporate designee deposition. Without protest, Mr. Baratta selected June 18th because he was already traveling to Florida for the June 17th mediation. The e-mail exchange documenting these communications is attached hereto as Exhibit "F."

Defendants' Response notes that Plaintiff produced its Standard Claims Processes

("SCP's") on June 12, 2019. [Doc. 76, p. 5] Defendants, however, neglect to explain that they did not request production of the SCP's <u>until May 7, 2019,</u> when they served their Second Request for Production, a copy of which is attached hereto as Exhibit "G." *See* Request No. 8. This omission is obviously designed to give the false impression that Defendants requested the SCP's in their first Request to Produce served in January 2019, and Plaintiff delayed for months in producing them. In truth, Plaintiff produced the SCP's to Defendants 36 days after they were first requested.

III.   PLAINTIFF'S MOTION DOES NOT ASK FOR RECONSIDERATION OF JUDGE MOORE'S ORDER SETTING THE JUNE 20, 2019, DEADLINE TO COMPLETE ALL EXPERT DISCOVERY, INCLUDING DEPOSITIONS.

Section I.B. of Defendants' Response [Doc. 76, pp. 7-9] incorrectly asserts that Plaintiff's motion is really a motion for reconsideration of Judge Moore's Order setting the June 20, 2019, deadline for the parties to complete all expert discovery, including expert depositions. [Doc. 53] As explained in Plaintiff's Motion, the only reasonable interpretation of Judge Moore's Order is that it requires the parties to serve their mandatory Rule 26 expert disclosures a reasonable number of days in advance of the June 20, 2019, deadline to allow time for the scheduling and taking of their experts' depositions before its expiration. Moreover, the Order must be read in this fashion to comply with Rule 26(b)(4)(A), which grants Plaintiff the right to depose Defendants' experts. *See supra* p. 2. Thus, Plaintiff's motion seeks enforcement of, and relief consistent with, Judge Moore's Order, not its reconsideration. Defendants' demonstrably willful misconduct described above constitutes good cause for Plaintiff's requested relief.

This section of the Response continues with Defendants' misrepresentations and mischaracterizations regarding the parties' communications and conduct relating to experts, and Plaintiff is unable to address all of them due to page limits. Plaintiff encourages the Court to read the e-mails attached to Defendants' Response at Doc. 76-3, Pages 8-11 and 30, as they outline

some of the parties' interactions on the issue of expert discovery. Plaintiff will address one particular misrepresentation here.

Defendants' Response states that Plaintiff knew "full well that Defendants would not be producing expert reports until after Mediation on June 17th." [Doc. 76, p. 8] This statement is false. Despite the undersigned's repeated requests, Defendants' counsel steadfastly <u>refused to state whether they would be retaining experts at all</u>, and Plaintiff had no knowledge that Defendants had done, or would do, so until it received their expert disclosures at 3:59 p.m. on June 20, 2019. Mr. Baratta's May 25, 2019, e-mail attached to Defendants' response at Doc. 76-3, page 26, is typical. In it, he advised the undersigned that "we have not yet identified or retained experts." This remained Defendants' "party line" until they sprung their experts on Plaintiff on June 20th.

IV. DEFENDANTS' PROPORTIONALITY ARGUMENT CONTROVENES RULE 26(b)(4)(A) AND IS OTHERWISE BASELESS.

Finally, Defendants argue that the depositions of the experts they selected, with whom they negotiated a fee structure, and who they intend to call at trial is not proportional to the needs of this case due to the expected cost of the depositions. [Doc. 76, pp. 9 -11] This argument violates Rule 26(b)(4)(A), which explicitly grants Plaintiff the right to depose Defendants' trial experts and thereby deems those depositions proportional. *See supra* p. 2. It is also obvious that a party cannot voluntarily agree to pay an expert's stated fees and then deny the opposing party the right to depose the expert because his or her fees will supposedly make the deposition expensive.

In conclusion, Plaintiff respectfully submits that based on Defendants' unreasonable, willful, and contumacious position confirmed by their Response, the appropriate remedy is to strike Mr. Miscoe and Ms. Kluender as expert witnesses. In the alternative, Plaintiff respectfully requests the Court to order that they be deposed within 30 days, and that the deadline for Plaintiff to file *Daubert* motions directed to their opinions be extended to 20 days after their depositions.

11

Dated this 9th day of July, 2019.

                                    Respectfully submitted,

/s/ Kenneth P. Hazouri
KENNETH P. HAZOURI
Trial Counsel
Fla. Bar No. 019800
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075
aballentine@dsklawgroup.com
skuharske@dsklawgroup.com
DSK LAW GROUP
deBeaubien, Simmons, Knight,
 Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454

BART R. VALDES
Florida Bar Number: 323380
bvaldes@dsklawgroup.com
DSK LAW GROUP
deBeaubien, Simmons, Knight,
  Mantzaris & Neal, LLP
609 West Horatio Street
Tampa, Florida 33606
Telephone: (813) 251-5825
Facsimile: (813) 254-1063
Attorneys for Plaintiff