## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No.: 18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation,

      Plaintiff,

v.

MANUEL V. FEIJOO,
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

      Defendants.

_____

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, Manuel V. Feijoo, M.D. and Manuel V. Feijoo, M.D., P.A. ("Dr. Feijoo"),

hereby submit this Response and Memorandum of Law to the Motion for Summary Judgment

submitted by State Farm:

### I.    STATE FARM'S MOTION OFFERS NO UNDISPUTED FACTS AND SIMPLY IGNORES OTHERS WHICH PRECLUDE SUMMARY JUDGMENT

Not a single code on a single bill submitted to State Farm by Dr. Feijoo was inaccurate

(much less knowingly false). The opinion offered by State Farm's expert to the contrary and

held up as "undisputed fact" is not only disputed, it is completely *refuted* by the Defendants'

expert *and* by State Farm's own course of claims conduct since October of 2012. These facts

alone preclude summary judgment.

But there are far more facts, intentionally ignored by State Farm's Motion, which further

preclude summary judgment. These include the facts which overwhelmingly demonstrate that a

consumer acting reasonably under the same circumstances as State Farm would not have been

1

deceived by a single bill of Dr. Feijoo, as well as those which completely undercut its *per se* FDUTPA claim.  State Farm also ignores the ample evidence demonstrating that it cannot establish actual damages as required by FDUTPA because every payment made to Dr. Feijoo was entirely voluntary.

The reason to ignore all of these facts is obvious: Once examined, they demonstrate that there are, at the very least, myriad facts which are not only deeply disputed, they expose State Farm's entire case as completely illogical except as manufactured "leverage" against numerous PIP suits filed by Dr. Feijoo.

II.     **DEFENDANTS' EXPERT OPINIONS AND STATE FARM'S CLAIMS CONDUCT CREATE GENUINE ISSUES OF MATERIAL FACT WHICH PRECLUDE SUMMARY JUDGMENT**

Defendants have produced the Report and Declaration of a coding expert, Michael Miscoe, who not only disputes each opinion offered by State Farm's proffered coding expert, he explains how every one of Dr. Feijoo's bills adhered to the CPT requirements actually recognized by Florida Statute §627.736(5)(d).  (See Def. Responsive SOF., Miscoe Dec., Ex. C, & Miscoe Report, Ex. D).

While obviously not an issue at the summary judgment stage, the credibility of Mr. Miscoe's opinions is certainly supported by none other than State Farm's own claims conduct from October of 2012 through August 16, 2018, during which State Farm demonstrably agreed with Mr. Miscoe's analysis and voluntarily paid every bill it now claims as "actual damages" under FDUTPA.

A.  **THE CONTROVERTED OPINIONS OF STATE FARM'S EXPERT DO NOT ESTABLISH FACTS – MUCH LESS UNDISPUTED FACTS**

State Farm's Motion is premised entirely upon the supposition that its expert's opinions alone somehow resolve the central factual dispute in this case.  This is clearly not so.

Michael Miscoe is a nationally recognized expert in the field of forensic CPT, HCPCS and ICD coding and compliance.  He is a Certified Professional Coder ("CPC") with AAPC (formerly the American Academy of Professional Coders), holds specialty coding certification as a Certified Ambulatory Surgical Center Coder ("CASCC") and as a Certified Chiropractic Professional Coder ("CCPC").  He holds specialty compliance certification as a Certified Professional Compliance Officer ("CPCO").  He holds specialty auditing certification as a Certified Professional Medical Auditor ("CPMA") and as a Certified Evaluation/Management service Auditor ("CEMA") with the North American Medical Auditing Society (NAMAS).  He has been designated a Fellow of AAPC.

Mr. Miscoe has specialized knowledge regarding and is a recognized expert in forensic analysis of coding, billing and reimbursement issues, which involves identification of binding versus persuasive code utilization standards, as well as the appropriate methodologies for applying binding standards to obtain the correct coding result for a given procedure or service.

As related by Mr. Miscoe, Florida Statute §627.736(5)(d) provides that billing by medical providers to auto insurers for treatment of auto accident patients "shall, to the extent applicable, follow the Physicians' Current Procedural Terminology (CPT) or Healthcare Correct Procedural Coding System (HCPCS), or ICD-9 in effect for the year in which services are rendered, and comply with the Centers for Medicare and Medicaid Services (CMS) 1500 form instructions and the American Medical Association Current Procedural Terminology (CPT) Editorial Panel and Healthcare Correct Procedural Coding System (HCPCS).  (See Miscoe Declaration, Ex. C, ¶16).

The statutory provision also states that "[i]n determining compliance with applicable CPT and HCPCS coding, guidance shall be provided by the Physicians' Current Procedural Terminology (CPT) or the Healthcare Correct Procedural Coding System (HCPCS) in effect for

3

the year in which services were rendered, the Office of the Inspector General (OIG), Physicians

Compliance Guidelines, and other authoritative treatises designated by rule by the Agency for

Health Care Administration." (See Miscoe Declaration, Ex. C, ¶17).

Based on these statutory provisions, there are three (3) standards that govern code selection:

a) **"Physicians' Current Procedural Terminology (CPT) or the Healthcare Correct Procedural Coding System (HCPCS) in effect for the year in which services were rendered;"**

b) **"The Office of the Inspector General (OIG), Physicians Compliance Guidelines;" and**

c) **"Other authoritative treatises designated by rule by the Agency for Health Care Administration."**

(See Miscoe Declaration, Ex. C, ¶18).

Of these listed resources, however, neither the OIG Physicians Compliance Guidelines, nor

the Agency for Health Care Administration, provide guidance on appropriate standards for CPT

code selection. (See Miscoe Declaration, Ex. C, ¶19). This leaves CPT as the only authority

which governs code selection under §627.736(5)(d).

The substantive content of "Physicians' Current Procedural Terminology (CPT)," while

copyrighted by the American Medical Association ("AMA"), is drafted by the CPT Editorial

Panel. In addition to the content drafted by the CPT Editorial Panel, the AMA, as one of many

publishers of this content, inserts other material into the various versions of the CPT Coding

Manual (e.g. references to other AMA publications and products). (See Miscoe Declaration, Ex.

C, ¶20).

Florida Statute §627.736(5)(d) expressly incorporates the CPT Editorial Panel instructions

that are published by the AMA or licensed for publication to others in Current Procedural

Terminology, 4th edition. (See Miscoe Declaration, Ex. C, ¶23). Notably, however, the

legislature chose not to incorporate any other publication or reference relative to code selection

published by the AMA, AAPC, or any other provider trade association, as an additional standard

4

for determining whether a CPT code is appropriate for a given service.  (See Miscoe Declaration, Ex. C, ¶24).  This deliberate omission, of course, includes the CPT Assistant Newsletter, which is published by the CPT Education and Information Services ("CPTEIS") division of the AMA. (See Miscoe Declaration, Ex. C, ¶25).

The reason the Florida legislature deliberately refrained from identifying the CPT Assistant Newsletter is perhaps found in the disclaimer offered by the CPTEIS itself, which specifically admonishes that the CPT Assistant is not any kind of substitute for the CPT Codebook and should not be used as a replacement for the CPT codebook:

> *"CPT® Assistant is designed to provide accurate, up-to-date coding information.  We continue to make every **reasonable effort to ensure the accuracy of the material presented.  However, this newsletter does not replace the CPT codebook; it only serves as a guide**."* [Emphasis added].

This disclaimer implicitly recognizes that articles published in the CPT Assistant are not drafted by the CPT Editorial Panel nor does the CPT Editorial Panel review or approve the content of those articles.  Therefore, these articles are not instructions of the "Current Procedural Terminology (CPT) Editorial Panel" that are actually referenced by the Florida legislature at §627.736(5)(d).

The CPTEIS disclaimer also implicitly recognizes that the CPT Assistant Newsletter is a subscription publication available only at significant cost and that specific references to it are found only in the "Professional Edition" of the AMA CPT coding manual.  These references are inserted by the AMA, not the CPT Editorial Panel, and are therefore not included in the Standard Version of the CPT coding manual.  (See the Declaration of M. Miscoe, ¶¶27-33; 37-38).

State Farm and its expert acknowledge that the CPT Assistant Newsletter is, at best, a secondary source which, if able to be accessed, may be consulted to resolve some confusion about the applicability of a particular code to a particular service.  But even as they recognize it as a secondary, non-binding, non-authoritative resource, State Farm leap over the clear guidance of the CPT itself in order to land on remote articles in the CPT Assistant Newsletter as the basis for characterizing Dr. Feijoo's bills as incorrect (and worse, deliberately false).

In making this leap, State Farm is quite obviously asserting that some confusion exists about the CPT Editorial Panel guidance published in the CPT coding manual relied upon by Dr. Feijoo (and the legislature) regarding the proper application of 76140 and 95851, in order to justify the jump to the anonymous CPT Assistant Newsletter articles written as long ago as 1997.  Even while in the air, though, State Farm's expert implicitly concedes that Dr. Feijoo's bills do in fact comply with the express wording of the CPT coding manual.  There would be no reason otherwise to look past the CPT to support his opinion.

But even this manufactured basis to criticize Dr. Feijooo's bills fails because, as required by Florida Statute §627.736(5)(d) *and* CPTEIS, conflicts between the express wording of the CPT coding manual or other unspecified publications must be resolved in favor of the CPT Editorial Panel Guidance contained in CPT.  (See Miscoe Declaration, Ex. C, ¶41).  According to Mr. Miscoe, the CPT guidance is clear and Dr. Feijoo's bills complied in all respects with it.[1]

Relative to CPT 76140, the binding CPT Editorial Panel guidance published in the CPT coding manual does not define the term "consultation" in the context of radiological services; does not, in any of the guidance pertaining to Evaluation and Management ("E/M") services indicate that the review of radiographs taken elsewhere is a component of an E/M service; and expressly indicates that such work is separately reportable from an E/M service.  (See Miscoe Declaration, Ex. C, ¶42; Miscoe Expert Report, pg. 8, Ex. D).  Dr. Feijoo's use of this code was thus perfectly consistent with the CPT guidance.  (Miscoe Expert Report, pg. 2, 16, 21, Ex. D).

Relative to 95851, the binding CPT Editorial Panel guidance published in the CPT coding manual merely indicates that the work involved includes performance of the "range of motion measurements and report."  Dr. Feijoo performed this work each time the code was submitted and thus utilized the code consistent with the CPT guidance.  (Miscoe Declaration, Ex. C, ¶46; Tr. Of Dr. Feijoo Dep, pp. 98-106).

---

[1] More to the point, there was never any reason for Dr. Feijoo to question whether the codes he was using were correct.  No one from State Farm (or any other insurance company) ever suggested that they were not.  Dr. Feijoo simply had no cause to search out the obscure CPT Assistant Newsletter articles relied upon by State Farm's expert.

Regarding the E/M codes of 99204, 99214, and 99215, State Farm's expert jumps back to the CPT and simply offers an opinion that Dr. Feijoo's examinations did not contain the right *amount* of history or comprehensiveness or complexity required for each level of code. But as pointed out by Mr. Miscoe, while the CPT provides an overall structure for the various levels of history, examination and decision-making which is required by each code, the complete absence of definitions for key terms precludes any *objective* determination as to whether a particular code level was appropriate. (See Miscoe Expert Report, pg. 6-14, Ex. D).

Therefore, the *opinion* offered by State Farm's expert that Dr. Feijoo used the wrong codes for his examinations is no more an undisputed "fact" than is Dr. Feijoo's opinion that he used the right code every time and that his rationale for this opinion, which he has been openly explaining to State Farm without contradiction since at least 2011, remains correct.

As explained in his Affidavit attached to Defendants' Statement of Facts submitted in support of Defendants' Motion for Summary Judgment (ECF Doc #66), which is incorporated herein by reference, Dr. Feijoo has always been of the belief that trauma patients, except in rare circumstances, require a comprehensive examination with complex decision-making, and he invariably spends at least 45 minutes (if not significantly more) with each patient. For this reason, Dr. Feijoo has, with limited exception, always coded his initial examinations of auto accident trauma patients with the 99204 code. For similar reasons he has utilized the higher-level codes for his higher-level follow-up exams, and for discharge exams, generally utilized the highest-level follow-up code because final evaluations are more exacting and require review of the entire chart.   (See ECF Doc #66, Def. SOF ¶11, Ex. C– Feijoo Affidavit).

Dr. Feijoo has been testifying under oath to State Farm about his understanding of how and why E/M and other CPT codes are applied to his services since at least January of 2011. He has also been submitting records which unquestionably describe the services he provides with complete accuracy. Yet at no time before filing its lawsuit on August 16, 2018 did State Farm ever once suggest to Dr. Feijoo that his understanding was incorrect or deny payments on the basis that his manner of coding was improper. (See ECF Doc #66 ¶12, Ex. C– Feijoo Affidavit).

Despite its clear knowledge of every aspect of how Dr. Feijoo's office coded his services and exactly what services he actually provided in each instance, State Farm now claims to have been "deceived" by how Dr. Feijoo coded his services.

An examination of State Farm's conduct regarding Dr. Feijoo since 2011 demonstrates just how untenable this claim is, but at the very least, evidences a genuine dispute of fact which precludes summary judgment.

**B.  DR. FEIJOO HAS BEEN EXPLAINING TO STATE FARM SINCE 2011 EXACTLY HOW AND WHY HE UTILIZES CPT CODES**

On August 26, 2011, State Farm's Multi-Claims Investigations Unit, a subsection of its larger Special Investigations Unit, opened what it calls a "Project" concerning Dr. Feijoo.  (See ECF Doc #66, ¶17).  This was an investigation reviewing numerous claims involving Dr. Feijoo for the specific purpose of determining whether the coding on his bills was correct, including Dr. Feijoo's use of CPT codes for examinations, range of motion testing, and x-ray film reviews. (See ECF Doc #66, ¶18).

With the help of attorneys from several law firms, including its counsel in this case, Mr. Hazouri, State Farm conducted its 2011 Feijoo Project by having numerous charts of Dr. Feijoo's reviewed by an expert and obtaining a report of the review from the expert.  State Farm also hired Mr. Hazouri to perform a legal analysis and determine whether it might have a cause of action against Dr. Feijoo based on how he codes his services.  Sometime prior to October 15, 2012, Mr. Hazouri provided both a legal opinion and a draft lawsuit for State Farm regarding Dr. Feijoo's use of CPT codes.  (See ECF Doc #66, ¶31).

On January 19, 2011, State Farm deposed Dr. Feijoo, inquiring specifically into the manner and circumstances under which Dr. Feijoo utilized codes 95981, 76140, and 99204.  Dr. Feijoo testified freely as to the exact services he provides and how he records the performance of those

services when billing CPT code 95851, and that he had been doing it the same way since at least

2006.  (See ECF Doc #66, ¶20-22, Ex. E, Feijoo-D, pgs. 27-32 & 41-42.).

Dr. Feijoo also testified as to exactly what services he provides when utilizing code 76140.

(See ECF Doc #66, ¶10; Ex. E, Feijoo-D, pgs. 33-34 & 43-44, 55-58).

Dr. Feijoo testified that he believed it was appropriate and it was his general practice to bill

CPT code 95851 (ROM) separately from CPT code 99204 (Initial exam) even though he

performed the range of motion determination as part of his initial examination.  (See ECF Doc

#66, ¶22; Ex. E, Feijoo-D, pgs. 39-40 & 42).

On June 8, 2011, State Farm deposed Anielka Castillo, Dr. Feijoo's billing manager, who

was interrogated on the definitions of CPT codes 99204, 76140, and 95851.  (See ECF Doc #66,

¶23; Ex. G, pg. 10).  Ms. Castillo testified that it was Dr. Feijoo's practice to bill these codes

separately even when the services are all performed as part of the initial exam, with the

explanation that they charge the same overall price which would be charged if just one code was

utilized.  (See ECF Doc #66, ¶24; Ex. G, Castillo-D, pgs. 11-12).

On July 27, 2011, State Farm deposed Dr. Feijoo again on behalf of State Farm.  (See ECF

Doc #66, ¶25).  Dr. Feijoo testified again as to the exact services he provides and how he records

them when submitting code 95851 and code 76140.  (See ECF Doc #66, ¶26-27; Ex. H, Feijoo-

D, pg. 17-20).  Dr. Feijoo in fact testified freely and honestly about his office's billing practices

with respect to all of the CPT codes at issue in this lawsuit.  (See ECF Doc #66, ¶28; Ex. H,

Feijoo-D, pg. 51).

On November 2, 2011, State Farm deposed Ms. Castillo in the same case in which it had

deposed Dr. Feijoo on July 27, 2011.  (See ECF Doc #66, ¶29)  Ms. Castillo testified again as to

the office's practice of separating the charges for 99204, 76140 and 95851, a practice they began

because United Automobile Insurance Company specifically advised them to do it that way and because the overall charges were the same either way.  (See ECF Doc #66, ¶30; Ex. I, Castillo-D, pgs. 20-24).

State Farm would go on to depose Ms. Castillo again on October 17, 2012, November 26, 2013, April 25, 2016, June 24, 2016, August 24, 2016, May 3, 2017, and August 25, 2017. In each deposition Ms. Castillo testified consistently with her and Dr. Feijoo's earlier depositions describing the manner in which the practice utilized CPT codes 99204, 76140 and 95851.  Each of these transcripts was identified by State Farm in its Rule 26 Disclosures as a document which supports State Farm's claims.  (See ECF Doc #66, ¶33; Ex. J-State Farm's Second Amended Initial Disclosures).

State Farm closed its 2011 Feijoo Project without any action on October 15, 2012.  But for some reason State Farm cannot (or will not) articulate), after and it had continued to pay all of Dr. Feijoo's bills without any argument that his coding practices were inappropriate, State Farm opened a *second* Feijoo Project on December 3, 2015 for the specific purpose of "investigating" the manner in which he utilized the CPT codes 99204, 99214, 99215, 76140 and 95851.  (See ECF Doc #66, ¶34).

Once again (but this time over the course of nearly 3 years), State Farm's MCIU conducted hundreds more file reviews, diverted claims involving Dr. Feijoo to a specially assigned MCIU specialist skeptical of Dr. Feijoo's understanding of the proper use of CPT codes, deposed Dr. Feijoo/Ms. Castillo in more underlying claims, and hired Mr. Hazouri in 2016 to draft another lawsuit.  (See ECF Doc #66, ¶35-53).

It is indisputable that in its (and its lawyers) extensive course of dealing with Dr. Feijoo since 2011, State Farm was never once under any misimpression about the services Dr. Feijoo actually

performed in connection with the codes he was billing.  (See ECF Doc #66, Ex. B-Amended

Complaint, ¶3, 66, 69, 72, 77, 80).  State Farm paid Dr. Feijoo's bills with full knowledge of the

services he was rendering and how he was coding them in every instance.  That it did so in spite

of the massive effort to find some flaw in his bills throughout that time is direct evidence that

State Farm's management, its claims specialists, its many lawyers, and its multiple experts, all

agreed that Dr. Feijoo's bills could not be denied because the codes he was using were consistent

with the CPT. (See, e.g., ECF Doc #66, Def. SOF ¶45; Ex. P, pg. 10).

## III.   LEGAL ARGUMENT

### A.   THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER A SINGLE ONE OF DR. FEIJOO'S BILLS WAS EVEN INCORRECT, MUCH LESS "KNOWINGLY" OR INTENTIONALLY FALSE

The *only* basis for State Farm's Motion are the opinions offered by its expert, which State

Farm offers as "undisputed facts."  Opinions are not facts, of course, and State Farm's expert's

opinions are definitely not undisputed.  Defendants' Expert, Michael Miscoe, thoroughly

explains how Dr. Feijoo's coding was consistent with the CPT, which is the *only* authority

recognized by §627.736.

Regardless of either party's enthusiasm for the credibility of their coding expert, the

disagreement between them regarding the propriety of Dr. Feijoo's bills creates an issue of fact

which cannot be resolved by summary judgment.

"It would be unwarranted, in assessing a summary judgment motion, for the Court to simply

deem one expert's opinions more credible than another's. That is what juries are for…" Latele

Television, C.A. v. Telemundo Commc'ns Grp., LLC, 2015 WL 427817, at *12 (S.D. Fla. Feb.

2, 2015).  "Which expert testimony is to be credited over the other is a matter for the trier of fact

to resolve, and not for the Court to decide on summary judgment; the Court may not determine

during summary judgment whether Plaintiffs' or Defendants' experts are more credible or

persuasive." <u>Schenone v. Zimmer Holdings, Inc.</u>, No. 3:12-CV-1046-J-39MCR, 2014 WL 12576790, at *9 (M.D. Fla. Aug. 8, 2014).

Aside from ignoring the reality that its expert's credibility is for the jury to determine, State Farm's Motion also ignores that its expert's opinion, *even if accepted as true*, does not establish State Farm's right to recover under FDUTPA. This is not a PIP case brought by a doctor in which State Farm is seeking to defend its decision to deny payment of a particular bill. It is, rather, a FDUTPA claim brought by State Farm in which State Farm must prove far more than that Dr. Feijoo's bills were coded incorrectly in order to recover.

This is why State Farm's reliance on the state circuit court case of <u>State Farm v. R.J. Trapana, M.D. (a/a/o Noemi Marquez)</u>, 23 Fla. L. Weekly Supp. 98(a) (Fla. 17th Cir. Ct. 2015), is puzzling. Not only is it inapposite to the facts of this case, it is actually additional evidence of the complete unreasonableness of State Farm's conduct as it relates to Dr. Feijoo.

In the <u>Trapana</u> case, in the year <u>2006,</u> State Farm denied the doctor's bills for CPT code 76140 based on an obviously strongly held belief that this code could not be billed separately from the doctor's 99204 exam when the examination had included a review of x-rays. <u>Id</u>. at *3. The doctor sued State Farm to recover payment for the unpaid 76140 charges. In defense of the case, State Farm hired an expert who provided an opinion that the CPT Assistant Newsletter article from mid-90's indicated that the doctor's 76140 charge need not be separately compensated as the service he had performed was included in his 99204 examination. The court ultimately agreed and ordered that State Farm need not pay the bill.[2]

---

[2] The court disregarded the expert reports of both State Farm's expert and the doctor's expert on the grounds that each attempted to address the ultimate question of law at issue in the case, but agreed that the CPT Assistant Newsletter was the appropriate authority by which to judge the applicability of the code. <u>Id</u>. at *4. Obviously this is not the case here, as Mr. Miscoe disputes that there was ever any call for Dr. Feijoo to consult the CPT Assistant in the first place.

The critical distinction between the <u>Trapana</u> case and State Farm's lawsuit against Dr. Feijoo, of course, is that State Farm is a *plaintiff* seeking to recover damages under FDUTPA, not a defendant looking to avoid paying a bill.  Even if its expert's opinions are credited as being true (an inference it is obviously not entitled to), State Farm would be no closer to proving its FDUTPA claims, under which the plaintiff must prove "deceptive" acts or practices, the causation of actual damages, and that it acted as a consumer reasonably would have under the same circumstances.

The <u>Trapana</u> case itself directly undercuts State Farm's ability to prove any of these elements.  As revealed in the Florida Law Weekly description of the case cited in its motion, State Farm has clearly been aware since at least 2006 of the CPT Assistant Newsletter article regarding code 76140.  As of 2006, State Farm obviously considered it a reasonable thing to deny a bill for 76140 if separated from a 99204 examination which included x-ray reviews and, according to its pleading and its expert, every time Dr. Feijoo submitted a bill which included 76140, the documentation included with it indicated that the x-ray review he was billing had been included in his separately coded examination.

If the <u>Trapana</u> case stands for any proposition which can actually be relied upon by this Court, it is that State Farm was never once "deceived" by a single bill of Dr. Feijoo for CPT code 76140, and its decision to pay those bills was entirely voluntary, eliminating any ability to show actual damages.  It of course also calls into question whether State Farm acted as a reasonable consumer would have in handling any of Dr. Feijoo's bills from August of 2014 to August of 2018.

**B. STATE FARM MUST PROVE THAT A CONSUMER ACTING REASONABLY UNDER THE SAME CIRCUMSTANCES WOULD HAVE BEEN DECEIVED BY THE CODES SUBMITTED BY DR. FEIJOO**

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).  The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. City First Mortg. Corp. v. Barton, 988 So.2d 82, 86 (Fla.Dist.Ct.App.2008).

In order to prevail on its FDUTPA claim in this case, State Farm must prove that a consumer in the same circumstances would likely have been deceived by the CPT codes appended to Dr. Feijoo's bills and records.  "In the Eleventh Circuit, a party "must [also] prove that the alleged [deceptive or unfair] practice was likely to deceive a consumer acting reasonably in the same circumstances." Cluck-U Chicken, Inc. v. Cluck-U Corp., , 2017 WL 10275957, at *9 (M.D. Fla. June 6, 2017), citing Cold Stone Creamery, Inc. v. Lenora Foods I, LLC, 332 F. App'x 565, 567 (11th Cir. 2009).  This "element of a FDUTPA claim is only satisfied by evaluating a reasonable consumer in the same circumstances as the plaintiff." Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC, 2016 WL 8542540, at *3 (S.D. Fla. Dec. 1, 2016).

While it is not necessary for a plaintiff to show actual reliance in order to recover, "[t]he modification of 'acting reasonably' by 'in the same circumstances' indicates a hybrid standard that may be objectively established as to mindset but subjectively established as to context." Id., citing In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010).

In Deere Constr., LLC, the Court denied class certification to plaintiffs asserting a FDUTPA claim because "what may be the 'same circumstances' against which to determine a FDUTPA violation for some class members may be materially different from the 'same circumstances' used for Plaintiff and others." Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC,

*supra*. at *3 (S.D. Fla. Dec. 1, 2016), *citing* <u>In re Motions to Certify</u>, *supra*. at 1282 ("[T]he subjective element—that the circumstances must be similar—necessitates inquiry into the context of the alleged offense; that is, one can only assess reasonableness when the inquiry requires consideration of the factual circumstances....").

In <u>Cold Stone Creamery, Inc. v. Lenora Foods I, LLC</u>, 332 F. App'x 565, 567–68 (11th Cir. 2009), the 11th Circuit held that in determining whether a consumer acting reasonably would have been deceived, alleged misrepresentations "must be viewed in light of the circumstances as a whole." The Court found that the FDUTPA claim failed as a matter of law because all of the additional factually accurate information provided by Cold Stone, plus the independent investigation conducted by FDUTPA plaintiff, would not have deceived a consumer acting reasonably in the same circumstances.

In this case, the circumstances as a whole demonstrate that, far from being deceived by a single one of them, State Farm actively and aggressively contested the accuracy of the codes submitted by Dr. Feijoo in every claim. (<u>See</u>, e.g., Doc #66, Def. SOF ¶46-51). The circumstances as a whole demonstrate that, by State Farm's admission *and* the report of its own expert, in order to "detect" the alleged misrepresentations, all that was required of State Farm was to simply read the records Dr. Feijoo had submitted.

That a consumer acting reasonably would have read the records submitted by Dr. Feijoo is obviously common sense, but it is also something State Farm expressly claims to have done prior to paying any bill at issue. (<u>See</u> State Farm's Amended Complaint, Doc #60, ¶86). That reading the records before issuing payment was what any reasonable insurance company would have done under the same circumstances is established by the report of J'Amy Kluender, an expert in insurance claims handling and standards (and longtime State Farm claims handler and manager).

Ms. Kluender opines that if State Farm's accusations actually have any merit, its issuance of the payments it now seeks as damages fell below insurance industry standards, failed to comply with Florida law, failed even to comply with State Farm's own internal standards, and was unreasonable in all respects.  (See Defendants' Response to State Farm SOF, Additional Material, ¶18, Ex. D).

Defendants have obviously submitted their own Motion for Summary Judgment based on State Farm's inability to prove that a consumer acting reasonably in the same circumstances would have been deceived by Dr. Feijoo's bills.  At the very least, the same facts which support Defendants' Motion, along with Ms. Kluender's expert report, create a genuine issue of material fact which precludes summary judgment in favor of State Farm on its "traditional" FDUTPA claim.

1.  **The Genuine Dispute That Any of Dr. Feijoo's Bills were False Precludes Summary Judgment on State Farm's Allegation of a _Per Se_ Violation of FDUTPA**

State Farm argues that its expert's opinions alone are indisputable facts which also establish a _per se_ FDUTPA violation.  As detailed above, State Farm's expert establishes no facts, much less indisputable ones, and State Farm's _per se_ claim is refuted by its own pleadings and claims conduct.

"A _per se_ violation [of FDUTPA] is established in one of two ways: (1) if the "law, statute, rule, regulation, or ordinance" expressly constitutes a violation of the FDUTPA, or (2) if the statute, rule or ordinance proscribes unconscionable, deceptive, or unfair acts or practices and therefore operates as an implied FDUTPA predicate. State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC, 315 F. Supp. 3d 1291, 1306–08 (S.D. Fla. 2018).  When the statute at issue is a predicate statute, plaintiff need not allege the first element of the FDUTPA claim.  Id.  None of the statutes listed by State Farm as predicate statutes

expressly constitutes a violation of FDUTPA, so State Farm is obviously intending that they be considered implied FDUTPA predicates.

The Florida statutes offered by State Farm as implied FDUTPA predicates are §817.234, §626.9541, and §627.736.

Florida Statute §817.234 punishes "False and Fraudulent Insurance Claims" and clearly requires "the intent to injure, defraud, or deceive any insurer."  Florida Statute §626.9541 prohibits the "knowing" submission of false claims.  Florida Statute §627.736 (the PIP statute), prohibits "knowingly" submitting a false claim but defines "knowingly" broadly as having "acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the information, and proof of specific intent to defraud is not required."  (See §627.732(10)).

Defendants detail in their Motion for Summary Judgment why State Farm's *per se* FDUTPA claim fails as a matter of law based on State Farm's own pleadings and testimony, which admit that it has no evidence that Dr. Feijoo ever knowingly or intentionally submitted a false bill to State Farm.  But for the purposes of this motion, the claim fails as well because each one of the predicate statutes requires proof of a "false" claim.

As detailed above, there is, at the very least, a genuine issue of material fact in this case as to whether any bill of Dr. Feijoo's was actually false.  This dispute precludes summary judgment for State Farm on its *per se* FDUTPA claim as well.

## C.  STATE FARM'S DECLARATORY JUDGMENT ACTION IS PREMISED ENTIRELY ON THE SAME DISPUTED FACTS AS ITS FDUTPA CLAIMS

Count II of State Farm's Amended Complaint Seeks a Declaratory Judgment that Dr. Feijoo "knowingly made false or misleading statements that have relieved Plaintiff of any duty,

obligation or requirement to pay any PIP or MPC benefits" billed to State Farm by Dr. Feijoo."

(See ECF Doc #60, ¶110).

As detailed above, there is, at the very least, a genuine dispute of fact as to whether Dr. Feijoo made any false or misleading statements, or did so knowingly.  For all of the reasons State Farm is not entitled to summary judgment on its FDUTPA claims, summary judgment regarding its Declaratory Judgment claim should be denied as well.

### D.  DEFENDANTS HAVE ESTABLISHED THAT STATE FARM'S FDUTPA CLAIM IS PRECLUDED BY THE VOLUNTARY PAYMENT DOCTRINE

In their Answer to State Farm's Amended Complaint, Defendants have asserted the affirmative defense that State Farm's damages claims are precluded by the Voluntary Payment Doctrine.  (See ECF Doc #74).

The burden of proof is on the party opposing summary judgment to demonstrate the existence of specific facts in the record that create an issue for trial. *Coburn v. D&R Trucking, LLC*, 2011 WL 73287, at *2 (M.D. Fla. Jan. 10, 2011).  Defendants have established ample facts in the record which create, at the very least, a genuine issue for trial as to whether State Farm can establish actual damages as required by FDUTPA.

The record shows that since at least October of 2012, State Farm had complete knowledge of the manner in which Dr. Feijoo applied the codes at issue in this case to the services described in his records.  It had lawyers and experts and fraud specialists reviewing hundreds of charts before and while the bills at issue in this case were being received and payments were being issued.  Its own expert has opined that every record submitted by Dr. Feijoo contained all of the information which he and State Farm now contend show that each bill was incorrectly coded.

"Florida's "voluntary payment doctrine provides that 'where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot

be recovered.'" <u>Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.</u>, 581 F. Supp. 2d 1215, 1223–24 (S.D. Fla. 2008), *citing* <u>Ruiz v. Brink's Home Sec., Inc.</u>, 777 So.2d 1062, 1064 (Fla. 2d DCA 2001) (*quoting* <u>City of Miami v. Keton</u>, 115 So.2d 547, 551 (Fla.1959)); *and* <u>Sanchez v. Time Warner, Inc.</u>, 1998 WL 834345, at *2 (M.D.Fla.1998) ("It is a well-recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back, and this is true even though the claim thus paid was illegal ....") (quoting *McMullen v. Inland Realty Corp.,* 113 Fla. 476, 152 So. 740 (1933)).

State Farm was fully aware of Dr. Feijoo's billing practices with respect to each CPT code alleged to be at issue in this case before it made every single payment now claimed as its FDUTPA damages. There is a genuine issue for trial, therefore, whether State Farm's payments were voluntary. If they were, State Farm has not suffered any actual damages and cannot prevail on its FDUTPA claims. This genuine issue of fact precludes summary judgment in State Farm's favor.

### E.  CONCLUSION

In the end, State Farm's case simply makes no logical sense on any legitimate level. It accuses Dr. Feijoo of having submitted CPT codes which "falsely" described the services he rendered. Yet it also claims that every record submitted by Dr. Feijoo in support of his bills, which State Farm claims to have read and considered before issuing payment every time, did not support the code billed.

On top of this logical incongruity lies State Farm's massive, multi-year investigations from 2011 through 2018 specifically into Dr. Feijoo's coding practices. State Farm simply knew

everything there was to know about how and why Dr. Feijoo attached any code to any bill after January of 2011 and at all times thereafter.

In the absence of any logically legitimate basis for its lawsuit, one must look to the testimony of State Farm's corporate designee, Timothy Banahan, which revealed a logically illegitimate basis for State Farm's filing.  According to Mr. Banahan, State Farm only filed this lawsuit in order to gain "leverage" with respect more than 100 pending PIP suits filed by Dr. Feijoo.  (See Def. Additional Material in its Response to State Farm's SOF, ¶19.)

Regardless, however, of State Farm's motive for manufacturing this lawsuit, it is simply impossible on the facts of record to establish a "deceptive" practice under FDUTPA.  No consumer, acting reasonably in the same circumstances, would have been deceived in a single instance that State Farm issued payment to Dr. Feijoo between August of 2014 and August 16, 2018.  (Defendants obviously submit that their Motion for Summary Judgment should be granted on this basis).

Lastlly, there is a genuine issue of fact as to whether State Farm can establish any actual damages as necessary to recover under FDUTPA, given that every payment it claims as damages was entirely voluntary.

For all of the foregoing reasons, it is respectfully requested that State Farm's Motion be Denied.

RESPECTFULLY SUBMITTED,
**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email:Pivniklaw@aol.com
            Cdiezpivniklaw@aol.com
By: /s/ Jerome A. Pivnik
Jerome A. Pivnik, Esq.
Fla. Bar No.: 400408

**Andrew P. Baratta, Esq.**
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
Tel: 215-914-2222
Email: Andrew@Barattarussell.com
(*pro hac vice*)

**Kenneth B. Schurr, Esq.**
Law Offices of Kenneth B. Schurr
2030 S. Douglas Rd., Ste. 105
Coral Gables, FL 33134-4615
Tel: 305-441-9031
Email: kbsservice@schurrlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 11, 2019, I have filed the foregoing document with the Clerk of Court using the CM/ECF system and that a copy was electronically served upon the following in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:  Kenneth P. Hazouri, Esq., and Andrew S. Ballentine, Esq., Mantzaris and Neal, LLP, 332 North Magnolia Avenue, Orlando, FL 32801. (Khazouri@dsklawgroup.com, ABallentine@dsklawgroup.com, Lquesada@dsklawgroup.com, Lmorales@dsklawgroup.com).

**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email:Pivniklaw@aol.com
        Cdiezpivniklaw@aol.com
By: /s/ Jerome A. Pivnik
Jerome A. Pivnik, Esq.
Fla. Bar No.: 400408

**Andrew P. Baratta, Esq.**
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
Tel: 215-914-2222
Email: Andrew@Barattarussell.com
(*pro hac vice*)