# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**Case No. 1:18-cv-23329-RAR**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Plaintiff,

v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

     Defendants.

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENNETH P. HAZOURI
Trial Counsel
Fla. Bar No. 019800
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075
aballentine@dsklawgroup.com
skuharske@dsklawgroup.com
de Beaubien, Simmons, Knight,
Mantzaris & Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454

BART R. VALDES
Florida Bar Number: 323380
bvaldes@dsklawgroup.com
DSK LAW GROUP
de Beaubien, Simmons, Knight,
Mantzaris & Neal, LLP
609 West Horatio Street
Tamp a, Florida 33606
Telephone: (813) 251-5825
Facsimile: (813) 254-1063
Attorneys for Plaintiff

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm Mutual"), by counsel and pursuant to Local Rule 7.1, hereby files this Memorandum of Law in opposition to the Motion for Summary Judgment (the "Motion") [Doc. 67] of Defendants, MANUEL V. FEIJOO ("Feijoo") and MANUEL V. FEIJOO, M.D., P.A. (the "Clinic"), (collectively, the "Defendants") and in support thereof states as follows:

I.     DEFENDANTS' MOTION IS BASED ON A PROFFERED LEGAL STANDARD FOR DETERMIING IF THEY VIOLATED FDUTPA THAT DIRECTLY CONTRAVENES BINDING PRECEDENT FROM THE ELEVENTH CIRCUIT AND WAS EXPLICITLY REJECTED BY THIS COURT IN CIRCUMSTANCES NEARLY IDENTICAL TO THIS CASE.

Defendants' essential arguments in support of their request for summary judgment on State Farm Mutual's claim for a traditional FDUTPA violation are set forth in Sections I.A.2. and II. of their Motion. [Doc. 67, pp. 5 – 12] The first of these sections describes the alleged factual basis for their Motion. The second one sets forth Defendants' proffered legal standard for determining if they committed a traditional FDUPTA violation, which they then apply to their alleged facts to conclude they have not done so. As explained below, Defendants' proposed legal standard is based entirely on State Farm Mutual's (alleged) subjective mental state, which is irrelevant to its FDUTPA claim under the governing law.

On the factual side, Defendants assert that State Farm Mutual learned of their deceptive use of CPT codes before paying the Clinic's medical bills at issue in this case. [Doc. 67, pp. 5 – 7] In other words, Defendants allege that State Farm Mutual's subjective mental state was such that it had knowledge of their deceptive billing practices before paying those bills. Defendants allege State Farm Mutual gained this knowledge by deposing Feijoo and the Clinic's office manager, Anielka Castillo ("Castillo"), in PIP suits involving a single patient and PIP claim. The two depositions of Feijoo were taken in 2011, years before he performed any of the evaluations

on the insureds at issue in this case. [Doc. 72-1, p. 9 - 17] Likewise, none of the depositions involved any patient, medical service, medical bill, or PIP claim at issue in this case. [Aff. of J. Fuller attached as Ex. "A" to Plaintiff's Response to Defendants' Statement of Material Facts]

Defendants put forth two additional sources of State Farm Mutual's purported knowledge of their deceptive billing practices. The first is an investigation or "project" regarding the Defendants that State Farm Mutual opened in in August 2011 and closed in October 2012 without further action. This project closed years before Feijoo performed any of the patient evaluations at issue in this case. Defendants also assert that State Farm Mutual gained knowledge of their billing practices through a second project it opened in December 2015, which led to its filing of this lawsuit.[1] [Doc. 67, pp. 7 - 8] Defendants explain that before publicly alleging they had violated FDUTPA, State Farm Mutual conducted an exhaustive investigation of their billing practices to ensure it was on very firm ground in making those allegations.[2] Here, Defendants are correct.

Defendants also contend, however, that based on the above-described depositions and the 2011 and 2015 projects, State Farm Mutual should have earlier ceased paying the Clinic's deceptive medical bills, for which it demanded payment under threat of litigation. The Clinic's policy is to sue State Farm Mutual anytime, and every time, it does not pay PIP benefits based on the full amount of the Clinic's charges. [Doc. 71-1, pp. 261, 273-74] Defendants also ignore the fact that they received, and have enjoyed the benefits of, approximately $200,000 State Farm

---

[1] Ignoring the three-plus year period from October 2012 to December 2015 when State Farm Mutual did not have a project opened on them, Defendants incorrectly state that the company investigated them "in the 8 years leading up to the filing of this lawsuit," and they repeat this incorrect assertion throughout their Motion. [Doc. 67, pp. 1, 8, 15]

[2] Had State Farm Mutual filed suit shortly after opening its December 2015 project, Defendants would undoubtedly be here asserting that it did so prematurely after only cursory investigation.

3

Mutual has paid them on Subject Claims. Summarized, their position is: "Shame on you State Farm Mutual for paying us $200,000 for the deceptive CPT codes we submitted and demanded that you pay under threat of litigation; you should have known better." The law does not countenance such a perverse, illogical, and inequitable position, and this is where Defendants' Motion clearly fails.

Section II. of the Motion begins by correctly stating that the legal standard for determining if Defendants committed a traditional FDUTPA violation is whether the manner in which they billed State Farm Mutual for CPT codes 99204, 99214, 99215, 95851, and 76140 "was likely to deceive a consumer acting reasonably in the same circumstances." [Doc. 67, p. 8] Defendants, however, then commit the fatal error of arguing that State Farm Mutual's <u>subjective</u> mental state, including its (alleged) subjective knowledge of the Clinic's deceptive billing practices, is one of the "circumstances" to be considered under this standard. Put differently, Defendants argue that the hypothetical "reasonable consumer" must be deemed to share State Farm Mutual's mental state, and to know what State Farm Mutual subjectively knows about Defendants' billing practices, when determining if the "reasonable consumer" would have likely been deceived by them. As explained below, this argument incorrectly converts the standard for determining the existence of a traditional FDUTPA violation from an objective standard to a subjective one.

Defendants' argument directly contravenes the binding precedent of *Carriuolo v. General Motors Co.*, 823 F. 3d 977 (Fla. 2016), which clearly holds that an <u>objective</u> standard is used to determine if the FDUTPA defendant's practices were "likely to deceive a consumer acting reasonably in the same circumstances." In *Carriuolo*, purchasers of a 2014 Cadillac CTS filed a class action in this Court alleging General Motors ("GM") violated FDUTPA by including

deceptive information about safety ratings in "Monroney" stickers affixed to the windows of the vehicles offered for sale at dealerships. 823 F. 3d at 981 – 82. The stickers incorrectly stated that the 2014 Cadillac CTS had five star ratings in certain safety categories when, in fact, it had no such safety ratings. *Id.* After this Court certified a class of vehicle purchasers and lessees for prosecution of the FDUPTA claim, GM appealed to the Eleventh Circuit. *Id.*

On appeal, GM argued the class was incorrectly certified because individual factual issues predominated over those common to the class. *Id.* at 985. In support of this argument, GM asserted that its liability to each class member under FDUTPA was dependent on his or her individual level of subjective knowledge of the incorrect safety ratings in the Monroney stickers. *Id.* More specifically, the court explained GM's argument by stating "General Motors points out that some class members may have known that the safety ratings were inaccurate. . . ." *Id.* (emphasis supplied). The court then flatly rejected this argument:

> But these objections do not defeat the district court's determination that common questions predominate. Because a plaintiff asserting a FDUTPA claim "need not show actual reliance on the representation or omission at issue," *Davis,* 776 So.2d at 973, the mental state of each class member is irrelevant. In *Davis,* the First District Court of Appeal of Florida recognized that the absence of a reliance requirement means "the impediment to class litigation that exists for multiple intrinsic fraud claims does not exist" in FDUTPA cases. *Id.* Thus, General Motors is incorrect to suggest that the plaintiffs must prove that every class member saw the sticker and was subjectively deceived by it. As the district court correctly observed, these arguments simply seek a reliance inquiry by another name. Instead, under FDUTPA, the plaintiff must only establish three *objective* elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *City First Mortg. Corp.,* 988 So.2d at 86. Here, the first FDUTPA element is amenable to class-wide resolution: the factfinder must only determine whether a Monroney sticker that inaccurately states a vehicle had received perfect safety ratings in three categories would deceive an objectively reasonable observer when in fact no safety ratings had been issued.

*Id.* at 985 - 86 (italicized emphasis in original; underlined emphasis supplied). GM also challenged class certification on the grounds that the class representatives were inadequate

because the class members "may have had varying levels of sophistication and access to information at the time of lease or purchase." *Id.* at 989 – 90. Rejecting this argument, the court reiterated that "[a] class member's subjective sophistication or knowledge is irrelevant because the liability inquiry states objective elements." *Id.* at 990 (emphasis supplied). Based on these rulings, the court affirmed the order certifying the class. *Id.*

Here, Defendants' proffered legal standard for determining if their billing practices constitute a traditional FDUTPA violation flies directly in the face of *Carriuolo*'s above-quoted holdings. *Carriuolo* unequivocally states that the plaintiff's mental state, including whether he or she actually knew about, or was subjectively deceived by, the defendant's deceptive practices, is "irrelevant" to a FDUPTA claim. Without any mention of *Carriuolo*, Defendants argue that their submissions of CPT codes misrepresenting Feijoo's medical services were not deceptive *precisely because* State Farm Mutual (allegedly) knew about those billing practices and was not subjectively deceived by them. Just like GM, Defendants' "arguments simply seek a reliance inquiry by another name." They clearly fail under *Carriuolo*.

Feijoo and his Clinic are not the first medical providers to come before this Court and argue in the face of *Carriuolo* that their objectively deceptive billing practices do not constitute a FDUPTA violation because State Farm Mutual issued payments after learning of them. The defendants in *State Farm Mutual Automobile Insurance Company v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291 (S.D. Fla. 2019), made this same argument in a motion for summary judgment the Court rejected under *Carriuolo*.

State Farm Mutual's FDUTPA claim in *Performance* arose out of an "arrangement" between medical clinics employing physicians who performed surgeries on patients injured in auto accidents, and a hospital that provided the operating rooms and surgical supplies. *Id.* at

6

1297. After the surgeries, the hospital issued invoices with inflated surgical facility charges and then sold the right to collect the invoices (*i.e.*, accounts receivable) to the clinics for substantially less than their face amount. *Id.* For most procedures, the discounted amounts the clinics paid the hospital for the receivables were set forth in a pre-determined price list. *Id.* at 1298.

After purchasing the right to collect the hospital's inflated invoices, the clinics delivered them to attorneys representing the patients in auto-negligence claims. *Id.* at 1297. The attorneys then included the invoices in "demand packages" sent to State Farm Mutual in claims on which it provided liability coverage for the at-fault drivers, which demanded their payment as an element of damages. *Id.* The demand packages did not disclose that the clinics had purchased the hospital's invoices at a steep discount. *Id.* In its lawsuit, State Farm Mutual alleged that the submission of the hospital's inflated invoices without this disclosure violated FDUTPA and caused State Farm Mutual to pay excessive settlements of the auto-negligence claims. *Id.*

Importantly, State Farm Mutual's Multi-Claims Investigative Unit ("MCIU") investigated the defendants' "arrangement" before filing its FDUTPA claim against them. *Id.* at 1298. The *Performance* court described the investigation and events therein as follows:

> On March 12, 2013, State Farm's Multi-Claim Investigative Unit ("MCIU") learned that Calhoun was listed as the guarantor on the Metropolitan account ledger for a claim. In July 2013, MCIU began "Project Calhoun" to investigate the Arrangement. In November 2013, an initial Alert was distributed within State Farm regarding Project Calhoun. State Farm learned of the price list that set the amounts Calhoun paid Metropolitan for specific procedures and in March 2014, State Farm obtained a copy. State Farm transitioned all of the claim files involving Calhoun and Metropolitan to MCIU for review.

*Id.* (record citations omitted).

The defendants moved for summary judgment on the FDUPTA claim arguing that as a result of the above-described investigation, State Farm Mutual knew about their arrangement involving the inflated invoices when settling the patients' auto-negligence claims. *Id.* at 1309.

Under the heading of "Does State Farm's Alleged Knowledge Preclude the FDUTPA Claim?," the Court rejected this argument based on *Carriuolo*:

> Defendants argue that State Farm failed to establish causation because State Farm knew of the Arrangement and adjusted its claims accordingly. As State Farm argues however, the FDUTPA requires only an objective inquiry because injury "is not determined by the plaintiffs' subjective reliance on the alleged inaccuracy." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983, 985–86 (11th Cir. 2016); *Vazquez v. Gen. Motors, LLC*, No. 17-cv-22209, 2018 WL 447644, at *7 (S.D. Fla. Jan. 16, 2018) (Because the FDUTPA requires only an objective inquiry, it is immaterial whether plaintiff relied on defendant's deceptive act or unfair practice). Indeed, a "party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Carriuolo*, 823 F.3d at 984. <u>Thus, State Farm's knowledge has no bearing on the FDUTPA claim.</u>

*Id.* at 1309 – 10 (emphasis supplied).

Here, Feijoo and the Clinic have made the same summary-judgment argument that was rejected by this ruling in *Performance*. They allege that State Farm Mutual learned of their deceptive of use of CPT codes through depositions involving PIP claims not at issue in this lawsuit, an MCIU investigation that ended years before they submitted any of the bills at issue in this lawsuit, and a second MCIU investigation that led to the filing of this lawsuit. Just like the defendants in *Performance*, Feijoo and the Clinic then argue that State Farm Mutual's payment of their medical bills with (alleged) knowledge of those billing practices defeats its FDUPTA claim. *Performance* could not be any clearer on this point. As stated therein, State Farm Mutual's knowledge of Defendants' deceptive billing practices "has no bearing on the FDUTPA claim" under *Carriuolo*. This Court should reach the same conclusion pursuant to *Carriuolo* and consistent with *Performance*.

Even though *Carriuolo* is binding precedent, Defendants do not even cite, much less discuss, the opinion in their Motion. Defendants instead offer non-precedential decisions in support of their incorrect argument that the determination of whether they violated FDUTPA is

based on State Farm Mutual's subjective mindset, not an objective standard.

Defendants' lead case is *Deere Construction, LLC v. CEMEX Construction Materials Florida, LLC*, Case No. 15-24375-CIV-Altonga/O'Sullivan, 2016 WL 8542540 (S.D. Fla. Dec. 1, 2016). They quote *Deere* for the following statement discussing the standard for determining the existence of a traditional FDUTPA violation: "The modification of 'acting reasonably' by 'in the same circumstances' indicates a hybrid standard that may be <u>objectively established as to mindset</u> but subjectively established as to context." [Doc. 67, p. 9 quoting *Deere* at *3; emphasis supplied] *Deere*, in turn, quoted and adopted this statement from another district court decision issued five years before *Carriuolo* and also cited in Defendants Motion, *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010) ("*Court Reporting*"). [Doc. 67, p. 9] *Deere* at *3. To the extent *Deere* and *Court Reporting* support Defendants' incorrect arguments, they must give way to *Carriuolo*'s binding precedent, which governs the disposition of their Motion.

Furthermore, the Eleventh Circuit has expressly ruled that the "hybrid standard" set forth in *Court Reporting* and *Deere* do not apply to a FDUTPA claim based on deception. *Democratic Republic of the Congo v. Air Capital Group, LLC*, 614 F. App'x 460 (11th Cir. 2015) In *Democratic Republic*, the defendants tried to defend a FDUTPA claim by arguing the plaintiff was "too sophisticated to fall for [their] deceits." *Id.* at 469. The court ruled that this argument "builds on a flawed understanding of" FDUTPA because it is based on "a subjective standard of deceit." *Id.* at 469 - 70. The court then further explained that a FDUTPA plaintiff's burden is to instead prove that the defendant's actions "would likely mislead <u>the objective consumer</u> acting reasonably in the circumstances." *Id.* at 46 (emphasis supplied). In a later footnote, the court reiterated that the legal standard for determining if a defendant committed a traditional FDUTPA

violation through the use of deception is purely objective and, in so doing, explicitly rejected the

"hybrid standard" set forth in *Court Reporting*:

> Some courts have injected a subjective element into FDUTPA claims for unfair practices. *See In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices,* 715 F. Supp. 2d 1265, 1277–80 (S.D. Fla. 2010) (denying certification because lawyers could avoid unfair court-reporting fees better than other class members) . . . . We base our holding on ACG's deceptive acts, however, and <u>deception is judged from an objective point of view.</u> *See PNR,* 842 So.2d at 777.

*Id.* at 475 n. 7 (emphasis supplied). Based on these rulings, the court affirmed the judgment for

the plaintiff on its FDUTPA claim. *Id.* at 475.

As quoted above, *Democratic Republic* held that the hybrid objective/subjective standard

discussed in *Court Reporting* and *Deere*, and advocated in Defendants' Motion, does not apply

in a FDUTPA claim based on deception. Just like the defendants' arguments in *Democratic

Republic*, the Clinic and Feijoo's arguments here are incorrectly based on "a subjective standard

of deceit" and, therefore, "a flawed understanding of" FDUTPA. Thus, *Democratic Republic*

further establishes the absence of merit in Defendants' Motion. *See also State Farm Mut. Auto.

Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1316 (S.D.

Fla. 2017)(explaining that *Democratic Republic* "has made clear that FDUTPA does not require

'subjective proof of deception' wherein a 'plaintiff could not secure FDUTPA relief' solely

because it 'knew the defendant's business well enough to manage the risk.'")

Assuming *arguendo* the hybrid objective/subjective standard discussed in *Deere* and

*Court Reporting* applied to this case (it does not), Defendants' arguments thereunder are

meritless. To reiterate, under the hybrid standard a FDUTPA violation "may be <u>objectively

established as to mindset</u> but subjectively established as to context." (emphasis supplied)

Defendants have completely ignored the objective portion of this standard even as their arguments fall squarely within it.

The hybrid standard's use of the term "mindset" refers to the FDUTPA plaintiff's state of mind going into the subject transaction with the defendant, including any advance knowledge the plaintiff has regarding the defendant's business practices through its own investigation or otherwise. Here, the transactions forming the basis of State Farm's Mutual's FDUTPA claim are Defendants' submissions of the medical bills reporting the deceptive CPT codes. Defendants argue that at the time State Farm Mutual received those bills, its subjective mindset was such that it had advance knowledge of Defendants' deceptive use of the CPT codes gleaned through depositions and investigations. This argument plainly fails under the hybrid standard, which does not permit consideration of State Farm Mutual's subjective mindset, including its knowledge of Defendants' billing practices.

The subjective component of the hybrid standard relates to the "context" of the subject transaction itself, not the FDUPTA plaintiff's state of mind going into it. *Deere* is illustrative. There, the court applied the hybrid standard and denied certification of a class action asserting a FDUTPA claim relating to fuel and environmental fees charged by the defendant, a seller of building materials. *Deere* at *2. The court explained that there was "variability in how customers interacted with Defendant's sales representatives" in the course of the transactions that resulted in their being charged those fees, including whether the customers specifically negotiated the amount of them. *Id.* at *3. The court's ruling did not involve any advance knowledge about the fees the customers may have had going into those transactions, which would fall under the objective portion of the hybrid standard. Thus, *Deere* lends no support to Defendants' meritless arguments regarding State Farm Mutual's purported knowledge of their billing practices.

While it does not discuss or apply the hybrid standard, the material difference between the FDUTPA plaintiff's "mindset" as he or she enters the transaction, and the "context" of the transaction itself, is also illustrated by the other decision proffered in Defendants' Motion, *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565 (11th Cir. 2009). [Doc. 67, p. 9] Preliminarily, *Cold Stone* is an unpublished, non-precedential opinion decided years before *Carriuolo*. To the extent *Cold Stone* can be construed as supporting Defendants' arguments, it conflicts with, and must give way to, *Carriuolo*'s binding precedent. Regardless, a proper analysis of *Cold Stone* establishes that it is not supportive of them.

In *Cold Stone*, husband-and-wife franchisees filed a FDUTPA claim against the franchisor based on alleged misrepresentations the franchisor's agents made to them regarding their prospects for success in the franchise before they purchased it. *Id.* at 567. In reviewing a summary judgment for the franchisor, the court explained that "<u>after the alleged misrepresentations were made</u>, the [franchisees] were given and reviewed Cold Stone's franchise agreement." *Id.* (emphasis supplied). The court then ruled that based on the agreement's detailed information and disclosures relevant to the franchisees' prospects for success, it was "not likely that a consumer acting reasonably would have been deceived by" the earlier misrepresentations of the franchisor's agents on this same topic. *Id.* at 567 – 68. Based on this ruling, the court affirmed the franchisor's summary judgment on the FDUTPA claim. *Id.* at 569.

The court's ruling in *Cold Stone* was not based on any advance knowledge (*i.e.*, mindset) the franchisees had of the franchisor's business practices going into the franchise transaction. *Id.* at 567. On the contrary, the court's affirmance of the summary judgment for the franchisor was based on information and disclosures contained in the franchise agreement -- the document memorializing and governing the terms of the parties' business relationship. Moreover, the

franchise agreement was given to the franchisees <u>after</u> the alleged misrepresentations were made to them and in the course of the transaction. Accordingly, *Cold Stone* does not support Defendants' incorrect argument that State Farm Mutual's (alleged) advance knowledge of their billing practices at the time it received the Clinic's medical bills (*i.e.*, its subjective mindset) renders them not deceptive or violative of FDUTPA.

Even if one were to apply the hybrid's subjective component of "context" to the instant case, the result remains the same. Most FDUTPA cases arise in the context of a voluntary transaction between the parties. For example, *Carriuolo*, involved voluntary purchases of cars, *Cold Stone* involved the voluntary purchase of a franchise, and *Deere* involved voluntary purchases of building materials. None of the plaintiffs in those cases had any obligation to buy the defendants' products or otherwise do business with them.

The "context" in which the instant case arose is much different. When State Farm Mutual receives a medical bill for PIP benefits, it operates under a legally imposed obligation to pay the bill within 30 days so long as it is compensable under Florida Statute § 627.736 ("§ 627.736") and the policy. Fla. Stat. § 627.736(4)(b). If it does not do so, the bill becomes "overdue," and State Farm Mutual is subjected to being sued by the provider for the unpaid PIP benefits. *E.g.*, *United Auto. Ins. Co. v. Rodriguez*, 808 So. 2d 82, 85 - 86 (Fla. 2001). As with all litigation, the outcome of a PIP suit is uncertain. Indeed, if any judgment for damages is entered against State Farm Mutual -- even a dollar -- it is hit with penalties that include the assessment of the attorneys' fees incurred by the provider in the PIP suit. *Id.*; *Ivey v. Allstate Ins. Co.*, 774 So. 2d 679, 684 (Fla. 2000). State Farm Mutual can be 99.9% right about the compensability of a medical bill, and the .1% in which is wrong may cost it tens of thousands of dollars in attorneys' fees that far exceed the face amount of the disputed bill.

Unlike the plaintiffs in *Carriuolo*, *Cold Stone*, *Deere* and other FDUPTA claims involving voluntary transactions, State Farm Mutual cannot choose to avoid doing business with Feijoo's Clinic. Moreover, if State Farm Mutual has reason to believe a medical bill submitted by the Clinic is deceptive and not compensable, it cannot resolve this situation by simply deciding to not pay the bill. A non-payment can and will trigger a PIP suit from the Clinic, which exposes State Farm Mutual to the risk of litigation and the above-described penalties. Defendants' argument that they did not violate FDUTPA because State Farm Mutual (allegedly) paid the bills with knowledge of their deceptive billing practices is based on the false premise that State Farm Mutual could simply choose not to pay them without consequence.

The PIP statute and related statutes provide some counter-balance to the onerous payment obligations imposed on insurers. Section 627.736(5)(d) sets forth mandatory requirements for the form and content of medical bills, which include the obligation to report honest and accurate CPT codes. Bills not satisfying those requirements are not compensable. Section 627.736(5)(b)1. also relieves insurers of their payment obligations in various circumstances, including for bills (like the Clinic's) that are unbundled or upcoded and contain false or misleading statements. Florida Statute § 817.234 provides protections by imposing criminal penalties for the submission of fraudulent insurance claims. Based on these statutes, the Clinic's bills came to State Farm Mutual with a presumption that the CPT codes reported therein accurately described Feijoo's medical services. *Cf. Performance*, 315 F. Supp. 3d. at 1303 (ruling that the defendant medical providers had a "statutory obligation of completeness" to provide the insurer with all material information relating to their claims). This presumption further establishes the absence of merit in Defendants' arguments that they did not violate FDUTPA because State Farm Mutual knew about their deceptive billing practices.

There is another important aspect of the "context" in which State Farm Mutual's FDUPTA claim arose in this case -- Feijoo performed the patient evaluations behind closed doors in his office. By their very nature, those evaluations should vary from patient to patient as dictated by their individual conditions and medical needs. Accordingly, the only means by which State Farm Mutual could possibly determine and know if the CPT code charges in the Clinic's bills accurately (or inaccurately) described Feijoo's evaluations of each particular patient is to review a complete set of medical records of each evaluation.

The Clinic did not, however, submit its complete medical records for each evaluation with its medical bills. [Doc. 71-1, pp. 101-103; Doc. 72-1, p. 5, ¶ 16] It only submitted the reports prepared by Feijoo that summarize the evaluations. [Doc. 71-1, pp. 101-103] Without the completed medical charts, State Farm Mutual could not possibly know if Feijoo had performed the services described by the CPT codes upon receiving the bills because other records therein could confirm that he did so. As explained above, the law significantly penalizes PIP insurers for making incorrect claims decisions based on incomplete information.

The above facts establish that on their best day, Defendants' argument is that State Farm Mutual should have suspected the Clinic's bills were deceptive upon receiving them, and then performed an investigation that would have confirmed its suspicion. This argument imposes on State Farm Mutual a non-existent burden of proving reliance in its FDUTPA claim *that is even more onerous* than the actual burden of proving reliance in a fraud claim. As explained by the Florida Supreme Court, the plaintiff in a fraud claim "may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation." *Besett v. Basnett*, 389 So. 2d 995 (Fla. 1980); *see also Butler v. Yusem*, 44 So. 3d 102 (Fla. 2010)("Justifiable reliance is not a necessary element of fraudulent misrepresentation."). Unlike

the plaintiff in a fraud claim, State Farm Mutual does not have to prove it relied on the Clinic's deceptive CPT codes because reliance is not an element of its FDUTPA claim. *See supra* quote of *Carriuolo*, p. 5. Acceptance of Defendants' incorrect argument would, however, eviscerate this fundamental legal doctrine and perversely establish a requirement of proving reliance in a FDUTPA claim that is even greater than that in a fraud claim.

For all of the above reasons, Defendants' argument that they did not violate FDUTPA because State Farm Mutual (allegedly) knew about their deceptive billing practices is clearly meritless as a matter of law. Any subjective knowledge of the Clinic's deceptive billing practices possessed by State Farm Mutual when it paid the Clinic's bills is "irrelevant to," and "has no bearing on," its FDUTPA claim. *See supra* quotes of *Carriuolo* and *Performance*, pp. 6 and 8.

II.    **DEFENDANTS' ARGUMENTS IN OPPOSITION TO STATE FARM MUTUAL'S *PER SE* FDUTPA CLAIM ARE DEVOID OF GERMANE LEGAL ANALYSIS AND ARE GROUNDED IN INCORRECT, CONSLUSORY AND/OR SELF SERVING ASSERTIONS THAT DO NOT AFFECT THE CLAIM'S VIABILITY.**

Section II.A.1. of the Motion sets forth Defendants' arguments in opposition to State Farm Mutual's claim that their billing practices constitute a *per se* FDUTPA violation. [Doc. 67, pp. 12 – 17] They begin by asserting that "as a last ditch effort," State Farm Mutual's Amended Complaint "suddenly adds an allegation of FDUTPA '*per se*' in an obvious attempt to manufacture proof of a deceptive practice." [Doc.  67, pp. 12 – 13; emphasis in original] One would think Defendants would ensure these aggressive statements are accurate before making them. Not so, as State Farm Mutual pled a *per se* FDUPTA claim in its original Complaint initiating this action. [Doc. 1, pp. 6 - 7, ¶ 25, p. 10, ¶ 36] Even if it had not done so, this would be meaningless. Plaintiffs may add new claims in an amended complaint.

The remainder of Defendants' arguments fare no better as they contain no germane legal analysis and are instead comprised of various statements, mischaracterizations, and innuendo

that do not affect the viability State Farm Mutual's *per se* FDUTPA claim. The running themes are Defendants' self-serving and ultimately meaningless assertions that Feijoo did not believe his Clinic's bills were deceptive, and State Farm Mutual is to blame for not alerting him to this fact.

In this regard, Defendants assert that State Farm Mutual has "run away from any suggestion that" Feijoo engaged in fraudulent or intentional misconduct by explaining to the Court that it does not have prove Feijoo committed fraud in order to prevail on its traditional or *per se* FDUPTA claims. [Doc. 67, p. 13] This explanation does not somehow estop State Farm Mutual from offering proof that Feijoo acted fraudulently or intentionally, as Defendants apparently suggest without any supporting legal authority or reasoning.

Relatedly, Defendants next assert that State Farm Mutual "has no evidence to prove that Dr. Feijoo ever intentionally or knowingly submitted CPT codes which were inaccurate." [Doc. 76, p. 15] This is incorrect. State Farm Mutual has filed the affidavit of its expert, Patrick Jacob, M.D., which opines that every one of the hundreds of medical bills the Clinic submitted over a four-year period reports false and misleading CPT codes. [Doc. 72-2] Based on this evidence, a jury could reasonably conclude that Feijoo fraudulently or "knowingly" (as defined in Florida Statute § 627.732(10)) engaged in this systematic course of deceptive conduct. *See infra* discussion of Fla. Stat. §§ 627.736(5)(b)1.c., p. 18.

Perhaps most remarkably, Defendants assert in classically self-serving fashion that Feijoo "was entirely reasonable" in his purported belief the Clinic's CPT code charges were proper because State Farm Mutual "never once reached out Dr. Feijoo to voice any concerns about his office's general coding practices." [Doc. 67, p. 16] In other words, Defendants maintain it was State Farm Mutual's responsibility, not Feijoo's, to ensure his Clinic did not send deceptive medical bills demanding payments from State Farm Mutual. These assertions are nonsensical.

A proper legal analysis establishes that Defendants are not entitled to summary judgment on State Farm Mutual's *per se* FDTUPA claim. It is fundamental law that State Farm Mutual does not have to prove Defendants committed fraud or intentional misconduct to prevail on it. In the seminal case of *Rollins, Inc. v. Heller*, the court explained this rule of law as follows:

> Although the trial court found no fraud on Rollins' part, such a finding is not necessary to sustain a violation under the FDUTPA. The legislature specifically provided that great weight was to be given to the federal courts' interpretations of the Federal Trade Commission Act. § 501.204(2). In *D.D.D. Corp. v. Federal Trade Commission,* 125 F. 2d 679, 682 (7th Cir. 1942), the court held "that the false, unfair or deceptive acts defined in the Federal Trade Commission Act need not be such as would constitute fraud."

454 So. 2d 580, 584 (Fla. Dist. Ct. App. 1984). Consistent with this holding, the Court's Order on Defendants' Motion to Dismiss explicitly rules that "State Farm [Mutual] correctly argues that it need not prove any 'specific intent to defraud' under FDUTPA. . . ." [Doc. 56, p. 5, n. 3]

This ruling's quotation of the phrase "specific intent to defraud" is taken from a discussion in State Farm Mutual's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, which explains that "Defendants committed *per se* FDUPTA violations by repeatedly violating § 627.736(5)(b)1.c." [Doc. 26, p. 5] This statute states that "[a]n insurer or insured is not required to pay a claim or charges . . . [t]o any person who knowingly submits a false or misleading statement relating to the claim or charges." Fla. Stat. § 627.736(5)(b)1.c. State Farm Mutual's Memorandum of Law further explained that as used in § 627.736(5)(b)1.c., the term "knowingly" is statutorily defined to mean "that a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the information, and proof of specific intent to defraud is not required." Fla. Stat. § 627.732(10) (2014) (emphasis supplied). The Court drew its quote of the phrase "specific intent to defraud" in its above-described ruling from this definition,

which is incorporated into § 627.736(5)(b)1.c.

As such, the Court's prior ruling implicitly recognizes that § 627.736(5)(b)1.c. may serve as a predicate statute for State Farm Mutual's *per se* FDUTPA claim. This conclusion is entirely consistent with Florida Statute § 501.203(3)(c) ("§ 501.203(3)(c)"), which states that any "law, statute, rule, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" may serve as a predicate for a *per se* FDUPTA violation. *See also Performance*, 315 F. Supp. 3d at 1300 (explaining that § 501.203(3)(c) lists the types of statutes that may serve as a predicate for a *per se* FDUTPA violation).

Section 627.736(5)(b)1.c. proscribes "false or misleading statements" in medical bills submitted within PIP claims. Moreover, the 2003 legislation enacting § 627.736(5)(b)1.c. and other anti-fraud provisions such as § 627.736(5)(d) declares its purpose as follows:

> (2) The Legislature finds and declares that:
>
> * * *
>
>  (g) It is further a matter of great public importance that, in order to protect the public's health, safety, and welfare, it is necessary to enact the provisions contained in this act in order to prevent PIP insurance fraud and abuse and to curb escalating medical, legal, and other related costs, and the Legislature finds that the provisions of this act are the least restrictive actions necessary to achieve this goal.
>
>  (h) Therefore, the purpose of this act is to restore the health of the PIP insurance market in Florida by addressing these issues, preserving the no-fault system, and realizing cost-savings for all people in this state.

*Florida Session Law Service*, Chapter 2003-411. *See also Chiropractic One, Inc. v. State Farm Mut. Auto. Ins. Co.*, 92 So. 3d 871, 874 - 75 (Fla. Dist. Ct. App. 2012) Both the plain language of § 627.736(5)(b)1.c. and its legislatively declared purpose establish that it may serve as a predicate statute for a *per se* FDUTPA violation under § 501.203(3)(c).

*Performance* further enforces this conclusion. There, the court ruled that a clinic's violation of the Health Care Clinic Act ("HCCA"), Florida Statute § 400.990 *et seq.*, by

operating without a license constitutes a *per se* FDUTPA violation. 315 F. Supp. 3d at 1306 (citing *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015)). *Performance* also ruled that one commits a *per se* FDUTPA violation by violating Florida's insurance fraud statute, Florida Statute § 817.234. *Id.* at 1307.

   *Performance*'s holding that a clinic's violation of the HCCA constitutes a *per se* FDUTPA violation further establishes the folly of Defendants' repeated assertions that Feijoo did not engage in fraudulent or intentional misconduct. A clinic owner does not have act fraudulently, intentionally, or even negligently to violate the HCCA. If his or her clinic operates without a license or an exemption from the HCCA's licensing requirements, it violates the HCCA irrespective of owner's intentions. As such, *Performance*'s designation of the HCCA as a predicate statute for a *per se* FDUTPA violation further confirms that intentional misconduct is not an element of a *per se* FDUTPA claim.

   It also clearly demonstrates that §§ 627.736(5)(b)1.c. and (5)(d) are predicate statutes for a *per se* FDUTPA violation. These statutes share the same purposes and policy as the HCCA, which is to protect the public from harm and excessive costs in the delivery of healthcare services. *See* p. 19, *supra* and Fla. Stat. § 400.990(2).

   Finally, *Performance* rules that Florida Statute § 817.234 is a predicate statute for a *per se* FDUPTA violation, and State Farm Mutual has pled this statute as an alternative basis for its *per se* FDUTPA claim.   [Doc. 60, p. 31, ¶s 93 – 96] Dr. Jacob's affidavit establishes the existence of triable issues of fact regarding whether Defendants violated this statute. For all of the above reasons, Defendants request for summary judgment on State Farm Mutual *per se* FDUTPA claim is meritless and should be denied.

III.   STATE FARM MUTUAL'S FDUTPA CLAIM IS NOT BARRED BY THE VOLUNTARY PAYMENT DOCTRINE.

Section II.B. of Defendants' Motion asserts that State Farm Mutual's FDUTPA claim is barred by the voluntary payment doctrine. Under no stretch of the imagination were State Farm Mutual's payments to the Clinic on its medical bills "voluntary" for purposes of this doctrine. First, in order to apply the doctrine the payment must be made "with full knowledge of all the facts." *Markel Ins. Co. v. Amer. Safety Risk Retention Group, Inc.*, No. 3:15-cv-240-RV-CJK, 2016 WL 10611374 at *4 (N.D. Fla. Aug. 3, 2016). State Farm Mutual did not have "full knowledge" that the Clinic's medical bills were deceptive when it paid them because it did not have access to the Clinic's complete medical records for Feijoo's evaluations. *See supra* p. 15. Second, "a payment is deemed involuntary if it is made under 'threat of litigation.'" *Id.* (quoting *City of Key West v. Florida Keys Cmty. College*, 81 So. 3d 494, 500 (Fla. 3d DCA 2012)). State Farm Mutual's payments of the Clinic's bills were made under threats of PIP suits. *See supra* pp. 3 & 13.  Finally, a payment is not "voluntary" if the payor may violate a statutory duty by not making it. *See Id.* Under § 627.736(4)(b), State Farm Mutual had a duty to pay the Clinic's bills within 30 days of receiving them or risk being found in violation of this statute. *See supra* p. 13.

IV. **DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON STATE FARM MUTUAL'S CLAIM FOR DECLARATORY RELIEF.**

Finally, Defendants' Motion asserts that the Court should grant summary judgment on State Farm Mutual's claim for declaratory relief because it "cannot prove that Dr. Feijoo 'knowingly' made false or misleading statements" in the Clinic's bills for PIP benefits. [Doc. 67, p.18] As explained above in Section II., this bald assertion does not entitle Defendants to summary judgment. They also cannot defend the declaratory claim on the grounds that State Farm Mutual should not have paid the medical bills at issue therein. State Farm Mutual did not, in fact, pay those bills, which is the basis for its requested declaratory relief.

## <u>Request for Hearing Pursuant to Local Rule 7.1(b)</u>

State Farm Mutual requests a hearing on Defendants' Motion as oral argument will give the parties a more complete opportunity to explain the issues and arguments encompassed within this dispositive motion and answer any questions the Court may have regarding them.

Dated: July 12, 2019.

Respectfully submitted,

<u>/s/ *Kenneth P. Hazouri*</u>
Kenneth P. Hazouri, B.C.S. (Fla. Bar No. 019800)
Trial Counsel
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
Andrew S. Ballentine (Fla. Bar No. 118075)
aballentine@dsklawgroup.com
skuharske@dsklawgroup.com
deBeaubien, Simmons, Knight,
  Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone:  (407) 422-2454
Attorneys for Plaintiff