UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:18-cv-23329

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,
v.

MANUEL V. FEIJOO and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("Plaintiff"), by counsel and pursuant to Local Rule 56.1, hereby files its Response to the Statement of Material Facts [Doc. 66] filed by Defendants, MANUEL V. FEIJOO, M.D., P.A. (the "Clinic") and MANUEL V. FEIJOO ("Feijoo"), in support of their Motion for Summary Judgment [Doc. 67] and responds to the alleged facts set forth therein, paragraph by paragraph, as follows:

1. – 5.   Plaintiff does not dispute the facts set forth in these paragraphs.

6.   Feijoo holds himself out as a specialist in orthopedics, but he does not have the proper credentials to do so in Florida as he is not board certified in orthopedics, and has not taken any residency or fellowship in orthopedics, in the United States.  [Doc. 71-2, pp. 24 -25]

7. – 10.   Plaintiff does not dispute the facts set forth in these paragraphs.

11.   <u>First Bullet Point</u>: To properly report CPT Codes 99204, 99214, and 99215 in the

Clinic's bills, Feijoo's evaluations were required to meet specific sets of criteria for these codes set forth in the CPT codebook, and his evaluations did not do so. [Doc. 72-2, pp. 15-25, 171-209, 213-214] Neither Feijoo nor Anielka Castillo ("Castillo") can explain how or why the evaluations for which the Clinic billed the above CPT Codes supposedly satisfy those criteria, and Feijoo has not even looked at the CPT codebook in years. [Doc. 71-2, pp. 57, 59-62, 182-185, 241-245; Doc. 71-1, pp. 74-75, 125-132, 141-144, 185-188, 222-231, 242-249] Feijoo's statements that the patients' required "comprehensive examination[s]," and his medical decision-making in the evaluations "is almost always complex," without reference to, or application of, the CPT codebook's criteria are conclusory and meaningless. [Doc. 72-2, pp. 171-209, 213-214]

      <u>Second Bullet Point</u>: Plaintiff does not dispute the facts set forth in the first sentence of this bullet point. The second sentence regarding statements supposedly made by third parties is inadmissible hearsay and irrelevant. The statement in the second sentence that the Clinic's "overall charge is the same if the ROM code were included in the examination code" is false as the Clinic's medical bills report charges of $475, $275, and $425, for CPT codes 99204, 99214, and 99215, respectively, together with a separate $100 charge for CPT code 95851, thereby increasing the cost of the Clinic's evaluations by $100 and double-billing State Farm Mutual for the range of motion ("ROM") testing included in them. [Doc. 72-2, pp. 11-15, 232, 241, 248]

      <u>Third Bullet Point</u>: Plaintiff does not dispute the facts set forth in this paragraph.

      12.     In August 2015, a representative of Plaintiff advised Castillo in a telephone call that Plaintiff did not believe two patient evaluations for which the Clinic had billed State Farm CPT code 99204 qualified for that level of evaluation, and, therefore, they were being down coded to, and paid at CPT code 99203. Castillo responded by stating that the Clinic disagreed. After Plaintiff

paid for CPT code 99203 evaluations, the Clinic served Plaintiff with statutory demand letters on the claims as a condition to filing lawsuits demanding additional PIP benefits for these evaluations. [Doc. 71-1, pp. 286-298; 416-429] This is consistent with the Clinic's policy of suing Plaintiff every time it does not pay PIP benefits based on the full amount of the Clinic's charges for CPT codes 99204, 99214, 99215, 95851, and 76140. [Doc. 71-1, pp. 261, 273-274]

13. The Clinic only included Feijoo's typewritten report summarizing his evaluations, and no other records, with the bills submitted to Plaintiff. [Doc. 71-1, pp. 101-103; Doc. 72-1, p. 5, ¶ 16]; [Doc. 66-8, pp. 24–26]

14. – 17. Plaintiff does not dispute the facts set forth in these paragraphs.

18. The evidence cited by Defendants in support of this paragraph does not support its statement that Plaintiff's 2011 project involved concerns regarding CPT code 99204. [Depo. of J. Fuller, pp. 20-21]

19. This deposition does not involve, or provide any information regarding, any claim, medical service, or medical bill at issue in this case. [Doc. 72-1, p. 9]; [Affidavit of Jennifer Fuller, pp. 1–2, a copy of which is attached hereto is as Exhibit "A."]

20. Plaintiff incorporates herein by reference its response to paragraph 19. [Ex. A, pp. 1–2] Feijoo's qualified answer of "At this time, no" leaves open the possibility of his using a device in future ROM testing. [Doc. 66-6, p. 27, lns. 7-11]

21. Plaintiff incorporates herein by reference its response to paragraph 19. [Ex. A, pp. 1–2] Feijoo did not testify "that he believed it appropriate to bill CPT code 76140" regardless of whether he reviewed x-ray films or reports in the testimony cited by Defendants. Feijoo decides which CPT codes his Clinic bills for its medical services, and he is legally responsible for the

Clinic's compliance with laws relating to medical billing. [Doc. 71-2, p. 42, 251, 351]

22. Plaintiff incorporates herein by reference its response to paragraph 19. [Ex. A, pp. 1–2] Feijoo did not testify "that he believed it was appropriate and it was his general practice to bill CPT code 95851 separately from CPT code 99204." The bill at issue included a charge for CPT code, 99244, not 99204. [Doc. 66-6, p. 40] Feijoo stated that he relied on the "billing company," Castillo, in deciding to bill 95851 with 99244. [*Id.*, pp. 39-40, 42]

23. This deposition does not involve, or provide any information regarding, any claim, medical service, or medical bill at issue in this case. [Doc. 72-1, p. 9]; [Ex. A, pp. 1–2]

24. Plaintiff incorporates herein by reference its response to paragraph 23. The deposition testimony cited by Defendants does not support the statements in this paragraph. [Ex. A, pp. 1–2]

25. This deposition does not involve, or provide any information regarding, any claim, medical service, or medical bill at issue in this case. [Doc. 72-1, p. 9]; [Ex. A, pp. 1–2]

26. Plaintiff incorporates herein by reference its response to paragraph 25. [Ex. A, pp. 1–2] Feijoo did not testify that "he always measures range of motion without using any sort of device [or] that he prepares no separate report regarding ROM." Instead, Feijoo testified that with regard to the specific patient at issue in the PIP suit, he did not have a separate report for the ROM testing. [Doc. 66-8, p. 17] Feijoo also did not discuss his use of a device, or not, in the cited testimony. [*Id.*] Feijoo also provided evasive or incomplete, and contradictory, answers regarding his ROM testing and related documentation. [*Id.*, lns. 19–25; *id.* at 18, lns. 1–11]

27. Plaintiff incorporates herein by reference its response to paragraph 25. [Ex. A, pp. 1–2] The cited testimony contains no discussion of the Clinic's coding for Feijoo's x-ray or MRI

reviews. [Doc. 66-8, p. 20]

28. Plaintiff incorporates herein by reference its response to paragraph 25. [Ex. A, pp. 1–2] The cited testimony does not support the statements in this paragraph. [Doc. 66-8, p. 51] Additionally, Feijoo disclaimed any knowledge regarding the CPT codes the Clinic billed for this particular patient, and the Clinic billed 99244, not 99204, for the patient. [Doc. 66-8, p. 28]

29. This deposition does not involve, or provide any information regarding, any claim, medical service, or medical bill at issue in this case. [Doc. 72-1, p. 9]; [Ex. A, pp. 1–2]

30. Plaintiff incorporates herein by reference its response to paragraph 29. [Ex. A, pp. 1–2] Castillo confirmed that her deposition testimony related only to "this patient, this CPT code, this office visit" and testified that the CPT codes the Clinic bills for other patients and other office visits will vary because "[a]ll patients have different things." [Doc. 66-9, p. 27] Further, the cited testimony is not admissible at trial because it is not relevant to the claims at issue, and Plaintiff "handles, adjusts, and processes each PIP claim it receives on its individual merits." [Affidavit of Timothy Banahan, p. 2, ¶ 6, a copy of which is attached hereto as Exhibit "B"]

31. The content of the expert opinion, legal opinion, and draft complaint (*i.e.*, the "lawsuit") referenced in this paragraph are privileged and work product and are not in evidence.

32. Plaintiff does not dispute the facts set forth in this paragraph.

33. None of the referenced depositions involve any claim, evaluation, or medical bill at issue in this case. [Ex. A, pp. 1–2] Further, Defendants have not filed the referenced depositions as evidence in this case.

34. Plaintiff did not "reignite pursuit of Dr. Feijoo." Plaintiff opened a new project regarding Defendants to investigate potential issues of concern identified in late 2015. [Doc. 47,

p. 2, ¶ 3; Depo. of J. Fuller, pp. 90–91, 102–103, 118]

35.     The cited document does not support that it was "implemented company-wide throughout 2014-2015 in order to standardize the MCIU Projects process." [Doc. 66-12]. Plaintiff does not use SIU Analytics for "re-discovering dormant projects," rather data from "potential, current, or closed projects" can be a source of information for the "identification of potential projects." [*Id.*]

36.     Plaintiff did not reopen its 2011 project and instead opened a new project regarding Defendants to investigate potential issues of concern identified in late 2015. [Doc. 47, p. 2, ¶ 3; Depo. of J. Fuller, pp. 90–91, 102–103, 118]

37. – 38. Plaintiff does not dispute the facts set forth in this paragraph, except that "lawsuit" should instead be "draft complaint."

39.     The cited document does not support the statements in this paragraph. [Doc. 66-15].

40.     Ms. Fuller testified that she "suspected" Defendants were improperly billing the referenced CPT codes, not that she "had formed the opinion" Defendants were doing so. [Depo. of J. Fuller, pp. 46-47] Ms. Fuller later confirmed that she had only "potential issues of concern of fraud" in January 2016 because she had only reviewed five files at that point. [*id.* p.90, lns. 11-15]

41.     Plaintiff incorporates herein its response to paragraph 40 by reference. Ms. Fuller testified there appeared to be a problem or "issue" with Defendants' billing of the 95851 code that appeared to date back to 2011, not that this was her "opinion." [Depo. of J. Fuller, p 56, lns. 3-25]

42.     Plaintiff does not dispute the facts set forth in this paragraph.

43.     Ms. Fuller testified that the 2011 project was not reopened in 2015, and the 2015

project was opened as an independent project. [Depo. of J. Fuller, pp. 90-91, 102-103, 118]

44. Plaintiff does not dispute that the referenced memorandum includes the quoted statement.

45. Plaintiff does not dispute that the referenced memorandum includes the quoted statement.

46. Plaintiff does not dispute the facts set forth in this paragraph except that the document does not support the contention that it, itself, will actually be provided to any "Project Claim Specialist(s)."

47. Plaintiff does not dispute the facts set forth in this paragraph.

48. Plaintiff does not dispute that claims were assigned to the referenced party. Defendants' characterization of these assignments as "steadily" belies the limited timeframe, *i.e.*, March 2016 to May 2016, as set forth in the cited document. Further, Defendants' Exhibit "C" does not support the facts set forth in this paragraph.

49. Plaintiff does not dispute that there were meetings between the referenced parties over time. Defendants' characterization of these meetings as occurring "continuously" is ambiguous and incorrect under the word's generally understood meaning. Further, Plaintiff "handles, adjusts, and processes each PIP claim it receives on its individual merits." [Ex. B, p. 2, ¶ 6]

50. Ms. Varela was shown a few claims during her deposition. The cited testimony does not support Defendant's statement that the Ms. Varela's managers believed the codes submitted by Dr. Feijoo were incorrect, or that she permitted the payments. Further, Ms. Varela testified that Plaintiff paid the Clinic's claims as a business decision due to the threat of litigation.

[Doc. 66-17, pp. 29–34, 138]. Further, Plaintiff "handles, adjusts, and processes each PIP claim it receives on its individual merits," so comparisons of payment decisions between different claims are not valid. [Ex. B, p. 2, ¶ 6]

51. Ms. Varela testified that each of the Clinic's post-suit PIP claims are still being handled on an individual basis based on its individual merits despite Plaintiff's filing of this lawsuit. [Depo. of L. Varela, pp. 156–157; Ex. B, p. 2, ¶ 6]

52. The evidence cited by Defendants in support of this paragraph (*i.e.*, "Ex. D, Fuller-D, p. 72") does not support the statements in the paragraph.

53. Plaintiff alleges that every instance of the Clinic's billing of CPT codes 99204, 99214, 99215, 95851, and 76140 was false, misleading, and deceptive.

54. - 57. Plaintiff does not dispute the facts set forth in these paragraphs.

58. Plaintiff incorporates herein by reference its response to paragraph 13. [Doc. 71-1, pp. 101-103; Doc. 72-1, p. 5, ¶ 16]

59. Plaintiff does not dispute the facts set forth in this paragraph.

60. Mr. Miscoe's expert report is inadmissible hearsay and contains improper opinions purporting to interpret Florida law that are contrary to opinions issued by Florida courts. *Diamond Resorts Int'l, Inc. v. Aaronson*, 378 F.Supp. 3d 1143 (M.D. Fla. 2019)(holding that the expert report is hearsay); *Johnston v. Borders*, Case No. 6:15-cv-936-Orl-40DCI, 2018 WL 4215027, at *1 (M.D. Fla. Sept. 4, 2018)(holding expert reports are hearsay pursuant to Fed. R. Evid. 801(c)); *Jones v. Royal Caribbean Cruises, Ltd.*, No. 12-20322-CIV, 2013 WL 8695361, at *1, 2 (S.D. Fla. Apr. 4, 2013)(holding that a testifying expert's report is not admissible).

61. Plaintiff "received over 50,000 PIP claims submitted by individuals annually …"

during the years of 2014 to 2018. [Ex. B, p. 2, ¶ 5]

62. Between 2014 and 2018, "approximately 1,000,000 medical bills for PIP benefits passed through State Farm Mutual's claims system annually." [Ex. B, p. 2, ¶ 5].

63. Between 2014 and 2018, Plaintiff "employed hundreds of individual claim handlers, in multiple states, who processed PIP claims submitted in Florida." [Ex. B, p. 2, ¶ 5]

64. Feijoo believes a permanency (or impairment) rating, which he prepares at his final evaluation, is legally necessary for patients with "a certain disability" and for "[a] litigation between different parties. [Doc. 66-8, p.21–24]

Dated: July 12, 2019.

                                Respectfully submitted,

/s/ *Kenneth P. Hazouri*
Kenneth P. Hazouri, B.C.S. (Fla. Bar No. 019800)
Trial Counsel
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
Andrew S. Ballentine (Fla. Bar No. 118075)
aballentine@dsklawgroup.com
skuharske@dsklawgroup.com
deBeaubien, Simmons, Knight,
 Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone:  (407) 422-2454
Attorneys for Plaintiff