**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No.: 18-cv-23329-RAR**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation,

      Plaintiff,

v.

MANUEL V. FEIJOO,
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

      Defendants.

---

**DEFENDANTS' REPLY TO STATE FARM'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I.**  **STATE FARM'S SUBJECTIVE MENTAL STATE OR LACK OF RELIANCE IS
IRRELEVANT TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

State Farm's Response to Defendants' Motion for Summary Judgment ignores the actual

basis of Defendants' Motion.

Defendants do not seek Summary Judgment because State Farm did not actually rely on the

codes included in any bills submitted by Dr. Feijoo, nor is the Motion based on what State

Farm's subjective state of mind was when it paid Dr. Feijoo's bills.  Rather, Defendants seek

Summary Judgment based entirely on the information which was indisputably provided to State

Farm before it issued any payment.

Simply put, no consumer acting reasonably with the same information State Farm had could

possibly have been deceived by any code submitted by Dr. Feijoo from August of 2014 through

August of 2018, and the two cases relied upon by State Farm in its Response fully support

Defendants' argument.

In Carriuolo v. Gen. Motors Co., 823 F.3d 977, 985 (11th Cir. 2016), a class of plaintiffs asserted FDUTPA claims because GM had placed "Monroney" window stickers on Cadillac CTS models which falsely represented that safety ratings had been applied to aspects of the car's performance. The Court found that it was unnecessary under FDUTPA for any plaintiff to establish that they had actually relied on the information on the sticker in deciding to purchase a Cadillac CTS. Id. at 986 ("Because every class member here purchased or leased the same model vehicle with the same Monroney sticker attached, it does not matter that there may have been differences among the class members' subjective reliance").

But contrary to State Farm's argument in response to Defendants' Motion for Summary Judgment, the holding of Carriuolo is irrelevant to the issue presented by defendants' Motion. This is because the only information each plaintiff in Carriuolo had was that which was contained on the window sticker containing the alleged false statements. That is the limited factual "circumstance" evaluated by the Court in deciding whether a consumer acting reasonably could have been deceived by the statements on the sticker. Because the statements on the Monroney sticker were the only information the consumers had, the Court found that in that limited circumstance, a consumer acting reasonably could have been deceived.

But the circumstances in which State Farm issued payments to Dr. Feijoo could not be more different than those which confronted the Court in Carriuolo. In order for the circumstances of Cariuolo to be similar to those in this case, a separate window sticker stating that no safety ratings had actually been performed would have to have been placed *directly next* to each sticker falsely claiming that safety ratings had been done.

But to make the circumstances truly similar, prior to purchasing a Cadillac CTS, each customer would also have to have hired multiple law firms to depose the National Highway

Traffic Safety Administration official responsible for issuing the safety ratings (and his staff), specifically for the purpose of determining whether safety ratings had actually been issued and, been told truthfully in 13 separate depositions that they had not. Each Cadillac CTS customer, prior to purchase, would further have to have reviewed the safety ratings of hundreds of other Cadillac CTS models sold by that dealer and determined that no safety ratings had in fact been issued. Lastly, each Cadillac CTS customer, prior to purchase, would have to have multiple lawyers and experts tell them that no safety ratings had been issued.

It would be absurd in *those* circumstances to suggest that any Cadillac CTS purchaser, acting reasonably, could have been deceived by the sticker indicating that safety ratings had been issued.

Also inapposite is State Farm's reliance on State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC, 315 F. Supp. 3d 1291, 1309–10 (S.D. Fla. 2018). Therein, the Court denied summary judgment as to State Farm's FDUTPA claim on the grounds that State Farm's actual reliance was irrelevant, citing to Carriuolo: "Indeed, a "party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Carriuolo*, 823 F.3d at 984".

But Dr. Feijoo does not argue otherwise. Just as in Cariuolo, the circumstances at issue in Performance Orthapaedics were dramatically different than the circumstances of this case. The Defendants in Performance Orthapaedics argued that State Farm's FDUTPA claim should be dismissed because State Farm had essentially *figured out on its own* the secret fee arrangement at issue and adjusted its claims in a manner which avoided any overpayment, thus eliminating its claim that it had been caused any actual damages. Id. at 1309 ("Defendants argue that State

Farm failed to establish causation because State Farm knew of the Arrangement and adjusted its claims accordingly.").

It was this specific argument, namely that the knowledge State Farm had gained on its own and actions it had taken as a result negated its claim of actual damages, which the Court rejected, stating that "State Farm's knowledge has no bearing on the FDUTPA claim." Id. at 1310.

But the circumstances and argument raised in Performance Orthapaedics are the exact opposite of the circumstances and argument presented in this case.  The entire basis for alleging a "deceptive" practice in Performance Orthapaedics was that the defendants had entered into a *secret* fee arrangement of which State Farm was allegedly unaware and thus suffered damages in paying amounts it otherwise would not have had the agreement been publicized.  State Farm admits this in its Response at pg. 7 wherein it states that the failure of the defendants in Performance Orthapaedics to disclose the fee arrangement is what constituted the FDUTPA violation in that case.

This is, of course, the exact opposite of what occurred in this case.  In order for the circumstances of Performance Orthapaedics to be similar to the facts of this case, the defendants in that case would have had to attach to every bill a full description of the secret fee arrangement at issue.  The defendants there would have had to offer 13 different depositions in which they testified truthfully and completely about all aspects of the fee arrangement before State Farm paid any bill.  State Farm would have to have hired multiple law firms and experts over the course of several years to opine on how the fee arrangement impacted State Farm's obligation to pay any bill before any bill was paid.

By State Farm's own admission, had the defendants in Performance Orthapaedics actually disclosed the fee arrangement, State Farm would not have had any basis for a FDUTPA claim.

With this admission, State Farm concedes that the information provided to a consumer prior to a payment is what determines whether a consumer acting reasonably under the circumstances would have been deceived.

State Farm further concedes that a consumer's "advance knowledge" of information about a transaction falls under the objective analysis of whether a consumer acting reasonably would have been deceived.  (*See* State Farm's response, ECF #85, pg. 11).

Despite these concessions, State Farm nevertheless argues, illogically, that all of the information State Farm was indisputably provided prior to issuing any of the payments to Dr. Feijoo, which information State Farm itself claims contradicted the correctness of the codes at issue in every instance, *should not even be considered*.

State Farm's argument is not only at odds with the law, it is at odds with its own argument. Dr. Feijoo is not seeking summary judgment on State Farm's FDUTPA claim because of what State Farm *knew*.  Rather, he is seeking summary judgment based on what State Farm was undeniably *told* prior to issuing any payment to Dr. Feijoo.

### A.  State Farm Would Have *Any* Alleged Violation of FDUTPA Qualify as A Per Se Violation

As predicted by Defendants' Motion for Summary Judgment, State Farm's FDUTPA *per se* claim relies entirely on the idea that Florida Statute §627.732(10) does not require a showing of fraud or intentional misconduct.  State Farm takes this statute's broadened definition of "knowingly" and argues that it allows any allegation of a FDUTPA violation too be converted into a *per se* violation with no further facts.

State Farm points to the opinion of its own expert that Dr. Feijoo's codes were incorrect and argues that based on this opinion alone, a "a jury could reasonably conclude that Feijoo

fraudulently or 'knowingly' (as defined in Florida Statute §627.732(10)) engaged in this systematic course of deceptive conduct." (*See* ECF #85, pg. 17).

In other words, the accusation of a deceptive practice itself establishes a triable issue of fact that the practice constituted a *per se* violation as well. This is clearly not the law else there would be no need to distinguish a "traditional" FDUTPA claim from a *per se* claim.

## II.     STATE FARM'S VOLUNTARY PAYMENT ARGUMENT FLIES IN THE FACE OF ITS OWN AMENDED COMPLAINT

State Farm argues in opposition to Defendants' Voluntary Payment defense that State Farm "did not have full knowledge that the Clinic's bills were deceptive when it paid them because it did not have access to the Clinic's complete medical records for Feijoo's evaluations." (*See* ECF #85, pg. 21). This argument, however, flies in the face of every aspect of State Farm's individual claims handling and its extensive Projects, wherein the documents reveal that State Farm had all of the information it needed in every instance to form the conclusion that the records did not support the codes billed. (*See* Def. SOF, ¶39-54).

State Farm's own Amended Complaint specifically avers that not a single one of the records submitted by Dr. Feijoo supported the code billed for the services described by the record. (*See* ECF #60, ¶66, 69, 72, 77, 80). This accusation, of course, was made *prior* to any discovery in this case and was based solely upon the records Dr. Feijoo had submitted in each claim. State Farm clearly had full knowledge of the facts it is relying on to call Dr. Feijoo's bills deceptive prior to issuing any payment.

## III.     <u>CONCLUSION</u>

For all of the foregoing reasons and those stated in Defendants' Motion for Summary Judgment, it is respectfully requested that Defendants' Motion be granted.

RESPECTFULLY SUBMITTED,

**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email:Pivniklaw@aol.com
        Cdiezpivniklaw@aol.com
By: /s/ Jerome A. Pivnik
Jerome A. Pivnik, Esq.
Fla. Bar No.: 400408

**Andrew P. Baratta, Esq.**
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
Tel: 215-914-2222
Email: Andrew@Barattarussell.com
(*pro hac vice*)

**Kenneth B. Schurr, Esq.**
Law Offices of Kenneth B. Schurr
2030 S. Douglas Rd., Ste. 105
Coral Gables, FL 33134-4615
Tel: 305-441-9031
Email: kbsservice@schurrlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 17, 2019, I have filed the foregoing document with the Clerk of Court using the CM/ECF system and that a copy was electronically served upon the following in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:  Kenneth P. Hazouri, Esq., and Andrew S. Ballentine, Esq., Mantzaris and Neal, LLP, 332 North Magnolia Avenue, Orlando, FL 32801. (Khazouri@dsklawgroup.com, ABallentine@dsklawgroup.com, Lquesada@dsklawgroup.com, Lmorales@dsklawgroup.com).

RESPECTFULLY SUBMITTED,

**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email:Pivniklaw@aol.com
      Cdiezpivniklaw@aol.com
By: /s/ Jerome A. Pivnik
Jerome A. Pivnik, Esq.
Fla. Bar No.: 400408

**Andrew P. Baratta, Esq.**
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
Tel: 215-914-2222
Email: Andrew@Barattarussell.com
(*pro hac vice*)