UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:18-cv-23329

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,

v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants.
_____/


**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION IN LIMINE AND INCORPORATED MEMORANDUM OF LAW**


| | |
|---|---|
| KENNETH P. HAZOURI | BART R. VALDES |
| Trial Counsel | Florida Bar Number: 323380 |
| Fla. Bar No. 019800 | bvaldes@dsklawgroup.com |
| khazouri@dsklawgroup.com | de Beaubien, Simmons, Knight, |
| lquezada@dsklawgroup.com | Mantzaris & Neal, LLP |
| ANDREW S. BALLENTINE | 609 West Horatio Street |
| Fla. Bar No. 118075 | Tampa, Florida 33606 |
| aballentine@dsklawgroup.com | Telephone: (813) 251-5825 |
| skuharske@dsklawgroup.com | Facsimile: (813) 254-1063 |
| de Beaubien, Simmons, Knight, | Attorneys for Plaintiff |
| Mantzaris & Neal, LLP | |
| 332 North Magnolia Avenue | |
| Orlando, Florida 32801 | |
| Telephone: (407) 422-2454 | |

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("Plaintiff"), by counsel, hereby files its Reply to Defendants, MANUEL V. FEIJOO, M.D., P.A. (the "Clinic"), and MANUEL V. FEIJOO's ("Feijoo")(collectively, the "Defendants"), Response in Opposition to Plaintiff's Motion in Limine (the "Response") [Doc. 89], and states as follows:

1. <u>Plaintiff's alleged subjective knowledge of Defendants' billing practices is irrelevant to any claim or defense in this lawsuit, and, therefore, the Court should prohibit Defendants from admitting any evidence or making any argument on this subject matter.</u>

Defendants' Response continues to argue that evidence of Plaintiff's subjective mental state should be admitted to show whether a "consumer acting reasonably under the same circumstances would have been deceived by the codes attached to Dr. Feijoo's records." [Doc. 89, § 1, pp. 2-11] These are the same incorrect arguments Defendants have raised in their Motion for Summary Judgment. [Doc. 67] Accordingly, Plaintiff incorporates herein by reference all of its arguments in opposition thereto set forth in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. [Doc. 85]

Defendants' position is that Plaintiff's subjective mental state, including its (alleged) knowledge of the Clinic's deceptive billing practices, is one of the "circumstances" to be considered under when determining if Defendants committed a traditional FDUTPA violation. Put differently, Defendants argue that the hypothetical "reasonable consumer" must be deemed to share Plaintiff's mental state, and to know what Plaintiff subjectively knows about Defendants' billing practices, when determining if the "reasonable consumer" would have likely been deceived by them. This argument impermissibly converts the standard for determining the existence of a traditional FDUTPA violation from an objective standard into a subjective one.

Multiple opinions from the Eleventh Circuit and this Court hold that: a) the determination of whether a FDUTPA defendant's acts are deceptive is based on an objective standard; b) a

2

FDUTPA plaintiff is not required to prove that he or she actually relied on the deceptive trade practice as an element of the FDUTPA claim; and c) the plaintiff's mental state, including his or her knowledge or understanding of the defendant's deceptive acts or practices, is irrelevant to a FDUTPA claim. *Carriuolo v. General Motors Company*, 823 F. 3d 977, 985 - 86 (11th Cir. 2016); *Democratic Republic of the Congo v. Air Capital Group, LLC*, 614 F. App'x 460, 469 - 70 (11th Cir. 2015); *State Farm Mutual Automobile Insurance Company v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1309-10 (S.D. Fla. 2019), *State Farm Mutual Automobile Insurance Company v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1316 (S.D. Fla. 2017); *Guerrero v. Target Corp.*, 889 F. Supp. 2d. 1348, 1354-55 (S.D. Fla. 2012); *Galstaldi v. Sunvest Communities USA*, 637 F. Supp. 2d. 1045 (S.D. Fla. 2009). As explained in *Carriuolo*, Defendants' meritless arguments to the contrary in their Response simply "seek a reliance inquiry by another name." 837 F. 3d at 985.

Defendants also continue to proffer the unpublished decision of *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565 (11th Cir. 2009) in support of their incorrect argument. To the extent *Cold Stone* can be construed as supporting Defendants' arguments, it conflicts with *Carriuolo* and must give way to its binding precedent.

Furthermore, *Cold Stone* did not rule that the franchisees' subjective knowledge (*i.e.*, mindset) of the franchisor's business practices was relevant for determining if the franchisor had violated FDUTPA. *Id.* at 567. Rather, the court ruled that based on detailed information and disclosures in the franchise agreement—the document memorializing and governing the terms of the parties' business relationship—it was "not likely that a consumer acting reasonably would have been deceived by" earlier misrepresentations of the franchisor's agents on the same topics clarified by the franchise agreement. This ruling does not support Defendants' incorrect argument that the

3

subjective knowledge Plaintiff allegedly acquired by deposing Feijoo and his office manager in lawsuits that do not involve PIP claims or medical bills at issue in this case, or through independent investigations of Defendants, is relevant and admissible in this FDUTPA action.

In this regard, Feijoo performed the patient evaluations at issue in this case behind closed doors in his office. By their very nature, those evaluations should vary from patient to patient, as dictated by their individual conditions and medical needs. The only means by which State Farm Mutual could possibly determine and know if the CPT code charges in the Clinic's bills accurately (or inaccurately) described Feijoo's evaluations of each particular patient is to review a complete set of medical records of each evaluation. The Clinic did not, however, submit its complete medical records for each evaluation with its medical bills. [Doc. 71-1, pp. 101-103; Doc. 72-1, p. 5, ¶ 16] It only submitted the reports prepared by Feijoo summarizing the evaluations. [Doc. 71-1, pp. 101-103] Without the complete medical charts, State Farm Mutual could not possibly know if Feijoo had performed the services described by the CPT codes upon receiving the bills because other records in the charts could confirm that he did so. In this regard, the law significantly penalizes PIP insurers for making incorrect claims decisions based on incomplete information. *See*, *e.g.*, *United Auto. Ins. Co. v. Rodriguez*, 808 So. 2d 82, 85 - 86 (Fla. 2001).

These facts establish that on their best day, Defendants' argument is that State Farm Mutual should have suspected the Clinic's bills were deceptive upon receiving them, and then performed an investigation that would have confirmed its suspicion. Acceptance of this argument would impose on State Farm Mutual a non-existent burden of proving reliance in its FDUTPA claim *that is even more onerous* than the actual burden of proving reliance in a fraud claim. As explained by the Florida Supreme Court, the plaintiff in a fraud claim "may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation." *Besett v.*

*Basnett*, 389 So. 2d 995, 998 (Fla. 1980); *see also Butler v. Yusem*, 44 So. 3d 102 (Fla. 2010)("Justifiable reliance is not a necessary element of fraudulent misrepresentation."). Unlike the plaintiff in a fraud claim, State Farm Mutual does not have to prove it relied on the Clinic's deceptive CPT codes at all because, as Defendants have conceded, reliance is not an element of its FDUTPA claim. Acceptance of Defendants' incorrect argument would eviscerate this fundamental legal doctrine and, perversely, establish a requirement of proving reliance in a FDUTPA claim that is even more difficult to prove than the reliance element of a fraud claim.

In sum, any subjective knowledge of the Clinic's deceptive billing practices possessed by Plaintiff when it paid the Clinic's bills is irrelevant to, and has no bearing on, its FDUTPA claim. The Court should, therefore, prohibit Defendants from admitting any evidence or making any remarks or argument on this subject matter at trial.

> 2. <u>The Court should preclude the Defendants from asserting or arguing that Plaintiff selected only certain claims for this litigation.</u>

As explained in Plaintiff's Motion in Limine, Defendants should not be permitted to introduce evidence or otherwise insinuate that State Farm Mutual only filed suit on a certain group of claims but not all claims from 2014 to 2018. [Doc. 73, § 2, pp. 6] In opposition to this explanation, Defendants baldly state "[t]hat there were numerous claims submitted to State Farm in which it admits the codes submitted by Dr. Feijoo were correct…" [Doc. 89, pp. 11-12] This statement is false, which is why Defendants have not identified any such claims or foundational evidence that would tend to prove their existence.

The only PIP claims submitted by Defendants and paid by Plaintiff from 2014 – 2018 that Plaintiff intended to exclude from its FDUTPA claim for damages are those claims that were the subject of PIP suits filed by Defendants before Plaintiff filed this action. Based on the "principle of priority," Plaintiff excluded these PIP claims from its FDUTPA claim out of respect for the

other courts' first-in-time exercise of jurisdiction over them. *See*, *e.g.*, *Inphynet Contracting Services, Inc. v. Matthews*, 196 So. 3d 449, 463-64 (Fla. Dist. Ct. App. 2016); *Sorena v. Gerald J. Tobin, P.A.*, 47 So. 3d 875, 877-78 (Fla. Dist. Ct. App. 2010). Defendants' false assertion that Plaintiff has admitted the propriety of Defendants' CPT codes at issue in those PIP suits vividly demonstrates the danger of allowing them to present evidence at trial of PIP claims that are not at issue in this action.

> 3. – 4. <u>The Court should preclude Defendants from referring to Plaintiff's net worth, its size, financial resources or market influence, or the parties' respective financial positions.</u>

In cursory fashion, Defendants argue they should be allowed to make references to, and admit evidence of, Plaintiff's net worth, financial resources, or size in order to "contradict the arguments State Farm will raise at trial that it did not have the resources or ability to meaningfully review Dr. Feijoo's bills before issuing payment." [Doc. 89, p. 12] This argument is a baseless pretext for attempting to admit evidence on these irrelevant topics in an attempt to inflame the jury's passions against Plaintiff as a "big business" and gain sympathy for Feijoo as "the little guy." Defendants have not cited any legal authority in support of their incorrect position. This omission results from the fact that the unanimous weight of authority, including the opinions cited in Plaintiff's Motion in Limine, plainly establishes the inadmissibility of evidence of Plaintiff's net worth, financial resources, or the respective financial positions of the parties. [Doc. 73, §§ 3, 4, pp. 6-8]

> 5. <u>The Court should prohibit Defendants from making any argument that Feijoo is not personally liable of Plaintiff's FDUPTA claim, or that his liability is any manner limited, based on the amount of monies Feijoo personally received (or did not receive) from Plaintiff's payments of the subject PIP claims submitted by the Clinic.</u>

Defendants' Response does not contest Plaintiff's position that Feijoo should be prohibited

6

from arguing at trial that he is not personally liable on Plaintiff's FDUTPA claim, in whole or in part, because he did not receive monies or derive a personal financial benefit or receive money from Plaintiff's payment of the Clinic's PIP claims at issue in this case. Feijoo's personal liability on Plaintiff's FDUTPA claim is based on his direct participation in the acts violating FDUTPA (*i.e.*, submission of the deceptive medical bills), not his personal sharing in the proceeds derived from the FDUTPA violation. *E.g.*, *Sundance Apartments I, Inc. v. General Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1222 (S.D. Fla. 2008); *Runton v. Brookdale Senior Living, Inc.*, No. 17-60664-civ-Altonaga/Goodman, 2018 WL 1057436, at *5 (S.D. Fla. Feb. 2, 2018); *Rollins, Inc. v. Heller*, 454 So. 2d 580, 582 (Fla. Dist. Ct. App. 1984). Accordingly, Feijoo should be prohibited from arguing that his personal liability on Plaintiff's FDUTPA claim is in any manner limited by the amount of money he personally received (or did not receive) from Plaintiff's payments on the subject PIP claims, or admitting any evidence in support of such an argument.

6. <u>The Court should preclude Defendants from arguing that Plaintiff does not have valid claims because no criminal charges have been brought against Feijoo.</u>

Defendants argue they should be allowed to present evidence of the absence of criminal charges filed against them if Plaintiff argues Defendants have committed *per se* FDUTPA violations by violating Florida Statute §§ 817.234, 626.9541 or 627.736. [Doc. 89, § 6, p. 13] Defendants state that they "do not intend to argue lack of criminal prosecution unless State Farm [Mutual] opens the door to such an argument by referring to any act of Dr. Feijoo's as a criminal act or as violative of a criminal statute." [*Id.*]

Florida Statutes §§ 626.9541 and 627.736 are not criminal statutes. Accordingly, Defendants' argument has no foundation as it relates to these statutes. As regards Florida's insurance fraud statute, Florida Statute § 817.234, this Court has previously rejected the same argument Defendants are making here:

7

> Plaintiffs argue that the lack of criminal investigation or prosecution is irrelevant to the issues to be decided at trial, and that the probative value of this evidence is outweighed by the risk of unfair prejudice. Defendants contend that Plaintiffs have opened the door to the introduction of such evidence at trial by making reference to criminal statutes in their Complaint and by referring to the acts committed by the Defendants as felonies.
>
> I find that Defendants' lack of prosecution or government authorities' decision related to the prosecution or lack of prosecution of Defendants is irrelevant to the issues to be tried in this case and unfairly prejudicial.

*State Farm Mut. Auto. Ins. Co. v. Romano,* No. 12-20438-CIV, 2013 WL 12061865, at *2 (S.D. Fla. Oct. 30, 2013)(record citations omitted) This Court should reach the same conclusion and prohibit Defendants from admitting any evidence regarding, or making any reference to, the absence of criminal proceedings against them at trial.

7. <u>The Court should preclude the Defendants from introducing any evidence pertaining to or referencing any case evaluation tools or computer programs used by Plaintiff in handling claims.</u>

In response to Plaintiff's motion in limine on this subject matter, Defendants assert that Plaintiff's computer systems "are so sophisticated" that it could not, or should not, have been deceived by Defendants' billing practices. [Doc. 89, § 7, p. 13] This is the same argument the Eleventh Circuit explicitly rejected in *Democratic Republic*. There, the defendants in a FDUTPA claim argued that the plaintiff was "too sophisticated to fall for [their] deceits." 614 F. App'x at 469. In rejecting this argument, the Eleventh Circuit ruled that it "builds on a flawed understanding of" FDUTPA because it is based on "a subjective standard of deceit." *Id.* at 469 - 70. Defendants' argument is clearly meritless under *Democratic Republic*. *See also State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1316 (S.D. Fla. 2017)(explaining that *Democratic Republic* "has made clear that FDUTPA does not require 'subjective proof of deception' wherein a 'plaintiff could not secure FDUTPA relief' solely because it 'knew the defendant's business well enough to manage the risk.'").

8

Further, Defendants' argument is simply another attempt to admit evidence as to Plaintiff's size, sophistication, or financial resources in order to inflame the jury's passions against Plaintiff as a "big business," and gain sympathy for Feijoo as "the little guy." For all of the above reasons, the existence of Plaintiff's proprietary computer systems, including and not limited to, its fraud management tools is irrelevant to any claim or defense in this lawsuit. Defendants should be prohibited from admitting any evidence or making any remarks regarding them at trial.

8. <u>The Court should not allow Defendants' expert, Michael Miscoe, to personally attack Dr. Jacob and his credibility as Mr. Miscoe has done in his expert report.</u>

While an expert may criticize the methodology of an opposing expert, he or she cannot attack the opposing expert's credibility. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, No. 6:06-CV-1757ORLGJK, 2009 WL 6357793, at *24 (M.D. Fla. Jan. 9, 2009); *Gray v. State of Fla.,* No. 3:06-CV-990J20MCR, 2007 WL 2225815, at *3 (M.D. Fla. July 31, 2007); *United States v. Falcon*, 245 F. Supp. 2d 1239, 1245 (S.D. Fla. 2003) (*citing United States v. Beasley,* 72 F.3d 1518, 1528 (11th Cir.1996)). In his expert report, Defendants' expert, Michael Miscoe, makes multiple improper personal attacks on Plaintiff's expert, Patrick Jacob, M.D.

For example, on page 16 of his report he attacks Dr. Jacob's education on coding issues, and on page 22 he also states "I find it puzzling that Dr. Jacob has such an incomplete understanding of what the CPT Coding Manual actually says..." [Doc. 80-4 at 22]. Mr. Miscoe also states that in his opinion, Dr. Jacob has "change[d] the rules after the fact," and Dr. Jacob "was in the position to make it happen." [Doc. 80-4, pp. 17, 23]. On multiple occasions Mr. Miscoe also accuses Dr. Jacob of "manufacturing requirements" to support his opinions. [Doc. 80-4, p. 19, 22]. These are exactly the types of improper attacks that are prohibited by the governing law, and both Mr. Miscoe and Defendants should not be permitted to make them at trial.

9. <u>Plaintiff continues to preserve and reserve all of its arguments in opposition to the admissibility of testimony from Michael Miscoe and J'Amy Kluender, who Defendants disclosed as expert witnesses on the last day of expert discovery.</u>

Plaintiff continues to reserve and preserve all of its arguments regarding the admissibility of Michael Miscoe's and J'Amy Kluender's testimony pending the completion of any depositions authorized by the Court and disposition of any *Daubert* motions.

## Conclusion

Based on the foregoing, Plaintiff respectfully requests the Court to grant the relief requested in its Motion in Limine and Incorporated Memorandum of Law

Dated this 22nd day of July, 2019.

Respectfully submitted,

*/s/ Kenneth P. Hazouri*
KENNETH P. HAZOURI
Trial Counsel
Fla. Bar No. 019800
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075
aballentine@dsklawgroup.com
lmorales@dsklawgroup.com
deBeaubien, Simmons, Knight,
  Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454
Attorneys for Plaintiff