UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation,

    Plaintiff,
v.

MANUEL V. FEIJOO,
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants.

**SUPPLEMENT TO DEFENDANTS' MOTION FORSUMMARY JUDGMENT BASED ON THE REVELATIONS OF STATE FARM'S 2011 PROJECT DOCUMENTS[1]**

    It is finally apparent why State Farm fought so hard to conceal the facts of its 2011 Feijoo Project from discovery. These documents confirm exactly what information State Farm was given by Dr. Feijoo and eliminate any pretense that the coding in his bills could in any way be considered "deceptive".

    More troublingly, the 2011 Project documents confirm that this entire lawsuit has been a years-long calculated effort to manufacture a FDUTPA claim which meets the jurisdictional requirements of federal court and thus provides an end run around the constraints of Florida's PIP law, which State Farm obviously feels unfairly disadvantages it in billing disputes with doctors (and Dr. Feijoo in particular).

    It is respectfully submitted that the 2011 Project Documents finally connect all of the dots and require Summary Judgment in favor of Defendants.

---

[1] Defendants respectfully incorporate the arguments and facts of this Supplement into their Response to State Farm's Motion for Summary Judgment.

1

I.  **THE 2011 PROJECT DOCUMENTS REVEAL THAT NOT A SINGLE BILL SUBMITTED BY DR. FEIJOO CAN BE CONSIDERED DECEPTIVE UNDER FDUTPA & STATE FARM'S EFFORT TO "FLIP THE SCRIPT" IN FLORIDA**

Attached as Exhibit "A" to Defendants Supplemental Statement of Facts (and filed under seal) is the "Project Scope Memo" of State Farm's 2011 Feijoo Project. Attached as Exhibit "B" to Defendants Supplemental Statement of Facts (and filed under seal) is the "Multi-Claim Investigation Preliminary" report from the 2011 Project. Both confirm that *since their depositions in 2011*, Dr. Feijoo and his billing manager have been explaining truthfully to State Farm exactly how and why they apply CPT codes 99204, 99214, 99215, 76140, and 95851 to the services described in their reports.

Contrary to the arguments offered in Response to Defendants' Motion for Summary Judgment (which State Farm was only able to manufacture by concealing the 2011 Project documents), the depositions provided to State Farm by Dr. Feijoo and Ms. Castillo in 2011, 2012, 2013, 2016, and 2017, and more importantly, each record submitted by Dr. Feijoo in each claim at issue in this case, contained complete and accurate information about Dr. Feijoo's use of each code alleged in this case to have been "deceptive" under FDUTPA.

In her November 7, 2011 Multi-Claim Investigation Preliminary report (to the same State Farm SIU executive who later oversaw the 2015 Feijoo Project), State Farm Special Investigator Stephanie Rigetta detailed for State Farm management the 2011 depositions of Dr. Feijoo and "the PWTMK" (Person with the Most Knowledge), Annie Castillo. Ms. Rigetta detailed their testimony explaining exactly how the practice applied codes 99204, 76140, and 95851. See Ex. "B", Bates pg. 473870.

Specifically, Ms. Rigetta related to State Farm management Dr. Feijoo's testimony that "he reviews the x-rays report and not the x-ray films" and that "noting the patients ROM or

2

rotation in his record and reading the radiology report of the patient's xray are both part of his examination that takes an hour." Id.

State Farm's accusations in its Amended Complaint filed on August 16, 2018 are that Dr. Feijoo's use of code 95851 was "deceptive" because ROM testing was part of his examinations; that his use of code 76140 was "deceptive" because he reviewed x-ray review reports rather than the films themselves; and further that both codes were "deceptive" because he performed both as part of his E&M coded examinations. See ECF Doc 60-Amended Complaint, ¶76-80. In addition, the Amended Complaint alleges that Dr. Feijoo "uniformly documented" in "every instance" that he was not conducting his examinations as comprehensively as State Farm believed necessary, nor conducting separate ROM exams, nor reviewing x-ray films. Id. ¶66, 69 & 72.

The 2011 Project Documents reveal indisputably that State Farm was told, directly by Dr. Feijoo exactly how he was applying the codes at issue in this case. The Amended Complaint itself states that his records uniformly documented exactly what he actually did with each patient. Whether one believes Dr. Feijoo and his expert or State Farm and its expert that Dr. Feijoo's manner of coding was *correct*, it is now beyond any dispute that no single code ever submitted by Dr. Feijoo can possibly be considered *deceptive*.

1. **We Now Know Indisputably What State Farm was Told *In Every Instance***

Forget what State Farm *actually knew* and *actually did*. Despite its best efforts to conceal the information, both are now beyond obvious.[2] State Farm's *subjective* mindset is irrelevant to

---

[2] Clearly State Farm has been looking to manufacture this lawsuit since at least August of 2011. State Farm's plan of action upon receiving Ms. Rigetta's reports included continuing to following up "with defense counsel", "continue to participate and assist in discovery on various individual suit files", and "[d]iscuss potential affirmative litigation upon additional presentation of data." Id. at pg. 473871. After involving State Farm management, the plan also included "work[ing] with line unit defense counsel" and obtaining information "from individual suit files

3

determining whether the codes submitted by Dr. Feijoo can be considered a "deceptive practice" under FDUTPA. The critical analysis is what information State Farm was given and whether a consumer, acting reasonably in the same circumstances, could have been deceived by any code in light of this information.

Defendants will not rehash the arguments of its Motion for Summary Judgment and Reply to State Farm's Response thereto. But in light of the revelations made by State Farm's 2011 Project file documents, it is worth emphasizing that in order to establish a deceptive practice under FDUTPA, State Farm must prove "probable, *not possible*, deception that is 'likely to cause injury to a reasonable relying consumer.'" Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281, 1284 (11th Cir. 2007), *citing* Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen., 761 So.2d 1256, 1263 (Fla.Dist.Ct.App.2000) (emphasis added). *See also* Maor v. Dollar Thrifty Auto. Grp., Inc., 303 F. Supp. 3d 1320, 1327–28 (S.D. Fla. 2017)("This standard "requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.").

In evaluating objectively whether deception was "probable," the Court must consider the specific circumstances under which the plaintiff itself was operating when it made the disputed payments. For example, in Democratic Republic of the Congo v. Air Capital Grp., LLC, 614 F. App'x 460, 470 (11th Cir. 2015), the objective evaluation of deceptiveness required analysis of "the *DRC's* circumstances."

Given the revelations of the 2011 documents, State Farm cannot possibly establish "probable" deception.

---

to *further support our evidence and goals*." Id. at pg. 473872 (emphasis added). State Farm management confirmed that it was "good with proceeding as outlined." Id.

The Democratic Republic of Congo case is pointed to by State Farm as the most authoritative on how the Court should analyze deceptiveness. Therein, the 11th Circuit cited Millenium Communications, *supra*., and Cold Stone Creamery, Inc. v. Lenora Foods I, LLC, 332 Fed.Appx. 565, 567–68 (11th Cir.2009), as two cases in which courts appropriately decided that given the representations made by the defendant in each case, no consumer acting reasonably in *the same circumstances* could have been deceived.

Defendants incorporate by reference the discussion of the Cold Stone case in their Motion for Summary Judgment and will not torture the Court by repeating it here, but the Millennium Comunications case is also directly on point. Therein the Court held that the representations of the Defendant could not be considered deceptive because the defendant did not actually make any false statements nor conceal any information from the consumer. Id. at 1263-64. In short, the Court in Millenium Communications found that Plaintiff could only establish *possible* deception, and that simply was not enough.

It is now indisputable in this case that Dr. Feijoo never at any point made a single false statement nor did he conceal any information from State Farm. Every time Dr. Feijoo represented to State Farm that he had conducted an Examination or Re-Examination, it was *true*. Every time Dr. Feijoo represented that he had reviewed x-ray reports, it was *true*. Every time Dr. Feijoo represented that he had conducted Range of Motion testing, it was *true*. Moreover, in each instance, the documentation he produced in each instance *truthfully* described exactly what he had done.[3]

State Farm's case is not that Dr. Feijoo did not perform the services exactly as his testimony and records described them. Rather, State Farm's accusation is that Dr. Feijoo was

---

[3] The truthfulness of Dr. Feijoo's representations as to what services he actually provided is part of the reason Defendants' expert has opined that his use of the codes at issue was entirely appropriate, *even under the CPT Assistant standards* espoused by State Farm's expert as the authority.

5

*wrong* about the billing codes which applied to those services.  But such disagreements are clearly what Florida's PIP law is designed to address.  Just as clear is State Farm's determination to avoid this reality.

It is Florida's PIP law that governed the hundreds of PIP suits filed by Dr. Feijoo between 2011and 2018, all of which involved his use of codes 99204, 95851, and 76140.  The 2011 Project documents show that the defense of each one of these suits was deliberately "coordinated" by State Farm's SIU cabal of investigators and law firms, all of whom were operating under the belief that Dr. Feijoo's understanding of how to apply the codes at issue was incorrect for the exact reasons asserted in its Amended Complaint in this case.  See, e.g., Ex. "B", Bates pg. 473864 ("In the meantime, we plan to coordinate the handling of any new anticipated Feijoo suits.").

Despite this "coordinated handling" of each Feijoo suit with SIU specialists and SIU lawyers, State Farm *kept losing* on its theory that Dr. Feijoo's coding was wrong.  State Farm concedes as much in its Response to Defendants' Motion for Summary Judgment.  See ECF Doc 85, pg. 3 ("The Clinic's policy is to sue State Farm Mutual anytime, and every time, it does not pay PIP benefits based on the full amount of the Clinic's charges.").  But if State Farm's coding analysis had any merit, it should not have had any difficulty defeating a single one of these suits.

As described by Defendants Claims handling expert, J'Amy Kluender, State Farm was clearly frustrated by its inability to justify a payment denial in defense of any *one* of Dr. Feijoo's PIP suits, and therefore sought a means of creating a justification for the denial of all payments in all claims:

> **Ms. Fuller's second progress Report, dated September 1, 2016, strongly suggests that this was the precise (and only) motive of State Farm's Feijoo Projects. Therein Ms. Fuller discusses an individual PIP claim in which State Farm retained a peer reviewer to opine on**

6

> **Dr. Feijoo's use of codes 99204, 95851, and 76140. Ms. Fuller relates that the peer reviewer reached the same conclusion she had upon her initial review of files and which the 2011 Project had as well. Ms. Fuller discusses how an attorney from Roig lawyers had filed a Motion for Summary Judgment in the PIP suit filed by Dr. Feijoo in the claim.**
>
> **After obtaining an updated analytics report indicating that Dr. Feijoo represented a continuing significant exposure to State Farm, Ms. Fuller wrote: "If we win on this MSJ in county court, we could use this PIP case for a sit down on all the pending county cases and address the concerns that we have. However, there is also the possibility of a lengthy appeal so depending on outcome, we may want to close the project or move forward and hire counsel. Attached are the expert's opinion, MSJ, old closing report, and complaint that was never filed in 2012."**
>
> **In light of the unreasonable and otherwise wholly illogical manner in which it handled the individual claims, Ms. Fuller's comment, and her manager's endorsement of it, strongly indicates that the true and sole purpose of *both* Feijoo Projects was to manufacture one justification for denying *all* payments to Dr. Feijoo regardless of the injuries suffered by an individual insured and regardless of the treatment actually provided to the insured. State Farm chose the affirmative action route, as indicated by the Project Activity Log, wherein it indicates that as of September 2, 2016, after consulting with Mr. Brooks, State Farm had retained Mr. Hazouri and made the decision that it would let him run with the lawsuit he had been advocating for since at least October of 2012.**

See ECF Doc 80-5, pg. 11-12.

Ms. Kluender rendered the above opinion without the benefit of the 2011 Project documents, which emphatically confirm the accuracy of her analysis. These secreted documents of course also cast the complete light of day on the testimony of State Farm's corporate designee, wherein he admitted that the entire purpose of this lawsuit was to manufacture "leverage" against Dr. Feijoo's PIP suits. See ECF Doc 80-6, Banahan-D.

7

## 2. **State Farm Wants to Flip the Script of Florida Law**

So long stymied in state court from obtaining leverage against Dr. Feijoo by Florida's pesky PIP law, State Farm decided to try to use this Court and FDUTPA as a means of getting what it wants.

As admitted by State Farm's corporate designee, State Farm finds Florida's PIP law unfairly prejudicial to its interests. The designee decried the unfairness to an insurance company of the law's time limits and attorney fee provisions. See pages 229-248 of Volume 2 of the deposition of State Farm's Designee, a full copy of which is attached as Exhibit "C" to Defendants Supplemental Statement of Facts.

The 2011 Project File documents have finally and indisputably connected all of the dots in this case. State Farm wants to create a new legal standard (FDUTPA) and a new forum (federal court) for its PIP billing disputes with doctors. State Farm seeks a new paradigm in Florida whereby it can eliminate entirely the need to adjust first party medical claims as required and instead simply sit back and allow payments to accumulate until the amount it disputes is large enough to file a federal lawsuit.[4]

In this new paradigm, merely alleging that years of past billing codes were incorrect would now justify an accusation in federal court of a "deceptive" practice under FDUTPA. Including a Declaratory Judgment Count in the federal case would provide cover to justify denials of all ongoing bills throughout the pendency of the lawsuit and simultaneously prevent any new PIP suits from being filed. This would enable State Farm to "flip the script" and force doctors through potentially years of cripplingly expensive federal court litigation while being

---

[4] State Farm's goal to obtain "leverage" in its billing disputes with all doctors in Florida can hardly be argued. The entire premise of its Motion for Summary Judgment is that this Court should judicially expand Florida Statute §627.736(5)(d) to include sources of coding direction which State Farm finds favorable.

deprived of payments from the dominant insurer in the Florida market, the combined effect of which State Farm correctly calculates few doctors can withstand.

State Farm's 2011 and 2015 project documents and its testimony indisputably expose this motivation. But so, too, does its filing of a Motion for Reconsideration of Judge Moore's June 3, 2019 Order dismissing the original Complaint's FDUTPA claim even *after* filing an Amended Complaint. [ECF Doc 56]. State Farm knows that Judge Moore's Order requiring it to plead FDUTPA claims based on alleged deceptiveness with the specificity required by Rule 9(b) will make it difficult to use federal FDUTPA claims as it had hoped to establish precedent with this case for doing.

As Judge Moore noted in footnote 3 of the Order

**Although State Farm correctly argues that it need not "plead or prove fraud" to prevail on a FDUTPA claim, it misses the larger point: any claim sounding in fraud must be pled with particularity regardless of whether fraud is explicitly pled or ultimately proven. Although State Farm correctly argues that it need not prove any "specific intent to defraud" under FDUTPA, the principal inquiry at issue is whether the allegations in State Farm's Complaint are based upon a unified course of fraudulent conduct or contains averments of fraud that must be pled with particularity. (Internal citations omitted).**

Solely to avoid the further prolongation of this litigation, which obviously part of State Farm's plan, Defendants did not file a motion to dismiss the Amended Complaint, choosing instead to put State Farm to its proofs. It is now patently clear that State Farm cannot withstand the principal inquiry at issue and establish a "unified course of fraudulent conduct" by Dr. Feijoo.

Finally, State Farm's 2011 Project documents establish that no consumer, acting reasonably under the same circumstances, could possibly have been deceived by any submission made by Dr. Feijoo. No reasonable juror could find otherwise.

Wherefore, Defendant moves for summary judgment as to Plaintiff's action.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 9, 2019, I have filed the foregoing document with the Clerk of Court using the CM/ECF system and that a copy was electronically served upon the following in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:  Kenneth P. Hazouri, Esq., and Andrew S. Ballentine, Esq., Mantzaris and Neal, LLP, 332 North Magnolia Avenue, Orlando, FL 32801. (Khazouri@dsklawgroup.com, ABallentine@dsklawgroup.com, Lquesada@dsklawgroup.com, Lmorales@dsklawgroup.com).

**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email:Pivniklaw@aol.com
        Cdiezpivniklaw@aol.com
By: /s/ Jerome A. Pivnik
Jerome A. Pivnik, Esq.
Fla. Bar No.: 400408

**Andrew P. Baratta, Esq.**
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
Tel: 215-914-2222
Email: Andrew@Barattarussell.com
(*pro hac vice*)