UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,
v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants.
_____/

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SEPARATE TRIAL OF COUNTERCLAIM**

KENNETH P. HAZOURI
Trial Counsel
Fla. Bar No. 019800
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075
aballentine@dsklawgroup.com
skuharske@dsklawgroup.com
de Beaubien, Simmons, Knight,
Mantzaris & Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454

BART R. VALDES
Florida Bar Number: 323380
bvaldes@dsklawgroup.com
de Beaubien, Simmons, Knight,
Mantzaris & Neal, LLP
609 West Horatio Street
Tampa, Florida 33606
Telephone: (813) 251-5825
Facsimile: (813) 254-1063
Attorneys for Plaintiff

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("Plaintiff"), by counsel, hereby files its Reply to Defendants, MANUEL V. FEIJOO, M.D., P.A. (the "Clinic"), and MANUEL V. FEIJOO's ("Feijoo")(collectively, the "Defendants"), Response in Opposition to Plaintiff's Motion for Separate Trial of Counterclaim (the "Response") [Doc. 105], and states as follows:

I. DEFENDANTS' ASSERTION THAT THEIR COUNTERCLAIM DOES NOT INJECT NEW ISSUES INTO THIS CASE, AND ARGUMENT THAT PLAINTIFF IS SOMEHOW SPLITTING ITS OWN CLAIMS BY REQUESTING THE OPPORTUNITY TO PREPARE A DEFENSE TO DEFENDANTS' COUNTERCLAIM, ARE CLEARLY INCORRECT.

Section I. of Defendants' Response argues that their recently filed Counterclaim does not inject new issues into the case, and Plaintiff is somehow splitting its own claims by asking for the opportunity to prepare a defense to the Counterclaim. [Doc. 105, pp. 1-5] These arguments are factually and legally baseless.

Defendants assert their Counterclaim to recover PIP benefits on the unpaid claims does not inject new issues into this case because Plaintiff investigated the medical necessity of Feijoo's patient evaluations in its 2011 and 2015 projects prior to filing this lawsuit.[1] This argument is a non-sequitur. The fact that Plaintiff performed a <u>pre-suit</u> investigation of the medical necessity of Feijoo's evaluations does not mean the issue of medical necessity was present <u>in this lawsuit</u> before Defendants' filed their Counterclaim. It clearly was not.

Plaintiff's request for a declaration that it does not owe PIP benefits on the claims identified in Count II of the Amended Complaint is based on Defendants' reporting of improper, false, and/or misleading CPT codes in the medical bills comprising those claims, which renders them non-

---

[1] Ignoring the three-plus year period from October 2012 to December 2015 when Plaintiff did not have a project opened on them, Defendants incorrectly state, with emphasis, that Plaintiff has been investigating them "*since 2011.*" [Doc. 105, p. 2]

2

compensable under various sections of Florida Statute § 627.736(5)(b)1. and FDUTPA. As such, Plaintiff's claim for declaratory relief is based on Defendants' billing misconduct, not the reasonableness, relatedness, or medical necessity of Feijoo's patient evaluations. For this reason, Plaintiff did not conduct any discovery on these issues, or retain an expert to opine on them, in the course of prosecuting its claim for declaratory relief in this action. Defendants' suggestion that Plaintiff has done so is simply false. [Doc. 105, p. 4]

Whatever deposition testimony Feijoo gave on the reasonableness, relatedness, and medical necessity of his evaluations was not in response to questions directed to these issues from Plaintiff's counsel. Moreover, Defendants' statement that Plaintiff's expert, Patrick Jacob, M.D., reviewed "the entirety of the Clinic's medical charts" ignores the fact that he has not opined on the reasonableness, relatedness, and medical necessity of Feijoo's evaluations. Plaintiff did not secure or disclose an expert opinion on these issues before the expiration of discovery because they are not material to Plaintiff's claims in this lawsuit.

On the other hand, Defendants must prove Feijoo's evaluations were reasonable, related, and medically necessary as essential elements of their Counterclaim to recover PIP benefits. *E.g.*, *Derius v. Allstate Indem. Co.*, 723 So. 2d 271, 272 (Fla. 4th DCA 1998). These issues were first injected into this case when Defendants filed their Counterclaim. Since this occurred after the deadlines for the parties to disclose expert witnesses and complete discovery, Plaintiff has been denied the ability to prepare a defense on these issues by performing discovery, and retaining an expert witness to opine, on them. Defendants' assertion that a pre-suit investigation somehow substitutes for, or equates to, these litigation prerequisites is facially baseless.

The same is true for Defendants' assertion that Plaintiff's request for the opportunity to defend their Counterclaim somehow constitutes a splitting of Plaintiff's claims. [Doc. 105, pp. 4-

3

5] By definition, a plaintiff must have filed two separate actions arising out of the same transaction or occurrence for a court to find the plaintiff has split its claims; otherwise, there can be no "split." As explained by one of the cases cited in Defendants' Response:

> As a general rule the law mandatorily requires that <u>all damages</u> sustained or accruing to one as a result of a single wrongful act <u>must be claimed and recovered in one action</u> or not at all. Stated differently, the rule against splitting causes of action makes it incumbent upon <u>plaintiffs to raise all available claims</u> involving the same circumstances in one action.

*Robbins v. General Motors De Mexico*, 816 F. Supp. 2d 1261, 1263 (M.D. Fla. 2011) (emphasis supplied; citations and internal quotation marks omitted). Such claim splitting is not occurring in this case. Plaintiff is prosecuting a single action to recover its requested damages and declaratory relief. Defendants' Counterclaim and its essential elements of proof belong to them, not Plaintiff. As such, Defendants' filing of their own Counterclaim does not, and cannot, constitute a splitting of Plaintiff's opposing claims pled in its Amended Complaint.

Finally, Defendants mischaracterize Plaintiff's position by describing it as arguing their Counterclaim was "unforeseen or uncontemplated." [Doc. 105, p. 5] The essential and indisputable point is that Defendants' Counterclaim did not exist before expiration of the parties' deadlines to disclose expert witnesses and complete discovery in this case. Plaintiff cannot prepare a defense to a non-existent counterclaim.

II.   DEFENDANTS' ASSERTED GROUNDS FOR THIS COURT TO DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF AND THEIR COUNTERCLAIM STRONGLY SUPPORT THE COURT'S RETENTION OF JURISDICTION OVER THESE CLAIMS.

Section II. of Defendants' Response argues that after nearly a year of litigation over Plaintiff's claim for declaratory relief and on the cusp of trial, this Court should decline to exercise supplemental jurisdiction over it and the Counterclaim. [Doc. 105, pp. 5-7] Defendants contend the "compelling reason" for the Court to take such action is that "any delay of trial would work an

unfair burden on Dr. Feijoo financially." [Doc. 105, p. 6] Defendants further state that if the Court were to grant a brief continuance of the trial to allow Plaintiff to prepare a defense to their Counterclaim, Dr. Feijoo would have to "incur additional legal expense for further discovery" and "endure State Farm's blanket denial of payments to him." [*Id.*] Dr. Feijoo's incurring of the expense of discovery associated with a Counterclaim he chose to file against Plaintiff is not a "compelling reason" for the Court to decline to exercise supplemental jurisdiction over Plaintiff's claim for declaratory relief.

Furthermore, Defendants' above-quoted assertions lay bare the rank disingenuousness of their request for the Court to decline jurisdiction over Plaintiff's claim for declaratory relief and their Counterclaim. If the Court were to do so, the parties would have to start over with the litigation of those claims in state court, and it would take years and a substantial amount of expense to adjudicate them. The time and expense it will take the parties to finish adjudicating their claims before this Court, even with a brief trial continuance to allow for discovery relating to the Counterclaim, will be a mere fraction of the time and expense it would take them to complete a brand new lawsuit filed in state court. In sum, there are no reasons, compelling or otherwise, for this Court to decline to exercise jurisdiction over Plaintiff's claim for declaratory relief (or the Counterclaim) at this very late stage of the case.

III.   PLAINTIFF BELIEVES A 60 – 90 DAY CONTINUANCE OF THE TRIAL WILL BE SUFFICIENT TIME FOR THEM TO PREPARE A DEFENSE TO DEFENDANTS' COUNTERCLAIM.

During the August 2, 2019, status conference, the Court stated that in lieu of ordering separate trials of Plaintiff's Amended Complaint and Defendants' Counterclaim, it would be more likely inclined to grant a brief continuance of the currently scheduled trial to allow Plaintiff the opportunity to prepare a defense to Defendants' Counterclaim. As the undersigned stated in

response to the Court's inquiry during the status conference, Plaintiff believes that a 60 – 90 day continuance of the trial will allow sufficient time to do so. Defendants' suggestion that Plaintiff could retain an expert witness, secure his or her opinions regarding medical services provided to 46 patients, prepare a Rule 26 expert witness report and disclosure, and complete discovery relating to the Counterclaim in a mere seven days is not even in the realm of reason. [Doc. 105, p. 7] If the Court decides to resolve the pending issues arising out of the timing of Defendants' filing of their Counterclaim by continuing the trial, then Defendant respectfully requests that the continuance be granted for a period of 60 – 90 days.[2]

Dated this 9th day of August, 2019.

                                                Respectfully submitted,

                                                */s/ Kenneth P. Hazouri*
                                                KENNETH P. HAZOURI
                                                Trial Counsel
                                                Fla. Bar No. 019800
                                                khazouri@dsklawgroup.com
                                                lquezada@dsklawgroup.com
                                                ANDREW S. BALLENTINE
                                                Fla. Bar No. 118075
                                                aballentine@dsklawgroup.com
                                                deBeaubien, Simmons, Knight,
                                                  Mantzaris and Neal, LLP
                                                332 North Magnolia Avenue
                                                Orlando, Florida 32801
                                                Telephone: (407) 422-2454

                                                BART R. VALDES
                                                Florida Bar Number: 323380
                                                bvaldes@dsklawgroup.com
                                                DSK LAW GROUP
                                                de Beaubien, Simmons, Knight,
                                                  Mantzaris & Neal, LLP

---

[2] The undersigned has a brief vacation scheduled for November 15 - 18, 2019, and a vacation out of the country with his entire family scheduled for December 13 – 22, 2019. If possible, the undersigned respectfully requests that the trial be continued to a date that does not conflict with these vacation dates.

609 West Horatio Street
Tampa, Florida 33606
Telephone: (813) 251-5825
Facsimile: (813) 254-1063

Attorneys for Plaintiff