UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation,

    Plaintiff,
v.

MANUEL V. FEIJOO,
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants.

**DEFENDANTS' RESPONSE TO STATE FARM'S MOTION TO PRECLUDE THE EXPERT TESTIMONY OF J'AMY KLUENDER**

**I.   J'AMY KLUENDER IS UNDENIABLY QUALIFIED AS AN EXPERT IN CLAIMS HANDLING & STATE FARM MISCHARACTERIZES HER OPINIONS**

State Farm's argument that J'Amy Kluender is not qualified as an expert in claims handling as it relates to this case is belied by her decades of experience, professional education, and licensure in claims handling in states all across the country. It is further belied by State Farm's own identification of Ms. Kluender as an expert in claims handling internally, its steady promotion of her through its own claims operation and corporate management of claims handling nationwide and then into a management position in its MCIU, and by its designation of her as the sole company representative to the state of Pennsylvania regarding State Farm's entire anti-fraud plans and procedures relating to claims handling.

State Farm's argument that Ms. Kluender's opinions are inadmissible is based on a gross mischaracterization of the opinion she is actually offering. Ms. Kluender's opinion is not based

1

on State Farm's unreasonable claim handling. It is, rather, based entirely on State Farm's choice to conceal from its own adjusters evaluating Dr. Feijoo's bills the information provided to it by Dr. Feijoo about his CPT coding practices beginning in 2011. Ms. Kluender's report and her deposition testimony clearly explain the industry standards which indicate that State Farm's choice was not the conduct of a reasonable insurer under the circumstances.

### A. Ms. Kluender is Eminently Qualified as an Expert in Insurance Claims Handling

J'Amy Kluender has more than 23 years of experience handling every manner of insurance claim. She is a licensed insurance adjuster in 14 states: Florida, Louisiana, Connecticut, North Carolina, Delaware, New Mexico, Kentucky, South Carolina, Oklahoma, Rhode Island, New Hampshire, Wyoming, Vermont, and Texas. She has achieved the designations of Chartered Property Casualty Underwriter (CPCU), Senior Claims Law Associate (SCLA), and Associate in Claims (AIC). See ECF Doc 119-2, Kluender C.V.

From 1996 through 2015, Ms. Kluender worked full time for State Farm at every level of its claims handling operation centers in North Dakota, New England, Minnesota, Florida and Pennsylvania. State Farm itself educated Ms. Kluender in its Automobile Policy Claim School, Automobile Physical Damage Claim School, Fire Policy Claim School, SIU Claim School, and its Business Analyst School. Id.

Upon promoting Ms. Kluender in 2009 to its corporate headquarters in Bloomington, Illinois, Ms. Kluender was specially designated by State Farm management as an expert reviewer of thousands of claims in State Farm's "Write Your Own Flood Insurance" program. State Farm tasked Ms. Kluender with providing her opinion regarding handling of these claims and accepted her opinion as the final say on whether the handling of an individual claim had been consistent

with the fiduciary responsibilities set by industry standards and State Farm's own internal operating procedures.  See the Declaration of J'Amy Kluender, ¶4, attached hereto as Exhibit 1.

Later, while still working in the corporate offices in Bloomington, Ms. Kluender gained greater insight into the handling of Florida PIP claims when she was assigned to the corporate department responsible for directing the company's medical management of claims across the country, and specifically the tools available to PIP adjusters in evaluating medical bills submitted in PIP claims.  ECF Doc 119-1, Kluender-D, pg. 183-1184.

In March of 2013, Ms. Kluender was promoted once again, this time to a management position in State Farm's Concordville, Pennsylvania Operations Center, overseeing a team of twelve claim adjusters handling thousands of claims as part of MCIU medical provider projects. ECF Doc 119-1, Kluender Deposition, pg. 257.  In that capacity, Ms. Kluender witnessed firsthand and participated in constant and daily communication between her team of claim handlers and the Project specialists concerning the claims at issue in the Projects.  Id. pg. 210-211.

State Farm so trusted Ms. Kluender's expertise in all aspects of claims handling, including the claims handling processes which go hand-in-hand with insurance fraud investigations and the procedures required by law to protect policyholders from fraudulent activities, that it appointed her the sole company contact for the Anti-Fraud Plan required by Pennsylvania's Motor Vehicle Code required to be submitted to the state Insurance Department every year by auto insurers doing business in the state.  ECF Doc 1119-2, pg. 1.

 This statute, 75 Pa. Stat. and Cons. Stat. Ann. § 1812, provides as follows:

**The antifraud plans of each insurer shall establish specific procedures:**

 **(1) To prevent insurance fraud, including internal fraud involving employees or company representatives, fraud resulting from misrepresentation on applications for insurance coverage, and claims fraud.**
 **(2) To review claims in order to detect evidence of possible insurance fraud and to investigate claims where fraud is suspected.**
 **(3) To report fraud to appropriate law enforcement agencies and to cooperate with such agencies in their prosecution of fraud cases.**
 **(4) To undertake civil actions against persons who have engaged in fraudulent activities.**
 **(5) To report fraud-related data to a comprehensive database system.**
 **(6) To ensure that costs incurred as a result of insurance fraud are not included in any rate base affecting the premiums of motor vehicle insurance consumers.**

 State Farm identified Ms. Kluender as its most qualified representative in the entire state of Pennsylvania to produce State Farm's anti-fraud report detailing State Farm's plans and procedures for combating fraud in its claims handling operation, from the moment fraud is suspected through and including the filing of a civil action against persons alleged to have engaged in it. The Pennsylvania statute requiring this annual report is virtually identical to the requirements of Fla. Stat. §626.9891 entitled "Insurer anti-fraud investigative units; reporting requirements; penalties for noncompliance" as well as under Fla. Stat §626.9541. (See discussion of same *infra* at p. 10.).

 After leaving State Farm, Ms. Kluender served as a consultant to counsel for a doctor accused of fraud by State Farm as the result of an MCIU medical provider Project. Ms. Kluender provided a sworn Affidavit which supported allegations publicly made by the doctor against State Farm, which included that State Farm had targeted the doctor with knowingly false accusations in order to manufacture a lawsuit. ECF Doc 119-1, Kluender-D, pg. 293.[1]

---

[1] The Affidavit was sealed upon emergency motion by State Farm but, as noted by counsel for Defendants at Ms. Kluender's deposition when the sealed documents were referenced, the doctor in the previous matter would stipulate to unseal all of the documents associated with that case, including Ms. Kluender's Affidavit, the circumstances of Ms. Kluender's termination, and the settlement agreement entered into shortly after State Farm's accusations against the doctor were dismissed on summary judgment. See ECF Doc 119-1, Kluender-D, pg. 292. State Farm has not yet responded to the offer to stipulate to the unsealing of the documents.

Since shortly after leaving State Farm, Ms. Kluender has worked full time adjusting professional lines insurance claims from around the country on behalf of an insurer based in Wayne, Pennsylvania.

An expert may be qualified "by knowledge, skill, experience, training, or education." Furmanite Am., Inc. v. T.D. Williamson, Inc., 506 F.Supp.2d 1126, 1129 (M.D.Fla.2007) (*citing* Fed.R.Evid. 702). Determining whether a witness is qualified to testify as an expert "requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." Clena Investments, Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 660–61 (S.D. Fla. 2012), *citing* Jack v. Glaxo Wellcome, Inc., 239 F.Supp.2d 1308, 1314–16 (N.D.Ga.2002).

> In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address. This inquiry is "'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Citing [*inter alia*]* Johnson v. Big Lots Stores, Inc., 2008 WL 1930681, *14 (E.D.La. Apr. 29, 2008) (summarizing Rushing v. Kansas City S. Ry. Co., 185 F.3d 496, 507 n. 10 (5th Cir.1999), as "explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination"); *see also* Martinez v. Altec Indus., Inc., 2005 WL 1862677, *3 (M.D.Fla. Aug. 3, 2005) (*quoting* Rushing, 185 F.3d at 507 ("As long as some reasonable indication of qualifications is adduced, ... qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity"), *superseded by rule on other grounds as recognized in Mathis v. Exxon Corp.,* 302 F.3d 448, 459 n. 16 (5th Cir.2002)). After the district court undertakes a review of all of the relevant issues and an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion. *See* Berdeaux v. Gamble Alden Life Ins. Co., 528 F.2d 987, 990 (5th Cir.1976).

In light of the specific subject matter of her expert opinion, it is difficult to imagine another witness whose credentials could possibly make them more qualified than Ms. Kluender.

State Farm's entire argument that Ms. Kluender should not be considered qualified has nothing to with her actual expertise, but is rather based bitterly on the fact that she has "switched sides" and has never testified in court as an expert before.  Neither is a legitimate basis to find her unqualified to offer the opinions expressed in her June 20, 2019 Report.

**B. Ms. Kluender's Opinion is Very Simply That State Farm Failed to Act As A Reasonable Insurer Would Have Under the Same Circumstances**

State Farm's Motion to Preclude Ms. Kluender spends a great deal of energy constructing a straw man argument and then knocking it down.  Contrary to the premise of State Farm's Motion, and as outlined in her report and confirmed repeatedly in her testimony, Ms. Kluender's opinion does *not* concern whether the payment decisions in any individual claim were correct or incorrect.  It is, rather, that State Farm failed to act as a reasonable insurer would have under the same circumstances which confronted State Farm after Dr. Feijoo's depositions in 2011.

Defendants will not torture the Court by rehashing the arguments on the central issue in this case, which is whether State Farm can prove that an insurance company, acting reasonably under the circumstances in which State Farm was operating, could possibly have been deceived by the CPT codes in Dr. Feijoo's bills.

The subjective mindset of State Farm is irrelevant to this inquiry.  All that matters are the circumstances in which State Farm operated.  Without an evaluation off the circumstances, it would be impossible to examine whether the plaintiff's behavior was reasonable.

With the production finally of State Farm's 2011 Feijoo Project documents, the full circumstances under which State Farm operated with respect to Dr. Feijoo's use of CPT codes have become undeniably clear.  Dr. Feijoo and his billing manager testified consistently, truthfully and repeatedly, beginning in 2011 and continuing through 2017, as to exactly how and why they applied CPT codes to Dr. Feijoo's services.

What we now know is that State Farm management, no later than November 7, 2011, was fully apprised of Dr. Feijoo's testimony and billing practices by its MCIU fraud investigation specialists. But instead of informing its line adjusters of its disagreement with Dr. Feijoo's coding practices so that individual bills could be reasonably handled, State Farm secretly siloed its knowledge in favor of a plan to use lawyers and subterfuge to garner support for an affirmative action against Dr. Feijoo.

In assessing the reliability of Ms. Kluender's opinion, it is worth noting that it was expressed in Ms. Kluender's report of June 20, 2019, well before the explosive information contained in the 2011 Project documents was compelled into the light of day over State Farm's objection. The 2011 Project documents were in fact only disclosed in the evening hours after Ms. Kluender's deposition was concluded on August 1, 2019. Ms. Kluender's uncanny prescience in divining the true circumstances in which State Farm is now revealed undeniably to have operated from 2011 onward resoundingly confirms the reliability of her opinion that State Farm failed to act as a reasonable insurer would have.

Having now been provided the 2011 Project documents to review, Ms. Kluender confirms in her Declaration attached hereto as Exhibit 1 that her opinions are fully supported and strengthened by the revelations in the reports produced. As stated in both her expert report and her deposition testimony, based on her extensive education and experience in the handling of claims and how it is supposed to work *in conjunction* with an insurer's anti-fraud plan, most of which education and experience was provided by State Farm itself, Ms. Kluender's opinion is that a reasonable insurer would have shared the information it had about Dr. Feijo's billing practices with the people *actually paying the bills*.

7

Ms. Kluender's opinion is that it was only by failing to act as a reasonable insurer would that any adjuster issuing payment could possibly have been deceived in any individual claim.

The reason an expert's testimony on this issue is necessary is because, as articulated by Ms. Kluender, State Farm's witnesses have testified that the 30-day initial time frame provided for under Florida's PIP law somehow makes it impossible for an insurance company to meaningfully adjust medical bills.  ECF Doc 119-1, pg. 102.  Ms. Kluender specifically refutes this premise in her report (and her deposition testimony).  Id.

In the absence of any contrary expert opinion offered to refute State Farm's alleged helplessness in the face of Florida's apparently draconian PIP law, the jury would be left with the impression that the Florida Legislature has made the task of conducting a reasonable review of medical bills impossible for auto insurers.  This is the "circumstance" State Farm wishes to manufacture as that which should be considered by the jury in evaluating whether an insurer acting reasonably would have been deceived by Dr. Feijoo's bills.

Whether an automobile insurer in Florida (much less the world's largest, most sophisticated auto insurer with a net worth in excess of $100 Billion) is capable of reviewing and evaluating a medical bill within 30 days of submission is certainly a matter "beyond the understanding of the average lay person."  Feliciano v. City of Miami Beach, 844 F. Supp. 2d 1258, 1265 (S.D. Fla. 2012)("Expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person.... Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.").

In this case, State Farm wants to argue that it acted as a reasonable insurer would because the PIP statute imposes an unfair time limit within which to actually review bills before paying them.

Yet State Farm demands that the Court preclude defendants from presenting an expert who will testify that this is simply not true under industry standards.

Ms. Kluender is not offering any opinion about whether State Farm's payment or non-payment of any individual claim was correct. Her opinion is very simply, rather, that an insurer, acting reasonably under the same circumstances, would have communicated the information it had about Dr. Feijoo and thus provided its adjusters with all of the tools needed to actually do their jobs within the time frame imposed by the PIP statute.

Despite counsel for State Farm's best efforts to get her to say otherwise, Ms. Kluender repeatedly affirmed in her deposition that she was not offering any opinion as to what individual claims handlers actually did in the handling of any individual claim.

Specifically, Ms. Kluender testified that she was offering no opinion on what individual claim handlers thought (ECF DOC 119-1, Kluender-D, pgs. 77-78); that she was offering no opinion on whether the resolution of any individual bill was correct or incorrect (Id. pg. 91); that it was possible all of the payments were made correctly (pg. 92); that she was not speaking about individual claims but rather the big picture (pg. 106); and that she has no opinion on the payments themselves but rather that "there were questions, known concerns and the opportunity to investigate and resolve those questions and concerns was not provided" to the adjusters. (pg. 220.

The straw man argument is that Ms. Kluender should be precluded from testifying about whether the payment decisions in each claim were correct because she did not review the 500 or

so individual claim files which were partially produced in this case.[2] But this is quite obviously not the opinion she will offer at trial.

As she repeatedly testified to and affirms in her Declaration, Ms. Kluender's opinion is that given the information which was undeniably provided to State Farm beginning in 2011 and continuing thereafter, no reasonable insurer would or could have been deceived by any CPT code under the same circumstances because a reasonable insurer would not have done what State Farm did, which is deliberately conceal the information it had from the people making the payment decisions.

A further false characterization of Ms. Kluender's opinion is that it is somehow dependent upon or is principally concerned with State Farm's motive for concealing what it knew about Dr. Feijoo's coding practices from its own adjusters. As articulated in her Declaration, Ms. Kluender points out that "it is a basic industry standard (codified under Florida's Unfair Claim Settlement Practices provision of Fla. Stat. 626.9541) that an insurer must implement standards for the proper investigation of claims and act reasonably; and it is my opinion that a motivation to create an affirmative litigation at the expense of policyholders is evidence of unreasonableness."

State Farm's motive is left to entirely to the jury by Ms. Kluender. Her reference to the possible motive of State Farm is offered merely to point out that *if* the jury determines that State Farm's motive was to manufacture an affirmative lawsuit rather than adjust individual claims appropriately, such a finding would be evidence that State Farm failed to act as a reasonable insurer would have under the same circumstances.

---

[2] As Ms. Kluender pointed out, reviewing the claim files for the mental impressions of the adjusters in each claim would have provided no insights given that State Farm *entirely redacted the mental impressions the adjusters in each claim*. ECF Doc 119-1, Kluender-D, pg. 129.

## II.     CONCLUSION

Every argument raised in support of State Farm's Motion to preclude Ms. Kluender's testimony is either a matter for cross-examination or based upon a complete mischaracterization of her actual opinion. Accordingly, it is respectfully submitted that State Farm's Motion should be denied.

RESPECTFULLY SUBMITTED,
**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email:Pivniklaw@aol.com
           Cdiezpivniklaw@aol.com
By: /s/ Jerome A. Pivnik
Jerome A. Pivnik, Esq.
Fla. Bar No.: 400408

**Andrew P. Baratta, Esq.**
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
Tel: 215-914-2222
Email: Andrew@Barattarussell.com
(*pro hac vice*)

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on August 22, 2019, I have filed the foregoing document with the Clerk of Court using the CM/ECF system and that a copy was electronically served upon the following in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing: Kenneth P. Hazouri, Esq., and Andrew S. Ballentine, Esq., Mantzaris and Neal, LLP, 332 North Magnolia Avenue, Orlando, FL 32801. (Khazouri@dsklawgroup.com, ABallentine@dsklawgroup.com, Lquesada@dsklawgroup.com, Lmorales@dsklawgroup.com).

                                 **THE PIVNIK LAW FIRM**
                                 7700 N. Kendal Drive, Suite 703
                                 Miami, FL 33156
                                 Tel: 305-670-0095
                                 Email:Pivniklaw@aol.com
                                 By: /s/ Jerome A. Pivnik
                                 Jerome A. Pivnik, Esq.
                                 Fla. Bar No.: 400408

                                 **Andrew P. Baratta, Esq.**
                                 Baratta, Russell & Baratta
                                 3500 Reading Way
                                 Huntingdon Valley, PA 19006
                                 Tel: 215-914-2222
                                 Email: Andrew@Barattarussell.com
                                 (*pro hac vice*)