UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff/Counter-Defendant,

v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants/Counter-Plaintiffs.
_____/

**PLAINTIFF'S *DAUBERT* MOTION TO STRIKE TESTIMONY AND OPINIONS OF MICHAEL MISCOE AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("SFM"), by counsel, hereby moves to strike the proffered expert testimony and opinions of Michael Miscoe ("Miscoe"), who has been disclosed as an expert for Defendants, MANUEL V. FEIJOO ("Dr. Feijoo") and MANUEL V. FEIJOO, M.D., P.A. (the "Clinic") (collectively "Defendants"), and states as follows:

**I.    Introduction/Summary of Argument**

Miscoe has proffered various expert opinions regarding the appropriateness of the "CPT codes" reported in hundreds of medical bills Feijoo's Clinic submitted to SFM in the personal injury protection ("PIP") benefits claims at issue in this case. Those opinions are inadmissible under Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and its progeny for the following four reasons.

First, Miscoe's proffered opinion that Defendants properly billed for range of motion testing and x-ray consultations (CPT codes 95851 or 76140) is inadmissible because it is not

1

based on sufficient facts or data or a reliable methodology. Miscoe admitted he did not review *any* of the Clinic's medical records and evaluations to determine whether the billing was appropriate for the purported treatment rendered. Second, all of Miscoe's opinions are based on impermissible legal standards and conclusions relating to his interpretation of Florida Statute § 627.736(5)(d) ("§ 627.736(5)(d)"), which invades the province of the Court. Third, Miscoe's opinion that there are no standards available to determine whether a medical provider's billing of patient evaluations is appropriate under Florida's Motor Vehicle No-Fault Law, Florida Statute §§ 627.730 – 627.7405 (the "No-Fault Law"), violates and vitiates the purpose of § 627.736(5)(d). Finally, Miscoe's statements speculating on Dr. Feijoo's intent and state of mind are not proper subjects for expert testimony.

## II. Factual and Procedural Background

SFM's Amended Complaint states a claim for damages based on Defendants' violation of Florida's Deceptive and Unfair Trade Practices Act and a claim requesting a declaration that SFM does not owe Defendants compensation for unpaid medical bills. [Doc. 60] These claims arise out of Defendants' repeated submission, over a four-year period, of deceptive, false, and misleading medical bills in claims for insurance benefits governed by Florida's "PIP statute," Florida Statute § 627.736. *Id.* SFM alleges the Clinic systematically submitted medical bills with CPT codes that misrepresent the nature and scope of the evaluations Dr. Feijoo provided to SFM's insureds in order to artificially inflate the Clinic's charges. *Id.*

SFM retained as its expert witness University of Florida College of Medicine Professor Patrick Jacob, M.D. Dr. Jacob is board certified in neurological surgery and has significant experience and expertise with proper coding under the American Medical Association's ("AMA") Current Procedural Terminology ("CPT"). [Doc. 72-2, pp. 2-3] From 2014 to 2018,

Dr. Jacob served as a physician member of the AMA's CPT Editorial Panel, which promulgates and publishes the CPT codebook. He has also served as a member of the AMA's CPT Editorial Panel Executive Committee and a representative to the CPT Editorial Panel on behalf of the American Association of Neurological Surgeons. In an Affidavit filed in support of SFM's Motion for Summary Judgment, Dr. Jacob detailed his opinions regarding Defendants' systematic reporting of false and misleading CPT code charges in each of the hundreds of medical bills at issue in this case. [Doc. 72-2] To reach his opinions, Dr. Jacob reviewed 500+ medical charts produced by Defendants documenting Dr. Feijoo's patient evaluations at issue in this case.

In response, Defendants disclosed Miscoe and served his expert report and a declaration, which set forth his proffered opinions regarding the appropriateness of Dr. Feijoo's CPT codes. [Docs. 80-3 & 80-4] SFM deposed Miscoe and his deposition transcript is being filed contemporaneously with this motion.

As the proponent of Miscoe's expert testimony, Defendants carry "a substantial burden under Rule 702." *Cook ex rel. Tessier v. Sheriff*, 402 F. 3d 1092, 1107 (11th Cir. 2005). They must establish by a preponderance of the evidence that: a) Miscoe's methodology underlying his opinions is "sufficiently reliable"; and b) Miscoe's "testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *See United States v. Frazier*, 387 F. 3d 1244, 1260 (11th Cir. 2004)(quoting *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir.1998)). These requirements are commonly called the "reliability" and "helpfulness" elements of Rule 702, respectively. *Id.* For the reasons explained below, Miscoe's proposed expert opinions and testimony fail these standards and should, therefore, be stricken and excluded from evidence.

3

**III.**     **Argument**

    **A.**     **MISCOE'S OPINIONS ARE NOT BASED ON SUFFICIENT FACTS OR DATA OR A RELIABLE METHODOLOGY BECAUSE HE DID NOT REVIEW ANY OF THE CLINIC'S MEDICAL RECORDS.**

Miscoe has admitted he did not review any of the Clinic's records of Dr. Feijoo's patient evaluations performed on the 500+ at-issue patients:

> **Q.:** So you did not review any of Dr. Feijoo's medical records or bills that are at issue in this case in forming your opinions?
>
> **A.:** No, Sir. I was asked to evaluate the issues raised by State Farm relative to their viability under the standards -- the coding standards in Florida.

[Miscoe Tr. at 56:5-17]

A fundamental pillar for the admissibility of an expert opinion under Rule 702 is that it must be based on "sufficient facts or data." Fed. R. Evid. 702(b). "Expert opinions that are unsubstantiated by any factual basis or 'whose factual basis is not adequately explained' are properly excluded" under Rule 702(b). *United States v. Thaller*, No. 12-224455-Civ-Lenard/Seltzer, 2016 WL 6441548 at * (S.D. Fla. Nov. 1, 2016) (quoting *Cook ex rel. Tessier v. Sheriff of Monroe County*, 402 F. 3d 1092, 1111 (11th Cir. 2005)).

The purpose of the AMA's CPT is to provide a uniform system for accurately describing medical services performed by a provider who seeks payment for his or her services. In order to determine whether a physician properly reported a CPT code that accurately describes the medical service, one must review the physician's medical records. Otherwise, there is no factual basis for understanding the nature of the medical service, including whether the physician actually performed the service, or assessing the accuracy of the CPT code.

As Miscoe did not review any of the Clinic's medical records documenting Dr. Feijoo's patient evaluations, he has no factual basis or foundation for offering opinions as to whether the

4

corresponding CPT codes selected by the Clinic to bill for those same medical services accurately describe the treatment. Accordingly, Miscoe's opinions that Defendants properly coded their services is baseless, not supported by sufficient facts and data, and not founded on a reliable methodology. Those opinions must, therefore, be stricken because they are not sufficiently reliable or helpful to the jury.

   **B.**  **MISCOE'S OPINIONS ARE FOUNDED ON IMPERMISSIBLE LEGAL STANDARDS AND CONCLUSIONS THAT INVADE THE PROVINCE OF THE COURT AND ARE CONTRARY TO FLORIDA LAW.**

As Miscoe stated in his deposition testimony, he was asked to opine on "the coding standards in Florida"—a purely legal opinion. *See supra* p. 4. Consistent with this testimony, the essence of Miscoe's proffered opinions is his interpretation of the coding guidelines under § 627.736(5)(d). This statute establishes mandatory standards for the form and content of providers' medical bills, including the requirement that they use, where applicable, the AMA's CPT. Miscoe offered the opinion that § 627.736(5)(d) requires one to ignore the AMA's various publications providing guidance on CPT coding (including the AMA's *CPT Assistant*), and instead, to look only to the "four corners" of the CPT Coding Manual when determining if a reported CPT code accurately describes the provider's medical services. Miscoe's legal interpretation of § 627.736(5)(d) serves as the foundation of his expert opinions regarding Defendants' use of the CPT codes in the Clinic's medical bills. In addition to being an impermissible subject for expert testimony that invades the province of the Court, Miscoe's interpretation of § 627.736(5)(d) is incorrect under Florida law.

    1. <u>Miscoe's opinions consist of legal standards and conclusions that are not permissible subjects for expert testimony.</u>

Miscoe's interpretation of § 627.736(5)(d)—his legal opinion—is set forth in his expert report: "for first party claims, AMA CPT Editorial Panel guidance (the information contained

within the four corners of the CPT Coding Manual) provides the binding methodology for accurate code selection and reporting to the exclusion of all other references and guidelines, even those published by other departments of the AMA." [Doc. 80-4 at 5] The "Conclusion" to Miscoe's report reiterates his interpretation of § 627.736(5)(d) by stating "[t]he language approved by the CPT Editorial Panel for publication in the CPT Coding Manual **is expressly what the Florida Legislature incorporated into the statute** relative to determining the appropriateness of CPT coding for first party personal injury claims in Florida. It, therefore, is **the only relevant standard** for guiding our analysis of Dr. Feijoo's billing." [Doc. 80-4, p. 23](emphasis added) Miscoe also described this opinion in his deposition:

> **Q.:** When you say your phrase, the CPT Editorial Panel Guidance expressly adopted by the Florida Legislature, I understand from your other testimony you're talking about, and I believe you use this terminology, the four corners of the CPT Code Book?
>
> **A.:** Yes, recognizing that, as discussed I believe in this Declaration, depending on what version of the CPT Book, the four corners of the book includes information that isn't inserted or that isn't put there by the Editorial Panel.
> . . .

Miscoe's above-quoted opinions confirm that he has narrowly interpreted § 627.736(5)(d) as limiting any coding analysis to "the four corners of the CPT Coding Manual," while simultaneously disallowing consideration of other AMA publications that were created to clarify the proper use of the various CPT codes. This is clearly an impermissible opinion on his interpretation of a legal standard established by a Florida statute.[1]

Statutory interpretation is a pure issue of law reserved exclusively for the Court. *E.g.*, *Damiano v. F.D.I.C.*, 104 F. 3d 328, 335 n.6 (11th Cir. 1997). Experts cannot, therefore, offer opinions on statutory interpretation. As explained by the Eleventh Circuit: "[T]he court must be

---

[1] The irony is that Defendants hired a lawyer admitted only to practice in California, who resides in Pennsylvania, to opine on Florida law. [Miscoe Tr. at 26:7-12]

the jury's only source of law, and questions of law are not subject to expert testimony. Courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." *Commodores Entm't Corp. v. McClary*, 879 F. 3d 1114, 1128-29 (11th Cir. 2018).

As Judge Altonaga held in in *Cordoves v. Miami-Dade County*, 104 F. Supp. 3d 1350 (S.D. Fla. 2015), such opinions are inadmissible because they fail the "helpfulness" element of Rule 702. The plaintiff in *Cordoves* filed a discrimination claim under the Americans with Disabilities Act ("ADA") after she was removed from a shopping mall for bringing a dog on site she claimed was a service dog. 104 F. Supp. 3d at 1355. A key issue in the case was "whether the dog [was] a 'service animal' under the definition provided by 28 C.F.R. section 36.104, because if the dog [was] not a service animal, then the discrimination claim fails." *Id.* at 1356. The plaintiff filed an expert declaration setting forth his opinions regarding "the ADA regulatory scheme governing interaction with individuals accompanied by service animals." *Id.* The defendants moved to strike those opinions under Rule 702 on the grounds they impermissibly consisted of legal standards and conclusions and would not be helpful to the jury. *Id.* at 1357.

Addressing the motion to strike, the court first explained that the plaintiff expert's was prohibited from offering opinions regarding the governing legal standards under the ADA:

> Experts are not permitted to explain to the jury what the applicable legal standards are. *See Montgomery,* 898 F.2d at 1541; *Burkhart,* 112 F.3d at 1213 ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." (citation omitted)). For almost half of his Declaration, Androuin quotes and summarizes relevant statutory provisions, regulations, and regulatory guidance materials. This entire swath of the Declaration is not helpful to the jury because it is nothing more than impermissible legal standard testimony.

*Id.* at 1364-65 (record cites omitted). Next, the court analyzed the expert's conclusions based on his own interpretation of the ADA's legal standards. *Id.* at 1365. The court explained an expert

"may not testify as to whether the legal standard has been satisfied. **If testimony tracks the language of the applicable statute or uses a term that has a specialized legal meaning that is more precise than the lay understanding of the term, the testimony is an impermissible legal conclusion.**" *Id.* (quoting *Burkhart v. Wash. Metro. Area Transit Auth.,* 112 F. 3d 1207, 1212–13 (D.C. Cir. 1997) and citing *Montgomery v. Aetna Cas. & Sur. Co.,* 898 F. 2d 1537, 1541 (11th Cir. 1990)) (internal quotation marks, brackets, citations omitted; emphasis supplied). The court then concluded the expert's opinions were "rife with impermissible legal conclusions . . . couched almost entirely in the language of the applicable regulations," and ruled that "[t]hese and similar statements are not helpful to the jury and therefore are excluded." *Id.*

The *Cordoves* court also considered whether the opinions of the plaintiff's expert could be admitted as rebuttal testimony. *Id.* In denying the admissibility on these grounds, the court stated:

> Androuin's critique of Mantrucchio's testimony reads less like an expert's opinion and more like a lawyer's *Daubert* motion to exclude Mantrucchio's testimony. Androuin argues Mantrucchio's opinions rest on "pseudo, otherwise non-existent, requirements" that run afoul of ADA regulations; that is a legal argument for the lawyers to make, not Androuin. Further, Androuin's faulting Mantrucchio for not explaining the ADA regulatory scheme flatly contradicts Rule 702's prohibition against legal standard testimony.

*Id.* (record cites omitted). Based in part on the above rulings, the court excluded the testimony of the plaintiff's expert in its entirety. *Id.* at 1366.

*Cordoves* is directly applicable to this case. In *Cordoves*, the plaintiff's expert established his own legal standards under the ADA and then used those standards as the foundation for his opinions, which constituted legal conclusions. Miscoe has used this same improper methodology. He has interpreted § 627.736(5)(d) as limiting consideration to only "the four corners of the CPT Coding Manual," and then used this statutory interpretation as the

8

foundation of his opinions, including those attempting to rebut Dr. Jacob's opinions. Miscoe's opinion is completely devoid of an analysis of facts present in this case. Like the plaintiff's expert in *Cordoves*, Miscoe's opinions are "rife with impermissible legal conclusions" that are couched almost entirely in his interpretation of § 627.736(5)(d). As explained in *Cordoves*, such expert testimony invades the province of the Court and is inadmissible under Rule 702.

The decision of *Fabelo v. Wells Fargo Bank, N.A.*, No. 1:13-cv-22721-UU, 2014 WL 12596986 (S.D. Fla. Nov. 19, 2014) is also directly on point. In *Fabelo*, the plaintiff sued a bank for conversion under Florida Statute § 673.4201 based on its role in a check forgery scheme carried out by a former bank employee. *Id.* at *1. The bank filed a motion for summary judgment and the plaintiff opposed the motion with an affidavit of his expert. *Id.* at *3. One of the expert's opinions was dependent on her interpretation of Florida Statute § 673.1301(1)(g), which established an "ordinary care" standard for the bank when negotiating the checks. *Id.* at *4. The Court struck the opinion from consideration in the summary-judgment proceedings on the following grounds:

> [A]n expert may not testify as to his opinion regarding ultimate legal conclusions because **the district court must be the jury's only source of law**. Ms. Hansen's opinion that the second sentence of the ordinary care definition found in Section 673.1031(1)(g) does not apply to Defendant is a legal conclusion and **the Court will not allow Ms. Hansen to testify about how the Florida Statutes apply in this case.**

*Id.* at *5 (citations and internal quotations omitted; emphasis added).

Like the proposed opinions of the experts in *Cordoves* and *Fabelo*, Miscoe's opinions fail Rule 702's "helpfulness" prong because they impermissibly consist of only <u>his</u> interpretation of the applicable legal standards and conclusions. Respectfully, any opinion on the legal standards applicable to the statute in question here, § 627.736(5)(d), may only come from the Court. It is this Court's role to address the jury on the content, interpretation, and

9

applicability of Florida law to the case's facts. As a result, Attorney Miscoe's opinion must be stricken and excluded. *See also Spadaro v. City of Miramar*, No.: 11-61607-Civ-Cohn/Seltzer, 2013 WL 12090197, at *4 (S.D. Fla. Feb. 11, 2013) ("It is axiomatic that experts may not offer opinions as to legal conclusions.")

    2. <u>Miscoe's interpretation of § 627.736(5)(d) is contrary to Florida law.</u>

In addition to being an impermissible subject for expert testimony, Miscoe's interpretation of § 627.736(5)(d) is substantively incorrect as it contravenes multiple Florida court decisions addressing whether providers must consider the *CPT Assistant* when determining whether medical bills comply with the AMA's CPT coding guidelines. The judgment entered in *State Farm Mut. Auto. Ins. Co. v. Nu-Best Whiplash Injury Ctr., Inc.*, which was affirmed on appeal, could not be any clearer. 23 Fla. L. Weekly Supp. 121a (Fla. 6th Cir. Ct. 2014), *aff'd*, *Nu-Best Whiplash Injury Ctr., Inc. v. State Farm Mut. Auto. Ins. Co*, 244 So. 3d 221 (Table) (Fla. 2d DCA 2018). Under the heading "CONCLUSIONS OF LAW," the *Nu-Best* court made the following rulings:

> Florida's No-Fault State requires that providers comply with AMA CPT coding in the submission of bills for payment of insureds' PIP benefits. Further, guidance is to be provided by the Physicians' Current Procedural Terminology (CPT). Florida Statute § 627.736(5)(d). The Statute goes on to provide that an insurer is not required to pay a claim or charges with respect to a bill that does not meet the requirements of section (5)(d). Florida Statute § 627.736(5)(b)1.d. (2001-2012).
>
> When interpreting the appropriate CPT code when a bill has submitted for payment pursuant to an insured's PIP benefits, the Court <u>must turn</u> to the AMA CPT coding requirements and statutorily referenced AMA promulgated guides. <u>An authoritative reference tool when determining the appropriate CPT code for a procedure are those referenced in the CPT code book, including the *AMA's CPT Assistant*</u>, the *AMA's Frequently Asked Questions about CPT Coding*, the *AMA Coding Consultations*, and *CPT Changes*, *An Insider's View*.

*Id.* at *4 (emphasis added); *see also State Farm Mut. Auto, Ins. Co. v. R.J. Trapana, M.D., P.A., (a/a/o Noemi Marquez)*, 23 Fla. L. Weekly Supp. 98a at *2 (Fla. 17th Cir. Ct. 2015) (holding that

courts can use the *CPT Assistant* "as a guide [to] clarify information found in the CPT Manual" when determining if a medical bill complies with Florida's PIP Statute); *Madock (a/a/o Lynn Kus) v. Progressive Express Ins. Co.*, 11 Fla. L. Weekly Supp. 408b (Fla. 13th Cir. Ct. 2004) (affirming the trial court's admission of the *CPT Assistant* as "substantive evidence" that the provider did not properly bill CPT code 76140); *Hallandale Beach Orthopedics, Inc. (a/a/o Monette Bonhomme) v. State Farm Mut. Auto. Ins. Co.*, 18 Fla. L. Weekly Supp. 1050a at *3 (Fla. Broward Cty. Ct. 2011) ("Since the Physicians Current Procedural Terminology code book directs the use of the CPT Assistant to discern its intent, the Court finds that reference to the CPT Assistant is appropriate when interpreting the CPT code book" for purposes of determining compliance with Florida's PIP Statute). Copies of the foregoing opinions are attached as composite Exhibit "A."

Miscoe's proposed interpretation of § 627.736(5)(d) is directly contrary to the *Nu-Best* case, as well as the above-cited orders from Florida courts. In addition to failing the "helpfulness" prong of Rule 702, Miscoe's opinions do not meet the Rule 702's "reliability" standard because they are contrary to Florida law. Allowing Miscoe's opinions into evidence would substantially mislead the jury regarding the legal standards governing the Clinic's medical bills at issue in this case. It is this Court's responsibility, not Miscoe's, to instruct the jury on those issues.

    **C.**    **MISCOE'S OPINION THAT § 627.736(5)(d) DOES NOT PROVIDE A STANDARD FOR DETERMINING THE PROPER LEVEL OF CPT CODING FOR AN EXAMINATION IS NOT HELPFUL AND WILL CONFUSE THE JURY .**

Miscoe opines that there are literally no standards for determining whether Defendants properly billed for their high-level evaluation and management ("E/M") codes. This is not helpful and will confuse the jury.

11

Every one of the Clinic's medical bills at issue in this case includes a charge for CPT code 99204, 99214, or 99215. [Doc. 72-2, p. 15, ¶ 35] These codes describe E/M services provided to a patient in an office setting. To bill for any of these codes, the medical provider must satisfy three components: a patient history, an examination of the patient, and medical decision-making regarding the patient's care. [Doc. 72-2, pp. 212-14] The CPT codes for E/M services are arranged in five levels, with the lowest level being CPT Codes 99201 or 99211 and the highest level being CPT Codes 99205 or 99215. [Doc. 72-2, p. 16, ¶ 37] Each ascending level indicates a patient examination of increasing complexity and, in turn, justifies higher compensation. [Doc. 72-2, p. 16, ¶ 37] The AMA's CPT codebook contains detailed instructions for selecting the appropriate level of E/M code that accurately describes the E/M service provided to the patient. [Doc. 72-2, pp. 171-77]. By billing CPT code 99204 for his initial evaluations, and CPT codes 99214 and 99215 for follow up evaluations, Dr. Feijoo chose the two highest and most expensive levels of E/M codes possible for patients who overwhelming sustained non-complex, soft-tissue injuries in their auto accidents.

Importantly, Miscoe has <u>not</u> offered an opinion that the Clinic's charges for CPT codes 99204, 99214, and 99215 comply with the AMA's CPT or accurately describe Dr. Feijoo's evaluations of SFM's insureds. Miscoe could not do so because he never looked at a single medical record or bill at issue in this case. Miscoe's opinion is that "[t]he simple truth is that the billing of E/M services cannot, <u>under the CPT Editorial Panel guidance expressly adopted by the Florida legislature at § 627.736(5)(d)</u>, be deemed objectively wrong, let alone misleading or deceptive." [Doc. 80-3, p. 10, ¶ 47](emphasis added) As established by the highlighted language, the foundation of this opinion is Miscoe's own interpretation of § 627.736(5)(d) as only authorizing consideration of information within the "four corners" of the CPT codebook

12

specifically drafted by the CPT Editorial Panel. Thus, Miscoe's opinions regarding the E/M codes included in Defendants' bills are inadmissible for the reasons set forth above in Section IV.A.

Curiously, Miscoe opines that it is impossible for any medical provider in Florida, including Dr. Feijoo, to determine how to properly report an E/M service under Florida's No-Fault Law [Doc. 80-3, pp. 9-10, ¶ 47] Miscoe elaborated on this opinion at his deposition:

> **Q.:**   . . . Let me go back to your --- your statement in paragraph 47. And I'm going --- I'm sorry --- yeah, paragraph 47. I'm going to read it again to reorient us. The simple truth is that the billing of E and M services cannot under the CPT Editorial Panel Guidance expressly adopted by the Florida legislature at Section 627.7365(d), be deemed objectively wrong, let alone misleading or deceptive. First question is you're referring to, with that sentence, Dr. Dr. Feijoo's billing of the E and M services. Right? That's what that sentence refers to?
>
> **Ds' Counsel:** Objection to form.
>
> **A.:** In the context of this case, yes, obviously that statement would only apply to Dr. Dr. Feijoo. <u>But as a general matter, my statement is true to any provider.</u>
>
> **Q.:** Okay. So just narrow it to Dr. Dr. Feijoo. I may ask you some questions about any providers, but as regards Dr. Dr. Feijoo, <u>is it also your opinion that the billing of E and M services by Dr. Dr. Feijoo cannot be deemed objectively correct</u> under these standards that you've identified here?
>
> **A.:** <u>Yes. The corollary's also true. There's --- there's no objective standard for evaluating the level of E and M service.</u> There's information. There's a lot of terms used that are not defined. So I can't --- <u>no one can tell you whether they're right, they're wrong.</u> We look at the code descriptions. We look at the --- no --- I guess maybe the guide off of time, but the guidance doesn't permit us to do that. <u>So the right and wrongness of an E and M Code cannot be objectively determined is the point.</u> So ---.
>
> **Q.:** <u>For any provider billing PIP benefits in Florida; right?</u>
>
> **A.:** <u>Correct.</u> Or you know, even Medicare for that matter, because Medicare defers to CPT Guidance, it has some guidance of its own, but it is one of the huge problems. . . .

13

[Miscoe Tr. at 86:1 – 87:18] (emphasis added).

With the enactment of § 627.736(5)(d), the Legislature established the AMA's CPT as the standardized coding system for use in the millions of medical bills issued and paid annually under Florida's No-Fault Law. Acceptance of Miscoe's opinion necessarily means that there are literally no standards for physicians' billing of E/M services within this massive system. According to him, providers may charge any level of E/M code they want regardless of the simplicity or complexity of the patient evaluation, and the insurer and insured (for PIP-only policies) must pay the charge in full because no one can determine if the selected E/M code complies with the AMA's CPT as required by Florida law. If adopted, Miscoe's impermissible legal opinion would throw Florida's no-fault system of automotive insurance into chaos.

This opinion also directly contravenes the purpose of § 627.736(5)(d), which adopts the AMA's CPT as a standardized system for billing PIP benefits in order to ensure providers accurately and transparently describe the medical services for which they are charging insurers and insureds, the latter of whom are required to pay 20% of the services if they have PIP-only policies. Fla. Stat. §§ 627.736(1)(a) & 817.234(7)(a). Miscoe's opinion is based on an impermissible interpretation of § 627.736(5)(d) that undermines, and in fact vitiates, this statutory purpose. *See Zack v. Tucker*, 704 F. 3d 917, 925 (11th Cir. 2013).

Furthermore, Miscoe does not point to any authority, but simply asks us to "take his word for it." [Doc. 80-4 at 6-14] As Judge Jordan explained in *Sorrels v. NCL (Bahamas) Ltd.*, "'[t]he [district] court's gatekeeping function requires more than simply taking the expert's word for it…" and "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence ... by the ipse dixit of the expert." 796 F.3d 1275, 1286 (11th Cir. 2015)(citing *Frazier*, 387 F.3d at 1261; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Just

14

as in *Sorrels*, this type of proposed expert testimony is inadmissible under Rule 702 and should be stricken here.

Finally, the entire purpose of Miscoe's opinions regarding the E/M codes billed by Dr. Feijoo's Clinic is to mislead and confuse the jury. Instead of assisting the jurors with determining whether the services performed by Dr. Feijoo meet the criteria for billing CPT Codes 99204, 99214, and 99215, Defendants intend to use Miscoe's testimony to mislead jurors into thinking it is impossible to make any determination as to the appropriateness of the coding, and/or to confuse them to the point that they are not comfortable making a decision. Accordingly, Miscoe's opinions regarding the E/M codes billed by Dr. Feijoo's Clinic fail Rule 702's helpfulness element.

### D.  MISCOE'S PROFFERED OPINIONS THAT DR. FEIJOO DID NOT ACT WITH INTENTIONAL, RECKLESS, OR NEGLIGENT INTENT ARE IMPERMISSIBLE.

As a last resort, Miscoe opines that even if Dr. Feijoo billed the wrong CPT codes that this "inaccuracy was neither reckless or [sic] negligent absent evidence of Dr. Dr. Feijoo's knowledge of the contents of the newsletter articles on this subject" (*i.e.*, *CPT Assistant* articles). [Doc. 80-3, p. 8, ¶ 43] Miscoe continues by speculating "it is likely that Dr. Feijoo was completely unaware of this guidance." *Id.* Statements concerning Dr. Feijoo's intent and state of mind are improper subjects for expert testimony.

Miscoe's above-quoted statements do not "concern[] matters beyond the understanding of the average lay person, and they "offer[] nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F. 3d at 1262-63. They merely purport to tell the fact finder what result to reach, which is impermissible. *E.g.*, *Webb v. Carnival Corp.*, 321 F.R.D. 420, 425 (S.D. Fla. 2017).  For these reasons, Miscoe's opinions, again, fail the helpfulness

15

prong of Rule 702. *Id.*; *Frazier*, 387 F. 3d at 1262-63; *see also Higgs v. Costa Crociere S.P.A. Co.*, No. 15-60280-Civ-Cohn/Seltzer, 2016 WL 4370012 at *7 (S.D. Fla. Jan. 11, 2016) (prohibiting expert testimony that the defendant's employees were "at fault" or "careless").

It is also well-established in this district that expert opinions regarding a person's state of mind, including his or her motive, purpose, and intent, are inadmissible. *See, e.g.*, *Quevedo v. Iberia, Lineas Aereas De Espana, S.A. Operadora Unipersonal*, No. 17-21168-CV-Scola/Torres, 2018 WL 4932097, at *4 (S.D. Fla. Oct. 11, 2018) (excluding expert testimony regarding aircrew's state of mind); *Taylor v. Novartis Pharm. Corp.*, No. 06-61337-CIV, 2013 WL 5118945, at *4 (S.D. Fla. Apr. 22, 2013) (excluding expert testimony regarding corporation's intent); *Kaufman v. Pfizer Pharm., Inc.*, No. 1:02-CV-22692, 2011 WL 7659333, at *9 n. 8 (S.D. Fla. Aug. 4, 2011) (excluding all of the expert's opinions regarding "motives and state of mind, regardless of where or how they appear in her expert report."); and *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 1489793, at *8-9 (S.D. Fla. Feb. 24, 2010) (same and noting that "[t]he question of intent or motive is a classic jury question and not one for experts"). Miscoe's statements regarding Dr. Feijoo's purported intent and state of mind when reporting the subject CPT codes in the Clinic's bills should also be stricken and excluded under these authorities.

**V.     CONCLUSION**

WHEREFORE, Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, respectfully requests the Court to enter an Order striking the opinions set forth in the Declaration and expert report of Michael Miscoe, prohibiting him from testifying at trial or otherwise limiting his testimony at trial as set forth above, and granting Plaintiff any such other relief the Court deems necessary and proper.

**Certificate of Good Faith Conference Pursuant to Local Rule 7.1(a)(3)**

The undersigned hereby certifies that he has conferred with Defendants' counsel, Jerry Pivnik, in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

Dated this 23rd day of August, 2019.

    Respectfully submitted,

    */s/ Kenneth P. Hazouri*
    KENNETH P. HAZOURI
    Fla. Bar No. 019800
    khazouri@dsklawgroup.com
    ANDREW S. BALLENTINE
    Fla. Bar No. 118075
    aballentine@dsklawgroup.com
    **DEBEAUBIEN, SIMMONS, KNIGHT, MANTZARIS AND NEAL, LLP**
    332 North Magnolia Avenue
    Orlando, Florida 32801
    Telephone: (407) 422-2454

    —and—

    DAVID I. SPECTOR, ESQ.
    Fla. Bar No. 086540
    david.spector@hklaw.com
    KAYLA L. PRAGID, ESQ.
    Fla. Bar No. 098738
    kayla.pragid@hklaw.com
    **HOLLAND & KNIGHT LLP**
    222 Lakeview Avenue, Ste. 1000
    West Palm Beach, Florida 33401
    Telephone: (561) 833-2000
    Facsimile:  (561) 650-8399

    *Attorneys for Plaintiff*