# EXHIBIT "A"

18 Fla. L. Weekly Supp. 1050a

Online Reference: FLWSUPP 1810BONH

**Insurance -- Personal injury protection -- Coverage -- Medical expenses -- CPT coding -- Unbundling -- Medical provider inappropriately unbundled and billed separately for re-reading of diagnostic scans performed as part of medical decision making and counseling components of evaluation and management CPT code which was billed for same day of service**

HALLANDALE BEACH ORTHOPEDICS, INC. (A/A/O MONETTE BONHOMME), Plaintiff, vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant. County Court 17th Judicial Circuit in and for Broward County. Case No. 09 14363 COCE 56. Claim No. 59-A198-681. August 4, 2011. Honorable Linda Pratt, Judge. Brian P. Levy, Law Offices of Whitelock & Levy, L.L.C., Fort Lauderdale, for Plaintiff. Stephen G. Mellor, Roig, Tutan, Rosenberg & Zlotnick, P.A., Deerfield Beach, for Defendant.

FINAL JUDGMENT FOR THE DEFENDANT

THIS CAUSE came before the Court for hearing on April 27, 2011 on Plaintiff's Motion for Final Summary Judgment and Defendant's Motion for Final Summary Judgment. Pursuant to the Order entered on June 2, 2011,

IT IS ADJUDGED:

*Background and Undisputed Facts*

This is an action by the Plaintiff, Hallandale Beach Orthopedics, Inc., a/a/o Monette Bonhomme to recover alleged overdue Personal Injury Protection ("PIP") benefits from the Defendant, State Farm Mutual Automobile Insurance Company (hereinafter referred to as "State Farm").

On March 8, 2009, Monette Bonhomme was involved in a motor vehicle accident in which she sustained injuries. State Farm issued a policy of insurance to Monette & Ethny Bonhomme which provided Personal Injury Protection (PIP) benefits up to $10,000.00 and inured to the benefit of Monette Bonhomme for the alleged injuries that she sustained in the March 8, 2009 accident.

On April 2, 2009, Monette Bonhomme underwent Magnetic Resonance Imaging (MRI) scans of her cervical and lumbar spine at County Line Chiropractic Center, Inc., after she was referred by Christopher Thompson, D.C. These cervical and lumbar MRI scans were interpreted by radiologist, Dr. Ronald Landau, M.D. at County Line Chiropractic Center, Inc., and a report of the findings was issued.

On April 27, 2009 the Defendant, State Farm received a bill from County Line Chiropractic Center, Inc., for Monette Bonhomme's cervical and lumbar MRI scans which were taken on April 2, 2009. This bill was submitted on a Health Insurance Claim Form ("HCFA") and listed CPT code 72141 representing the cervical MRI scan and CPT code 72148 representing the lumbar MRI scan. CPT codes 72148 and 72141 represents charges for both the technical and professional components of these MRI scans. On June 10, 2009, State Farm made payment to County Line Chiropractic Center, Inc., for Monette Bonhomme's MRI Scans for date of service April 2, 2009.

On April 13, 2009, Monette Bonhomme first treated with the Plaintiff, Hallandale Beach Orthopedics, Inc., (hereinafter referred to as "HBO"). As part of this initial visit, Dr. Harry Cooper, D.O. of HBO performed an Evaluation and Management Consultation of Monette Bonhomme and provided a re-interpretation and/or re-read of Monette Bonhomme's Cervical and Lumbar MRI scans which were taken at County Line Chiropractic Center, Inc., on April 2, 2009. Dr. Cooper listed his findings of these two MRI scans in a separate report titled "MRI RESULT".

On May 12, 2009, State Farm received a bill for date of service April 13, 2009 from HBO listing CPT code 99244 with appended modifier 25 for the Initial Office Consultation in the amount of $550.00; and CPT code 72141 with appended modifier 26 for the rereading of Monette Bonhomme's cervical MRI scans in the amount of $125.00; and CPT code 72148 with appended modifier 26 for the re-reading of Monette Bonhomme's lumbar MRI scans in the amount of $125.00. On May 15, 2009, State Farm made payment to HBO in the amount of $308.43 for CPT code 99244 (25) for date of service April 13, 2009, while denying payment of CPT codes 72141 (26) and 72148 (26) for the billed amount of $250.00.

Thereafter, HBO filed the instant lawsuit for payment for the re-reading of Monette Bonhomme's cervical and lumbar MRI scans on April 13, 2009.

The issue presented to this Court is whether the Defendant, State Farm is obligated to make payment to the Plaintiff, HBO for Dr. Cooper's re-reading of Monette Bonhomme's Cervical and Lumbar MRI scans when State Farm had previously made payment for the "Initial interpretation" or "Professional Component" of these MRI scans to County Line Chiropractic Center, Inc. Additionally, whether the Plaintiff, HBO has unbundled CPT code 72141 (26) and CPT code 72148 (26) from CPT code 99244 (25), in that the rereading of these outside MRI scans would be included as part of Dr. Cooper's comprehensive Evaluation and Management Consultation for that same date of service and should not have been billed separately.

The Plaintiff has submitted the Affidavit of Dr. Harry Cooper, DO in support of Plaintiff's Motion for Summary Judgment. The Defendant, State Farm has submitted the Affidavit of State Farm Claims Representative, Harold Ly and its certified coding expert, Connie Coleman in support of Defendant's Motion for Summary Judgment.

*Findings of Law*

The Defendant, State Farm maintains it is not obligated to make payment to HBO for the re-reading and interpreting of Monette Bonhomme's April 2, 2009 cervical and lumbar MRI scans because this service is part of the medical decision making and counseling components of the Evaluation and Management ("E/M") service code 99244 which was billed on the same date of service, and should not have been billed separately.

The Plaintiff alleges that it is allowed to bill separately for the re-reading of Monette Bonhomme's April 2, 2009 cervical and lumbar MRI scans and for the E/M service which was performed on April 13, 2009

*Florida Statutes, §627.736(5)(d) and §627.736(5)(b)(1)(e),* provide in pertinent part:

> "All statements and bills for medical services rendered by any physician, hospital, clinic, or other person or institution shall be submitted to the insurer on a properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form, UB 92 form, or any other standard form approved by the office or adopted by the commission for purposes of this paragraph. All billings for such services rendered by this provision shall, to the extent applicable, follow the *Physicians' Current Procedural Terminology (CPT) or Health Care Correct Procedural Coding System (HCPS), or ICD-9 in effect for the year in which services are rendered and comply with Centers for Medicare and Medicaid Services (CMS) 1500 form instructions and the American Medical Association Current Procedural Terminology (CPT) Editorial Panel* and Healthcare Correct Procedural Coding System (HCPCS). All providers other than hospitals shall include on the applicable claim form the professional license number of the provider in the line or space provided for "Signature of Physician or Supplier, including Degrees or Credentials." In determining compliance with applicable *CPT and HCPCS coding, guidance shall be provided by the Physicians' Current Procedural Terminology (CPT) or the Healthcare Correct Procedural Coding System (HCPCS) in effect for the year in which services were rendered, the Office of the Inspector General* (OIG), *Physicians Compliance Guidelines, and other authoritative treatises* designed by rule by the Agency for Health Care Administration . . . For purposes of paragraph (4)(b), an insurer shall not be considered to have been furnished with notice of the amount of covered loss or medical bills due unless the statements or bills comply with this paragraph, and unless the statements or bills are properly completed in their entirety as to all material provisions, with all relevant information being provide therein.

* * *

> [A]n insurer . . . is not required to pay a claim or charges . . . [f]or any treatment or service that is *upcoded,* or that is *unbundled* when such treatment or services should be bundled . . . [T]o facilitate prompt payment of lawful services, an insurer may change codes that it determines to have been improperly or incorrectly *upcoded* or *unbundled,* and may make payment based on the changed code, without affecting the right of the provider to dispute the change by the insurer, provided that before doing so, the insurer must contact the health care provider and discuss the reasons for the insurer's change and the health care provider's reason for the coding, or make a reasonable good faith effort to do so . . . (emphasis added).

In support of its position, the Defendant, State Farm has directed the Court to take notice of the *Physician's Current Procedural Terminology®* (CPT) code book which is specifically referenced in *Florida Statutes, §627.736(5)* and the *CPT Assistant.* According to the introductory chapter of the CPT code book or manual:

> "When reporting codes for services provided, it is important to assure the accuracy and quality of coding through verification of the intent of the code by use of the related guidelines, parenthetical instructions, and coding resources, *including CPT Assistant* and other publications resulting from collaborative efforts of the American Medical Association with medical specialty societies (ie, *Clinical Examples in Radiology*)." (emphasis added)

In the "References to AMA Resources" in the Introduction Section of CPT Professional 2007, it states, "The symbols *(green)* and *(red)* appear after many codes throughout this codebook and indicate that the AMA has published reference material regarding that particular code. The symbol *(green)* refers to the CPT Assistant monthly newsletter and CPT Changes: An Insider's View, an annual book with all of the coding changes for the current year. The symbol *(red)* refers to the new Clinical Examples in Radiology quarterly newsletter. Search past issues of the AMA's authoritative coding newsletter by key word, phrase, CPT code number, newsletter issue, article index, or codebook table of contents."

Since the Physicians Current Procedural Terminology code book directs the use of CPT Assistant to discern its intent, the Court finds that reference to CPT Assistant is appropriate when interpreting the CPT code book.

The *CPT code book* defines CPT code 99244 as: "Office consultation for a new or established patient, which requires these three key components: A comprehensive history; A comprehensive examination; *Medical decision making of moderate complexity. Counseling* and coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient' and/or family's needs. Usually, the presenting problem(s) are of moderate to high severity. *Physicians typically spend 60 minutes face-to-face with the patient.*"[1] (emphases added)

The *CPT code book* under "Instructions for Selecting a Level of E/M Service" states:

> *Determine the Complexity of Medical Decision Making*
>
> Medical decision making refers to the complexity if establishing a diagnosis and/or selecting a management option as measured by:
>
> · The number of possible diagnosis and/or the number of management options that must be considered;
>
> · The *amount and/or complexity* of medical records, *diagnostic tests,* and/or other information that must be obtained, *reviewed and analyzed*; and
>
> · The risk of significant complications, morbidity and/or mortality, as well as comorbidities, associated with the patient's resenting problems(s), the diagnostic procedure(s) and/or the possibility management options . . .[2]

The *CPT code book* defines "Counseling" as a discussion with a patient and/or family concerning one or more of the following: *Diagnostic results, impressions, and/or recommended diagnostic studies*; Prognosis; Risks and benefits of management (treatment) options; Instructions for management (treatment) and/or follow up; Importance of compliance with chosen management (treatment) options; Risk factor reduction; Patient and family education.[3]

The Defendant, State Farm submitted the affidavit of certified coding expert, Connie Coleman to support its contention that the re-interpretation and/or re-reading of these MRI scans would be included as part of the "Medical Decision Making" and "Counseling" component of the 99244 E/M Service code and that the services should not be billed separately. The affidavit of Dr. Cooper does not address the issue of coding. Thus the only evidence as to the proper interpretation of the CPT code book is the affidavit of Defendant's expert.

The Plaintiff cited to the case of *Gary H. Diblasio, M.D., PA (a/a/o Cheryl Baumann) v. Progressive Express Ins. Co.*, 14 Fla. L. Weekly Supp. 1027a (15th Jud. Cir. (Appellate) 2007) to establish that the separate charge for re-reading the two MRI scans at issue by the Plaintiff is a matter of law and therefore expert witness testimony should not be

allowed. The Court disagrees. *See: State Farm Mutual Automobile Insurance Company v. Bowling, case no. 2D10-1505 (Fla. 2nd DCA, July 8, 2011).*

*Ruling*

The Court finds that based upon the record in this case, including the unrebutted affidavit of defendant's expert, there is no dispute of material fact or law and the *CPT code book* along with *CPT Assistant* recognizes that the re-reading of diagnostic scans performed by the Plaintiff in this case is part of the medical decision making and counseling components of the E/M service code 99244 which was billed on the same date of service. Therefore, the Plaintiff inappropriately unbundled CPT code 72141 (26) and CPT code 72148 (26) from CPT code 99244 (25) and as such CPT code 72141 (26) and CPT code 72148 (26) are not reimbursable.

*Final Judgment*

IT IS HEREBY ORDERED AND ADJUDGED that the Plaintiff's Motion for Final Summary Judgment is hereby denied and that the Defendant's Motion for Final Summary Judgment is hereby granted, and Final Judgment is hereby entered on behalf of Defendant, State Farm Mutual Automobile Insurance Company. The Plaintiff, Hallandale Beach Orthopedics, Inc., shall take nothing by this action and the Defendant, State Farm Mutual Automobile Insurance Company shall go hence without a day. The Court retains jurisdiction for the purpose of determining any motion by the Defendant to tax fees and costs.

_____

[1] CPT Codebook 2007, page 15.

[2] CPT Codebook 2007, page 7.

[3] CPT Codebook 2007, page 1.

\* \* \*

11 Fla. L. Weekly Supp. 408b

**Insurance -- Personal injury protection -- Evidence -- No merit to claim that trial court erred in admitting articles from periodical on CPT coding despite fact that they were unauthenticated since articles are self-authenticating -- No abuse of discretion in admitting articles that insurer failed to disclose at pretrial conference where there is no showing of prejudice inasmuch as medical provider proffered no argument that it might have countered evidence had it been disclosed, and no showing that alleged error was harmful since admission of articles served only to clarify information already in CPT manual for jury -- No error in refusing to admit evidence of payment on subject CPT code in other cases since conduct by non-party insurer is not relevant or admissible**

DANIEL J. MADOCK (a/a/o LYNN KUS), Appellant, vs. PROGRESSIVE EXPRESS INSURANCE COMPANY, Appellee. Circuit Court, 13th Judicial Circuit (Appellate) in and for Hillsborough County. Case No. 03-6538. Division X. L.C. Case No. 02-4680-SC. March 3, 2004. Herbert J. Baumann, Jr., Judge. Review of a final order of the County Ct. Hillsborough County. Counsel: Timothy A. Patrick, P.A., Tampa, for Appellant. Valeria Hendricks, Tampa, for Appellee.

Appellant appeals a final judgment against it, claiming that the trial court erred with respect to the admission and exclusion of certain evidence. Based upon our review, we affirm the decision of the trial court.

The underlying matter in this case was a suit for breach of contract and unpaid insurance benefits and statutory interest under the PIP statute. As a result of injuries sustained in covered incident, Ms. Kus sought and received medical treatment with Dr. Daniel J. Madock. She executed an assignment of benefits to Dr. Madock for her medical treatment. A dispute arose over a bill Appellant provider submitted under CPT code 76140, which Appellee refused to pay because the procedure was included in another procedure Appellant submitted under CPT code 98940. Appellant sued pursuant to Section 627.736, Florida Statutes. At a pretrial conference the trial court ordered the parties to mark their exhibits for identification and prepare a chronological exhibit list for use of the Clerk and Court at trial. Appellee disclosed that it intended to admit, among other things, a copy of the CPT Manual.

At trial, the Appellee attempted to introduce copies of three articles from a publication entitled the "CPT Assistant" for use as substantive evidence that CPT code 76140 was not compensable because the procedure was included in the billing for CPT code 98940. The basis for the documentary evidence and the argument was testimonial evidence which indicated that on the same day Appellant charged for the 76140 CPT code, he also charged for an initial office visit with the insured. He wrote a four-page report on this office visit, which included, in the assessment section, his one-sentence review of the cervical x-rays taken at the hospital. He did not write a separate report for his evaluation of those x-rays. His one-sentence report is why he billed the 76140 code. Appellee sought to show through admission of the "CPT Assistant," that the evaluation and interpretation of a diagnostic study is to be included in an office visit charge rather than being billed separately. Appellant objected to the introduction of these documents, on the grounds that the documents were not authenticated and not properly disclosed on the exhibit list. The trial court heard arguments but allowed the "CPT Assistant" articles to be introduced into evidence.

Appellant also challenges the trial court's refusal to allow the admission of evidence that he had been previously paid by other insurers pursuant to the 76140 billing code.

A jury returned a verdict in favor of the Appellee and Final Judgment was rendered on June 2, 2003. After a motion for rehearing which the trial court denied, this timely appeal followed.

Appellant contends that the trial court abused its discretion when it admitted "The CPT Assistant" into evidence despite the fact that the articles were unauthenticated and were not disclosed at the pretrial conference. He further argues that the trial court again abused its discretion when it precluded the Appellant from introducing evidence that other insurers have customarily paid his medical charges for CPT code 76140.

The standard of review as to trial court decisions on evidentiary matters is abuse of discretion. *Grau v. Branham*, 761 So.2d 375 (Fla. 4th DCA 2000). Regarding the alleged failure to authenticate the articles found in the "The CPT Assistant," this issue is without merit. Such articles need not be authenticated because they are self-authenticating. *Cirillo v. Davis*, 732 So.2d 387, 388 (Fla. 4th DCA 1999), interpreting Section 90.902, Florida Statutes.

With respect to Appellant's argument that Appellee's failure to clearly disclose its intent to use the periodical articles from the "CPT Assistant," it appears that the insurer's attorney may have been remiss in failing to disclose the articles. However, several considerations enter into our decision to affirm the decision of the trial court. The first is that the standard of review is abuse of discretion, a very heavy burden for Appellant to overcome. Case law Appellant cites states only that a trial court *may* exclude evidence for failure to disclose evidence, not that it *must*. *See Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981). To determine whether the trial court abused its discretion we examine the decision to admit the evidence prejudices the opposing party. *Tomlinson-McKenzie v. Prince*, 718 So.2d 394 (Fla. 4th DCA 1998). Prejudice inures if there was action the other party might have taken to alleviate the effect of the undisclosed evidence had it been timely disclosed. *Id*. Appellant proffered no argument that he might have countered the evidence had it been disclosed. Discretion is so broad as to evidentiary matters that had the trial court decided to exclude the evidence, it may well have also been correct under the circumstances of this case. *Mistri v. Joseph Rutigliano & Sons*, 827 So.2d 391 (Fla. 5th DCA 2002).

We also examine whether the record reflects that the alleged error was harmful. In essence, the question is whether the judge's decision affected the justice of the case as a whole. *Forester v. Jewell*, 610 So.2d 1369 (Fla. 1st DCA 1992). It is insufficient to allege mere error; the error must be harmful. *Id*. In the instant case, the admission of the periodicals served only to clarify the information that was already in the CPT Manual for the jury. Appellant provided no basis for this court to find that prejudice or harmful error resulted from the judge's decision on the periodical evidence. He did not show that the decision was arbitrary or unreasonable. *Mistri* at 392. In short, Appellant did not overcome the heavy burden required to reverse the trial court's decision.

With respect to the trial court's decision on its refusal to allow the admission of evidence of payment in other cases on the 76140 code, the trial court made the correct decision. Conduct by a non-party insurer is not relevant nor admissible. Such evidence does not prove that the insurer in this case should or must pay in this case. It proved only *payment*, not the correctness of another insurer's decision to pay. By definition, it is not relevant. Section 90.401, Florida Evidence Code.

It is therefore ORDERED that the decision of the trial court is AFFIRMED. Appellant's Motion for Appellate Attorney's Fees and Costs is DENIED.

\* \* \*

244 So.3d 221 (Table)
Unpublished Disposition
(This unpublished disposition is referenced in the Southern Reporter.)
District Court of Appeal of Florida, Second District.

NU–BEST WHIPLASH INJURY CENTER, INC., Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

Case No. 2D16–2816
|
Opinion filed April 13, 2018

Appeal from the Circuit Court for Pinellas County; Bruce Boyer, Judge.

**Attorneys and Law Firms**

Lawrence H. Liebling of Liebling & Liebling, Safety Harbor, for Appellant.

Nancy A. Copperthwaite, Sandra L. Heller and Lorayne Perez of Akerman LLP, Miami and Fort Lauderdale; and Daniel A. Shapiro of Cole, Scott & Kissane, P.A., Tampa, for Appellee.

**Opinion**

PER CURIAM.

*1 Affirmed.

LaROSE, C.J., and SILBERMAN and ROTHSTEIN–YOUAKIM, JJ., Concur.

**All Citations**

244 So.3d 221 (Table), 2018 WL 1769184

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

23 Fla. L. Weekly Supp. 121a

Online Reference: FLWSUPP 2203STAT

**Insurance -- Personal injury protection -- Coverage -- Medical expenses -- Notice of claim -- Claim form -- CPT Code -- Video fluoroscopy -- No-Fault Law requires that provider comply with AMA CPT coding in submission of bills for payment of insureds' PIP benefits -- Insurer is not required to pay claim or charges with respect to bill that does not meet requirements of statute -- Court must turn to AMA CPT coding requirements and statutorily-referenced AMA promulgated guides when interpreting appropriate CPT code -- Since 2003, proper CPT code to be used when billing for video fluoroscopic procedures is 76120 -- AMA has specifically referenced that video fluoroscopic procedures performed under trade name Digital Motion X-Ray or by the procedural technology being described or utilized in the performance of a digital motion x-ray should be billed under 76120 -- By failing to use appropriate AMA CPT Code, provider failed to place insurer on notice of a covered loss -- Judgment granted in favor of insurer on its declaratory requests -- Provider's counterclaim seeking declaration that insurer acted improperly in its reimbursement determinations is denied -- Under policies at issue, insurer elected to reimburse 80% of reasonable expenses and provided that insurer could consider various federal and state medical fee schedules in determining reimbursement amount -- Evidence established that insurer was not limiting its reimbursement to an amount set by fee schedule, but rather considered fee schedule in determining reasonableness -- Provider failed to prove by greater and more persuasive standard that its $900 charge was reasonable -- Court declines to declare that insurer engaged in practice of downcoding provider's bills, and provider failed to prove by greater and more persuasive standard any bad faith on part of insurer -- Provider's counterclaim for declaration that insurer was required to contact provider prior to correcting what it believed to be a misrepresentative CPT code each time a bill was submitted by provider for Digital Motion X-ray, beginning in October 2003, is denied**

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff, vs. NU-BEST WHIPLASH INJURY CENTER, INC., Defendant. NU-BEST WHIPLASH INJURY CENTER, INC., Counter-Plaintiff, vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Counter-Defendant. Circuit Court, 6th Judicial Circuit in and for Pinellas County. Case No. 09-19125-CI-20. December 2, 2014. Honorable Bruce Boyer, Judge.

ORDER GRANTING STATE FARM MUTUAL

AUTOMOBILE INSURANCE COMPANY'S

DECLARATORY ACTION AND DENYING

NU-BEST WHIPLASH INJURY CENTER, INC.'S

DECLARATORY ACTION

THIS CASE having come before this Honorable Court by way of a bench trial held between September 15, 2014 and September 24, 2014, and the Court having had the opportunity to hear and read argument of counsel, considered the evidence submitted by both parties, and being otherwise fully advised in the premises, hereby states as follows:

PROCEDURAL HISTORY

1. Plaintiff/Counter-Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), has filed this action for declaratory judgment pursuant to *Fla. Stat. § 86.011*, in the Circuit Court of the 6th Judicial Circuit of the State of Florida in and for Pinellas County seeking the Court to enter the following Declarations:

> i. That CPT Code 76120 is the proper American Medical Association CPT Code used to describe video fluoroscopy (referred to by Nu-Best as "Digital Motion X-Ray" or "DMX"); and

> ii. That under Florida Statute Section 627.736 (2003 to 2007) and (2008), State Farm was not on notice of a covered loss when Defendant/Counter-Plaintiff, Nu-Best Whiplash Injury Center, Inc. ("Nu-Best"), utilized a CPT Code in violation of the American Medical Association's Current Procedural Terminology coding/billing guidelines.

2. Nu-Best has filed a counter declaratory action seeking the following Declarations:

## COUNT I

i. Section 627.736(1)(a) mandates that "every insurance policy. . .shall provide" for payment of "80% of all reasonable expenses for medically necessary" services;

ii. State Farm's PIP policy expressly states that State Farm will pay 80% of all reasonable expenses incurred for medically necessary services;

iii. Section 627.736(5)(a) 2.f. provides a permissive fee limitation that authorizes an insurer to opt out of 1(a) and provide in its PIP policy that it will limit reimbursement to 80% of 200% of the allowable amount under the Medicare Part B Fee Schedule or 80% of the maximum reimbursable allowance under Worker's Compensation;

iv. Section 627.736(5)(a) 2.f. does not mandate an insurer to remit reimbursement of the insured's reasonable treatment expenses to 80% of 200% of the allowable amount under the Medicare Part B Fee Schedule, or 80% of the maximum reimbursable allowance under Worker's Compensation;

v. To opt out of Section 627.736(1)(a) and employee's Section 627.736(5)(a) 2.f., the insurer's PIP policy must provide that it will limit reimbursement to 80% of 200% of the allowable amount under the Medicare Part B Fee Schedule, or 80% of the of the maximum reimbursable allowance under Worker's Compensation;

vi. State Farm must pay 80% of all reasonable medically necessary expenses as expressly provided in its policy;

vii. Nu-Best's usual and customary fee of $900 billed to State Farm for each diagnostic fluoroscopic procedure was reasonable; and

viii. Since January 1, 2008, State Farm has systematically down coded Nu-Best bills from CPT 76396 to CPT 76120, with the intent to deny reimbursement due, constituting material representation of its policy duties under sections 627.736(5)(g) of the PIP Statute and 626.954(1)(a)(I) of the Florida Unfair Insurance Trade Practices Act.

## COUNT II

i. None of Nu-Best's claims listed in Exhibit "1" attached to its Counterclaim were upcoded when billed under CPT 76496, or prior, under CPT 76499;

ii. For each claim in Exhibit "1" which State Farm decided was "upcoded," sec. 627.736(5)(b)1.e. required State Farm, before recoding Nu-Best's service and paying reduced benefits under the changed code, to contact Nu-Best and discuss the reasons for State Farm's change and Nu-Best's reason for the coding, or make a reasonable good faith effort to do so;

iii. As to each claim in Exhibit "1" which State Farm recoded and paid reduced benefits based on the changed code, State Farm failed to first contact Nu-Best and discuss the reasons for State Farm's change and Nu-Best's reason for the coding, or make a reasonable good faith effort to do so;

iv. As to each claim in Exhibit "1" which State Farm recoded and paid reduced benefits based on the changed code, without first contacting Nu-Best and discussing its reasons for the code and State Farm's reason for the change, State Farm was not authorized under sec. 627.736(5)(b)1.e to recode Nu-Best's procedure and pay reduced benefits based on the changed code; and

v. For each claim in Exhibit "1" which State Farm recoded and paid reduced benefits based on the changed code, without first contacting Nu-Best and discussing its reasons for the code and State Farm's reason for the change, State Farm must allow Nu-Best's billed fee if reasonable in amount and Nu-Best's services were reasonable, related to the motor vehicle collision, and medically necessary.

3. Nu-Best has filed 83 separate counter-claims seeking damages on Personal Injury Protection ("PIP") claims, all of which were abated by Judge Jirotka's Order dated June 17, 2011.

4. As such, the issues for this Court to decide are State Farm's and Nu-Best's Declaratory requests.

STATE FARM'S DECLARATORY ACTION

FINDINGS OF FACT

1. It is undisputed that State Farm is an insurance company authorized to issue automobile insurance policies within the State of Florida.

2. It is undisputed that Nu-Best is a diagnostic chiropractic clinic located in Palm Harbor, Florida which performs video fluoroscopic procedures, that are recorded digitally and used for diagnostic purposes, under the trade name Digital Motion X-Ray or "DMX," and bills patients' PIP benefits provided through their automobile insurance policy, including policies issued by State Farm.

3. State Farm, has filed this action for Declaratory Judgment pursuant to *Fla. Stat § 86.011*, arising out of the facts surrounding claims submitted by Nu-Best to State Farm for these fluoroscopic procedures, referred to as a Digital Motion X-Ray or "DMX," performed on State Farm insureds.

4. Nu-Best has submitted bills to State Farm for reimbursement under Florida Statute §627.736 pursuant to State Farm's insureds' PIP benefits.

5. For all dates of service at issue in this action, Florida Statute §627.736(5)(d) mandated that to seek reimbursement under an insured's PIP benefits, charges must be submitted on a Healthcare Finance Administration form (a "HCFA 1500 form") or on forms promulgated by the Center for Medicare and Medicaid Services (a "CMS 1500 form").

6. When filling out a HCFA 1500 form or a CMS 1500 form for reimbursement, pursuant to Florida Statute §627.736, the provider must enter a corresponding AMA CPT code for the procedure being billed. AMA CPT codes are five digit codes utilized to describe procedures and services performed by healthcare providers. The CPT Code Set is maintained and disseminated by the AMA and is promulgated by the AMA CPT Editorial Panel.

7. A division within the AMA, the Department of CPT Education and Information ("Department of CPT Education"), formerly known as CPT Information Services, is tasked with interpreting, evaluating CPT coding and responding to any coding questions that a healthcare provider may have regarding which CPT code should be used when billing a particular procedure.

8. In addition to providing responses to specific questions submitted by healthcare providers, the AMA also publishes different coding resources, including the *AMA's CPT Assistant,* the *AMA's Frequently Asked Questions about CPT Coding*, the *AMA Coding Consultations,* and *CPT Changes: An Insider's View.* In preparing these publications, the Department of CPT Education seeks input and guidance from medical specialty societies, such as the American College of Radiology.

9. The evidence presented establishes that since 2003, the AMA, through the Department of CPT Education, the CPT Editorial Panel, and the Executive Committee of the CPT Editorial Panel, has advised healthcare providers, including Nu-Best and John Postlethwaite, D.C., that the proper CPT code to be used when billing for a video fluoroscopic procedure is 76120. The AMA has specifically referenced that video fluoroscopic procedures performed under the trade name Digital Motion X-Ray or ("DMX") or by the procedural technology being utilized by Nu-Best and/or Postlethwaite, DC in the performance of (digital motion x-rays) should be billed under CPT code 76120.

10. The evidence presented further establishes that since 2003, the AMA has specifically stated that CPT codes 76496 and 79499 should not be used to bill a video fluoroscopic procedure and/or the procedure performed under the trade name Digital Motion X-Ray or the procedural technology utilized in the performance of digital motion x-rays. The AMA has specifically stated that bills submitted for the procedures described herein, they should not be billed using CPT codes 76496 or 76499.

11. During trial, Nu-Best's corporate representative, John Postlethwaite, DC, testified that there is no dispute that the AMA has taken the position that video fluoroscopic procedures, including those performed under the trade name Digital Motion X-Ray or "DMX," should be billed under CPT code 76120 and not under CPT codes 76496 or 76499. Nu-Best failed to present any evidence to refute State Farm's claim that the AMA, since 2003, and as early as 2000, has advised that the proper CPT code to use when billing a video fluoroscopic procedure, including those under the trade name Digital Motion X-ray or "DMX," should be 76120. John Postlethwaite, DC, has also acknowledged that the CPT Editorial Panel, as well as the Executive Committee of the CPT Editorial Panel, have both rejected requests to add an additional code to represent Nu-Best's Digital Motion X-ray service, indicating that 76120 is the code representing this service.

12. Nu-Best has argued that despite the AMA's position on how video fluoroscopic procedures, including those under the trade name digital motion x-ray or "DMX," should be billed, the AMA is incorrect in its analysis of the correct code descriptor. Accordingly, Nu-Best has decided to continue billing its procedure under CPT 76496 against the AMA's guidance and in contravention of the No-Fault Statute's requirements.

13. However, Nu-Best has not presented the Court with evidentiary support sponsored by the AMA, the AMA CPT Editorial Panel, the AMA CPT Editorial Panel's Executive Committee, or any medical specialty society for its position that the proper CPT code for its procedure is 76499 or 76496. The Court recognizes that it was acknowledged by Nu-Best's retained witness Michael Miscoe, that the AMA has maintained the position that 76120 is the correct code and 76496 and 79499 are the incorrect codes for Nu-Best's procedure.

14. The parties do not dispute that in order to submit bills for payment under Florida Statute § 627.736, a healthcare provider must utilize the appropriate CPT code as promulgated by the AMA CPT Editorial Panel.

15. Nu-Best has taken the position that the AMA's position in the CPT Assistant, various Coding Communications, CPT Changes: An Insider's look, the position of the specialty societies and dozens of letters from the AMA pertaining to Nu-Best's Digital Motion X-ray service should be disregarded by the Court, as it is the CPT Editorial Panel who determines proper CPT code usage. However, the evidence presented supports that the AMA CPT Editorial Panel is a division of the AMA. Additionally, the AMA CPT Editorial Panel has indicated that it has determined that CPT Code 76120 is the appropriate code to represent Nu-Best's Digital Motion X-ray service.

CONCLUSIONS OF LAW

State Farm has demonstrated to this Court that (1) a good-faith dispute exists between the parties; (2) it presently has a justiciable question concerning the existence or non-existence of a right or status, or some fact on which such right or status may depend; (3) it is in doubt regarding its right or status under the Florida Statute 627.736; and (4) a bona-fide, actual, present, and practical need for the declaration exists. *Rhea v. District Board of Trustees of Santa Fe College*, 109 So. 3d 851, 859 (Fla. Dist. Ct. App. 2013) [37 Fla. L. Weekly D1722a].

Florida's No-Fault Statute requires that provider comply with AMA CPT coding in the submission of bills for payment of insureds' PIP benefits. Further, guidance is to be provided by the Physicians' Current procedural Terminology (CPT). Florida Statute § 627.736(5)(d). The Statute goes on to provide that an insurer is not required to pay a claim or charges with respect to a bill that does not meet the requirements of section (5)(d). Florida Statute § 6270736(5)(b)1.d. (2001-2012).

When interpreting the appropriate CPT code when a bill has been submitted for payment pursuant to an insured's PIP benefits, the Court must turn to the AMA CPT coding requirements and statutorily-referenced AMA promulgated guides. An authoritative reference tool when determining the appropriate CPT code for a procedure are those referenced in the CPT code book, including the *AMA's CPT Assistant,* the *AMA's Frequently Asked Questions about CPT Coding,* the *AMA Coding Consultations,* and *CPT Changes: An Insider's View.* See *Hallandale Beach Orthopedics, Inc. (a/a/o Monette Bonhomme) v. State Farm Mutual Automobile Insurance Company,* 18 Fla. L. Weekly Supp. 1050a (Fla. Broward County Ct., August 4, 2011) (court judicially noticed CPT code book, which is specifically referenced in 627.736(5), and CPT Assistant holding that "[since the [CPT] code book directs the use of CPT Assistant to discern its intent, . . . reference to CPT Assistant is appropriate when interpreting the CPT code book."); *Lorraine Gordon v. Allstate Indemnity Company,* 17 Fla. L. Weekly Supp. 379(a), (Fla. Orange County Ct., December 17, 2009) ("[B]ecause the CPT Manual is incorporated by reference into § 627.735(5)(d) . . . both the CPT Manual and the CPT Assistant publication are admissible through judicial notice and are admissible for the purposes of summary judgment and trial", and the CPT Assistant should be used as a guide in determining the appropriateness

of a given CPT code.); and *Care Plus Injury Rehabilitation Center, Inc. (a/a/o Yesenia Rivera) v. Progressive American Insurance Company*, 15 Fla. L. Weekly Supp. 1114(a) (Fla. Miami-Dade County Ct., September 12, 2008) (Court held that medical providers may utilize only the AMA-promulgated CPT coding system or the Healthcare Correct Procedural Coding system to bill an insurer; the Court relied on undisputed record evidence of the AMA;s definitions of the subject CPT code in granting summary judgment in insurer's favor); *Nu-Best Whiplash Inj. Ctr. a/a/o Lemieux v State Farm Mut. Auto. Ins. Co.*, 19 Fla. L. Weekly Supp. 1092a, (Fla. Pinellas County Ct., May 29, 2012) (Belief that Nu-Best had used AMA CPT coding in contravention of the AMA based upon AMA correspondence and other related materials was a sufficient basis upon which to create an issue of fact that State Farm had a reasonable belief that the bills were not overdue.).

Since 2003, (and as early as 2000) the AMA, through the Department of CPT Education, the CPT Editorial Panel, and the Executive Committee of the CPT Editorial Panel, has advised that the proper CPT code to be used when billing for a video fluoroscopic procedure is 76120. The AMA has specifically referenced that video fluoroscopic procedures performed under the trade name Digital Motion X-Ray or by the procedural technology being described or utilized in the performance of a digital motion x-ray should be billed under CPT code 76120.

The Court finds that any distinction urged by Nu-Best does not exist and that the CPT Editorial Panel, through the AMA, has advised that the proper CPT Code used to describe video fluoroscopy (referred to by Nu-Best as "Digital Motion X-Ray" or "DMX") is CPT Code 76120.

As such, in response to State Farm's First Declaratory Request, it is hereby *ORDERED AND ADJUDGED* that *CPT Code 76120 is the proper American Medical Association CPT Code used to describe video fluoroscopy* (referred to by Nu-Best as "Digital Motion X-Ray" or "DMX").

Next, the Court finds that State Farm was not considered to have been furnished with notice of the amount of the covered loss or medical bills due as the bills did not comply with § (5)(d) of the No-Fault Statute (2003 to 2007) and (2008-2012). By failing to utilize the appropriate AMA CPT Code as required, Nu-Best failed to meet the requirements of §(5)(d).

This Court recognizes that by failing to meet the requirements of (5)(d), Nu-Best failed to place State Farm on "notice of a covered loss". *USAA Cas. Ins. Co. v Pembroke Pines MRI, Inc.*, 31 So.3d 234, 237 (Fla. 4th DCA 2010) [35 Fla. L. Weekly D613b] (by failing to properly complete the CMS 1500 form as required by § 627.736(5)(d), the insurer may avoid recovery by asserting the failure to receive notice of a covered loss.); *Ortega v United Auto. Ins. Co.*, 847 So.2d 994, 996 (Fla. 3rd DCA 2003) [28 Fla. L. Weekly D796a] (Two affirmative requirements under the PIP Statute, in order for insurer to be placed on notice of a covered loss, are that the bills be submitted on a Health Care Finance Administration 1500 Form and that the bills follow the Physician's Current Procedural Terminology ((CPT)) in the year in which the services are rendered).

As such, in response to State Farm's Second Declaratory Request, it is hereby *ORDERED and ADJUDGED* that State Farm was *not on notice* of a "covered loss" under Florida Statute § 627.736 (2003 to 2007) and (2008), when Nu-Best utilized a CPT Code in violation of the American Medical Association's Current Procedural Terminology Coding.

NU-BEST'S COUNTERCLAIMS

COUNT I

As it relates to Nu-Best's Counterclaims, The Court finds in response to its First Declaratory Request which pertains only to claims on and after January 1, 2008:

FINDINGS OF FACT

1. Prior to January 1, 2008 (beginning in October 2001), there existed a mandatory fee schedule for Nu-Best's videofluoroscopy service that provided a reimbursement under the No-Fault Statute of approximately $147.00. Florida Statute § 627.736(5)(b)2. (2001-2007).

2. Beginning in January 1, 2008, the Statute was amended to include Nu-Best's service within the payment methodologies in place for all services billed under PIP in Florida.

3. Florida Statute § 627.736(5)(a)(1)(2008-2012) provides various factors that may be considered in making determinations of reasonableness. Those include evidence of usual customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community, various federal and state medical fee schedules applicable to automobile and other insurance cover ages and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

4. State Farm's policy of insurance provides that in determining whether a charge is reasonable, it may consider usual and customary charges, payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance cover ages and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

5. In making reimbursement determinations, State Farm considered each Nu-Best claim on an individual claim-by-claim basis.

6. In making determinations as to the amounts of reimbursement to Nu-Best on and after January 1, 2008, State Farm indicated it considered factors such as: the amount the legislature had previously determined to be reasonable as a matter of law, state and federal fee schedules such as Worker's Compensation and Medicare Part B fee schedule, the fact that the service was comparable to an X-ray, as well as the Relative Value Unit (RVU) of the service.

7. In this case, State Farm does not agree that Nu-Best is using the correct CPT code in identifying its service, nor does State Farm agree that the $900.00 charged by Nu-Best is a reasonable charge.

8. Nu-Best and its customers routinely bill $900.00 for the Digital Motion X-ray service.

9. Nu-Best has provided billing materials to its customers identifying $900.00 as the amount to charge for the Digital Motion X-ray service.

10. State Farm has not paid Nu-Best $900.00 since 2007, prior to the timeframe in this declaration.

11. Nu-Best has been met with resistance from other insurance companies and payor sources regarding the $900.00 charged by Nu-Best.

CONCLUSIONS OF LAW

Nu-Best's seeks declarations in its first declaratory count pertaining to the requirements of the No-Fault Statute and State Farm's policy of insurance. As an initial matter, this Court recognizes that Florida Statute § 627.736(5)(a) and State Farm's policy of insurance identify a number of factors that may be considered in determining a reasonable reimbursement which include state and federal fee schedules. This Court recognizes that both workers compensation and Medicare Part B Fee schedules, which were considered by State Farm in reimbursement calculations, are state and federal fee schedules that are applicable to automobile and other insurance coverages. Therefore, this Court agrees with the analysis in *All Family Clinic of Daytona Beach, Inc. v State Farm Mutual Auto. Ins. Co.*, 280 F.R.D. 688 (S.D. 2012) in its holding that State Farm has elected in its contract of insurance to reimburse at "80% of reasonable expenses" and that "State Farm may consider various federal and state medical fee schedules applicable to automobile and other insurance coverages" in determining reimbursement amount. *Id.* at 693. The evidence has shown that State Farm is not merely limiting its reimbursement to an amount set by the fee schedule, but rather considers the fee schedule in determining reasonableness as provided in § 627.736 (5)(a)(1) (2008-2012) and in its policy of insurance.

The only evidence provided by Nu-Best pertaining to its position that State Farm acted improperly in its reimbursement determinations were based upon *Geico General Ins. Co. v Virtual Imaging Servs., Inc.,* 141 So.3d 147 (Fla. 2013) [38 Fla. L. Weekly S517a]. While this case dealt with Geico's ability to utilize a ceiling of reimbursement based only upon Medicare Part B Fee Schedule identified in Florida Statute § 627.736(5)(a)(2)(f) (2008-2012), the Court finds that the analysis in *Virtual* was based upon an agreement between the parties that the amount being charged by the provider was reasonable, which is disputed in this case. Further, there is no dispute in *Virtual,* as here, that the code utilized by the provider is an accurate one per § 627.736(5)(d). Importantly, this case analyzes a Geico policy and circumstance in which Geico is not relying on the factors identified by State Farm found in § 627.736(5)(a)(1). Further, this Court agrees with the holding in *Virtual* that the determination of reasonableness under the PIP Statute is a fact-dependent inquiry determined by the consideration of various factors. *Id.* at 155-156.

Further, consistent with its finding above that State Farm was not placed on notice of a covered loss due to Nu-Best's non-compliance with the requirements of the No-Fault Statute to utilize AMA CPT coding, the declarations sought in this Count are rendered moot.

Additionally, with respect to the declaration sought by Nu-Best regarding the reasonableness of Nu-Best's charges, this Court recognizes that reasonableness determinations are to be made on a case specific basis, *State Farm Mutual Auto. Ins. Co. v Sestile,* 821 So.2d 1244,1246 (Fla. 2d DCA 2002) [27 Fla. L. Weekly D1757a] (citing *Auto Owners Inc. Co. v Marzulli,* 788 So.2d 1031,1034 (Fla. 2d DCA 2002) [25 Fla. L. Weekly D2812b]. Additionally, Nu-Best has failed to prove by a greater and more persuasive standard that $900.00 is a reasonable charge. This Court recognizes that for seven years prior to the timeframe sought in the declaration, the Florida legislature had enacted a mandatory cap on the reimbursement for this service of approximately $147.00. This Court also acknowledges that based upon consideration of state and federal fee schedules as well as the nature of the service and the "relative value" of the service, Nu-Best has failed to meet its evidentiary burden to support a declaration that $900.00 is a reasonable charge for the Digital Motion X-ray service.

Finally, this Court declines to declare that State Farm has engaged in a practice of "downcoding" Nu-Best's bills and, further, declines, to find that Nu-Best has proven by a greater and more persuasive standard any bad faith on the part of State Farm.

As such, in response to Nu-Best's First Declaratory Request, it is hereby ORDERED and ADJUDGED that this Court denies Nu-Best's request to provide the declaration sought in Count I, i.-viii. of Nu-Best's Counterclaim.

COUNT II

FINDINGS OF FACT

1. Florida's No-Fault Statute was amended in October 2003 to include a provision whereby insurers were not required to pay a claim or charges for any treatment or service that is upcoded, or that is unbundled when such treatment or services should be bundled, in accordance with paragraph (d). Florida Statute § 627.736(5)(b)1.e. (2003-2012)

2. This provision states that "an insurer may change codes that it determines to have been improperly or incorrectly upcoded or unbundled, and may make payment based on the changed codes, without affecting the right of the provider to dispute the change by the insurer, provided that before doing so, the insurer must contact the health care provider and discuss the reasons for the insurer's reason for the coding, or make a reasonable good faith effort to do so, as documented in the insurer's file.

3. "Upcoding" is defined as "an action that submits a billing code that would result in payment greater in amount than would be paid using a billing code that accurately describes the services performed". Florida Statute § 627.732 (14)

4. Beginning in late 2001, State Farm and John Postlethwaite DC's Nu-Best entity were engaged in litigation pertaining to the issue of the correct AMA CPT Code to be utilized to represent its service.

5. By June 2003, John Postlethwaite DC's Nu-Best entity had dismissed dozens of lawsuits between the parties pertaining to the use of appropriate AMA CPT coding, ultimately entering into a settlement agreement on behalf of his Nu-Best Diagnostic Labs, Inc. entity.

6. During the time the parties were in litigation, employees of Nu-Best would refuse to speak with employees of State Farm, referring them to legal counsel for Nu-Best.

7. From late 2001 forward, there were multiple phone calls, Explanations of Reviews, items of correspondence, litigation matters and depositions between the parties pertaining to appropriateness of the CPT coding for Nu-Best's service.

8. John Postlethwaite, DC had indicated to State Farm on multiple occasions, prior to October 2003, that he would not, under any circumstances, use CPT code 76120 to represent his Digital Motion X-ray service. John Postlethwaite, DC continues to maintain this position.

9. John Postlethwaite, DC, prior to October 2003, took legal action against State Farm for refusing to acknowledge his CPT Code choice and reimburse Nu-Best at the $900.00 charged. John Postlethwaite, DC continues to maintain litigation against State Farm regarding this issue.

10. State Farm has taken the position since late 2001 that John Postlethwaite, DC, through his Nu-Best entities, is in engaging in a practice of misrepresenting the service being performed by his Nu-Best entities. State Farm maintains that position today.

CONCLUSIONS OF LAW

Nu-Best asks this Court to declare that State Farm was required to first contact Nu-Best prior to correcting what it believed to be a misrepresentative code each and every time a bill was submitted by Nu-Best for Digital Motion X-ray, beginning in October 2003. This was some two years after the "dispute" had arisen between the parties as to the appropriate AMA CPT code to identify the service.

This Court rejects the contention that this statutory provision applies in the context suggested by Nu-Best. While this provision requires that services that are upcoded may be changed by the insurer if it contacts the health care provider and discuss the reasons for the insurer's reason for the coding, or make a reasonable good faith effort to do so, it implies that there is a need to communicate the issue to the provider, which is not the case here. It is clear from the evidence that Nu-Best was clearly aware of State Farm's issue with Nu-Best's code choice. The evidence demonstrated a scenario in which a provider made a conscious, calculated and consistent decision to use a particular CPT Code for its own reasons. As such, the Court is not convinced any requirement to contact Nu-Best again and again would be triggered. Additionally, the record is replete with evidence of State Farm's "efforts" to contact Nu-Best via phone calls, letter writing and face-to-face meetings over the years pertaining to this specific issue. Nu-Best has presented no evidence to suggest that it was at any point, since October of 2003, unaware of the reasoning behind State Farm's claims handling practices with respect to Nu-Best's Digital Motion X-ray service.

Additionally, this Court recognizes that State Farm has pled the affirmative defense of futility. State Farm argues and this Court recognizes that a party is not legally required to undertake an action that would be futile in nature. See, e.g., Waksman Enterprises, Inc. v. Oregon Properties, Inc., 862 So.2d 35, 43 (Fla. 2' DCA 2003) [28 Fla. L. Weekly D2229d] ("The law does not require that a party to a contract take action that would clearly be futile."); Alvarez v. Rendon, 953 So.2d 702, 708-709 (Fla. 5th DCA 2007) [32 Fla. L. Weekly D902a] ("Under the doctrine of futility, a party may be excused from performing a condition precedent to enforcement of the contract, if performance of the condition would be futile."); Artz ex rel. Artz v. City of Tampa, 102 So.3d 747, 751 (Fla. 2" DCA 2012) [38 Fla. L. Weekly D27a] (citing Waksman) ("The law requires no futile act in the context of the doctrine of exhaustion of administrative remedies."); Webb v. Priest, 413 So.2d 43, 46 (Fla. 3d DCA 1982) (stating that where issue was raised both pretrial and in the early stage of trial, plaintiff was not required "to renew objection each time in what would have been an obviously futile gesture"); City of Miami Beach v. Sunset Islands 3 & 4 Property Owners Assoc., 216 So.2d 509, 511 ("There is no requirement that a relator exhaust his administrative remedies prior to seeking the issuance of an alternative writ of mandamus, when it is apparent that either such a gesture would be a futile one. . ."); R.F. Cook v. J. DiDomenico, 135 So.2d 245, 246 (Fla. 2d DCA 1961) (Property owner was not required to seek a variance, where court acknowledged it would have been futile to apply for one from the county under circumstances present). John Postlethwaite, DC testified that there was nothing State Farm could say or do to persuade the CPT Code 76120. As such, any such contacts as contemplated by this statutory provision would have been completely and utterly futile.

As such, in response to Nu-Best's Second Declaratory Request, it is hereby ORDERED and ADJUDGED that this Court denies Nu-Best's request to provide the declaration sought in Count II, i.-v. of Nu-Best's Second Counterclaim.

* * *

23 Fla. L. Weekly Supp. 98a

Online Reference: FLWSUPP 2302MARQ

**Insurance -- Personal injury protection -- Coverage -- Medical expenses -- CPT coding -- Unbundling -- Affidavit of insurer's expert regarding unbundling defense did not create genuine issue of material fact precluding summary judgment where affidavit merely offered different legal conclusion as to unbundling defense based on undisputed facts -- Medical provider inappropriately unbundled and billed separately for x-ray readings that were performed as part of comprehensive evaluation component of evaluation and management CPT code that was billed for same day of service**

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant, v. R.J. TRAPANA, M.D., P.A., (A/A/O NOEMI MARQUEZ), Appellee. Circuit Court, 17th Judicial Circuit (Appellate) in and for Broward County. Case No. CACE12-026306 (AP). L.T. Case No. COCE08-001057. May 14, 2015. Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County, Martin R. Dishowitz, Judge. Counsel: Nancy W. Gregoire, Kirschbaum, Birnbaum, Lippman, & Gregoire, PLLC, Fort Lauderdale, for Appellant. Russel M. Lazega, and Yasmin Gilinsky, Florida Advocates, Dania Beach, for Appellee.

OPINION

(PER CURIAM.) State Farm Mutual Automobile Insurance Company ("State Farm") appeals a final judgment in favor of R.J. Trapana, M.D., P.A. ("Trapana"). On appeal, State Farm argues that the county court erred in its ruling on the summary judgment motions as to the improper billing and coding defense. For the reasons explained below, this Court concludes that the county court erred in failing to grant State Farm's motion for final summary judgment as to the improper billing and coding defense and reverses the final judgment.

Background

The underlying matter arose out of an automobile insurance policy, under which State Farm agreed to provide personal injury protection ("PIP") and medical payments ("Med Pay") benefits to Noemi Marquez (the "Insured"). After being involved in a car accident in November 2005, Insured received medical services from Daniel Abeckjerr, D.C. ("Abeckjerr"), a chiropractor, who obtained x-rays of Insured's cervical, thoracic and lumbar spine (the "X-rays"). Abeckjerr eventually referred Insured to Trapana, an orthopedic specialist. In January 2006, Trapana examined Insured, who assigned her PIP and Med Pay benefits to Trapana. Trapana also reviewed the X-rays, prepared an evaluation/management report, which included Trapana's opinion on the X-rays, sent the report to Abeckjerr, and referred Insured back to Abeckjerr. Afterward, Trapana submitted the related claim to State Farm. To identify the charges in the Centers for Medicare and Medicaid Services (CMS) 1500 claim form, Trapana used Current Procedural Terminology ("CPT") Codes as published in the American Medical Association's CPT Manual. Trapana charged $500 under CPT code 99204, for the office visit for evaluation and management of Insured, and charged three separate entries of CPT code 76140, for the consultation on the X-rays, at $60 each (a total of $180). State Farm paid the $500 under CPT code 99204. But, State Farm did not pay any of the $180 for the three charges under CPT code 76140.

In February 2006, Trapana sued State Farm to recover the $180 allegedly due for the three charges under CPT code 76140. In its answer, State Farm denied Trapana's entitlement to payment. State Farm also affirmatively alleged that CPT code 99204 encompasses the review of the X-rays, and such review should not have been billed separately under CPT code 76140. As such, Trapana's billing constituted unbundling and did not comply with Florida law so State Farm properly denied payment of the three charges under CPT code 76140. The county court denied State Farm's motion for final summary judgment and granted Trapana's motion for partial summary judgment as to the improper billing and coding defense. Later, the county court granted Trapana's motion for partial summary judgment as to the reasonableness, relatedness and necessity of the charges ("RRN"). Based upon the county court's rulings on the various motions for summary judgment, the county court entered a final judgment in favor of Trapana, which this Court reviewed *de novo*. See *Harris v. Aberdeen Prop. Owners Ass'n, Inc.*, 135 So. 3d 365, 367 (Fla. 4th DCA 2014) [38 Fla. L. Weekly D1774a] (quoting *Major*

*League Baseball v. Morsani,* 730 So. 2d 1071, 1074 (Fla. 2001)) (" 'The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo.' ") ; *LaFrance v. U.S. Bank Nat'l Ass'n,* 141 So. 3d 754, 755 (Fla. 4th DCA 2014) [39 Fla. L. Weekly D1419a] (citing Fla. R. Civ. P. 1.510(c)) ("Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

Analysis

This Court finds that the affidavit of State Farm's coding expert did not create a genuine issue of material fact. The affidavits of both coding experts were based on undisputed facts and their respective experience and familiarity with the CPT Manual and the CPT Assistant. Both coding experts merely opined about their interpretation of the relevant portions of the CPT Manual and CPT Assistant as applied to the undisputed facts. Trapana's expert opined that the billing was proper, while State Farm's expert opined that it was not. In fact, because the affidavits of both coding experts addressed the ultimate question of law involved in the summary judgment motions as to the improper billing and unbundling defense, the affidavits should have been disregarded. *See Devin v. City of Hollywood,* 351 So. 2d 1022, 1026 (Fla. 4th DCA 1976) (a trial judge may not rely on expert testimony "to determine the meaning of terms which were questions of law to be decided by the trial court."). Thus, the Record does not reveal a conflict in the facts, but a conflict in the ultimate legal conclusions reached by the experts. *See Briggs v. Jupiter Hills Lighthouse Marina,* 9 So. 3d 29, 32 (Fla. 4th DCA 2009) [34 Fla. L. Weekly D496a].

To determine whether Trapana inappropriately billed and unbundled the review of the X-rays, this Court examined the PIP Statute, the CPT Manual and the CPT Assistant. Section 627.736(5)(d), Florida Statutes, provides that (1) all bills should be submitted to the insurer on a Centers for Medicare and Medicaid Services (CMS) 1500 form, and (2) billings for services must, to the extent applicable, follow the Physician's Current Procedural Terminology (CPT) and comply with American Medical Association Current Terminology Editorial Panel. *See* § 627.736(5)(d), Fla. Stat. (2005). Section 627.736(5)(d), Florida Statutes, also provides for the use of the CPT manual in determining compliance with applicable CPT coding; therefore, the CPT Manual is incorporated by reference into the statute. *See Id.* The CPT Assistant publication is incorporated by reference into the CPT Manual, and so, while it is not binding, it can be used as a guide and to clarify information found in the CPT Manual. *See Madock v. Progressive Express Ins. Co.,* 11 Fla. L. Weekly Supp. 408b (Fla. 13th Cir. Ct. Mar. 3, 2004). Section 627.736(5)(b)1.e., Florida Statutes, permits an insurer to deny payment for any treatment or service that is upcoded, or that is unbundled, when such treatment or services should be bundled. *See* § 627.736(5)(b)1.e., Fla. Stat. (2005).

The CPT Manual defines both CPT codes involved here and the CPT Assistant clarifies the information found in the CPT Manual. CPT Code 99204, which is used to report evaluation and management services provided to a new patient in a physician's office, is defined as follows:

> 99204 Office or other outpatient visit for evaluation and management of a new patient, which requires these three components:
>
> · a comprehensive history;
>
> · a comprehensive examination;
>
> · medical decision making of moderate complexity.
>
> Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs.
>
> Usually, the presenting problem(s) are of moderate to high severity. Physicians typically spend 45 minutes face to face with the patient and/or family.

CPT Code 76140 is defined as "[c]onsultation on x-ray examination made elsewhere, written report." The CPT Assistant provides the following clarification for CPT Code 76140:

> CPT Code 76140 Consultation on x-ray examination made elsewhere, written report is intended to be used when, for example, Doctor "A" from Sunnydale Hospital sends a radiograph taken at Sunnydale Hospital to Doctor "B" at Goodhope Hospital. Doctor "A" asks Doctor "B" to offer his opinion on the radiograph. Doctor "B" writes a formal report on his interpretation of the radiograph and sends a copy of this report to Doctor "K."
>
> This Code is not intended to be used by physicians within the same institution to reread radiographs taken at that institution. Levels of Service (limited, intermediate, extended, comprehensive) include the "evaluation of appropriate diagnostic tests" which may necessitate the attending physician to personally review the radiographs taken on his patient.

Based on the definitions and clarification above, this Court finds that CPT code 99204 encompasses all that Abeckjerr asked Trapana to do and all that Dr. Trapana did in fact do. Abeckjerr wanted Trapana to perform an evaluation, which was to include a review of the X-rays, and to provide Abeckjerr with his opinion. Trapana's report to Abeckjerr constituted "counseling and/or coordination of care with other providers," which is also included in CPT Code 99204. Specifically, based on the clarification of CPT Code 76140, Trapana's evaluation and management of the Insured necessitated that Trapana personally review the X-rays, and so, the review of the X-rays was subsumed under CPT Code 99204. CPT Code 76140 would have been appropriate if Abeckjerr (1) only sent the X-rays to Trapana (without sending the Insured for an orthopedic evaluation), (2) asked Trapana to offer his opinion on the X-rays, and (3) Trapana wrote a report solely about his interpretation of the X-rays and sent such report to Abeckjerr. This is not what occurred here, as Abeckjerr sent Insured for an orthopedic evaluation, which necessitated the review of the X-rays as part of Trapana's comprehensive evaluation of Insured. Thus, Trapana's billing does not comply with the CPT Manual or CPT Assistant.

The county court erred in failing to grant State Farm's motion for final summary judgment on the improper billing and unbundling defense. Given the findings discussed above, this Court need not reach State Farm's arguments related to the summary judgment on RRN. Accordingly, it is

ORDERED AND ADJUDGED that the final judgment is hereby REVERSED, and this cause is REMANDED for entry of judgment for State Farm. State Farm's Motion for Appellate Attorney's Fees is hereby GRANTED contingent upon a finding that the proposal for settlement was made in good faith. Trapana's Motion for Appellate Attorney's Fees is hereby DENIED. (GARCIA-WOOD, RODRIGUEZ and PERLMAN, JJ. concur.)

\* \* \*