UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff/Counter-Defendant,

v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants/Counter-Plaintiffs.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
SUPPLEMENT TO THEIR MOTION FOR SUMMARY JUDGMENT**


KENNETH P. HAZOURI
Fla. Bar No. 019800
khazouri@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075
aballentine@dsklawgroup.com
**deBeaubien, Simmons, Knight,
  Mantzaris and Neal, LLP**
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454

DAVID I. SPECTOR, ESQ.
Fla. Bar No. 086540
david.spector@hklaw.com
KAYLA L. PRAGID, ESQ.
Fla. Bar No. 098738
kayla.pragid@hklaw.com
**Holland & Knight LLP**
222 Lakeview Avenue, Ste. 1000
West Palm Beach, Florida 33401
Telephone: (561) 833-2000
Facsimile: (561) 650-8399

Plaintiff, State Farm Mutual Automobile Insurance Company ("SFM"), submits this Response in Opposition to the Supplement to Motion for Summary Judgment ("Supplemental MSJ") of Defendants, Manuel V. Feijoo, M.D. ("Dr. Feijoo") and Manuel V. Feijoo, M.D., P.A. (the "Clinic")(collectively, "Defendants") on August 9, 2019 [ECF No. 108].

## I.   INTRODUCTION

Defendants' Supplemental MSJ is legally and factually meritless. As an initial matter, Defendants completely fail to address SFM's *per se* FDUTPA violation allegations. For this reason alone, summary judgment should be denied. Additionally, Defendants' arguments in opposition to SFM's traditional FDUTPA claim concerning the application of the "likely to mislead a reasonable consumer in the circumstances" standard are misplaced. Eleventh Circuit authority clearly states that this is an objective standard. Nonetheless, Defendants urge the Court to disregard this precedent and adopt a purely subjective standard—*i.e.*, one based on what SFM (allegedly) knew and understood instead of the hypothetical "reasonable consumer"—that is also contrary to FDUTPA's purpose as expressed by the Legislature. Defendants' factual arguments are similarly unavailing and ultimately highlight that, even if Defendants' contention were true, they give rise to genuine issues of material fact that cannot be resolved on summary judgment.

## II.   ARGUMENT

### A.   The Supplemental MSJ should be denied because Defendants failed to address SFM's claim based on *per se* violations of FDUTPA.

SFM alleges Defendants' conduct constitutes both a traditional and a *per se* violation of FDUTPA. *See* [ECF No. 60, ¶¶87-101]. Defendants' Supplemental MSJ fails to acknowledge that these are distinct types of FDUTPA claims with their own elements, while also neglecting to address the significant allegations against them.

The elements for *per se* and traditional FDUTPA violations are different. For a traditional

FDUTPA violation, a plaintiff must prove: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). With regard to the first element, an act is "deceptive" where "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (internal quotations omitted). This is the "reasonable consumer" test referenced in Defendants' Supplemental MSJ.

On the other hand, SFM does not have to satisfy the "reasonable consumer" test to prove a *per se* FDUTA violation because "it is presumed that the violation [of the underlying statute] constitutes a deceptive or unfair practice." *See Parr v. Maesbury Homes, Inc.*, No. 609CV-1268-ORL-19GJK, 2009 WL 5171770, at *7–8 (M.D. Fla. Dec. 22, 2009); *State Farm Mut. Auto. Ins. Co. v. Performance Ortho. & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017). SFM alleges Defendants are *per se* liable under FDUTPA because they violated statutes proscribing deceptive practices by (without limitation): 1) committing insurance fraud (Fla. Stat. § 817.234(1)(a)(1)); 2) systematically upcoding bills (Fla. Stat. § 817.234(2)(b)); and 3) submitting false or misleading statements relating to PIP benefits (Fla. Stat. § 627.736(5)(b)1.c. and (5)(d)). *Id*. at ¶¶ 94-97. In order to establish its *per se* FDUTPA claim, SFM need only prove that Defendants violated one of the underlying statutes, plus causation and damages.

Notwithstanding, Defendants' arguments focus exclusively on the first element of a traditional FDUTPA violation by contending no reasonable consumer could have been misled. *See* [ECF No. 108 at 4, 7, 9]. Defendants' failure to raise any argument on SFM's *per se* FDUTPA claim prohibits entry of summary judgment. *See State Farm Mut. Auto. Ins. Co. v. Performance Ortho. & Neurosurgery, LLC*, 2018 WL 2186496, *14 (S.D. Fla. Feb. 16, 2018) ("[Failure] to press a point . . . forfeits the point.") (internal quotation & citation omitted).

>  B.  The Supplemental MSJ should be denied because it applies an incorrect legal standard to SFM's traditional FDUTPA claim.

Defendants claim entitlement to summary judgment on SFM's traditional FDUTPA claim because the contents of the 2011 Project documents purportedly show that "State Farm cannot possibly establish 'probable' deception." [ECF No. 108 at 4]. In support, Defendants contend a "consumer acting reasonably in the circumstances" means the inquiry should focus on SFM's subjective knowledge. *See id.* ("the Court must consider the specific circumstances under which [SFM] itself was operating when it made the disputed payments."). This view is contrary to binding authority, which limits the inquiry to the "circumstances" of the allegedly deceptive trade practice (*i.e.*, whether the defendant's actions were deceptive), and prohibits consideration of the subjective details of a FDUTPA plaintiff's knowledge and sophistication.

The Eleventh Circuit has expressly rejected Defendants' proposed subjective standard in a traditional FDUTPA claim. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). In the proceedings below, this court explained its rejection of GM's arguments in opposition to certification of a class of FDUTPA plaintiffs by stating: "Defendant encourages the Court to engage in a reliance inquiry by another name, arguing that **'if a consumer had knowledge of an incorrect statement about a product before purchase**, and then purchased anyway, FDUTPA obviously would not reward that consumer with a remedy.' **The Court rejects this argument**." *Carriuolo v. Gen. Motors LLC*, 2015 WL 12434325, at *6 (S.D. Fla. July 9, 2015), *aff'd sub nom. Carriuolo*, 823 F.3d at 977 (internal citation omitted and emphasis added).

In affirming class certification, the Eleventh Circuit held that "a plaintiff . . . 'need not show actual reliance on the representation or omission at issue' [because] **the mental state of each class member is irrelevant**." *Carriuolo*, 823 F.3d at 985 (emphasis added). The court

4

further explained that even though "some class members may have known that the safety ratings were inaccurate" this did not alter the fact that the car sticker with the ratings was objectively deceptive and, therefore, a valid basis for a traditional FDUTPA violation. *Id*. The *Carriuolo* court later reiterated that "[a] class member's **subjective sophistication or knowledge is irrelevant** because the liability inquiry states objective elements." *Id.* at 990 (emphasis added).

Defendants fail to acknowledge *Carriuolo*'s binding authority. Instead, Defendants misleadingly state that in its earlier decision of *Democratic Republic of the Congo v. Air Capital Group, LLC*, 614 F. App'x 460 (11th Cir. 2015)("*DRC*"), the Eleventh Circuit conducted an "analysis of 'the DRC's circumstances.'" *See* [ECF No. 108 at 4]. To begin with, *DRC* explicitly rejected the injection of a subjective element into a FDUPTA claim based on deception, and, in so doing, stated that this type of claim is "judged from an objective point of view." 614 F. App'x at 475 n.7. Defendants' argument that *DRC* somehow supports an inquiry into what SFM (allegedly) knew or understood about their misleading billing practices is diametrically opposed to this ruling.

Consistent with that ruling, the *DRC* court focused on whether the trade practice was objectively deceptive:

> Abad purchased the engines, but they were configured for a DC8 aircraft, and neither was serviceable upon delivery. Abad also promised to deliver the plane in December 2010 and January 2011, but the deadlines passed without explanation. Instead, Abad hustled the DRC for more money and let subcontractors file liens on the plane, despite earlier assurances that the work was done. . . . ACG kept double books to inflate the DRC's costs. **Given this record of misstatements, broken promises, and lies,** we have little trouble holding **that ACG's conduct would deceive** the reasonable consumer.

*Id.* at 470-71 (emphasis added). In reaching this conclusion, the court did not consider the plaintiff's subjective belief, knowledge, or understanding of the defendant's deceptive practices.

5

On the contrary, the court stated it found "**ample proof of conduct** that would deceive a reasonable consumer in the DRC's circumstances." *Id.* at 470 (emphasis added).

The other cases relied on by Defendants are likewise unpersuasive. In each case, the court focused on the circumstances of the allegedly deceptive acts or practices, such as the language of the contracts or the language of the defendant's advertisement. *See Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x. 565, 567–68 (11th Cir. 2009) (finding no reasonable consumer would be misled by pre-contractual false statements which were directly contradicted by express language of subsequently executed franchise agreement); *Zlotnick*, 480 F.3d at 1285 (holding that no reasonable consumer would be deceived by acts expressly authorized by terms of reservation agreement for condominium unit); *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen.*, 761 So. 2d 1256, 1264 (Fla. 3d DCA 2000) (finding "nothing from the language contained on the postcard" advertisement, which did not mention Visa or Mastercard, would have misled a reasonable consumer to believe the ad guaranteed issuance of Visa or Mastercard credit card).

Defendants' cases confirm that the "deceptive act or practice" inquiry is focused on the allegedly deceptive representation, omission, or act (*i.e.*, the franchise agreement, reservation contract, airplane service agreement, and postcard advertisement), not on what the buyer or consumer knew or understood at the time of the transaction. The same holds true for those cases cited in *DRC* (but omitted by Defendants) in which the courts found deceptive practices involving auto loans, inaccurate product claims, and false or misleading product labels.[1] Once

---

[1] *See Cummings v. Warren Henry Motors, Inc.*, 648 So. 2d 1230 (Fla. Dist. Ct. App. 1995) (court focused on whether the sale agreement contained deceptive terms); *Smith v. William Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1337–40 (S.D. Fla. 2009) (misleading product labels were deceptive because the claims themselves were inaccurate); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1263–64 (N.D. Fla. 2012) (analysis was on whether a statement that vacuum cleaners were fit for

6

again, the courts' focus in those traditional FDUTPA cases was on the "circumstances" of the deceptive act or practice, not on what the plaintiffs knew or understood about them.

Courts have rejected attempts by FDUTPA defendants to inject subjective knowledge into this inquiry. As explained above, the *DRC* court rejected this exact effort based on the defendant's argument that the plaintiffs' representatives were "too sophisticated" to be swindled. 614 F. App'x at 469-70. Here, Defendants also incorrectly claim that SFM is "too savvy to be" deceived by Defendants' (deceptive, false, and misleading) charges.

In *State Farm Mutual Automobile Insurance Company v. Performance Orthopaedics & Neurosurgery, LLC*, Chief Judge Moore rejected the medical providers' argument that they were not liable to SFM under FDUTPA because it had actual knowledge of their deceptive billing practices and knowingly settled claims that included the deceptive bills. 315 F. Supp. 3d 1291, 1309 (S.D. Fla. 2019). In reaching this conclusion, Chief Judge Moore explicitly ruled that "State Farm's knowledge has no bearing on the FDUTPA claim." *Id.* at 1310.

Like the medical providers in *Performance Orthopaedics*, Defendants erroneously argue that because SFM (allegedly) knew of their false and misleading billing practices, SFM could not have been deceived by them for purposes of a traditional FDUTPA violation. As explained in *Performance Orthopaedics*, SFM's "knowledge has no bearing on the FDUTPA claim."

Defendants assert that when considering whether a particular act or practice would be likely to mislead a consumer acting reasonably in the same circumstances, the hypothetical consumer must have all the same qualities, traits, resources, information, sophistication, knowledge, history, background, etc. as the plaintiff. *See* [ECF No. 108 at 4] ("the Court must consider the specific circumstances under which the plaintiff itself was operating when it made

---

use was deceptive); *Nature's Prods., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1322 (S.D. Fla. 2013) (producer misstated that its products were wheat and gluten free).

the disputed payments."). In addition to being contrary to the above legal authorities, Defendants fail to recognize SFM is not the only consumer of Defendants' false and misleading medical bills. Indeed, patients—who had none of SFM's subjective knowledge—are also consumers because those seeking treatment under their PIP coverage are responsible for a 20% copayment. *See* Fla. Stat. § 627.736(1)(a); Fla. Stat. § 817.234(7)(a).[2] The legislature created the copayment requirement to encourage patients to monitor their treatment and the provider's associated billing practices. The false or misleading statements in Defendants' bills must be viewed in this context, and the inquiry is whether a reasonable consumer would be deceived.

Defendants' position must be rejected because it would improperly convert an objective test into a purely subjective one. Their subjective test would, in turn, necessarily lead to bizarre and perplexing results, including contradictory assessments of the same trade practice.

For instance, in *Smith v. William Wrigley Jr. Co.*, the practice alleged to be deceptive was Wrigley's advertising campaign, which falsely claimed that an ingredient in its Eclipse brand gum was "scientifically proven to help kill the germs that cause bad breath." 663 F. Supp. 2d 1336, 1339–41 & n.3 (S.D. Fla. 2009). If one were to accept Defendants' argument, courts would evaluate the claims of persons who purchased Wrigley's gum by first determining the specifics of each purchaser's particular circumstances before deciding whether the allegedly false advertising claims (*i.e.*, the trade practice) would be likely to deceive a hypothetical consumer acting reasonably in each purchaser's circumstances. If, therefore, one purchaser learned that Wrigley's claim its gum is scientifically proven to kill germs was false, the court could conclude Wrigley's practice was not likely to mislead a hypothetical reasonable consumer who understood

---

[2] Failure to make a good-faith effort to collect co-payments is "insurance fraud" under Florida Statute § 817.234(7)(a). *See State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1164 n.7 (S.D. Fla. 2015).

the falsity of Wrigley's claims. But, in a case brought by a consumer who did not have this information, the court would likely reach the opposite conclusion—that Wrigley's marketing practices for the gum were deceptive. These divergent outcomes make no sense and defeat FDUTPA's purpose. This is because the fact that a particular consumer may have learned Wrigley's claims about its gum are untrue does not change the deceptive nature of the trade practice itself, which is injurious to consumers and the marketplace as a whole. *Id*.

As illustrated by the above example, Defendants' interpretation of the applicable standard embodies the very essence of subjectivity. Contrary to their position, the correct method for determining deceptiveness is by application of the objective standard focusing on the circumstances of the subject trade practice.[3] Here, SFM received bills from Defendants containing charges for medical services identifiable by their respective CPT codes. The focus of the inquiry under the traditional FDUTPA analysis is whether the CPT codes selected for the services purportedly performed by Dr. Feijoo would be likely to mislead a reasonable consumer—an insurer or a patient—who received a similar bill.

C.     **Questions of Material Fact Preclude Summary Judgment**

On summary judgment, the Court does not weigh the evidence or make findings of fact. *E.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*; *see also F.T.C. v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1329 (M.D. Fla. 2010). Where reasonable minds could differ on the inferences to be drawn from undisputed facts, the court must deny summary judgment. *Miranda v. B & B Cash Grocery*

---

[3] Unlike Defendants' arguments, this approach vindicates the Legislature's policy objectives in enacting FDUTPA "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.201(2).

*Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

Defendants assert that SFM purportedly knew of Defendants' false and misleading CPT codes, yet voluntarily paid the bills in some scheme hatched by unknown persons to accumulate enough damages to file this federal lawsuit. [ECF No. 108] According to Defendants, this means SFM could not be subjectively deceived and cannot, therefore, establish a traditional FDUTPA violation. Assuming Defendants' subjective "reasonable consumer" standard is accurate—it is not—there are genuine issues of material fact that preclude summary judgment. For example and without limitation, there are material disputes of fact over: (1) SFM's purported motivations and intent [ECF No. 108 at 1, 3 n.2, 9]; (2) "what information State Farm was given," when, and to whom [*Id.* at 4]; and (3) whether SFM can "establish 'probable' deception" due to the information it knew when it made the payment decisions on the at-issue claims [*Id.*]. These material factual disputes necessitate denial of Defendants' request for summary judgment.

### D.     Defendants Rely on Inadmissible Evidence and Factual Mischaracterizations

Facts that "cannot be presented in a form that would be admissible in evidence" are not proper summary judgment evidence. *See* Fed. R. Civ. P. 56(c)(2). Defendants dedicate nearly one third of their Supplemental MSJ to a series of speculative arguments stemming from baseless assertions about SFM's intentions in pursuing this action. *See* [ECF No. 108 at 6-10] (characterizing SFM's state of mind as: "State Farm wants to flip the script of Florida law"; "State Farm seeks a new paradigm"; "State Farm's goal"; that documents "expose [SFM's] motivation"; "obviously part of State Farm's plan"). Defendants do not (and cannot) offer any admissible evidence to support these assertions and, therefore, they cannot form the basis for entry of summary judgment against SFM.

Defendants also point to a lengthy excerpt from the report from Defendants' proffered

Case 1:18-cv-23329-RAR   Document 127   Entered on FLSD Docket 08/23/2019   Page 11 of 12

expert, J'Amy Kluender. *See* [ECF No. 108 at 6-7]. The report claims to detail "the true and sole purpose" of SFM's investigations of Dr. Feijoo. *See id.* at 5-6. It is black letter law that expert reports, including Ms. Kluender's, are inadmissible hearsay. *See Bridges v. United States*, No. 315CV1248J25PBD, 2017 WL 3764244, at *2 (M.D. Fla. May 23, 2017) (striking defendant's unsworn expert report used in support of summary judgment); *Divine Motel Grp., LLC v. Rockhill Ins. Co.*, No. 3:14-CV-31-J-34JRK, 2015 WL 4095449, at *6 (M.D. Fla. July 7, 2015), *aff'd*, 655 F. App'x 779 (11th Cir. 2016) (refusing to consider an expert's report on summary judgment). SFM also filed a *Daubert* motion to exclude Ms. Kluender's purported expert testimony in its entirety. [ECF No. 119] Defendants' arguments about SFM's purported plan are not based on any admissible evidence and do not, therefore, support their request for summary judgment. Even if Defendants could rely on Ms. Kluender's report, her speculative assumptions about the purpose and intent of SFM's investigations of Dr. Feijoo are not a proper subject for expert testimony and are factually inaccurate. *See, e.g.*, *Quevedo v. Iberia, Lineas Aereas De Espana, S.A. Operadora Unipersonal*, No. 17-21168-CV-Scola/Torres, 2018 WL 4932097, at *4 (S.D. Fla. Oct. 11, 2018). *See* Affidavit of Timothy Banahan ("Banahan Aff."), ¶ 8, attached hereto as **Exhibit A**.

Defendants' factual mischaracterizations of SFM's claims handling and the purported outcomes of PIP lawsuits unrelated to this case are likewise without evidentiary support. Defendants cite no record evidence for their characterizations of SFM's claim handling and investigative practices. *See* [ECF No. 108 at 6] Moreover, Defendants' characterizations are inaccurate and untrue. *See* Banahan Aff., ¶¶ 6–8.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Supplemental MSJ must be denied.

11

Dated:  August 23, 2019

        Respectfully submitted,

/s/ *Kenneth P. Hazouri*
Kenneth P. Hazouri (Fla. Bar No. 019800)
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
Andrew S. Ballentine (Fla. Bar No. 118075)
aballentine@dsklawgroup.com
ccammarata@dsklawgroup.com
deBeaubien, Simmons, Knight,
Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone:  (407) 422-2454

and

DAVID I. SPECTOR, ESQ.
Fla. Bar No. 086540
david.spector@hklaw.com
KAYLA L. PRAGID, ESQ.
Fla. Bar No. 098738
kayla.pragid@hklaw.com
**HOLLAND & KNIGHT LLP**
222 Lakeview Avenue, Ste. 1000
West Palm Beach, Florida 33401
Telephone: (561) 833-2000
Facsimile:  (561) 650-8399

*Attorneys for Plaintiff/Counter-Defendant*