**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No.: 18-cv-23329-KMM**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation,

    Plaintiff,

v.

MANUEL V. FEIJOO,
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants.

**DEFENDANTS' REPLY TO STATE FARM'S RESPONSE TO DEFENDANTS'
SUPPLEMENT TO THEIR MOTION FOR SUMMARY JUDGMENT**

    State Farm's Response is bizarrely at odds with the written record in this case. It also makes arguments which fully support Defendants' Motion for Summary Judgment.

    State Farm states that Defendants "completely fail to address SFM's per se FDUTPA violation allegation." It is impossible to understand how State Farm could offer such an argument when Defendants *devoted six pages* of their Memorandum of Law in support of their Motion for Summary Judgment to explaining why State Farm's per se FDUTPA violation claim is indisputably without merit. (*See* ECF Doc 67, pg. 12-17).

    It is hard to imagine how State Farm could have missed Defendants' six pages of argument concerning the per se FDUTPA claim given that the argument was given its own separate subheading, in bold and underlined, as follows: **State Farm's Illogical (And Desperate) FDUTA *Per Se* Claim Cannot Manufacture A Deceptive Practice Out of Whole Cloth**.

1

Rather than cut and paste it here so that State Farm can read it, Defendants stand on the arguments outlined in their original Memorandum of Law concerning State Farm's per se FDUTPA claims.

More bizarre, though, than State Farm's apparent failure to actually read Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, is its apparent amnesia regarding the deposition testimony offered by its Corporate Designee, Timothy Banahan.

Mr. Banahan was presented as the designee on, inter alia:

> **1. The precise date on which any SIU/MCIU investigation concerning the defendants was commenced;**
> **2. The events or information which triggered the commencement of the investigation and why they triggered the investigation;**
> **3. The precise date on which any project file was opened with respect to any defendant;**
> **4. All of the reasons any project concerning the defendants was opened**

(Defendants' Notice of Deposition to Corporate Designee is attached as Exhibit "A").

Mr. Banahan offered the following sworn testimony at his deposition:

> **Q.    And what specifically did you do to prepare to answer questions on the topics listed as 1 through 5?**
> **A.    Well, I will take them one at a time, if that's okay. Number 1, for the 2011 project, I looked at <u>a memo, a single memo</u> to determine the date referenced there.**
> **Q.    Can I interrupt you there?**
> **A.    Sure.**
> **Q.    In the memo that you're referring to, is -- what's it called?  Was it a closing memo?**
> **A.    <u>No, it was -- at the outset of the project, it was called, I believe, the project scope memo</u>.**
> **Q.    And do you have that with you today?**
> **A.    I don't.**
> **Q.    Did you review any other documents that were maintained in the 2011 project file?**
> **A.    No, <u>that was the only document I looked at.</u>**

(The transcript of Mr. Banahan's containing the above testimony is attached as Exhibit "B", *see* pg. 9, L. 17-pg. 10, L. 9)(emphasis added).

2

The "project scope memo" was a 2-page document produced in response to Judge Becerra's Order overruling State Farm's objections to producing any material from its 2011 Project File. (ECF Doc 109-1). Mr. Banahan repeatedly confirmed throughout his deposition that this scope memo was the only document he had reviewed from the 2011 Project in preparation for his deposition. *See* e.g., Ex. "A", Banahan-D, pg. 11 & 131.

Despite this unequivocal and sworn testimony, State Farm appends to its Response to Defendants' Supplement a sworn Affidavit from Mr. Banahan *now* stating that in preparation for his deposition he actually *also* reviewed the 10-paged, November 7, 2011 Multi-Claim Investigation Preliminary Report authored in the 2011 Project. Mr. Banahan purports to offer the Court sworn testimony based on that document. (*See* ¶5 of Mr. Banahan's Affidavit, ECF Doc-127-1.).

Whichever time Mr. Banahan actually offered truthful testimony under oath (and it cannot be both), the fact that State Farm does not realize it exposed its own Designee's dishonesty demonstrates that its Response is offered on auto-pilot and without regard to the actual record in this case. State Farm simply repeats over and over again its mischaracterization that Defendants seek Summary Judgment based on what State Farm actually knew about Dr. Feijoo's billing practices. As defendants have now repeatedly argued, what State Farm knew and when it knew it is irrelevant.

In fact, State Farm's Response actually *admits* that the law requires summary judgment to be entered in favor of Dr. Feijoo. State Farm's arguments articulated at page 6 of its Response are the very essence of the case and Defendants agree with them wholeheartedly.

State Farm points out that the "deceptive act or practice inquiry is focused on the allegedly deceptive representation, omission, or act (i.e., the franchise agreement, reservation

contract, airplane service agreement, and postcard advertisement), not on what the buyer or consumer knew or understood at the time of the transaction."

This is exactly the inquiry defendants have argued is required. Applying this standard, summary judgment should be granted. As affirmed by State Farm's own pleading and its expert, the records submitted by Dr. Feijoo *in every instance* truthfully and accurately described the services he provided to each patient. State Farm and its expert claim to have "discovered" the "deceptiveness" of Dr. Feijoo's records by *simply reading the records Dr. Feijoo had submitted*.

So even accepting as true for the sake of this Motion that Dr. Feijoo's codes were actually incorrect, it is indisputable that the information provided by Dr. Feijoo too State Farm along with each code accurately described the services he had provided.[1] By the law which State Farm's own Response acknowledges, no consumer acting reasonably could or would have been deceived under these circumstances.

All of the *additional* circumstances under which State Farm itself has been operating since 2011 merely expose the absurd premise State Farm urges this Court to adopt as the law of Florida. State Farm demands the Court create a standard in which a FDUTPA claim is available to any Florida resident who identifies a factual error in the course of any consumer transaction which occurs in the state, *regardless of the plaintiff's circumstances*. State Farm would further extend FDUTPA to allow for such claims even where the factual error was but one minor piece

---

[1] Defendants' expert obviously opines that Dr. Feijoo's coding was actually correct. As stated before, however, if any bill had been improperly coded, Fla. Stat. §627.736(5)(b)(1)(e) gave State Farm the right to "change codes that it determines to have been improperly or incorrectly upcoded or unbundled, and may make payment based on the changed codes, without affecting the right of the provider to dispute the change by the insurer." However, under §627.736(5)(g) "An insurer may not systematically downcode with the intent to deny reimbursement otherwise due. Such action constitutes a material misrepresentation under s. 626.9541(1)(i)(2)." This suit is State Farm's way of circumventing the safeguards for insureds and medical providers under the PIP statute, and to avoid its mounting losses in State Court when it did challenge the propriety of Dr. Feijoo's bills.

of information contradicted by otherwise factually correct information that eliminated any possible deception which might be attributed to the error.

FDUTPA is obviously not the absurd plot mechanism for a bad television sitcom. That this is what State Farm actually envisions, though, is crystallized by its reference to "other consumers" of Dr. Feijoo's medical bills. It argues that these "other consumers" *might* have been deceived because they did not have the benefit of Dr. Feijoo's depositions and State Farm's massive project investigations. But this argument forgets that these "other consumers" would have had the benefit of the records Dr. Feijoo submitted with his bills in every instance, which records accurately described the services being provided.

And perhaps herein lies State Farm's most cogent argument in support of Dr. Feijoo's Motion for Summary Judgment. State Farm's argument as to "other consumers" also forgets that in 27 years of practice in which he has treated tens of thousands of patients and submitted billing to every automobile insurance carrier who does business in Florida and Medicare, not a single one of these "other consumers" has ever once claimed to have been "deceived" by the CPT codes utilized by Dr. Feijoo.

As State Farm notes, it was the Legislature's policy objective in enacting FDUTPA to protect the consuming public and *legitimate* business enterprises. FDUTPA was clearly not intended to be a game of "Gotcha!" allowing enterprising litigants to manufacture lawsuits by claiming the *possibility* of deception in circumstances which have no connection to the plaintiff or reality.

For all of the foregoing reasons it is respectfully requested that Defendants' Motion for Summary Judgment be Granted.

**RESPECTFULLY SUBMITTED,**

**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email: Pivniklaw@aol.com
Cdiezpivniklaw@aol.com
By: */s/ Jerome A. Pivnik*
Jerome A. Pivnik, Esq.
Fla. Bar No.: 400408

**Andrew P. Baratta, Esq.**
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
Tel: 215-914-2222
Email: Andrew@Barattarussell.com

**Kenneth B. Schurr, Esq.**
Law Offices of Kenneth B. Schurr
2030 S. Douglas Rd., Ste. 105
Coral Gables, FL 33134-4615
Tel: 305-441-9031
Email: kbsservice@schurrlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **August 27, 2019**, I have filed the foregoing document with the Clerk of Court using the CM/ECF system and that a copy was electronically served upon the following in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing: **Kenneth P. Hazouri, Esq.**, and**Andrew S. Ballentine, Esq**., deBeaubien, Simmons, Knight, Mantzaris and Neal, LLP, 332 N,Magnolia Ave., Orlando, FL 32801, Khazouri@dsklawgroup.com ABallentine@dsklawgroup.comLquesada@dsklawgroup.com Lmorales@dsklawgroup.com.

        **THE PIVNIK LAW FIRM**
        7700 N. Kendal Drive, Suite 703
        Miami, FL 33156
        Tel: 305-670-0095
        Email: Pivniklaw@aol.com
        Cdiezpivniklaw@aol.com
        By: */s/ Jerome A. Pivnik*
        Jerome A. Pivnik, Esq.
        Fla. Bar No.: 400408

        **Andrew P. Baratta, Esq.**
        Baratta, Russell & Baratta
        3500 Reading Way
        Huntingdon Valley, PA 19006
        Tel: 215-914-2222
        Email: Andrew@Barattarussell.com

        **Kenneth B. Schurr, Esq.**
        Law Offices of Kenneth B. Schurr
        2030 S. Douglas Rd., Ste. 105
        Coral Gables, FL 33134-4615
        Tel: 305-441-9031
        Email: kbsservice@schurrlaw.com