**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No.: 18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation,

    Plaintiff,
v.

MANUEL V. FEIJOO,
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants.

**DEFENDANTS' RESPONSE TO STATE FARM'S MOTION TO PRECLUDE THE
EXPERT TESTIMONY OF MICHAEL MISCOE**

**I.   STATE FARM'S MOTION MISCHARACTERIZES THE DISPUTE
BETWEEN THE PARTIES & MR. MISCOE'S OPINIONS**

State Farm's Motion to Preclude Mr. Miscoe's testimony is manufactured out of a mischaracterization of the actual dispute in this case and the opinions actually offered by Mr. Miscoe.

First, there is no dispute in this case as to what services Dr. Feijoo actually performed when billing the five CPT codes at issue in this case. It is indisputable at this point that Dr. Feijoo has been accurately describing his services in his records and deposition testimony since 2011. The dispute between the experts is not over what services were performed, but whether the codes were applied appropriately and/or with a reasonable belief that they were appropriate. All of Mr. Miscoe's opinions solely concern the technical requirements of each code as defined by the American Medical Association. Applying his opinions to the services everyone agrees Dr. Feijoo provided, he opines further that the coding was appropriate.

1

Second, no part of Mr. Miscoe's opinions constitute legal conclusions. As detailed below, Mr. Miscoe repeatedly resisted counsel for State Farm's efforts to cast his opinions as legal conclusions, and emphasized that he is merely explaining what each code requires under the American Medical Association authorities referenced by name in Florida's PIP statute.

Third, Mr. Miscoe refutes the opinion of State Farm's expert that Dr. Feijoo's use of evaluation and management codes was "objectively false and misleading" in every instance by explaining that there is no truly *objective* standard against which to make such an accusation. Mr. Miscoe points out that State Farm's expert is applying his own *subjective interpretation* of the AMA guidelines to Dr. Feijoo's examinations as if the guidelines are a mathematical equation. In order for the jury to evaluate whether Dr. Feijoo's use of these or any of the codes was "false and misleading," a mindset which State Farm's expert imputes to Dr. Feijoo in every instance, it is critical that the jury understand the vagueness of the standards which renders Dr. Feijoo's interpretation of them reasonable.

Lastly, it is State Farm's expert, not Mr. Miscoe, who offers an opinion as to Dr. Feijoo's state of mind. Mr. Miscoe refutes this opinion by explaining the technical realities of CPT coding and the obscurity of the authority State Farm and its expert have latched onto to accuse Dr. Feijoo of intentional fraud.

## II.    STANDARD FOR ADMISSIBILITY

The testimony of expert witnesses is governed by Rule 702, Federal Rules of Evidence: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the

product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Supreme Court has stated that "the inquiry envisioned by Rule 702 is a flexible one" in which "[m]any factors will bear on the inquiry, and [there is no] definitive checklist or test." District courts are to perform the critical "gatekeeping" function of deciding the admissibility of scientific and technical evidence by conducting an "exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." United States v. Thaller, 2016 WL 6441548, at *2 (S.D. Fla. Nov. 1, 2016)(Internal citations omitted).

The Eleventh Circuit has set forth a "rigorous three-part inquiry" for determining the admissibility of expert testimony under Rule 702: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Id.

"The party seeking to admit the expert testimony bears the burden of laying the proper foundation for its admissibility by a preponderance of the evidence." Armfield v. Gills, 2013 WL 371457 at *2 (M.D. Fla. Jan. 30, 2013) (citing Allison v. McGhan Medical Corp., 184 F.3d 1300, 1306 (11th Cir. 1999)).

Importantly, however, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). An expert's testimony is subject to "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof,"

and the court must be careful not to "supplant the adversary system or the role of the jury." United States v. Thaller, *supra.* at *3 (S.D. Fla. Nov. 1, 2016)(citations omitted).

It is important to note that State Farm does not challenge Mr. Miscoe's qualifications as an expert in CPT coding. Nor could they. Michael Miscoe is a nationally recognized expert in the field of forensic CPT, HCPCS and ICD coding and compliance. He is a Certified Professional Coder ("CPC") with AAPC (formerly the American Academy of Professional Coders), holds specialty coding certification as a Certified Ambulatory Surgical Center Coder ("CASCC") and as a Certified Chiropractic Professional Coder ("CCPC"). He holds specialty compliance certification as a Certified Professional Compliance Officer ("CPCO"). He holds specialty auditing certification as a Certified Professional Medical Auditor ("CPMA") and as a Certified Evaluation/Management service Auditor ("CEMA") with the North American Medical Auditing Society (NAMAS). He has been designated a Fellow of AAPC.

Mr. Miscoe has specialized knowledge regarding and is a recognized expert in forensic analysis of coding, billing and reimbursement issues, which involves identification of binding versus persuasive code utilization standards, as well as the appropriate methodologies for applying binding standards to obtain the correct coding result for a given procedure or service.

### A. MR. MISCOE'S OPINIONS ARE BASED ON SUFFICIENT FACTS

Mr. Miscoe's expert report is ECF Doc 80-4 and his subsequent Declaration is ECF Doc 80-3. In both, he offers expert opinions about the technical requirements of the coding standards which apply to the services provided by Dr. Feijoo. Regarding the services provided, Mr. Miscoe presumed that Dr. Feijoo performed the services to which he applied each code as he described in the various depositions he reviewed and which are listed in the Appendix to his June 19, 2019 Report. (*See* ECF Doc 125-1, Miscoe-D, pg. 186-187; 256-257).

This presumption is entirely appropriate because there is no dispute in this case about what Dr. Feijoo actually did with each patient when submitting the codes. Reviewing each chart to confirm this conceded fact would have been pointless and wastefully expensive. State Farm's own expert confirmed the irrelevance of an individual chart review to the issues actually in dispute in his initial report. Despite having reviewed "500+" charts at a cost of $375 an hour, State Farm's expert provided a two-and-a-half page discussion consisting entirely of his opinion as to the technical requirements of each CPT code at issue and *without reference to a single patient*. State Farm's expert sweepingly opines in a grand total of 6 sentences that every chart he reviewed failed to meet CPT requirements in the same exact way. *See* the Report of Dr. Jacob dated May 10, 2019, attached as Exhibit "A".

In addition to its relevant practicality, it bears noting as well that under Rule 703, Mr. Miscoe was entitled to rely on the factual presumption that the manner in which each service was provided in each claim was consistent with the deposition descriptions provided.

Rule 703 provides in relevant part: The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Fed. R. Evid. 703.

State Farm's argument that Mr. Miscoe should have reviewed each chart is an attack on the *credibility* of his opinions, not their reliability. If State Farm wishes to challenge the credibility of the facts upon which Mr. Miscoe relied, it is free to do so on cross-examination. See City of St. Petersburg v. Total Containment, Inc., 2009 WL 3335013, at *4 (S.D. Fla. Mar. 19, 2009)("The attacks on this expert's opinions go more to the accuracy of his conclusions

based on data and tests as well as his own physical observations, and less to the general scientific validity of his methods.  That is what cross-examination and counter-expert testimony will highlight at trial; it is not enough to exclude the expert's analysis altogether.").

### B. MR. MISCOE DOES NOT OFFER ANY LEGAL CONCLUSIONS NOR ANALYZE ANY LEGAL STANDARDS

There is a good reason State Farm excerpts exactly one question and answer from its 8-and-a-half hour interrogation of Mr. Miscoe in support of its argument that his opinions are legal conclusions.  Mr. Miscoe repeatedly resisted counsel's determined effort to cast them as such, and explained several times that he was drawing no legal conclusions nor analyzing legal standards in offering his opinions.  He testified repeatedly that his opinions were limited to the technical requirements of the CPT codes at issue in this case and whether they were appropriately applied to Dr. Feijoo's services.  Below excerpted is just some of the actual testimony provided:[1]

> **Q.    The first thing that we're talking about, and I understand there's --- there's more detail and I'm going to get there, but first you're saying we don't go outside of the Code Book under Florida statute 627.7365(d) as a starting point?**
>
> A.    That's the way I read the statute.
>
> **Q.    Right.  It's the way you interpret the statute?**
>
> A.    No, I don't interpret. I'm just reading what it says.
>
> **Q.    Okay.  What's the difference in your mind between reading and interpreting the statute?**
>
> A.    The words specifically say AMA CPT Editorial Panel.  And what that means to me as a coding expert is the Editorial Panel is this entity that's distinct from the AMA that produces the codes, the description and specific guidance that's published by the AMA in their various versions of the CPT Manual.

---

[1] As the Court can see, the transcript with exhibits is 720 pages.  Defendants will not torture the Court by quoting all of the testimony which directly refutes State Farm's argument.

(ECF Doc 125-1, Miscoe-D, pg. 72, L.1-18).

> A.  You're trying to make me interpret a statute. I'm not interpreting a statute. I'm a coder being asked to evaluate the propriety of coding under this provision. So a physician reads a statute, any layperson reads a statute, that's what CPT Editorial Panel means to me as an expert coder.

(ECF Doc 125-1, Miscoe-D, pg. 72-73, L.23-9).

> **Q.  Okay. So then again explain to me the difference in your mind between --- you said this is how you read the statute, not how you interpret the statute. That was your testimony. So explain to me in your mind the difference between reading the statute and interpreting the statute.**
>
> ATTORNEY BARATTA: Objection to the form. Asked and answered.
>
> THE WITNESS: I'm using the words of the statute and applying their industry standard meaning to lay people like me who --- who work in the coding field as to what the CPT Editorial Panel is and what it produces. Now, it's up to the courts to interpret whether that --- the way I would interpret it as a coder is the way it should be interpreted legally. The legal interpretation of what those words mean is for the Court to decide. I'm just reacting to them based upon what they say.

(ECF Doc 125-1, Miscoe-D, pg. 73, L.5-25).

> Well, that's for the Court to determine whether those opinions are relevant to this case or not. I'm not acting as a lawyer here. Don't try to cast me in that position. I'm reacting to the statute as a forensic coding expert. I take the words of the statute and then I do my analysis based upon what those plain words are and what they mean to me as an industry expert.

(ECF Doc 125-1, Miscoe-D, pg. 75, L.8-15).

Mr. Miscoe could not have been clearer in his Report or in his testimony. He is not attempting to offer any opinion as to how Florida Statute §627.736(5) should be applied or interpreted. He is rather simply offering his opinions as to the technical requirements of the CPT code authorities specifically referenced by the statute.

As detailed in his Declaration:

> 16. West's F.S.A. §627.736(5)(d) provides that "[a]*ll billings for such services rendered by providers shall, to the extent applicable, follow the Physicians' Current Procedural Terminology (CPT) or Healthcare Correct Procedural Coding System (HCPCS), or*

7

> *ICD-9 in effect for the year in which services are rendered and comply with the Centers for Medicare and Medicaid Services (CMS) 1500 form instructions and the American Medical Association **Current Procedural Terminology (CPT) Editorial Panel** and Healthcare Correct Procedural Coding System (HCPCS).*
>
> 17. The statutory provision also states that *"[i]n determining compliance with applicable CPT and HCPCS coding, guidance shall be provided by the **Physicians' Current Procedural Terminology (CPT)** or the Healthcare Correct Procedural Coding System (HCPCS) in effect for the year in which services were rendered**, the Office of the Inspector General (OIG), Physicians Compliance Guidelines, and other authoritative treatises designated by rule by the Agency for Health Care Administration**."*
>
> 18. Based on these statutory provisions, there are three (3) standards that govern code selection, which include:
>
>     a) *"Physicians' Current Procedural Terminology (CPT) or the Healthcare Correct Procedural Coding System (HCPCS) in effect for the year in which services were rendered;"*
>
>     b) *"the Office of the Inspector General (OIG), Physicians Compliance Guidelines;"* and
>
>     c) *"other authoritative treatises designated by rule by the Agency for Health Care Administration."*
>
> 19. Neither the OIG Compliance Guidance for Physician Practices nor the Agency for Health Care Administration provide guidance on appropriate standards for CPT code selection.

(ECF Doc 80-3, Miscoe Declaration, ¶16-19).

Because neither the OIG Compliance Guidance for Physician Practices nor the Agency for Health Care Administration provide guidance on appropriate standards for CPT code selection, the only standards identified in the PIP statute for determining compliance of medical billing are those promulgated by American Medical Association Current Procedural Terminology (CPT) Editorial Panel, which are found in the yearly issued "Physicians Current Procedural Terminology" (CPT) books.

The only statutory reference Mr. Miscoe makes is to the fact that the authority identified in the PIP statute for determining medical billing compliance is the CPT Editorial Panel. He

8

then explains in exquisite detail exactly what that means by identifying the specific materials actually published by the CPT Editorial Panel. Within those materials is contained the technical requirements for the use of hundreds of individual CPT codes, including, of course, the 5 codes at issue in this case.

From this foundation, Mr. Miscoe then addresses the opinions of State Farm's expert that secondary guidance provided by a 1991 article not published by the CPT Editorial Panel but rather in a publication called the CPT Assistant, compels the conclusion that Dr. Feijoo's use of code 76140 and 95851 was "false and misleading" in every instance.

Mr. Miscoe first points out that the CPT Assistant is a secondary source which the CPT Editorial panel specifically identifies as merely a guide which might be helpful in certain circumstances to understand the technical requirements of the CPT. The cases cited by State Farm in its Motion specifically acknowledge that the CPT Assistant is merely a non-binding secondary source which can be used when attempting to decipher the CPT.

Contrary to State Farm's argument, Mr. Miscoe does not opine that the CPT Assistant may not be consulted in evaluating the propriety of coding. In fact, he offered in his deposition an analogy which every lawyer can appreciate to explain the significance of the CPT Assistant articles. He compares the CPT Assistant to a Law review article or legal journal article which provide guidance as to the interpretation of binding caselaw or statutes but which are not, in and of themselves, binding legal authorities. (*See* ECF Doc 125-1, Miscoe-D, pg. 174).

Taking this analogy to its logical conclusion and putting it simply, Mr. Miscoe's opinion is that according to the actual caselaw (CPT Editorial guidance), Dr. Feijoo did it right. Mr. Miscoe's opinion is that there was no need to consult the secondary source of the CPT Assistant because, according to his opinion as to technical requirements for 76140 and 995851, they were

9

correctly applied to the actual work performed by Dr. Feijoo.

It is critical to note here that State Farm and its expert *agree with Mr. Miscoe* that consulting the CPT Editorial Panel guidance alone compels the conclusion that all of Dr. Feijoo's billing accurately described the services for which he sought PIP benefits. The entire basis of their accusation that any code submitted by Dr. Feijoo was incorrect is contained in the two CPT Assistant articles from 1991 and 2003 respectively, which everyone agrees is (at best) a secondary, non-binding source of authority. <u>There would be no reason for State Farm and its expert go beyond the CPT to these remote, obscure, secondary sources if the CPT itself actually supported their accusations.</u>

Regarding the contrary interpretation of 76140 offered by State Farm's expert based solely on the 1991 CPT Assistant Article, Mr. Miscoe points out that the guidance provided therein outlining an example in which using the code would be appropriate does not indicate this example to be the *exclusive* circumstance in which the code is appropriate. Moreover, as outlined in his Report and Declaration and as Mr. Miscoe testified, the wording of the 1991 article refers to a "consultation" and provides one example of a particular kind of consultation to which 76140 would not be applicable, but does not further define what other kinds of consultations might warrant use of the code. (*See* ECF Doc 125-1, Miscoe-D, pg. 389-390, L. 17-2).

Mr. Miscoe disagrees with State Farm's expert that the example of *one kind* of consultation which might occur in connection with the review of x-ray films is the exclusive circumstance in which a consultation in connection with an x-ray might occur. Mr. Miscoe points out that because the term "consultation" is not defined in either the CPT *or* the CPT Assistant article from 1991, a consultation with the patient *about* the x-ray, separate and apart

10

from a mere re-review or re-read of it, would call for 76140 to be separately reportable *even under the reasoning of the 1991 CPT Assistant article*. (*See* ECF Doc 125-1, Miscoe-D, pg. 190-192, L. 2-25).

Mr. Miscoe similarly disagrees with State Farm's expert regarding 95851, finding that even under the CPT Assistant article cited, Dr. Feijoo appropriately reported this code separately from the E/M code. (*See* ECF Doc 125-1, Miscoe-D, pg. 390-391, L. 3-5).

It is thus simply false to argue that Mr. Miscoe's opinion is based on any *legal* conclusion about what the PIP statute requires with respect to whether Dr. Feijoo's coding was appropriate or when or whether it is appropriate to consult the CPT Assistant articles for additional guidance. He rather offers the two-fold opinion that it is simply not necessary in in the first place to go beyond the clear direction of the CPT itself in evaluating the propriety of Dr. Feijoo's coding, but that even if one does consider the secondary source of the CPT Assistant articles authoritative, Dr. Feijoo's use of 76140 and 95851 should still be considered appropriate.

In point of fact, if either expert is offering a legal conclusion in this case, it is State Farm's. According to State Farm's expert, §627.736(5)(d) requires that doctors "must" go beyond the CPT and consult CPT Assistant articles, however remote in time or obscure they may be, "when determining whether medical bills comply with the AMA's CPT coding guidelines." (*See* State Farm's Motion, ECF Doc 124, pg. 10). Defendants agree that this legal conclusion is inadmissible.

On the other hand, nothing about Mr. Miscoe's opinions are legal conclusions or the application of legal standards. Mr. Miscoe's opinions are limited to deciphering the Byzantine requirements of the CPT's coding standards, applying to Dr. Feijoo's bills, and explaining why, both under the CPT standard *and* the CPT Assistant standards, the coding was appropriate.

## C. STATE FARM MISSTATES MR. MISCOE'S OPINION BY ELIMINATING THE KEY WORD: "OBJECTIVE"

State Farm brazenly misstates Miscoe's opinion regarding CPT codes 99204, 99214, and 99215 in order to manufacture a false argument.

State Farm argues that "Miscoe opines that there are literally no standards for determining whether Defendants properly billed for their high-level evaluation and management ("E/M") codes." Mr. Miscoe offers no such opinion. Rather, as laid out in detail across 8 pages of his June 19, 2019 Report, in paragraph 47 of his Declaration, and throughout his deposition, Mr. Miscoe explained that the CPT standards do not permit any definitively "objective" determination of whether the correct E/M codes were applied.

Mr. Miscoe states in his Report:

> **While clear from the descriptions published in CPT that varying levels of E/M have varying requirements relative to the amount of history, examination or the complexity of medical decision-making what is not clear is how a detailed history objectively differs from a comprehensive history or examination and how moderately complex medical decision-making is differentiated from medical decision-making of high complexity.**

(ECF Doc 80-4, Miscoe Expert Report, pg. 7).

He goes on to explain that several key terms and phrases contained in the CPT guidance concerning the appropriate E/M level are undefined and thus left open to subjective interpretation, including: "brief"; "problem pertinent"; "extended"; "limited"; "general multi-system"; "complete"; "minimal"; "multiple"; "extensive"; "moderate"; "low"; "high"; "straightforward"; "low complexity"; "moderate complexity"; and "high complexity". (*Id*. pg. 11-13).

Mr. Miscoe thoroughly explains that without specific definitions of these and other key terms and phrases, anyone analyzing whether the appropriate level of E/M code was utilized is

12

necessarily reaching their conclusion by filling in their own subjective definitions of the key terms and phrases. This opinion is offered in direct rebuttal to the opinion offered by State Farm's expert that "every one of [Dr. Feijoo's] charges for CPT code 99204, 99214, and 99215 in the bills submitted to State Farm Mutual in the subject claims: a) is **objectively false, misleading, and deceptive**…". (ECF Doc 72-2, Jacob Affidavit, ¶60).

Mr. Miscoe does not say there are no standards for determining whether Defendants properly billed for their high-level E/M codes. He is rather opining that there are not sufficient standards by which State Farm's expert can credibly opine that any E/M code was "objectively" false, misleading and deceptive.

The only jury confusion which might occur in this case is if State Farm is permitted to have its expert opine that codes are "objectively" false without being informed that there is no truly "objective standard by which to offer such an opinion. State Farm's expert is entitled to his opinion, but it cannot be presented as objective fact, especially given the "talismanic significance" which may be assigned it. *See* Smith v. Royal Caribbean Cruises, Ltd., 2014 WL 6997644, at *3 (S.D. Fla. Dec. 10, 2014)(Expert testimony may be assigned talismanic significance in the eyes of lay jurors).

### D.  IT IS STATE FARM'S EXPERT WHO OPINES THAT DR. FEIJOO ACTED INTENTIONALLY

State Farm's expert opines repeatedly throughout his expert report and his Declaration that every single one of Dr. Feijoo's submissions to State Farm which are at issue in this case were made "falsely and misleadingly." (*See*, e.g., Ex. "A", pg. 1). This is a direct accusation of *intentional* fraud. *See*, e.g., Rombach v. Chang, 355 F.3d 164, 172 (2d Cir. 2004)(Words and phrases which classically sound in fraud include "inaccurate and misleading"; "untrue statements"; and "false and misleading").

13

This accusation of intentional fraud is consistent with (and necessary to) State Farm's attempt to manufacture a *per se* FDUTPA violation in this case by arguing that Dr. Feijoo violated Florida statutes §817.234, §626.9541, and §627.736.

Florida Statute §817.234 punishes "False and Fraudulent Insurance Claims" and clearly requires "the intent to injure, defraud, or deceive any insurer." Florida Statute §626.9541 prohibits the "knowing" submission of false claims. Florida Statute §627.736 (the PIP statute), prohibits "knowingly" submitting a false claim but defines "knowingly" broadly as having "acted in deliberate ignorance of the truth or falsity of the information or acted in reckless disregard of the information, and proof of specific intent to defraud is not required." (See §627.732(10)).

Mr. Miscoe points out in rebuttal to Dr. Jacob's accusation of intentional, knowing fraud that the CPT Assistant articles upon which all of Dr. Jacob's opinions rest are literally 28 and 16 years old respectively and available only through an expensive subscription that no practicing medical providers actually have or are even aware of. The obscurity and remoteness of State Farm's "authority" is information well-beyond the understanding of the average lay person and critical to the jury's consideration of whether State Farm has met its burden of proving Dr. Feijoo acted intentionally so as to justify a finding of a *per se* FDUTPA violation.

### III.   CONCLUSION

Every argument raised in support of State Farm's Motion to preclude Mr. Miscoe's testimony is either a matter for cross-examination or based upon a complete mischaracterization of his actual opinion. Accordingly, it is respectfully submitted that State Farm's Motion should be denied.

RESPECTFULLY SUBMITTED,

**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email:Pivniklaw@aol.com
          Cdiezpivniklaw@aol.com
By: /s/ Jerome A. Pivnik
Jerome A. Pivnik, Esq.
Fla. Bar No.: 400408

**Andrew P. Baratta, Esq.**
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
Tel: 215-914-2222
Email: Andrew@Barattarussell.com
(*pro hac vice*)

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on August 28, 2019, I have filed the foregoing document with the Clerk of Court using the CM/ECF system and that a copy was electronically served upon the following in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:  Kenneth P. Hazouri, Esq., and Andrew S. Ballentine, Esq., Mantzaris and Neal, LLP, 332 North Magnolia Avenue, Orlando, FL 32801. (Khazouri@dsklawgroup.com, ABallentine@dsklawgroup.com, Lquesada@dsklawgroup.com, Lmorales@dsklawgroup.com).

                                  **THE PIVNIK LAW FIRM**
                                  7700 N. Kendal Drive, Suite 703
                                  Miami, FL 33156
                                  Tel: 305-670-0095
                                  Email:Pivniklaw@aol.com
                                  By: /s/ Jerome A. Pivnik
                                  Jerome A. Pivnik, Esq.
                                  Fla. Bar No.: 400408

                                  **Andrew P. Baratta, Esq.**
                                  Baratta, Russell & Baratta
                                  3500 Reading Way
                                  Huntingdon Valley, PA 19006
                                  Tel: 215-914-2222
                                  Email: Andrew@Barattarussell.com
                                  (*pro hac vice*)