UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff/Counter-Defendant,

v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants/Counter-Plaintiffs.

_____/

**STATE FARM MUTUAL'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO STRIKE TESTIMONY AND OPINIONS OF J'AMY KLUENDER**

    Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("SFM"), by counsel and pursuant to the Federal Rules of Civil Procedure and the Local Rules, hereby files this Reply in Support of its *Daubert* Motion to Strike the Testimony and Opinions of J'Amy Kluender ("Kluender") and states as follows:

**I.    INTRODUCTION**

    After SFM exposed fundamental flaws in Kluender's qualifications, methodology, and opinions during her deposition and identified them in its motion to strike, Defendants now seek to recast Kluender's opinions as (somehow) not based on any claims handling practices. [ECF No. 122](the "Response"). Unfortunately for Defendants, Kluender's written report and testimony make crystal clear that Kluender's only opinion concerns "the handling by State Farm of the Claims at issue" in this lawsuit, and indeed, the only potentially relevant purported experience she has is *as* a claim adjuster. [ECF No. 119-2 at 2]. Seeking to distract the Court from the reality

1

that Kluender failed to review the claim adjusters' files and records that provide the actual evidence of the claims handling decision-making, Defendants, in their Response, instead list a series of irrelevant "qualifications," and recast Kluender's opinion in a last-ditch effort to prevent Kluender from being excluded. However, Kluender's opinions remain inadmissible.

In its *Daubert* motion to strike Kluender, SFM made five arguments: (1) Kluender's opinion is irrelevant because the reasonableness of SFM's claim handling is not at issue in this lawsuit; (2) Kluender does not have the requisite experience to provide expert testimony; (3) Kluender's opinions relating to SFM's state of mind are inadmissible; (4) Kluender's methodology is unreliable because she failed to review the at-issue claims; and (5) Kluender's opinion that SFM acted unreasonably because its investigators purportedly failed to share information with its claim adjusters is inadmissible because it is not based on any legal or industry standards. In its Response, Defendants make only three rebuttal arguments: Kluender is qualified, she is not offering an opinion on whether the 500+ claims were handled reasonably so her failure to review the records is irrelevant, and her opinion is really just that SFM should have shared information. It is telling that Defendants completely ignore SFM's other arguments. For the reasons stated below, Kluender's expert opinion must be stricken.

First, despite Defendants' best efforts, Kluender remains unqualified to provide expert testimony regarding SFM's claims handling or investigation practices because she concedes – as she must – that she never reviewed the documents that would allow her to opine on SFM's claims handling, and moreover, she has no knowledge or experience regarding medical provider investigations or when such investigative material should be shared with claim adjusters. Second, Defendants' attempt to distance themselves from Kluender's opinion that each of the 500+ at-issue claims were unreasonably handled and recast her opinion is improper and should be excluded.

Third, Kluender's recast opinion that SFM acted unreasonably when it purportedly failed to share information is inadmissible because it is not based on any legal or industry standard and Kluender has no relevant professional experience that would allow her to render this opinion. And finally, Kluender affirmed that her opinions depend entirely on SFM's state of mind, which are not proper grounds for expert testimony. For these reasons, all of Kluender's opinions should be excluded.

## II.     ARGUMENT

### A.     Defendants Concede Kluender's Opinions Are Irrelevant.

In its motion, SFM established Kluender's opinions should be stricken because they are not relevant to any issue or defense in this case. *See* [ECF No. 119 at 7]. Defendants completely ignore and fail to respond to this argument. *See generally* [ECF No. 122]. By failing to address SFM's argument, Defendants concede Kluender's opinions are irrelevant. *See Slugocki v. United States By & Through Dep't of Labor, Office of Workers' Comp. Programs, Div. of Fed. Emps.' Comp.*, 988 F. Supp. 1443, 1447 (S.D. Fla. 1997) (finding the party conceded an argument by "fail[ing] to address [it] anywhere in his Response brief"). As a result, Defendants have not satisfied their "substantial burden under Rule 702" to demonstrate that Kluender's opinions have "a justified scientific relationship to the pertinent facts" and issues of this lawsuit. *Cook ex rel. Estate of Terrier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1107 (11th Cir. 2005); *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004). Kluender's opinions should be stricken on this basis alone.

### B.     Kluender Is Not Qualified To Provide Expert Testimony Relating To SFM's Investigation.

In their Response, Defendants attempt to explain why Kluender is purportedly qualified to testify about the "reasonableness" of SFM's alleged failure to communicate investigative information to its claim adjusters. [ECF No. 122 at 1-6]. Setting aside the revisionist nature of

3

Kluender's opinion (which is discussed below), none of the "qualifications" Defendants cite can overcome the glaring flaw in her background.  Kluender has never worked as an investigator for any insurer investigating potential medical provider fraud and has never supervised any employees investigating potential medical provider fraud.  *See* Kluender Tr. at 263:15-24 (**Q:** And you've never supervised someone who has the role that Jennifer Fuller has, which is a project specialist? **A:** Correct); 113:4-7 (**Q:** . . . None of the 13 years were as a claims adjuster in a special investigation or multi-claim investigation unit; can we agree on that? **A:** Correct). She also has never adjusted a Florida PIP claim. *See* Kluender Tr. at 103:3-10 (**Q:** You never handled a Florida PIP claim; is that right? **A:** No, I haven't).  Defendants attempt to overcome this incredible lack of experience by over-generalizing Kluender's background. Defendants claim, for example, Kluender has "experience handling every manner of insurance claim[s]," that she worked "full time for State Farm at every level of its claims handling operations," and that "the claims handling processes [] go hand-in-hand with insurance fraud investigations." Resp. at 2.  But, all of this purported experience relates to the "claim handling" of completely different types of claims. None of her experience relates to being part of or managing an investigative team and the sharing of information between the investigative team and claim handlers. If Kluender is going to provide an "expert" opinion on whether SFM's multi-claim investigative team should have shared information with the non-investigative claim adjusters who were handling some of the at-issue claims, Kluender must demonstrate that she has at least *some* relevant experience as a project specialist or the manager of a project specialist such that she would know whether the project specialist should or must share information with the claim adjusters. To be clear, Kluender has never had to determine *what* investigative material (if any) should be shared with non-investigative claim adjusters, and, if so, *when*.  Kluender Tr. at 264:5-8.  Thus, Kluender has no professional

experience to draw upon to provide an "expert" opinion on what, and when, investigators should communicate information to claim adjusters.

Moreover, she conceded that she has ***no idea*** how other insurers conduct investigations into medical providers. Kluender Tr. at 115:13-120:11. Perhaps most importantly, she admitted *she does not know if SFM or any other insurer requires its investigators to communicate with its claim adjusters and, if they do, under what circumstances such communications should occur.* Kluender Tr. at 118:7-16. Kluender simply has no knowledge or professional experience about when (and even if) investigators must communicate with non-investigative claim adjusters. Defendants' over-generalized arguments to the contrary cannot cure this glaring deficiency.

Regardless of Defendants' spin, the reality is that Kluender has spent the bulk of her career in an entry-level claim adjuster position, which is a non-investigative, non-managerial, non-supervisory job held by ***thousands*** of SFM employees. [ECF No. 119 at 8]. Her role as SFM's contact person for the Pennsylvania Insurance Department consisted of nothing more than simply relaying information to the Department relating to SFM's compliance with the state's insurance laws, but her testimony that she has no actual investigative experience in ***any*** capacity—supervisory or ground-level—stands. Before she was terminated for cause, her two-year stint as a team manager from 2013 to 2015—her ***only*** time in her near-twenty-year career at SFM where she held any type of supervisory experience—did not involve any work handling Florida PIP claims or investigating potential medical fraud. Kluender Tr. at 112:16-20. In short, none of her jobs equip her with the knowledge or experience to be a now-professed expert in medical fraud investigations or when investigators should share investigative materials with claim adjusters. Accordingly, her speculative beliefs regarding the "reasonableness" of SFM's alleged failure to communicate information to its claim adjusters should be excluded. *See In re Trasylol Prods.*

*Liab. Litig.*, No. 08-MD-01928, 2010 WL 1489793, at *8-9 (S.D. Fla. Feb. 24, 2019) (excluding expert opinion because expert did not have relevant experience and could not identify standard, guideline, rule, or regulation to show opinion was based on anything other than his "own subjective beliefs and personal views").

        **C.**    **Defendants Acknowledge Kluender Has No Basis To Provide Any Opinion Regarding SFM's Claims Handling, And Impermissibly Try To Change Her Opinion At The Eleventh Hour.**

Defendants hired Kluender to provide an opinion regarding the "reasonableness" of SFM's claims handling. *See* [ECF No. 119-2 at 2]; Kluender Tr. at 26:8-20; 27:13-15 (ECF 119-1 at 27-28). Now, recognizing Kluender cannot provide such an opinion because she only reviewed five of the 500+ claims at-issue in this lawsuit, Defendants improperly attempt to recast Kluender's opinion. Defendants—for the first time in this case—claim that "***Ms. Kluender's opinion is not based on SFM's unreasonable claim handling***." Resp. at 2 (emphasis added). This, of course, makes no sense given the explicit proclamations in Kluender's report and her testimony. In the first sentence of her Report, Kluender stated that the purpose of her expert opinion was to outline her "actual opinions concerning the ***handling by State Farm of the Claims*** at issue in the above lawsuit." [ECF No. 119-2 at 2](emphasis added). She purportedly reviewed certain documents "with a focus on evaluating the manner in which State Farm ***handled the claims*** listed on Exhibits . . . G & N to the Amended Complaint[]." *Id.* (emphasis added). In the next section of her Report, Kluender affirmed she "***evaluated State Farm's claims handling*** conduct with respect to claims involving the Defendants[.]" *Id.* at 4 (emphasis added). She continued to provide seven pages of "pertinent" facts regarding her review of SFM's claims handling. *Id.* at 4-10. In the body of her report, in a section titled "Analysis of the Reasonableness of State Farm's ***Handling of Feijoo Claims***," Kluender outlined her opinions regarding the "reasonableness" of SFM's claims

6

handling. *Id.* at 4-10.  Finally, Kluender boldly concluded that SFM's handling of "*every claim*," including its decisions to pay and deny Defendants' bills, was unreasonable:

> For all of the reasons outlined above, it is my opinion, expressed to within a reasonable degree of professional certainty, that State Farm's handling of every claim at issue in this case fell well below both industry standards and those espoused by State Farm itself. It is further my opinion that State Farm's payment *and* denials of payments to Dr. Feijoo were unreasonable under the circumstances.  It is my opinion that State Farm was not, nor could it reasonably have

*Id.* at 14.

During her deposition, Kluender affirmed she was hired by Defendants for the sole purpose of evaluating the reasonableness of SFM's claims handling.

> **Q:** What specific questions or issues were you asked to examine in this case?
> **MR. BARATTA:** Objection to the form.
> **A:** I was asked to review the handling of the claims by the carrier and determine if it was reasonable.
> **Q:** When you refer to the handling of the claims, are you referring to the claims at issue in this complaint?
> **A:** Yes.
> . . .
> **Q:** Were there any other questions you were asked to look into?
> **A:** No.

Kluender Tr. at 26:8-20; 27:13-15 (ECF 119-1 at 27-28).  She also doubled down on her opinion that SFM's handling of "every claim," including its payment and denial of payments, was unreasonable.  Kluender Tr. at 73:22-74:10; 76:4-12; 132:2-133:4; 135:12-15.

Now, after SFM highlighted Kluender's fundamental methodological error in its motion to strike, Defendants declare Kluender's opinion has nothing to do with how SFM handled Defendants' claims and relates *only* to the purported failure to share information with claim adjusters.  Defendants' attempt to abandon Kluender's opinions regarding the "reasonableness" of SFM's claims handling—which by her own admission was the *sole reason* she was hired in this case—should be rejected and her opinion should be stricken.

7

**D.     Kluender's Purported Opinion That A Reasonable Insurer Would Have Shared Information With Its Claim Adjusters Should Be Excluded.**

Defendants spend nearly half of their Response recasting Kluender's opinion. Indeed, and as stated above, Defendants now argue Kluender's *only* opinion is that "a reasonable insurer would have shared the information it had about Dr. Feijoo's billing practices with the people *actually paying the bills*." Resp. at 7 (emphasis in original). Ignoring the fact that this proclamation is not supported by any citations to the record and appears to be nothing more than counsel's fictional story-telling, Kluender's recast opinion should be excluded because she has not (and cannot) identify any laws or industry standards to use as a reference point for evaluating the reasonableness of SFM's purported failure to share information. As described in SFM's motion to strike, Kluender cannot identify any statute, regulation, or industry standard relating to ***if, what, and when*** investigators must communicate with non-investigative claim adjusters. *See In re Trasylol Prods. Liab. Litig.*, 2010 WL 1489793, at *8-9; Kluender Tr. at 117:24-121:5 (no knowledge about what other insurers require in terms of communication); *id.* at 157:2-158:17 (no knowledge of legal rules or standards for communications).

As discussed above, she has no professional experience with SFM's own investigative practices, much less whether any other insurers require their investigators to communicate with their non-investigative claim adjusters (assuming insurers separate these roles) or, if they do, under what circumstances such communications must occur. Kluender Tr. at 117:24-118:16. And she certainly has no Florida-specific knowledge: she does not know how any other insurers issuing PIP insurance in Florida conduct investigations into medical providers. Kluender Tr. at 115:13-120:11. Put together, Kluender has no professional experience and no knowledge of an industry standard for which she could evaluate the "reasonableness" of SFM's decision to share or not share investigative information with its claim adjusters. *See In re Trasylol Prods. Liab. Litig.*, 2010 WL

8

1489793, at *8-9.  As a result, her opinions regarding how SFM should have conducted its investigation should be excluded.  *Id.*

### E. Kluender's Opinions Based on SFM's State of Mind Are Inadmissible Because They Are Still Based On Rank Speculation.

As detailed in SFM's motion to strike, all of Kluender's purported expert opinions—expressed throughout her Report and during her deposition—depend on her inadmissible personal belief regarding SFM's state of mind.  *See* [ECF No. 119 at 10–11].

Realizing Kluender's opinions regarding SFM's state of mind are inadmissible, Defendants now proclaim that "[t]he subjective mindset of State Farm is irrelevant" and that Kluender's opinions are not "dependent upon or [] principally concerned with State Farm's motive for concealing what it knew about Dr. Feijoo's coding practices from its own adjusters."  [ECF No. 122 at 6] (SFM's state of mind is now irrelevant); *id.* at 10 (Kluender is not concerned with SFM's motive).  This, of course, runs headlong into Kluender's actual testimony.  But, as with Kluender's opinions regarding the "reasonableness" of SFM's claims handling, Defendants attempt to disavow Kluender's opinions, perhaps recognizing they are inadmissible under the law of this district.

Notwithstanding, her opinions remain inadmissible because they are still based on her impermissible impressions of SFM's intent, motive, purpose, and whether it was deceived.  First, Kluender affirms (in her new Affidavit) her opinion that SFM was not, and could not have reasonably been, deceived by Defendants' bills because SFM purportedly "was fully aware" of issues relating to Dr. Feijoo's use of CPT Codes and decided to "deliberately conceal" that information from its claim adjusters. [ECF 122 No. at 10]; Kluender Aff. at ¶¶ 7, 10.  Additionally, Kluender's new Affidavit restates her belief that SFM's motive was to "approve[] a strategy of using discovery in claims involving Dr. Feijoo *to support the goal of developing an affirmative*

*litigation*[.]" Kluender Aff. at ¶ 8. Kluender's opinions are still entirely dependent on SFM's purported intent "to support the goal" of filing a "fake" lawsuit against Defendants. Thus, all of her opinions should be excluded under the black letter law of this district. *See, e.g., Quevedo v. Iberia, Lineas Aereas De Espana, S.A. Operadora Unipersonal*, No. 17-21168-CV, 2018 WL 4932097, at *4 (S.D. Fla. Oct. 11, 2018) (excluding expert testimony regarding aircrew's state of mind); *Taylor v. Novartis Pharm. Corp.*, No. 06-61337-CIV, 2013 WL 5118945, at *4 (S.D. Fla. Apr. 22, 2013) (excluding expert testimony regarding corporation's intent); *Kaufman v. Pfizer Pharm., Inc.*, No. 1:02-CV-22692, 2011 WL 7659333, at *9 n.8 (S.D. Fla. Aug. 4, 2011) (excluding all of the expert's opinions regarding "motives and state of mind, regardless of where or how they appear in her expert report"); *In re Trasylol Prods. Liab. Litig.*, 2010 WL 1489793, at *8-9 (same and noting that "[t]he question of intent or motive is a classic jury question and not one for experts").

### III.    CONCLUSION

WHEREFORE, Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, respectfully requests the Court to enter an Order striking the opinions set forth in the expert report of J'Amy Kluender, not permit her to testify at trial, or otherwise limit her testimony at trial as set forth above and provide any such other relief the Court deems necessary and proper.

Dated this 29th day of August, 2019.

                                              Respectfully submitted,

                                              */s/ Kenneth P. Hazouri*
                                              KENNETH P. HAZOURI
                                              Trial Counsel
                                              Fla. Bar No. 019800
                                              khazouri@dsklawgroup.com
                                              lquezada@dsklawgroup.com
                                              ANDREW S. BALLENTINE
                                              Fla. Bar No. 118075
                                              aballentine@dsklawgroup.com

        lmorales@dsklawgroup.com
        deBeaubien, Simmons, Knight,
         Mantzaris and Neal, LLP
        332 North Magnolia Avenue
        Orlando, Florida 32801
        Telephone: (407) 422-2454
        Facsimile: (407) 849-1845

        —and—

        DAVID I. SPECTOR, ESQ.
        Fla. Bar No. 086540
        david.spector@hklaw.com
        KAYLA L. PRAGID, ESQ.
        Fla. Bar No. 098738
        kayla.pragid@hklaw.com
        **HOLLAND & KNIGHT LLP**
        222 Lakeview Avenue, Ste. 1000
        West Palm Beach, Florida 33401
        Telephone: (561) 833-2000
        Facsimile:  (561) 650-8399

        *Attorneys for Plaintiff/Counter-Defendant*