# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

Case No.: 18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation,

    Plaintiff,

v.

MANUEL V. FEIJOO,
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants.

## **O R D E R**

AND NOW, this _____ day of _____, 2019, upon consideration of Defendants' Motion for Sanctions, and any response thereto, it is hereby ORDERED that said Motion is GRANTED.  Plaintiffs are hereby precluded from offering the testimony at trial of Timothy Banahan.

                                                       BY THE COURT:

                                                       _____
                                                       HON. RUDOLFO A. RUIZ

# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### Case No.: 18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation,

      Plaintiff,

v.

MANUEL V. FEIJOO,
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

      Defendants.

_____

### DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO
### RULES 26(g) and 37(d)(1)(A)(i)

Defendants, Dr. Manuel Feijoo ("Dr. Feijoo) and Manuel Feijoo, M.D., P.A. ("The Clinic"), by and through their undersigned counsel, do hereby Move this Honorable Court to impose sanctions against Plaintiffs pursuant to Federal Rule of Civil Procedure 26(g) and 37(d)(1)(A)(i), and in support thereof aver as follows:

**I.  STATE FARM PURPOSEFULLY WITHHELD CRITICAL DOCUMENTS UNTIL THE EVE OF TRIAL AND FAILED TO PROPERLY PREPARE ITS CORPORATE DESIGNEE IN ORDER TO AVOID DISCLOSING THE CONTINUOUS NATURE OF ITS PURSUIT OF DR. FEIJOO FROM 2011-2018**

1. State Farm filed this lawsuit on August 16, 2018.

2. It has been and remains a critical component of the defense to State Farm's FDUTPA accusations in this case that a consumer acting reasonably in the same circumstances as State Farm with respect to Dr. Feijoo would not have been deceived by a single bill at issue.

3. In pursuit of facts which support this defense, Defendants have sought to obtain from State Farm information and documents which revealed what information State Farm had been provided regarding Dr. Feijoo's billing practices, when the information was obtained, who knew it, and what State Farm did in response.

4. On January 8, 2019, Defendants served initial Requests for Production of Documents, to which State Farm Responded on February 26, 2019. A true and correct copy of Defendants' Requests and State Farm's Responses is attached as Exhibit "A".

5. State Farm's Responses were signed by counsel for State Farm, Ken Hazouri, Esquire.

6. Defendants' request number 2 sought: **The entire contents of any MCIU/SIU Project file which has ever existed identifying Dr. Manuel Feijoo or any practice with which Dr. Feijoo has ever been associated as a subject of the Project.**

7. In response to this request (after a litany of objections), State Farm stated:

    **State Farm Mutual previously opened a project to investigate Dr. Feijoo, which did not lead to the filing of this action or any other action, and any documents or materials associated with that investigation are not relevant to State Farm Mutual's claims in this action or any cognizable defenses thereto. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(C), State Farm Mutual states it is withholding materials responsive to this Request on the basis of this objection.**

8. This Objection marked the beginning of a lengthy campaign by State Farm to avoid producing materials which connected its extensive 2011 investigation (a.k.a. "Project") it conducted into the billing practices of Dr. Feijoo, which it did with the help of Mr. Hazouri, and its 2015 project, also conducted under Mr. Hazouri's direction.

9. At a hearing before Judge Becerra on April 9 challenging State Farm's refusal to produce the 2011 Project documents, Mr. Hazouri represented that it would take an "extraordinary amount of time and money to review and log all of the privileged documents in the 2011 Project File" and, on the strength of this representation, the Court denied (without

prejudice) Defendants' Motion to compel the 2011 Project File documents.  See Judge Becerra's Order, of May 2, 2019, ECF Doc. 51.

10. As the Court is by now well aware, after raising this issue again later upon discovery of State Farm's 2015 Project File, Judge Becerra reconsidered her Order and required the production of a few discrete reports created by State Farm in its 2011 Project.

11. These 2011 Project Documents are the basis of defendants' pending Supplemental Motion for Summary Judgment as to State Farm's FDUTPA claims.

12. The defense's theory in this case from the beginning, and especially since learning of the earlier 2011 State Farm Feijoo Project run by Mr. Hazouri, has been that State Farm was never deceived by any bills of Dr. Feijoo, nor acting as a reasonable consumer would have under the circumstances, and rather that State Farm was attempting to manufacture a federal lawsuit against Dr. Feijoo to serve larger business aims than the billing of one doctor.

13. This is why in their original requests for Production, Defendants sought "**Any and all documents maintained within The Potential Fraud Management Tool which reference Defendants/Counterclaim Plaintiffs, including, but not limited to…Screener documentation.**"  See Ex. "A", request number 4.

14. State Farm's Potential Fraud Management Tool ("PFMT") is a database utilized by State Farm to maintain information created in connection with Project investigations it conducts of medical providers throughout the country.

15. The PFMT is a digital database fully searchable by keywords such that any information which relates to or is identified with Dr. Feijoo can easily be located within it.

16. The "screener documentation" created within the PFMT is specific information directed by PFMT prompts to be inputted into the database concerning a targeted medical provider.

17. Acquiescing to the critical relevance of this information, State Farm responded that it would produce the data maintained in the PFMT "pertaining to the investigation of the Defendant' conduct as set forth in its Complaint." See Ex. "A".

18. On March 8, 2019, State Farm began haphazardly "rolling out" the production of hundreds of thousands of pages of documents in unnamed PDFs without identifying which requests the documents being provided were actually intended to be responsive, with individual claim files being inexplicably broken up into multiple PDFs sprinkled across multiple productions, leaving Defendants to dig through the production and try to make heads or tails of it.

19. After spending countless hours doing this, counsel for Dr. Feijoo wrote to Mr. Hazouri on May 2, 2019, identifying that within **"State Farm's document production, there is reference to a screener having reviewed 22 claims prior to December 8, 2015 but I cannot locate the screener tool or any other documents the screener created as a result of that review. Have these documents been produced?"**

20. Mr. Hazouri did not respond to this email.

21. On May 14, 2019, counsel for Dr. Feijoo wrote again asking specifically about the screening information concerning the 22 claims referenced as having been evaluated by the screener prior to December 8, 2015 and demanding to know when the materials would be produced.

22. Counsel for Dr. Feijoo further stated:

> "**Given the uncatalogued manner in which the files have been produced and given your representation that you did not even review the materials to see what was being produced before doing so, I am concerned that we will continue to find many more claim files which are similarly incomplete as those identified above. I would ask, therefore, that in addition to immediately producing the above-identified claim files (the production of which is now obviously significantly untimely), I would ask that you review the production you've made to ensure that what you indicate to have been produced by the titles given to individual PDF files has actually been provided. I would ask also that you provide some written verification that you have actually ensured with State Farm the accuracy and completeness of its document production and how you've ensured it.**"

23. On May 15, 2019, Mr. Hazouri responded to the request that he comply with his duty to verify the accuracy and actual responsiveness of State Farm's document production, which he had already signed off on as accurate, by declining to do so.

24. Mr. Hazouri stated: **"I'm respectfully declining your request for me to personally review the approximately 470,930 pages of documents state Farm has thus far produced to defendants in this case. That task has been completed by other qualified persons prior to the documents' production."**

25. With respect to the screener documentation which was missing, Mr. Hazouri also attempted to artificially limit the request to a "screener tool" which he then identified as not "a document related to Dr. Feijoo or his clinic that was created by State Farm Mutual and is in its possession, custody or control."

26. On May 16, 2019, counsel for Defendants rejected Mr. Hazouri's attempt to mischaracterize with quotation marks the request which had been made for screener documentation, stating:

**As for the "screener tool", State Farm well knows (notwithstanding strategically placed quotation marks ), that the screening tool is a data collection template that was utilized in MCIU investigations in 2014 and 2015 (at least) in which hierarchical criteria and decision making is categorized, an overall assessment is indicated, and categories of information such as "Claim Volume/Billing activity", Indicators of Potential fraud", and "Ability to resist and deter non-meritorious payment of**

**multiple claims" are graded on a sliding scale of Low, Medium, High, and Unable to Evaluate.  There are seven different individual criteria within the categories.  Also included within the screening tool are other categories of data such as "basic Information," "Project Recommendation Memo", "File Reviews," "Other", "Data Analytics", and various graphs.  All of this data is collected by the screener what makes up the screening tool.  Given the clear indication in State Farm's documents that there was in fact a screening process engaged in which resulted in the project recommendation memo in this case, I would ask, again, that this material be produced immediately.**

27. On May 20, 2019, Mr. Hazouri wrote in response: "We acknowledge receipt of the additional information regarding the "screener tool" in your e-mail below, and we will let you know as soon as we have a substantive response from State Farm Mutual on it."  The full string of the above-referenced emails is attached as Exhibit "B".

28. While the hundreds of thousands of uncatalogued and incomplete documents were being periodically "rolled out" by State Farm, the parties were faced with an original discovery deadline of June 10, 2019.

29. Incredibly, on May 13, 2019, nearly a year after it had filed its lawsuit and nearly nine years after it had begun targeting Dr. Feijoo's practice as a Project, State Farm issued a "Second Amended Initial Disclosure" which for the first time identified a Timothy Banahan as someone who suddenly appeared to have more information about the facts in this case than any of the people who had actually spent the previous nine years investigating Dr. Feijoo.

30. Mr. Banahan was identified as someone who had "knowledge of: a) the factual basis for the allegations in the Plaintiff's Complaint; b) the claims submitted by Dr. Feijoo's clinic to the Plaintiff that are at issue in the Plaintiff's Complaint, and the Plaintiff's handling of those claims; c) the Plaintiff's duties under the Florida Motor Vehicle No-Fault Law, sections 627.730 – 627.7405, Florida Statutes, and section 626.9891(2)(a)1., Florida Statutes; and d)

the Second Interim Report of the Fifteenth Statewide Grand Jury on PIP Insurance Fraud, *In the Supreme Court of the State of Florida*, Case No. 95,746."

31. In his email of May 16, 2019, Counsel for Dr. Feijoo pointed out how remarkable it was that someone with Mr. Banahan's alleged breadth of knowledge concerning this case would not have been identified until less than a month before the discovery deadline and demanded that he be made available for deposition.  See Ex. "B".

32. In trying to arrange Mr. Banahan's deposition, State Farm stated that he would be produced as its corporate designee, so on May 31, 2019, Defendants issued a 30(b)(6) Notice directly to Mr. Banahan which required him to be prepared to testify on the following subjects:

    - **The precise date on which any SIU/MCIU investigation concerning the defendants was commenced;**
    - **The events or information which triggered the commencement of the investigation and why they triggered the investigation;**
    - **The precise date on which any project file was opened with respect to any defendant;**
    - **All of the reasons any project concerning the defendants was opened;**
    - **The amount and basis of all damages sought by State Farm;**

    (A copy of Defendants' 30(b)(6) Notice is attached as Exhibit "C".)

33. On June 13, 2019, State Farm produced 939 pages of materials taken from the PFMT concerning Dr. Feijoo and his practice.  As with all of its other productions, there was no identifying information provided nor were there any indications as to which Requests the documents might be considered responsive to.

34. Still missing even from this production, though, was the screening documentation demanded in Defendants' original request for production and subsequent emails and which Mr. Hazouri had stated was not in State Farm's possession (but would double check with State Farm just to make sure).

35. Mr. Banahan was deposed on June 18, 2019.  Volume I of his deposition transcript is attached as Exhibit "D".

36. In preparing for his deposition to testify as State Farm's corporate designee on the timing and reasons for any investigations and projects conducted by State Farm into Dr. Feijoo, Mr. Banahan indicated he had reviewed exactly one document associated with the 2011 Project - The "Project Scope" memo.  Ex. "D", pg. 9-10.[1]

37. Mr. Banahan and State Farm decided that this was the only document he need review regarding the timing of and reason for the 2011 Project.  Id., pg. 10.

38. With regard to the timing and reason for the 2015 Project, Mr. Banahan similarly limited his preparation to reviewing one document, the Project Recommendation Memo dated December 3, 2015.  Id., pgs. 10-11.

39. Mr. Banahan testified that prior to May of 2019, he had had no association nor familiarity with any facts or issues in this case or relating to Dr. Feijoo.  Mr. Hazouri instructed him not to answer the question of why he had been "called off the bench" to step into the matter as the person "most knowledgeable" about a case he had zero knowledge of prior to it being poured into him 9 years after it started.  Id., pg. 15-16.

40. Despite having been entirely invented as a witness in this case on the subject of why the 2015 Project was "started", Mr. Banahan testified that the extent of his knowledge was limited to information contained in the project recommendation memo of December 3,

---

[1] Note that at this point State Farm was still refusing to produce any documents from the 2011 Project and only did so on August 1, 2019 after being ordered by Judge Becerra to do so.  These documents ultimately revealed that State Farm had conducted a massive Project concerning the identical billing issues as raised in this lawsuit, obtained an opinion letter and draft lawsuit against Dr. Feijoo from Mr. Hazouri, and closed the project with no further action identified in October of 2012.

2015, and further that he had no understanding beyond that singular document as to what actually sparked the opening of the 2015 Feijoo Project. <u>Id</u>., pg. 43.

41. Critically, despite the fact that State Farm's 2015 Project specialist had repeatedly characterized the 2015 Project as the "re-opening" of the earlier 2011 Project, Mr. Banahan was adamant in his testimony that the 2015 Project had no relationship with the 2011 Project. <u>Id</u>., pg. 133-134.

42. State Farm has at all times throughout this litigation fought to distinguish the 2011 Project from the 2015 Project; this alleged distinction was in fact the proffered basis for withholding the 2011 Project documents in the first place and also for State Farm's intentionally limited preparation of Mr. Banahan.

43. At no time after his email of May 20, 2019 did Mr. Hazouri provide any more information about the missing screener documents.

    A. **<u>THE MISSING SCREENER DOCUMENTS SUDDENLY APPEAR ON OCTOBER 15, 2019</u>**

44. The discovery deadline finally expired in this case on September 16, 2019 (save for limited extensions to conduct specific depositions), and trial has been scheduled for November 12, 2019 since August 23, 2019.

45. Incredibly, on October 15, 2019, State Farm produced from the PFMT 30 pages of reports and other materials it claimed to have "just discovered."

46. These suddenly discovered documents are the <u>exact screening documents</u> Defendants had repeatedly demanded beginning in January of 2019 and which Mr. Hazouri had stated unequivocally State Farm did not possess. These PFMT screening documents are attached as Exhibit "E".

47. These newly produced documents reveal for the first time the explosive information that Kathy Potter, the analyst who wrote the 2011 Feijoo Project Scope Memo, is the same person who opened the 2015 Feijoo Project.  See pg. 5 of Ex. "E".

48. Incredibly, the documents also reveal that Ms. Potter opened the Feijoo Project on October 12, 2015, which is a date far earlier than any other document provided by State Farm in connection with the 2015 Project, and nearly two months before the date Mr. Banahan testified the 2015 Project was actually opened.

49. The documents further identify that Ms. Potter was relying on a "Strategic Analysis" in opening the Project, which document has to this date still not been produced by State Farm, despite such a document falling squarely within Defendants' original Requests for production of all analytics reports maintained in the PFMT.

50. In his deposition, Mr. Banahan identified Ms. Potter merely as the analyst who had authored the 2011 Project scope memo and that she is still with the company but indicated clearly that he had not spoken with her in connection with his preparation to testify as State Farm's corporate designee.  Ex. "D", pg. 11-12.

51. The information produced on October 15, 2019 from the PFMT is explosive because it completely blows up the pretense State Farm has attempted to manufacture in this case that its 2011 and 2015 Projects were somehow separate, distinguishable events rather than the continuous campaign they obviously were.

52. There are only 2 possibilities for why these documents were not produced in February of 2019: One is that they were deliberately concealed to prevent Defendants from learning Ms. Potter's identity and the timing and connection of her activities in each project.

53. The only other possibility is that State Farm deliberately refrained from conducting a complete search of the PFMT database in order to limit the documents which it knew would enable Defendants to understand the full timing and connection between its Feijoo Projects.

54. As is evident from the documents, merely searching by the keyword "Feijoo" would have identified them.

55. Had Defendants been provided these documents timely, they would have deposed Kathy Potter, as well a corporate designee, concerning every activity in which Kathy Potter engaged, including its timing, reasoning, supervision, and documents associated with it.

56. Defendants would have made additional document requests concerning the analytics performed by Ms. Potter and others leading up to October of 2012.

57. Defendants could have used all of this information to go back to the court to demand that State Farm be required to produce more, if not all of its 2011 Project File, as well as to supplement the arguments of its Summary Judgment Motion.

58. Immediately upon reviewing these documents and understanding the extreme prejudice State Farm had caused by their concealment, Defendants demanded on October 16, 2019 an explanation for why they had not been produced, especially in light of counsel's specific identification and repeated demand for them.

59. Rather than offer an explanation, Mr. Hazouri attempted to resort back to his use of quotations around the phrase "screener tool" as justification for the documents having been somehow "inadvertently" missed.  Mr. Hazouri had no choice but to acknowledge, however, that the documents produced on October 15, 2019 were responsive to

    Defendants original document requests made on January 8, 2019 and should have been produced in February.

60. Mr. Hazouri asked what proposal Defendants would make to remedy the unfair situation State Farm had caused and avoid a motion for sanctions.

61. In response, on October 18, 2019, Defendants pointed out that the only way to even attempt to remedy the situation would be for State Farm to make Ms. Potter and/or a corporate designee to testify fully and completely about everything Ms. Potter had actually done with respect to both Feijoo Projects, allow time for follow up document requests as the result of this deposition, and permit the supplementation of Defendants' Motion for Summary Judgment, all of which would of course necessitate a lengthy continuance of the November 12, 2019 trial date.

62. On October 18, 2019, Mr. Hazouri agreed that these remedies were necessary. A copy of the email string containing these exchanges is attached as Exhibit "F".

63. After a conference call to discuss the issue on October 21, 2019, the parties agreed to submit a joint motion for continuance based on State Farm's late production of documents, which Motion was submitted on 10/22/19. (ECF Doc 151).

64. Within hours, however, obviously upset at the idea that *all* of the Parties were not respecting its deadlines, the Court denied the Motion while permitting the parties to obtain more time by agreeing to have the case tried before Judge Becerra. ECF Doc 152.

65. Unfortunately, this option was not agreed upon, which eliminated any time to cure the prejudice defendants have suffered.

66. The trial of this case is now scheduled to start on November 12, 2019. Given the overwhelming documentation associated with the trial and the time needed to prepare,

Defendants have no ability between now and trial to even attempt to cure the prejudice State Farm's discovery violation has caused.

67. On October 25, 2019, Defendants conferred with State Farm counsel to see if the parties could agree that the only appropriate remedy which might alleviate some of the prejudice is the preclusion of Mr. Banahan from testifying at trial.

68. State Farm refused to agree and this Motion followed.

### B. THE ONLY FAIR SANCTION FOR STATE FARM'S CONDUCT IS TO PRECLUDE IT FROM GAINING THE ADVANTAGE ITS CONDUCT CREATED

69. By deliberately concealing the PFMT documents from defendants during discovery and until the eve of trial, State Farm prevented Defendants from fully examining State Farm's corporate designee and from fully discovering the documents which could have been used to demand a more particularized range of topics for a corporate designee to testify concerning.

70. State Farm should not be permitted to exploit this unfair advantage given that it was created only as the result of direct and unjustifiable violations of Rules 26(g) and 37.

#### i. Mr. Hazouri and State Farm Violated Rule 26(g) and Must Be Sanctioned

71. "Rule 26(g) requires that an attorney of record sign discovery-related filings, and prescribes that the signature certifies that the filing conforms to the discovery rules, is made for a proper purpose, and does not impose undue burdens on the opposing party in light of the circumstances of the case." Bernal v. All Am. Inv. Realty, Inc., 479 F. Supp. 2d 1291, 1333–35 (S.D. Fla. 2007) *citing* Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1372 (11th Cir.1997) and Rule 26(g)(2).

72. Rule 26(g) thus imposes upon attorneys the duty to make a reasonable investigation to assure that their clients have provided all available responsive information and documents.  Id., *citing* Sexton v. U.S., No. 6:99 CV 102-ORL-3AB-122, 2001 WL 649445, at *1 (M.D.Fla. April 12, 2001).

73. The signing attorney is not required to certify the truthfulness of the client's response, only that he made a reasonable effort to insure that his clients provided all responsive documents and information.  Id., *citing* Tampa Port Auth. v. M/V Duchess, 1997 WL 1175718, at *6 (M.D.Fla. June 6, 1997) (citing 1983 Advisory Committee notes).

74. Mr. Hazouri not only failed to make a reasonable effort to insure that his clients provided all responsive documents and information, he explicitly refused to do so and actually went so far as to affirmatively represent that the screener documents were not in State Farm's possession when, as we now know, they were.

75. Rule 26(g)(3) provides that where, as here, a certification is made without substantial justification, the court *shall* impose upon the person who made the certification, *the party on whose behalf the disclosure, request, response, or objection is made, or both,* an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee. (emphasis in the original).  Id., *citing* Chudasma at 1372.

76. "Thus, the rule contemplates that sanctions must be imposed not only upon the attorney who fails to conduct a reasonable investigation, but also upon his clients if they are complicit in the violation of the rule."  Id.

77. By his own admission, and his explicit refusal to do so, Mr. Hazouri failed to insure that State Farm had provided all responsive documents and information demanded by

Defendants, even after multiple specific follow ups from Defendants identifying the specific documents which were missing.

78. It is respectfully submitted that mere "inadvertence" is not a reasonable or credible explanation for State Farm's concealment of the PFMT documents.

79. The 30 pages of screener documents were withheld from a larger production of more than 900 pages from the PFMT and these 30 pages were the only ones (produced so far) which directly connected the 2011 Project to the opening of the 2015 Project.  Counsel for Defendants recognized that these specific screener documents were missing from the production and repeatedly demanded their production, and in doing so specifically described the PFMT information which is generally sought but had not been produced. Mr. Hazouri stated explicitly that no such documents were possessed by State Farm and even promised to follow up with State Farm to make sure they did not have them with no further response.  Yet when the documents were produced on October 15, 2019, they contained the identical information that counsel identified in his email of 5 months earlier which seemed to be missing.

80. In short, no one is that unlucky and mere "inadvertence" cannot explain the failure to produce these documents.

81. As such, sanctions under Rule 26(g) are required.

> **ii.  By Failing to Properly Produce a Corporate Designee As required by Rule 30(b)(6), Sanctions under Rule 37 Are Warranted As Well**

82. Rule 37 of the Federal Rules of Civil Procedure authorizes sanctions if a Rule 30(b)(6) designee fails to appear for their properly noticed deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). The Rule has also been interpreted to permit sanctions against a

corporation who produces an unprepared Rule 30(b)(6) witness. <u>Kartagener v. Carnival Corp.</u>, 380 F. Supp. 3d 1290, 1297–98 (S.D. Fla. 2019)

83. Rule 37 authorizes a litany of sanctions for a party's failure to comply with its Rule 30(b)(6) obligations, including the preclusion of testimony, striking of pleadings, and entry of a default.  <u>Id</u>., *citing* Fed. R. Civ. P. 37(d)(3).

84. Whether by deliberate concealment from him or coordinated effort, State Farm failed to adequately prepare Mr. Banahan to testify concerning all of the reasons why and when State Farm opened its investigations and Projects into Dr. Feijoo.

85. This failure of preparation resulted in Defendants being prevented from discovering critical information which would have altered the entire course of discovery in this matter as well as further supported Defendants' Motion for Summary Judgment.

### iii. The Sanction Requested is Limited in Nature and Commensurate With the Wrong

86. The sanction Defendants request is really the only one available which minimizes the advantage State Farm has procured by its wrongful conduct which would not also require a further continuance of the trial.

87. Mr. Banahan is himself not a critical (or even necessary) witness to State Farm.

88. Mr. Banahan has no first hand information about any aspect of this case, and was injected into it at the 11th hour merely as a convenient conduit for State Farm to funnel the facts known by the people who actually conducted the nearly decade long pursuit of Dr. Feijoo.

89. State Farm, however, calculated its discovery disclosures and the information it provided to Mr. Banahan in preparation for making him a witness so as to maximize his strategic

effectiveness for State Farm's position while at the same time eliminating Defendants' ability to ascertain the complete facts which are relevant to the case.

90. If Mr. Banahan is permitted to testify under these circumstances, the Defendants will be unfairly prejudiced and State Farm will be rewarded for its duplicity.

91. Defendants are not asking that State Farm's case be dismissed or any other sanction which prevents State Farm from putting on its full case. Defendants are simply asking that State Farm not be permitted to take advantage of its Rules violations to Defendants' detriment at trial.[2]

### CERTIFICATE OF COUNSEL

I hereby certify that I have conferred with opposing counsel and he has indicated that he does not agree to the relief requested herein.

**WHEREFORE**, it is respectfully requested that the attached Order be entered.

RESPECTFULLY SUBMITTED,
**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email: Pivniklaw@aol.com
Cdiezpivniklaw@aol.com
By: /s/ Jerome A. Pivnik
Jerome A. Pivnik, Esq.
Fla. Bar No.: 400408

**Andrew P. Baratta, Esq.**
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
Tel: 215-914-2222
Email: Andrew@Barattarussell.com
(*pro hac vice*)

---

[2] In the alternative, Defendants would respectfully request that the Court reconsider its Order denying the Joint Motion for Continuance. At the request of Mr. Hazouri, the Motion was submitted in as "vanilla" a fashion as possible and the Court was therefore not on full notice of the facts which necessitated it.

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on October 25, 2019, I have filed the foregoing document with the Clerk of Court using the CM/ECF system and that a copy was electronically served upon the following in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing: Kenneth P. Hazouri, Esq., and Andrew S. Ballentine, Esq., Mantzaris and Neal, LLP, 332 North Magnolia Avenue, Orlando, FL 32801. (Khazouri@dsklawgroup.com, ABallentine@dsklawgroup.com, Lquesada@dsklawgroup.com, Lmorales@dsklawgroup.com).

             **THE PIVNIK LAW FIRM**
             7700 N. Kendal Drive, Suite 703
             Miami, FL 33156
             Tel: 305-670-0095
             Email:Pivniklaw@aol.com
                Cdiezpivniklaw@aol.com
             By: /s/ Jerome A. Pivnik
             Jerome A. Pivnik, Esq.
             Fla. Bar No.: 400408

             **Andrew P. Baratta, Esq.**
             Baratta, Russell & Baratta
             3500 Reading Way
             Huntingdon Valley, PA 19006
             Tel: 215-914-2222
             Email: Andrew@Barattarussell.com
             (*pro hac vice*)