UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

STATE FARM MUTUAL AUTOMOBILE  CaseNo.18-CV-23329-RAR/Becerra
INSURANCE COMPANY, an Illinois Corporation

    Plaintiff,

v.

MANUEL V. FEIJOO, MANUEL V. FEIJOO, M.D.,
P.A., a Florida Professional Association

    Defendants
_____/

**DEFENDANTS' MOTION TO EXCLUDE
PLAINTIFFS' EXPERT, DR. HERMAN OR LIMIT TESTIMONY**

Defendants, MANUEL V. FEIJOO, and MANUEL V. FEIJOO, M.D., P.A., move to exclude Plaintiff's Expert, Dr. Herman, from testifying at trial, or alternatively provide for an adverse inference instruction regarding the bills/records State Farm refused to produce for him, and to limit his testimony, and state:

In summary, the Plaintiff failed to disclose Dr. Herman as an expert until, Sept. 26, 2019, which was after the expiration of the expert disclosure deadline. Rather than immediately move to strike him, Defendants agreed that if State Farm complied with a Request to Produce, and Dr. Herman with a notice of deposition duces tecum, and that State Farm produce Dr. Herman for deposition in Gainesville on Oct. 17, 2019, they would not argue that the disclosure was untimely.

However, State Farm, on Oct. 16, objected to producing the bills and charts that Dr. Herman had for approximately 10 State Farm auto insureds/patients he treated in the three years prior to his deposition. Without those charts and bills, Defendants are prejudiced from showing that Dr. Herman's patient charts contain the same perceived deficiencies he attributes to those of

1

Dr. Feijoo, relating to the 46 or so patients that are the subject of the Counterclaim (and Plaintiff's claim for declaratory relief. Defendants further state:

1. On Sept. 25, 2019, the Defendants disclosed Dr. Herman as an Expert Witness, and produced his Rule 26 report. A copy of the Summary of Dr. Herman's Opinion's from that report are attached as Exhibit 1. Copies of the emails regarding same are attached as Exhibit 2.

2. The Discovery Cutoff had been Sept. 16, 2019, but was extended to Sept. 26, by the Court's Order [ECF 137]. State Farm argued that since the Discovery Cutoff was extended to Sept. 26, that somehow included expert disclosures - though by their own argument, if that were correct, that deadline was expiring the next day.

3. As for Dr. Herman's Report, apparently, State Farm paid Dr. Herman $40,000 in expert fees to opine that the $36,000 Dr. Feijoo billed State Farm for the evaluation and treatment of 46 insureds was excessive and that his written evaluations, history, treatment plans were insufficient to justify the billing codes he used.

4. On 10/1/19, the undersigned advised State Farm's Counsel that if State Farm would comply with a forthcoming request to produce regarding State Farm's relationship with Dr. Herman, and he could be deposed relatively quickly, Defendants would not argue "late notice." A copy of that email exchange is attached as Exhibit 3. That same day, Dr. Feijoo served a Request to Produce to State Farm that included:

> 5. If Dr. Herman has treated any State Farm insureds during the last three years, all documents submitted by Dr. Herman, all bills, All EOBs, all records relating to payments to Dr. Herman or requests for more information.

A copy is attached as Exhibit 4.

5. The parties agreed to depose Dr. Herman on Oct. 17, 2019, and that State Farm would respond to the RFP by the day before. A copy of the Notice is attached as Exhibit 5. Like the RFP the notice required Dr. Herman to bring with him the same patient charts and bills, but

2

provided that he could redact and delete any identifying personal information regarding the patients. No. 20 provided:

> **20.** If Dr. Herman has treated any State Farm insureds during the last three years, all documents submitted to State Farm by Dr. Herman for said patients/insured, including but not limited to all bills, All EOBs, all records relating to payments to Dr. Herman or requests for more information. (You may redact the name, or other identifying information of the patients, other than their initials).

Although the request to produce to State Farm did not contain the parenthetical offer to redact identifying information, the parties have been traveling under a Stipulated Confidentiality Order [ECF 40] that would allow State Farm to do just that.

6. On Oct. 16, 2019, State Farm responded to the RFP. State Farm's Response, a copy of which is attached hereto as Exhibit 6, objected to production of any documents in response to RFP 5. State Farm also produced a privilege log, a copy of which is attached hereto as Exhibit 7, which shows that Dr. Herman treated and billed State Farm for at least 10 State Farm auto patients in the prior three years, one which was treated just a few weeks before the Oct. 17, 2019 deposition. The response provided:

**RESPONSE:**
SFM objects to this Request on the grounds that it is overbroad, irrelevant, and seeks the production of documents and information that pertain to patients whose treatment is not at issue in this litigation, and who have never treated with Dr. Feijoo or Manuel V. Feijoo, M.D., P.A. Dr. Herman's treatment of patients that are not at issue in this litigation (and any related medical records and bills) are not relevant to the claims or defenses in this case—which only relate to whether *Dr. Feijoo or Manuel V. Feijoo, M.D., P.A.*, improperly billed SFM for medical services provided to an identified set of SFM insureds, and whether certain of those medical services (*i.e.*, those at issue in Defendants' Counterclaim) were medically necessary, reasonable, and otherwise compensable with no fault and medical payment coverage benefits. To the extent Dr. Herman saw patients in his capacity as a treating physician and not an expert, production of such documents (especially medical records and bills) would improperly invade the privacy interests and protected medical information of those non-relevant persons. Although this Request is directed at SFM, it seeks Dr. Herman's personal patient records, and disclosure of such medical records and bills is barred by Florida law without notice and written authorization of the patients. Fla. Stat. § 456.057(7); *Paylan v. Fitzgerald*, 223 So. 3d 431, 434–35 (Fla. Dist. Ct. Appt. 2017); *Pierre-Paul v. ESPN, Inc.*, Case No. 16-21156-CIV-Cooke/Torres, 2016 WL 4530884, at *1 (S.D. Fla.Aug.

29, 2016) (Florida law prohibits third-party dissemination of medical information); *Sheets v. Sorrento Villas, Section 5, Assoc., Inc.*, Case No. 8:15-cv-1674-T-30JSS, 2016 WL 11493318, at *3–4 (M.D. Fla. May 9, 2016) (same and noting that consent is required for disclosure); *Daw v. Cowan*, Case No. 3:11cv96/RV/EMT, 2013 WL 5838683, at *8–10)("Florida courts have determined that individuals enjoy a right of privacy in their medical records under this provision of the state constitution."); *Graham v. Dacheikh*, 991 So. 2d 932, 934 (Fla. Dist. Ct. App. 2008)(Florida law broadly prohibits furnishing medical records to non-patients and "[t]he statute provides for only limited, specific exceptions to this general rule that the patient must give written authorization before any record is released."). Pursuant to Federal Rule of Civil Procedure 34(b)(2)c), SFM states it is withholding responsive materials on the basis of these objections.

30 minutes before the start of the deposition, State Farm served by email an objection on behalf of Dr. Herman to no. 20, production of his bills/records to State Farm and documents relating to same, See Exhibit 8, and at the deposition, Dr. Herman failed to bring any of the subject patient charts. He did not recall a single patient, or the treatment, and would say only that he expected that his charts were more detailed than those of Dr. Feijoo. (The transcript of Dr. Herman's deposition has been ordered but not yet transcribed).

## **Memorandum of Law**

The bills Dr. Herman sent to State Farm, with the associated reports/records (but redacted) for the 10 or so patients he treated are relevant to impeach him regarding his opinions about Dr. Feijoo's records.

State Farm cannot shield the discovery on the basis of Fla. Stat. § 456.057(7). In Amente v. Newman, 653 So.2d 1030 (Fla.1995), the Court authorized the plaintiff in a medical malpractice action to obtain discovery of the medical records of nonparties who were the patients of the defendant doctor without notice to the non-parties.

In Amente, the plaintiff was a mother who sued her doctor claiming that the method he used to deliver her baby resulted in injury to the baby. The mother was obese and the claim of malpractice focused on the method of delivery of babies born to obese mothers. In discovery, the

4

plaintiff sought records for all similarly obese patients who had given birth to babies under the defendant doctor's care during a two-year period. Thus, this information was sought not merely for impeachment of the defendant, but also in hopes that it would provide relevant evidence to prove the malpractice claim against the doctor. The court noted that the statute, then codified at §455.241(1), Florida Statutes (1991), required notice to the non-parties "by the party seeking such records." The court, however, was concerned that the plaintiff in the medical malpractice suit seeking the records was essentially in a Catch-22 position because she was unable to provide notice without the records, and unable to obtain the records without notice. Amente, 653 So.2d at 1032. The court concluded that the privacy of the nonparty patients whose medical records were provided was not unduly invaded because the trial court ordered all identifying information redacted. Id. at 1033. The supreme court added, "In those cases where mere redaction of the medical records is deemed insufficient to protect the patients' right of privacy, the trial court, in its discretion, may also order the medical records sealed and allow only the parties' attorneys and medical experts to have access to the medical records." Id.

Here, Dr. Feijoo is being sued by State Farm for every bill he submitted over the past four years, on the basis that his initial evaluations should have been billed at a lower CPT code than he used, or that he should not have billed separately for a Range of Motion or X-ray review. State Farm uses Gainesville sports medicine physician, Dr. Herman to justify that position, by arguing that Fejioo's bills and charts were insufficient for the patients that are the subject of State Farm's count 2, and Dr. Feijoo's counterclaim. Dr. Feijoo, and his experts, should be allowed to review the bills

and charts of Dr. Herman for HIS treatment of the 10 or so, State Farm auto patients he treated. Not only will the records possibly impeach Dr. Herman, but they will also support Feijoo's counterclaim as to the propriety of the billing levels used, etc.

State Farm Mut. Auto. Ins. Co. v. Kugler, 840 F.Supp.2d 1323 (S.D. Fla., 2011) is also on point. In Kugler, State Farm alleged that Defendants engaged in a scheme to defraud it by performing medically unnecessary procedures known as provocative discograms ("discograms") and percutaneous discectomies ("PDs"), and using materially false billing codes to describe these procedures. The Defendants were several physicians who performed the procedures, their medical practices, Palm Beach Lakes Surgery Center where the procedures took place, two (2) lay people and the management company who coordinated the alleged scheme, and another doctor who was a partial owner of the Palm Beach Lakes Surgery Center and of the company that supplied the surgical tool for the procedures in question. Plaintiffs also allege that the scheme depended heavily on the relationship between the Defendants and other healthcare providers, such as Bethesda Memorial Hospital, and personal injury law firms, all of whom referred patients to the Defendants. However, Bethesda Memorial Hospital and the personal injury law firms were not named parties in this case. State Farm sought a declaratory judgment that Defendants are not entitled to payments for unpaid claims, damages for violation of the RICO Act, common law fraud, violation of Florida Deceptive and Unfair Trade Practices Act and unjust enrichment. Several of the Defendants counterclaimed for violations of the RICO Act; malicious prosecution; defamation; defamation per se; and bad faith and unfair claims settlement practices. As part of its discovery process, State Farm issued nearly identical subpoenas to produce documents to nine (9) non-party law firms.

The document requests related to State Farm insureds' (without expressly limiting the requests to the allegedly fraudulent claims, and non-State Farm insureds' claims involving PD and discogram procedures; law firms' financial and general dealings with the Defendants and other non-parties; documents relating to loans made to any State Farm insureds who received services; and any complaints against the firms and their attorneys by any client who received a PD or a discogram. All of the law firms subject to the subpoenas, as well as Defendants Jeffrey L. Kugler, M.D. and National Orthopedics, filed motions to quash. The non-party law firms objected to State Farm's document requests on largely the same bases: overboard and unduly burdensome requests; attorney-client and work product privilege; HIPAA and Florida medical privacy laws; trade secrets; and confidentiality of settlement agreements.

State Farm countered by stating that law firms' records may turn out to be more complete. State Farm claimed, therefore, if previously unreviewed by State Farm records are discovered, they will likely be very relevant to the issue of medical necessity of the procedures and of State Farm's reliance upon the records. Non-party law firms argued that employing a medical expert is a better way of proving lack of medical necessity.

The Court noted, however, as long as patients' medical privacy can be managed, review of medical records is likewise a valid avenue for establishing such facts, and held:

> On balance, the facts of this case do not necessitate application of the Florida medical subpoena rule requiring notice and an opportunity to be heard for patients whose medical records are being subpoenaed. Such precautions will result in great complications to this case, prolonged discovery process and unnecessary expense in terms of attorneys fees and judicial resources. Additionally, patients' privacy concerns can be managed with the use of redacting and of a protective order.  Conclusion: In light of the foregoing, IT IS HEREBY ORDERED that Florida medical privacy privilege DOES NOT APPLY in this case

7

What is good for the goose is good for the gander, and if State Farm could obtain the same type of records from non-parties in its FDUPTA case in Kluger, that Dr. Feijoo should certainly be permitted to obtain those records from State Farm, itself, in this case.

State Farm's reliance on *Pierre-Paul v. ESPN, Inc.*, Case No. 16-21156-CIV-Cooke/Torres WL 4530884, is equally misplaced. In *Pierre-Paul*, U.S. District Judge Marcia Cooke denied ESPN and Adam Schefter's motion to dismiss New York Giants defensive end Jason Pierre-Paul's invasion of privacy lawsuit. The case centered on the legal fallout of Schefter tweeting a photo of a medical chart of Pierre-Paul losing a finger from a fireworks accident. Judge Cooke dismissed Count I of Pierre-Paul's lawsuit, which asserted that Schefter obtaining and tweeting Pierre-Paul's medical chart violated Florida Statute § 456.057. This statute governs the duties and obligations of the physician-patient relationship. Pierre-Paul's attorneys had highlighted that this statute prohibits third parties from disclosing confidential medical records. Judge Cooke, however, reasoned that the phrase "third parties" is intended to mean healthcare providers and Schefter, as a journalist, does not fall within that classification.

## Prejudice - No Ability to Cure

Since State Farm did not disclose Herman until Sept. 25, and on Oct. 16, the day before his deposition, objected to producing the bills and related documents for Herman's State Farm patients, the Court could not cure the prejudice by ordering State Farm to produce the records now. There is no time to re-depose Dr. Herman. Accordingly, he should be stricken as a witness, or the jury should be instructed that they can make an adverse inference that Dr. Herman's records and bills, had State Farm produced them, would have shown the same level of detail as those of Dr. Feijoo.

**Herman's Opinions Are Redundant of Those of Jacobs and/or Irrelevant**

Dr. Herman's opinions about the billing codes are redundant of those of State Farm's other expert, Dr. Jacobs, who offered those same opinions as to not only the patient/insureds who are the subject of Count 1, but also for the ones who are the subject of Count 2. See Reports of Dr. Jacob, attached as Exhibit 9, compared to Herman's Report, Exhibit 1, Summary of Opinions, No.7-10.  Herman also offered opinions that Dr. Feijoo's findings of permanent injury for many of the 46 auto accident patients was not justified by the records in his chart (See Exhibit 1, Summary of Opinion Nos. 4 and 5).  That opinion is totally irrelevant to any of the issues in the case, much less regarding the counterclaim.   Even Herman conceded that, whether or not a patient is found to have a permanent injury, does not affect the amount of a bill for evaluation or treatment. (It really would only be relevant in a personal injury case - which this is not).

WHEREFORE, Defendants move to strike Dr. Herman as a witness, or alternatively to provide an adverse inference instruction, and to limit his testimony, as stated above.

**CERTIFICATE OF COUNSEL**

I hereby certify that I have conferred with opposing counsel, Ken Hazouri, and he does not agree to the relief requested herein.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **October 26, 2019**, I have filed the foregoing document with the Clerk of Court using the CM/ECF system and that a copy was electronically served upon the following in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:   **Kenneth P. Hazouri, Esq.**, and **Andrew S. Ballentine, Esq**., deBeaubien, Simmons, Knight, Mantzaris and Neal, LLP, 332 North Magnolia Avenue, Orlando, FL 32801, **David Spector, Esq**., and **Kayla Pragid, Esq**., Holland & Knight, 222 Lakeview Ave., Ste. 1000, W. Palm Beach, FL 33401    Khazouri@dsklawgroup.com  ABallentine@dsklawgroup.com      Lquesada@dsklawgroup.com      bvaldes@dsklawgroup.com  kayla.pragid@hklaw.com david.spector@hklaw.com

9

**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email: Pivniklaw@aol.com
Cdiezpivniklaw@aol.com

By: */s/ Jerome A. Pivnik*
Jerome A. Pivnik, Esq.
Fla. Bar No.: 400408

**Andrew P. Baratta, Esq.**
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006
Tel: 215-914-2222
Email: Andrew@Barattarussell.com

10