**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No.  1:18-CV-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation,

        Plaintiff/Counter-Defendant,

vs.

MANUEL V. FEIJOO,
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

        Defendants/Counter-Plaintiffs.

_____/

## JOINT PRETRIAL STIPULATION

Plaintiff/Counter-Defendant, State Farm Mutual Automobile Insurance Company ("SFM"), and Defendants/Counter-Plaintiffs, Manuel V. Feijoo ("Dr. Feijoo") and Manuel V. Feijoo, M.D., P.A. (the "Clinic"), (collectively, the "Defendants") submit this Joint Pretrial Stipulation pursuant to this Court's Paperless Order Scheduling Trial in Fort Lauderdale [ECF No. 123] and Local Rule 16.1(f), and state as follows:

1. **Short Concise Statement of the Case by Each Party.**

        a)    <u>Plaintiff SFM's Statement of the Case</u>: State Farm Mutual is an insurance company that issues policies of automotive insurance in the State of Florida. Dr. Feijoo is a medical doctor who, through his medical Clinic, purportedly provided medical treatment to auto accident patients who purchased insurance policies from State Farm Mutual and then submitted thousands of medical bills to State Farm Mutual for this purported medical treatment. State Farm Mutual filed this lawsuit against Dr. Feijoo and his Clinic alleging they issued deceptive, false, and

misleading medical bills that misrepresented the medical services Dr. Feijoo provided to those auto accident patients and inflated the charges for the services.  Dr. Feijoo and his Clinic deny those allegations. Dr. Feijoo and the Clinic have also filed a Counterclaim to recover payment for medical bills, which State Farm Mutual has not paid due to the pendency of this lawsuit and the previously described billing misconduct of Dr. Feijoo and his Clinic.

     b) <u>Defendants' Statement of the Case</u>: Dr. Feijoo has submitted tens of thousands of bills for treatment provided to patients injured in auto accidents to all insurers in Florida since 1992.  Every one of his bills has accurately reflected the services Dr. Feijoo provided to each patient and the CPT codes he has utilized have been in accordance with Florida law.  Since at least 2011, Dr. Feijoo has consistently and truthfully advised State Farm as to how and why he applied the CPT codes at issue in this case to the services he was providing to State Farm insureds. Even if any bill submitted by Dr. Feijoo is determined to have included an incorrect CPT code, however, no consumer acting reasonably under the same circumstances as State Farm could possibly have been deceived by it.  Further, given the knowledge it had concerning Dr. Feijoo's billing practices, every payment made to him by State Farm was entirely voluntary.  Since filing its lawsuit against him on August 16, 2018, State Farm has denied all payments for services provided by Dr. Feijoo without any legitimate consideration and Dr. Feijoo seeks these payments in a Counterclaim.

**2. <u>Basis of Federal Jurisdiction</u>**

   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based upon the diverse citizenship of the parties and the amount in controversy, which exceeds $75,000.00, exclusive of interest and costs.

**3. <u>Pleadings Raising the Issues.</u>**

a) SFM's Amended Complaint [ECF No. 60]

b) Defendants' Answer, Affirmative Defenses and Counterclaim [ECF No. 74]

c) SFM's Answer and Affirmative Defenses to Defendants' Counterclaim [ECF No. 97]

**4. List of All Undisposed Motions or Other Matters Requiring Action by the Court.**

a) SFM's Pending Motions

    i. Motion for Order Establishing Facts for Trial [ECF No. 70]

        1. Defendant's Opposition to SFM's Motion for Order Establishing the Facts [ECF No. 90]

    ii. SFM's Motion for Summary Judgment [ECF No. 72]

        1. SFM's Statement of Material Facts in Support [ECF No. 71]

        2. Defendants' Response to SFM's Motion for Summary Judgment [ECF No. 79]

        3. Defendants' Response to SFM's Statement of Facts [ECF No. 80]

        4. SFM's Reply to Defendant's Response to SFM's Motion for Summary Judgment [ECF No. 95]

    iii. SFM's Motion in Limine [ECF No. 73]

        1. Defendants' Response to SFM's Motion in Limine [ECF No. 89]

        2. SFM'S Reply to Defendants' Response to Motion in Limine [ECF No. 98]

    iv. SFM's *Daubert* Motion to Strike Testimony of Kluender [ECF No. 119]

        1. Defendants' Response to SFM's Motion to Preclude Testimony [ECF No. 122]

2. SFM's Reply in Support of *Daubert* Motion to Strike Testimony of Kluender [ECF No. 132]

   v. SFM's *Daubert* Motion to Strike Testimony of Miscoe [ECF No. 124]

1. Defendants' Response to SFM's Motion to Preclude Testimony [ECF No. 131]

2. SFM's Reply in Support of *Daubert* Motion to Strike Testimony of Miscoe [ECF No. 134]

   vi. SFM's Motion for Summary Judgment on the Counterclaim [ECF No. 139]

1. SFM's Statement of Material Facts in Support [ECF No. 140]

2. Defendants' Response to Plaintiff's Motion for Summary Judgment on the Counterclaim [ECF No. 142]

3. SFM's Reply in Support of Supplement to Motion for Summary Judgment on the Counterclaim [ECF No. 150]

b) <u>Defendants' Pending Motions</u>

   i. Defendants' Motion for Summary Judgment [ECF No. 67]

1. Defendants' Statement of Facts in Support [ECF No.. 66]

2. SFM's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [ECF No. 85]

3. SFM's Response to Defendants' Statement of Facts [ECF No. 86]

4. Defendants' Reply to SFM's Response to Defendant's Motion for Summary Judgment [ECF No. 92]

5. Defendants' Reply to SFM's Response to Defendants' Statement of Facts [ECF No. 93]

ii.   Defendants' Motion in Limine re: Hair Restoration [ECF No. 68]

1.   SFM's Response to Order to Show Cause re: Motions in Limine [ECF No. 138]

2.   Defendants' Reply to Order to Show Cause re: Motions in Limine [ECF No. 141]

iii.   Defendants' Motion in Limine re: Issue with Medicare [ECF No. 69]

1.   SFM's Response to Order to Show Cause re: Motions in Limine [ECF No. 138]

2.   Defendants' Reply to Order to Show Cause re: Motions in Limine [ECF No. 141]

iv.   Defendants' Supplement to their Motion for Summary Judgment [ECF No. 108]

1.   Defendants' Supplemental Statement of Facts in Support [ECF No. 109]

2.   SFM's Response in Opposition to Defendants' Supplement to their Motion for Summary Judgment [ECF No. 127]

3.   Defendants' Reply to SFM'S Response to Defendants' Supplement to Motion for Summary Judgment [ECF No. 130]

v.   Defendants' Motion for Sanctions Pursuant to Rules 26(g) and 37(d)(1(A)(i) [ECF No. 155]

1.   SFM's Response is due on October 31, 2019 per Judge Becerra's Order [ECF No 158].

vi.  Defendants' Motion to Exclude Plaintiffs' Expert, Dr. Herman or Limit Testimony [ECF No. 157]

1. SFM's Response is due on October 31, 2019 per Judge Becerra's Order [ECF No 158].

5.  **Concise Statement of Uncontested Facts which Will Require No Proof at Trial with Reservations, if Any.**

a)      SFM is a domestic insurance company organized under the laws of the State of Illinois with its principal place of business in Bloomington, Illinois.

b)      SFM is licensed to engage in business in the State of Florida as a foreign corporation and is doing business in Florida.

c)      Dr. Feijoo is a resident of Dade County Florida.

d)      Dr. Feijoo is licensed to practice medicine in Florida and is governed in the practice of medicine by the statutes set forth in Chapter 458, Florida Statutes and regulations promulgated thereunder.

e)      Dr. Feijoo owns and operates a medical clinic named Manuel V. Feijoo, M.D., P.A. (the "Clinic"), which is located at 8370 S.W. 8th Street, Miami, FL 33144.

f)      Dr. Feijoo has secured for his Clinic an exemption from the requirement under Florida law of obtaining a Health Care Clinic License based on the fact that Dr. Feijoo is a medical doctor who is the Clinic's sole owner.

g)      Dr. Feijoo is legally responsible for his Clinic's compliance with all federal and state laws, including those governing the billing of insurance companies for medical services.

6

h)      As the Clinic's owner, Dr. Feijoo had the ultimate authority to determine the CPT codes that were included in the bills submitted to State Farm at issue in this lawsuit.

i)      Dr. Feijoo caused the Clinic to submit the medical bills at issue in this lawsuit to State Farm during the years of 2014 - 2018.

j)      The medical bills issued by Dr. Feijoo's Clinic at issue in this lawsuit total $432,425.

k)      State Farm Mutual paid $192,707.19 in personal injury protection ("PIP") benefits, and $3,256.80 in medical payments coverage ("MPC") benefits, for a total of $195,963.99 on the medical bills issued by Dr. Feijoo's Clinic at issue in this lawsuit.

l)      Every one of the Clinic's medical bills at issue in this lawsuit include a charge for CPT code 99204, 99214, or 99215.

m)      Two Hundred Thirty Four (234) of the Clinic's medical bills at issue in this lawsuit include a $100 charge for CPT code 76140 for services allegedly provided to State Farm's insureds, together with one of the charges of 99204, 99214, and 99215 for the orthopedic evaluations Dr. Feijoo performed on the insureds.

n)      Every one of the Clinic's medical bills at issue in this lawsuit includes a charge of CPT code 95851 in addition to one of the E/M codes of 99204, 99214, or 99215 for the same initial or follow up office visit.

o)      Dr. Feijoo's Clinic does not have an x-ray or MRI machine.

p)      State Farm's lawsuit was filed on August 16, 2018.

q)      Under Florida's PIP statute, bills for medical services rendered by a physician, a clinic, or other person or institution shall be submitted to the insurer on a

7

properly completed Centers for Medicare and Medicaid Services (CMS) 1500 form and all such billings shall follow the Physicians' Current Procedural Terminology (CPT) and comply with the Centers for Medicare and Medicaid Services (CMS) 1500 form instructions and the American Medical Association Current Procedural Terminology (CPT) Editorial Panel.

r)    The CPT Code book has a section titled "Evaluation and Management (E/M) Service Guidelines," which provides instructions for determining the proper level of E/M codes to bill.

s)    CPT 99204 applies to an "[o]ffice or other outpatient visit for the evaluation and management of a new patient, which requires these 3 key components: A comprehensive history; A comprehensive examination; Medical decision making of moderate complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of moderate to high severity. Typically, 45 minutes are spent face-to-face with the patient and/or family."

t)    CPT 99214 applies to an "[o]ffice or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components: A detailed history; A detailed examination; Medical decision making of moderate complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s)

are of moderate to high severity. Typically, 25 minutes are spent face-to-face with the patient and/or family."

u)      CPT 99215 applies to an "[o]ffice or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components: A comprehensive history; A comprehensive examination; Medical decision making of high complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of moderate to high severity. Typically, 40 minutes are spent face-to-face with the patient and/or family.

v)      CPT 95851 applies to "Range of motion measurements and report (separate procedure); each extremity (excluding hand) or each trunk section (spine)."

w)      CPT 76140 applies to "Consultation on X-ray examination made elsewhere, written report."

x)      Dr. Feijoo's bills were submitted to State Farm Mutual on CMS 1500 forms.

y)      State Farm Mutual has a Special Investigations Unit, within which a Multi-Claim Investigation Unit operated, both of which at times investigate potential fraud in individual claims and/or in multiple claims.

z)      Multi-claim investigations into the possibility that a particular medical provider might be committing fraud are conducted by State Farm Mutual's SIU/MCIU and are called "Projects."

aa)      On December 3, 2015, State Farm project screener Wanda Barnett wrote a Multi-Claim Investigation Project Recommendation memo to Team Manager Julie

Carpenter identifying Dr. Feijoo's use of CPT codes 99204, 95851 and 76140 as potential issues of concern.

        bb)      Jennifer Fuller was assigned as the Project Specialist on the Feijoo Project, Project No. 2015-FL-050.

        cc)      On March 21, 2016, Ms. Fuller created a Multi-Claim Investigation Analysis Worksheet providing Claims Handling Guidelines for claims involving Dr. Feijoo as the treating doctor which were to be provided to Project Claims Specialist(s) who would work in conjunction with Ms. Fuller on the Feijoo Project.

        dd)      The claims and bills identified on Exhibit N to State Farm Mutual's Amended Complaint are those which are the subject of Dr. Feijoo's Counterclaim.

        ee)      The total amount of billing in the claims listed in Exhibit N is $35,825.00.

**6.**  **Statement In Reasonable Detail of Issues of Fact Which Remain To Be Litigated at Trial.**

    a)  <u>SFM's Disputed Facts</u>

        i.  Whether Defendants knowingly, recklessly, or in deliberate ignorance submitted medical bills to State Farm Mutual that contain a false or misleading statement.

        ii.  Whether Defendants prepared, presented, or caused to be presented to State Farm Mutual, a statement containing any knowingly false, incomplete, or misleading information concerning any fact or thing material to the claim for insurance payments or benefits with the intent to injure, defraud, or deceive State Farm Mutual.

    iii.  Whether Defendants systematically upcoded patient evaluations with the intent to obtain reimbursement otherwise not due from State Farm Mutual.

    iv.  Whether Defendants engaged in deceptive acts or practices in the conduct of any trade or commerce.

    v.  Whether Defendants' violation of Florida's Deceptive and Unfair Trade Practices caused State Farm Mutual to suffer damages.

    vi.  The amount of damages caused by Defendants to State Farm Mutual by Defendants' violation of Florida's Deceptive and Unfair Trade Practices.

b) <u>Defendants' Disputed Facts</u>

    i.  Did Dr. Feijoo correctly utilize codes 99204, 99214, 99215, 98581 and 76140 in his bills submitted to State Farm.

    ii.  Did Dr. Feijoo ever submit a bill to State Farm he knew was not accurately coded.

    iii.  Was any bill submitted by Dr. Feijoo objectively deceptive.

    iv.  Did State Farm act as a reasonable consumer in the same circumstances it would have with respect to Dr. Feijoo's bills.

    v.  Was the treatment provided by Dr. Feijoo to the insureds listed in the Counterclaim reasonable and necessary and related to the accidents in which the patients were involved.

    vi.  Was every payment made by State Farm to Defendants voluntary.

    vii.  In 1992, Dr. Feijoo completed the steps necessary to obtain his medical license and continue his orthopedic practice in Florida, and he has done so continuously since then.  In the past 27 years of practice Dr. Feijoo has

treated tens of thousands of patients and submitted bills for his treatment to every automobile insurance carrier who does business in Florida, as well as private health insurers and Medicare.

viii.  At no time prior to suing him did State Farm ever tell Dr. Feijoo that it believed he was using the CPT codes incorrectly.

ix.  Every time Dr. Feijoo's office submitted a bill to State Farm for payment he provided State Farm the actual office notes/medical reports reflecting his interaction with the patient and work he performed.

x.  On August 26, 2011, as the result of a memo written by State Farm analyst Kathy Potter, State Farm opened a multi-claim investigation project investigating Dr. Feijoo's use of CPT codes 99204, 99214, 99215, 95851, and 76140.

xi.  As part of the 2011 Project, State Farm's SIU Management coordinated the handling of PIP lawsuits filed by Dr. Feijoo for State Farm's denial of payments under CPT codes 99204, 99214, 99215, 95851, and/or 76140.

xii.  On January 19, 2011, an attorney hired by State Farm in connection with its 2011 Project named Jonathan Brooks deposed Dr. Feijoo specifically about the manner and circumstances under which Dr. Feijoo utilized codes 99204, 95981, 76140.

xiii.  Dr. Feijoo testified that it was not his practice to use any sort of device when determining a patient's approximate range of motion nor to create a separate report regarding ROM findings when billing CPT code 95851.

xiv.   Dr. Feijoo testified that he believed it appropriate to bill CPT code 76140 (consultation on x-ray examination performed elsewhere) whether he reviewed the actual x-ray film or the report of another doctor who had interpreted the film.

xv.   Dr. Feijoo also testified that he believed it was appropriate and it was his general practice to bill CPT code 95851 (ROM) separately from an Examination Code even though he generally performed the range of motion determination as part of the examination.

xvi.   The testimony provided by Dr. Feijoo (and his billing manager) in 2011 was reviewed by State Farm's SIU Management team as part of its 2011 Project.

xvii.   In subsequent depositions taken by State Farm lawyers in 2011, 2012, 2013, 2016, and 2017, including multiple depositions by Jonathan Brooks, Dr. Feijoo and his billing manager testified consistently with his testimony in 2011 about their understanding and use of codes 99204, 99214, 99215, 95851, and 76140.

xviii.   In the course of its 2011 Feijoo Project, State Farm retained an expert to review Dr. Feijoo's billing and received this expert's report some time before October 15, 2012.

xix.   State Farm hired Ken Hazouri, Esquire in connection with its 2011 Project and sometime prior to October 15, 2012, Mr. Hazouri provided an opinion letter concerning Dr. Feijoo's billing as well as a draft lawsuit against Dr. Feijoo.

xx.   State Farm did not file the lawsuit drafted by Mr. Hazouri.

13

xxi. Prior to August 16, 2018, State Farm had the ability within its systems to flag and funnel any bill received from Dr. Feijoo for extra scrutiny based on any concerns State Farm might have had about the correctness of any CPT code billed.

xxii. In May of 2013, State Farm settled 315 PIP lawsuits filed by Dr. Feijoo which included allegations that State Farm had wrongfully denied payment for CPT codes 99204, 99214, 99215, 95851, and/or 76140.

xxiii. In the summer of 2015, State Farm settled 200 PIP lawsuits filed by Dr. Feijoo which included allegations that State Farm had wrongfully denied payment for CPT codes 99204, 99214, 99215, 95851, and/or 76140.

xxiv. On October 12, 2015, State Farm Mutual analyst Kathy Potter created a new file number for State Farm's Feijoo Project.

xxv. By January 8, 2016, Ms. Fuller had reviewed Mr. Hazouri's 2012 opinion letter and draft lawsuit against Dr. Feijoo as well as the expert report State Farm had obtained in 2012 concerning Dr. Feijoo's billing.

xxvi. Thereafter and through the present State Farm Mutual assigned some claims involving Dr. Feijoo to Ms. Varela and other specially designated claim representatives specifically to be handled in accordance with the Project claims handling guidelines, including numerous claims which are included in State Farm's lawsuit.

xxvii. Since August 16, 2018, State Farm has denied every bill of Dr. Feijoo based on new claims handling guidelines issued upon the filing of State Farm's

lawsuit which directed that any bill with CPT codes 99204, 99214, 99215, 95851, and 76140 be zeroed out.

7. **Concise Statement of Issues of Law on Which There Is Agreement.**

a) This Court has personal jurisdiction over the parties and subject matter jurisdiction over this matter.

b) Venue is proper in this District.

c) FDUTPA declares unlawful ". . . deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204

d) The elements of a FDUTPA claim for damages are as follows: (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. [ECF No. 72 at 15–16]; *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326–27 (S.D. Fla. 2017).

e) A "deceptive act or trade practice" for a FDUTPA claim may be shown through a traditional or per se violation of FDUTPA. Fla. Stat. § 501.204(1); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017).

f) The violation of any law, statute, rule, or ordinance which proscribes deceptive acts or practices may constitute a *per se* FDUTPA violation. Fla. Stat. § 501.203(3)(c).

g) A traditional FDUTPA violation based on a deceptive act or practice occurs when a defendant makes a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. *State Farm*

*Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326–27 (S.D. Fla. 2017).

h)      It is not necessary for a plaintiff to show actual reliance in order to recover. *See* Defs. Resp. to SFM's MSJ [ECF No. 79, p. 14]

i)      Pursuant to Florida Statute § 627.736(5)(b)1, "[a]n insurer or insured is not required to pay a claim or charges: . . .(b) For any service or treatment that was not lawful at the time rendered; (c) To any person who knowingly submits a false or misleading statement relating to the claim or charges; (d) With respect to a bill or statement that does not substantially meet the applicable requirements of paragraph (d); (e) For any treatment or service that is upcoded, or that is unbundled." *See also State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, No. 6:06-CV-1757-ORL-GJK, 2008 WL 11337326, at *4 (M.D. Fla. Dec. 18, 2008). For purposes of this statute, "knowingly" means that a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the information, and proof of specific intent to defraud is not required.

j)      Pursuant to Florida Statute § 627.736(5)(d), "All billings for such services rendered by providers must, to the extent applicable, comply with the CMS 1500 form instructions, the American Medical Association CPT Editorial Panel, and the Healthcare Common Procedure Coding System (HCPCS); and must follow the Physicians' Current Procedural Terminology (CPT), the HCPCS in effect for the year in which services are rendered." Pursuant to Florida Statute 627.736(5)(b)1.d., an insurer or insured is not required to pay a medical bill that does not comply with these requirements.

k)      Pursuant to Florida Statute § 627.732(14), a provider upcodes their charges by submitting a billing code that would result in payment greater in amount than would be paid using a billing code that accurately describes the services performed.

l)      Pursuant to Florida Statute § 627.732(15), unbundling means the submission of a billing code that is properly billed under one code, but that has been separated into two or more codes, and would result in payment greater in amount than would be paid using one billing code.

m)      Subsection (4)(b) "does not preclude or limit" the insurer's ability to declare that the claim was not medically necessary or was unreasonable." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, No. 6:06-CV-1757-ORL-GJK, 2008 WL 11337326, at *3 (M.D. Fla. Dec. 18, 2008).

n)      For purposes of paragraph (4)(b), "an insurer shall not be considered to have been furnished with notice of the amount of covered loss or medical bills due unless the statements or bills comply with this paragraph, and unless the statements or bills are properly completed in their entirety as to all material provisions, with all relevant information being provided therein." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, No. 6:06-CV-1757-ORL-GJK, 2008 WL 11337326, at *3 (M.D. Fla. Dec. 18, 2008), *citing* Fla. Stat. § 627.736(5)(d).

o)      CPT coding "is complex, voluminous, and subject to expert interpretation." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, No. 6:06-CV-1757-ORL-GJK, 2008 WL 11337326, at *8 (M.D. Fla. Dec. 18, 2008) citing United States v. Maharaj, 2007 WL 2254559, *8 (S.D. Fla. 2007).

**8.  Concise Statement of Issues of Law Which Remain for Determination by the Court.**

a) <u>SFM's Disputed Issues of Law</u>

    i. Whether the AMA's CPT Assistant is an authoritative reference tool for determining if Dr. Feijoo's medical bills comply with the AMA's CPT as required by Florida Statute 627.736(5)(b).

    ii. Whether Defendants' expert, J'Amy Kluender, should be excluded from testifying at trial as requested in SFM's *Daubert* motion directed to her.

    iii. Whether Defendants' expert Michael Miscoe should be excluded from testifying at trial as requested in SFM's *Daubert* motion directed to him.

    iv. Whether SFM's 2011 investigation of Defendants is relevant to the claims and defenses in this action and admissible at trial.

    v. Whether a violation of Florida's False and Fraudulent Insurance Claims Statute, Florida Statute § 817.234, constitutes a *per se* FDUTPA violation.

    vi. Whether a violation of Florida Statute § 627.736(5)(b)1. and/or 5(d) constitutes a *per se* FDUTPA violation.

    vii. Whether, as a matter of law, Defendants failed to satisfy the demand letter requirements set forth in Florida Statute § 627.736(10) as a condition precedent to their Counterclaim, and if so, the effect of that failure.

    viii. Whether, as a matter of law, Defendants should be prohibited from arguing at trial that SFM's proof of its FDUTPA claim, defense of Defendants' Counterclaim, or supporting expert witness testimony is in any way prejudiced or impaired by the inability to review Defendants' medical charts for 26 of the at-issue insureds based on Defendants' loss of those medical

charts and resulting inability to produce them in response to SFM's discovery.

ix.   Whether, as a matter of law, Plaintiff was considered to have been furnished with notice of Dr. Feijoo and his clinic's bills pursuant to § 627.736(5)(d) and 627.736(4)(b) as a result of Dr. Feijoo and his clinic's submission of same to Plaintiff in violation of the requirements that the bills comply with the coding system established by the American Medical Association CPT Editorial Panel.

x.   Whether, as a matter of law, Dr. Feijoo and his clinic's improper billing submissions are found to be non-compensable pursuant to §627.736(5)(d), whether the entirety of the clinic's claims to the same insureds are invalidated under Florida common law.  *See State Farm Mut. Auto, Ins. Co. v. R.J. Trapana, M.D., P.A.., (a/a/o Noemi Marquez)*, 23 Fla. L. Weekly Supp. 98a (Fla. 17th Cirt. 2015); *see also Chiropractic One, Inc. v . State Farm Mut Auto. Ins. Co.*, 92 So.3d 871, 875 n. 1 (Fla. Dist. Ct. App. 2012) (affirming partial summary judgments ruling that the charges in the provider's medical bills did not comply with AMA's CPT and were, therefore, not "properly completed" or compensable under § 627.736(5)(d)).

xi.   Whether, as a matter of law, Dr. Feijoo and his Clinic's improper bills sent to Plaintiff which contained knowingly false or misleading statements prohibited by § 627.736(5)(b)(1)(c) are invalidated.

xii.   Whether, as a matter of law, Dr. Feijoo and his Clinic's improper billing submissions were in violation of § 627.736(5)(b)(1)(c), whether the entirety of the clinic's claims to the same insureds are invalidated under Florida common law. *Chiropractic One, Inc. v . State Farm Mut Auto. Ins. Co.*, 92 So.3d 871, 875 n. 1 (Fla. Dist. Ct. App. 2012).

xiii.   Whether, as a matter of law, Dr. Feijoo and his clinic's submission of objectively deceptive CPT code charges constitutes a *per se* violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et al.

xiv.   Whether, as a matter of law, Dr. Feijoo and his clinic's submission of objectively deceptive CPT code charges constitutes a traditional violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et al.

xv.   Whether, as a matter of law, Plaintiff is entitled to a judgment declaring that it does not owe any benefits on certain unpaid claims.

b)   Defendants' Disputed Issues of Law

i.   Whether there is a legally sufficient evidentiary basis for a reasonable jury to find that that any of Dr. Feijoo's bills constituted a deceptive practice under FDUTPA.

ii.   Whether there is a legally sufficient evidentiary basis for a reasonable jury to find that Dr. Feijoo knowingly or intentionally submitted any incorrect billing to State Farm.

20

iii.   Whether all of the payments which State Farm Mutual seeks as damages voluntary and therefore not recoverable as a matter of law.

iv.   Whether "[i]n the Eleventh Circuit, a party "must [also] prove that the alleged [deceptive or unfair] practice was likely to deceive a consumer acting reasonably in the same circumstances." *Cluck-U Chicken, Inc. v. Cluck-U Corp.*, 2017 WL 10275957, at *9 (M.D. Fla. June 6, 2017), *citing Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009).   Whether this "element of a FDUTPA claim is only satisfied by evaluating a reasonable consumer in the same circumstances as the plaintiff."  *Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*, 2016 WL 8542540, at *3 (S.D. Fla. Dec. 1, 2016).

v.   Whether in order to establish a deceptive practice under FDUTPA, State Farm must prove "probable, *not possible*, deception that is 'likely to cause injury to a reasonable relying consumer.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007), *citing Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So.2d 1256, 1263 (Fla. Dist. Ct. App. 2000) (emphasis added).  *See also Maor v. Dollar Thrifty Auto. Grp., Inc.*, 303 F. Supp. 3d 1320, 1327–28 (S.D. Fla. 2017)("This standard "requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'").

vi.   Whether in evaluating objectively whether deception was "probable," the Court must consider the specific circumstances under which the plaintiff itself was operating when it made the disputed payments.  *Democratic*

*Republic of the Congo v. Air Capital Grp., LLC*, 614 F. App'x 460, 470 (11th Cir. 2015)

vii. Whether "[t]he modification of 'acting reasonably' by 'in the same circumstances' indicates a hybrid standard that may be objectively established as to mindset but subjectively established as to context." *Id.*, citing *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010).

viii. Whether "the subjective element—that the circumstances must be similar— necessitates inquiry into the context of the alleged offense; that is, one can only assess reasonableness when the inquiry requires consideration of the factual circumstances...."). *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010).

ix. Whether the alleged misrepresentations "must be viewed in light of the circumstances as a whole" in determining whether a consumer acting reasonably would have been deceived. *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567–68 (11th Cir. 2009).

x. Whether Florida Statute §817.234 punishes "False and Fraudulent Insurance Claims" and requires "the intent to injure, defraud, or deceive any insurer."

xi. Whether Florida Statute section 627.736(4)(b) states that PIP Benefits are overdue if not paid within thirty (30) days after the insurer is furnished

written notice of a covered loss.  "However, notwithstanding the fact that written notice has been furnished to the insurer, any payment shall not be deemed overdue when the insurer has <u>reasonable proof</u> to establish that the insurer is not responsible for the payment."

xii.   Whether "[n]othing in the statute provides that once a payment becomes overdue the insurer is forever barred from contesting the claim." *United Automobile Ins. Co. v. Rodriguez*, 808 So.2d 82, 87 (Fla. 2001).

xiii.  Whether an insurer who is not satisfied with the amount of information provided by a Doctor along with the bill, can request additional information to evaluate the bill.  Florida law allows an insurer to request additional delay payment pending the receipt of additional information necessary to process a bill.  Florida Statute §627.736(6)(b).

xiv.   An insurer may not systematically downcode with the intent to deny reimbursement otherwise due. Fla. Stat  §627.736(5)(g).

xv.   Florida's PIP laws gave State Farm the right to "change codes that it determines to have been improperly or incorrectly upcoded or unbundled, and may make payment based on the changed codes, without affecting the right of the provider to dispute the change by the insurer."  Fla. Stat. §627.736(5)(b)(1)(e).

xvi.   Whether engaging in a deceptive or unfair trade practice is a legal cause of loss or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss or damage so that it can reasonably be said that, but for the violation, the loss or damage

23

would not have occurred. The measure of "actual damages" is the difference between the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to Florida's Personal Injury Protection laws. See, Proposed Fla. Std. Jury Instruction 416.50(b) and (c); Fla. Stat. § 501.203(3), 501.204(1), and 501.211(2); *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. 3d DCA 1984) (measure of actual damages).

9. **Each Party's Numbered List of Trial Exhibits with Objections.**

Each parties' exhibits and exhibit lists will be provided to the court and the court reporter in accordance with this Court's Order Providing Instructions for Jury Trial [ECF No. 123, ¶¶ 1, 12].

10. **Each Party's Numbered List of Witnesses.**

Each parties' witness list will be provided to the court and the court reporter in accordance with this Court's Order Providing Instructions for Jury Trial [ECF No. 123, ¶¶ 4, 12].

11. **Estimated Trial Time:**

The parties estimate trial of this matter will last 5 - 7 days, depending on the Court's rulings on the parties' pending motions for summary judgment, motions in limine, and *Daubert* motions.

12. **Estimate of the Maximum Amount of Attorneys' Fees Properly Allowable to the Prevailing Party.**

If State Farm Mutual prevails, it would be entitled to $1,400,000 in attorney's fees.

If Defendants prevail, they would be entitled to $500,000.00 in attorney's fees.

24

Respectfully submitted,

*/s/ Kenneth P. Hazouri*
KENNETH P. HAZOURI
Fla. Bar No. 019800
khazouri@dsklawgroup.com
lquezada@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075
aballentine@dsklawgroup.com
lmorales@dsklawgroup.com
**DEBEAUBIEN, SIMMONS, KNIGHT,
  MANTZARIS AND NEAL, LLP**
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454

**-AND-**

DAVID I. SPECTOR
Fla. Bar No. 086540
david.spector@hklaw.com
KAYLA L. PRAGID
Fla. Bar No. 098738
kayla.pragid@hklaw.com
**HOLLAND & KNIGHT LLP**
222 Lakeview Avenue, Ste. 1000
West Palm Beach, Florida 33401
Telephone: (561) 833-2000
Facsimile: (561) 650-8399

*Attorneys for Plaintiff/Counter-Defendant*

#71101319_v8

25