UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 1:18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Plaintiff/Counter-Defendant,

v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

      Defendants/Counter-Plaintiffs.

_____/

**PLAINTIFF/COUNTER-DEFENDANT'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT, DR. HERMAN OR LIMIT TESTIMONY**

Plaintiff/Counter-Defendant, State Farm Mutual Automobile Insurance Company ("SFM"), submits the following Response in Opposition to the Motion to Exclude Plaintiff's Expert, Dr. Herman or Limit Testimony (the "Motion") filed by Defendants, Manuel V. Feijoo, M.D. ("Dr. Feijoo") and Manuel V. Feijoo, M.D., P.A. (the "Clinic") (collectively "Defendants"), on October 26, 2019. [ECF No. 157].

## I.    INTRODUCTION

Defendants' Motion is factually and legally baseless. In an improper attempt to gain an advantage at trial, Defendants seek to exclude SFM's timely disclosed expert witness, Daniel Herman, M.D., Ph.D. ("Dr. Herman"), and limit his testimony. In so doing, they mischaracterize the facts and applicable case law, fail to follow prior Court Order in this case that was of their own making, and seek remedies with no foundation in the law.

Contrary to Defendants' assertions, SFM timely disclosed Dr. Herman and served his

1

Rule 26 expert report providing his opinions on issues material to Defendants' Counterclaim, prior to the expiration of the September 26, 2019, deadline for the parties to complete discovery on the Counterclaim. Contemporaneously with serving Dr. Herman's Rule 26 report, SFM also offered to allow Defendants to depose Dr. Herman after the September 26, 2019 deadline.

Then, on October 1, 2019, and after the close of discovery, Defendants served a Request for Production on SFM relating to Dr. Herman's report. Notwithstanding the untimely nature of the Request, SFM agreed, in good faith, to respond to it by October 16 as a good-faith accommodation to Defendants. Exactly as it had promised, SFM served a Response to the Request for Production on October 16, 2019, and produced approximately 50 pages of responsive documents. Specifically, as it relates to this Motion, and in addition to other objections, SFM's Response objected to Defendants' request for all of *Dr. Herman's* private medical records for patients who were insured by State Farm but *not* at issue in this lawsuit.

Based on the foregoing, the Court should deny the Motion for the following reasons:

- SFM's disclosure of Dr. Herman was timely under the Court's Scheduling Order and subsequent extensions of the discovery period (both factual and expert discovery);

- Defendants' Request for Dr. Herman's medical records for patients who are not at issue in this litigation is improper, as it seeks irrelevant information that would invade the privacy interests of the individual patients as recognized under Florida law and the Health Insurance Portability and Accountability Act ("HIPAA");

- Defendants mischaracterize and misapply case law in arguing for production of protected health information of patients whose treatment is not part of the Counterclaim;

- Defendants are not prejudiced, and the remedies of excluding Dr. Herman or issuing an adverse inference are not appropriate or permissible in these circumstances; and

- Dr. Herman's opinion directly relates to Defendants' Counterclaim and is neither irrelevant, nor duplicative of Dr. Patrick Jacob's expert opinion.

Accordingly, SFM respectfully requests the Court to deny Defendants' Motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural history of the expert witness disclosures and discovery in this case—both during the initial discovery period on SFM's claims and subsequent discovery period on Defendants' Counterclaim—is critical to understanding the meritless factual assertions and legal arguments raised in Defendants' Motion. A timeline describing the pertinent events is as follows:

1.      On November 2, 2018, the Court (Chief Judge Moore) issued a trial order that established a discovery deadline of June 10, 2019, and did not set a deadline for the parties to disclose expert witnesses. [ECF No. 14].

2.      Accordingly, on May 2, 2019, the parties filed a Joint Stipulation and Motion asking the Court to set an expert-disclosure deadline and allow approximately six weeks for expert depositions following the disclosures. [ECF No. 52]. Shortly thereafter, on May 6, 2019, the Court ruled that expert disclosures are part of discovery and are governed by the general discovery deadline. The Order also extended the discovery deadline ten days to June 20, 2019.

3.      SFM disclosed its expert witness, Patrick Jacob, M.D., and e-mailed his Rule 26 expert report to Defendants, on May 10, 2019—41 days before the June 20, 2019, discovery deadline.[1] Defendants, however, took an approach designed to deny SFM its right to depose Defendants' expert witnesses. At 3:59 p.m. on June 20, 2019—the last day of discovery— Defendants sent SFM an e-mail disclosing Michael Miscoe and J'Amy Kluender as their expert witnesses and serving their Rule 26 reports. Mot. to Compel Expert Dep., Ex. A [ECF Nos. 65, 65-1]. Despite SFM's numerous previous requests for Defendants' experts, this was the first time Defendants disclosed Mr. Miscoe and Ms. Kluender (or any expert).

---

[1] Defendants never requested Dr. Jacob's deposition.

4.      SFM accepted the disclosures and reports of Mr. Miscoe and Ms. Kluender, and simply asked Defendants to produce them for deposition after the June 20, 2019, discovery deadline. Defendants, however, flatly refused with an e-mail stating "[t]he expense and time associated with further expert discovery would be grossly disproportional to this $200,000 case and we would therefore oppose any further extensions than have already been granted by the Court. A true and correct copy of the June 26, 2019 email is attached hereto as Exhibit "A." Federal Rule of Civil Procedure 26(b)(4)(A) explicitly authorizes a party to take depositions of the opposing party's "expert[s] whose opinions may be presented at trial." Thus, Defendants' proportionality objection to the depositions of Mr. Miscoe and Ms. Kluender was a baseless and an obvious pretext for denying SFM the expert depositions and prejudicing SFM's trial preparation.

5.      Defendants' unjustified refusal to produce Mr. Miscoe and Ms. Kluender for deposition forced SFM to file a motion to compel their depositions, or alternatively, to strike them as expert witnesses on July 9, 2019. [ECF No. 65].

6.      Earlier, on June 3, 2019, Chief Judge Moore issued two Orders: a) an Order granting Defendants' Motion to Dismiss SFM's FDUTPA claim (Count I of the original Complaint) with leave to amend [ECF No. 56]; and b) an Order reassigning this case to Judge Rodolfo Ruiz. [ECF No. 57].

7.      On August 9, 2019, Judge Ruiz granted SFM's motion to compel the depositions of Mr. Miscoe and Ms. Kluender and required them to attend depositions on or before August 9, 2019. [ECF No. 78].

8.      To summarize, the above events and Orders established the following procedures for expert disclosures and discovery in this case: i) there is no separate deadline for expert

disclosures in advance of the general discovery deadline; ii) expert disclosures and Rule 26 reports are part of discovery and must be served before expiration of the discovery deadline; and iii) if a party discloses an expert and serves a Rule 26 report at or near the discovery deadline, the disclosing party must make the expert available for deposition after the deadline.

9.      On June 16, 2019, SFM filed its Amended Complaint as authorized by the Court's Order on Defendants' Motion to Dismiss. [ECF Nos. 56, 60].

10.     On July 1, 2019, Defendants filed an Answer and Affirmative Defenses to SFM's Amended Complaint, which included a Counterclaim to recover PIP benefits on the unpaid PIP claims that are the subject of SFM's claim for declaratory relief in its Amended Complaint. [ECF No. 74].

11.     The Counterclaim filing created a major dilemma for SFM because the June 20, 2019 discovery deadline had passed, leaving SFM with no ability to obtain an expert, conduct discovery, or otherwise prepare a defense to the Counterclaim's allegations.[2] Accordingly, SFM filed a Motion for Separate Trial of the Counterclaim ("Motion for Separate Trials") on July 25, 2019, which repeatedly emphasized SFM's need to retain an expert witness in order to defend the Counterclaim. [ECF No. 100 at 1-4, 6].

12.     On August 2, 2019, before any further briefing on SFM's Motion for Separate Trials, the parties' counsel attended a telephonic status conference with Judge Ruiz. [ECF No. 107]. In this conference, Judge Ruiz stated that: i) he did not intend to conduct two trials in this case; and, therefore, ii) he was considering resolving the prejudice to SFM resulting from the timing of the Counterclaim by continuing the trial scheduled in September 2019 to allow SFM to prepare a defense to the Counterclaim. As such, Judge Ruiz asked Defendants and SFM to

---

[2] This is not to suggest that Defendants were in the wrong for filing their Counterclaim when they did.

provide an estimate of the additional time needed for discovery on the Counterclaim in their forthcoming Response and Reply to SFM's Motion for Separate Trials, respectively.

13.     Incredibly, Defendants' Response to the Motion for Separate Trials asserted that SFM should be given a mere **seven days** to conduct discovery on Defendants' Counterclaim. [ECF No. 105 at 7]. On the other hand, SFM's Reply in support of its Motion for Separate Trials suggested it could complete discovery on the Counterclaim in 60 – 90 days. [ECF No. 112 at 6]. SFM reiterated its need to "retain an expert witness, secure his or her opinions regarding medical services provided to 46 patients, and prepare a Rule 26 expert witness report and disclosure" in order to defend the Counterclaim. [*Id.*]

14.     On August 14, 2019, Judge Ruiz issued an Omnibus Order continuing the trial of this case from the September 2019 docket to the docket beginning on November 12, 2019. [ECF No. 115]. Regarding discovery, Paragraph 3 of the Omnibus Order stated that "[t]he discovery deadline is **EXTENDED** through September 16, 2019, for the **limited purpose** of engaging in discovery on Defendants' counterclaim only." *Id.* (emphasis in original). Importantly—and just like Chief Judge Moore's November 2, 2018, trial order—the Omnibus Order did not set a deadline for the parties to disclose expert witnesses on the Counterclaim in advance of the September 16, 2019 general discovery deadline.

15.     On September 16, 2019, SFM's counsel, Ken Hazouri, and Defendants' counsel, Jerry Pivnik, attended the deposition of Dr. Feijoo on the Counterclaim. During a lunch break, the parties initiated settlement negotiations and agreed to adjourn Dr. Feijoo's deposition and mutually extend the September 16, 2019 discovery deadline on the Counterclaim for ten days to allow additional time to see if they could reach a settlement. Following the break, Mr. Hazouri and Mr. Pivnik put their agreement on the record:

Mr. Hazouri: Based on that second contingency of having to move forward with the litigation, the parties have agreed to extend the discovery deadline, **the general discovery deadline**, **on the counterclaim that is today, ten days**. So from today the 16th to September 26th?

Mr. Pivnik: **Correct.**

* * *

Mr. Hazouri: And so then I believe that's it because it captures the retake – the restarting up again of Dr. Feijoo's deposition, if necessary. **And it continues the discovery deadline of today by ten days.** And we've talked about you're going to get back to me by 5:00 on Thursday, saying whether the perimeters [sic – parameters] that we've talked about are acceptable or not to your – to defendants. **And that's the deal, as I understand it.**

Mr. Pivnik: **So confirmed.**

*See* Exhibit "B", Feijoo Dep., Sept. 16, 2019, at 5–6 (emphasis supplied). As expressly "confirmed" by Mr. Pivnik, SFM and Defendants agreed to a general extension of the September 16, 2016 discovery deadline—without any limitations, caveats, or carve-outs—in order to allow more time for settlement negotiations.

16.    Also on September 16, 2019, the Court issued an Order in response to Defendants' motion seeking an extension, providing that "[t]he discovery deadline is extended through September 26, 2019 for the limited purpose of engaging in discovery on Defendants' counterclaim." [ECF No. 137]. Just like the parties' on-the-record stipulation, the Order contains no limitations, caveats, or carve-outs for the discovery extension.

17.    On September 25, 2019, SFM timely disclosed Dr. Herman as its expert witness on Defendants' Counterclaim and served Dr. Herman's Rule 26 expert report on Defendants. Approximately 30 minutes later, SFM's counsel sent Defendants' counsel a second e-mail stating "SFM is agreeable to your deposing Dr. Herman within a reasonable time after the discovery cutoff date of September 26, 2019. If you wish to depose Dr. Herman, please promptly

provide use with proposed dates/times for the deposition, and we will coordinate them with you."
[ECF No. 157-3 at 12].

18.    Despite the Court's September 16, 2019 Order unequivocally granting a general extension of the discovery deadline on the Counterclaim to September 26, 2019, and Mr. Pivnik's on-the-record stipulation to this same general extension, his co-counsel, Andrew Baratta, responded to the e-mails disclosing Dr. Herman with an e-mail falsely stating that "[t]he extension beyond [9/16/19] to 9/26 **was expressly limited** to finishing Dr. Feijoo's deposition and responding to written discovery requests." [ECF No. 157-3 at 9–10] (emphasis supplied).

19.    Mr. Baratta's e-mail also asserted that the prior arguments and rulings regarding the Defendants' expert witnesses, Mr. Miscoe and Ms. Kluender, somehow supported the conclusion that Dr. Herman was not timely disclosed. These baseless assertions ignored the fact that: a) the Court had allowed Defendants to disclose Mr. Miscoe and Ms. Kluender on the last day of discovery so long as they were subsequently made available for deposition; and b) while Defendants had refused to produce Mr. Miscoe and Ms. Kluender for deposition after disclosing them on the last day of discovery, SFM offered to produce Dr. Herman for deposition. The undersigned sent an e-mail back to Mr. Baratta explaining all of the above to him. *Id.*

20.    For his part, Mr. Pivnik asserted that the extension of "the general discovery deadline" he explicitly "confirmed" on the record somehow did not include service of expert witness disclosures and reports. *Id.* at 9. Likewise, Defendant's Motion incorrectly asserts SFM "failed to disclose Dr. Herman as an expert until September 26, 2019,[3] which was after the expiration of the expert disclosure deadline**.**" [ECF No. 157 at 1] (emphasis added). Conspicuously absent from this baseless assertion is the purported date Defendants claim was the

---

[3] This date is incorrect. SFM disclosed Dr. Herman and served his expert report on September 25, 2019. [ECF No. 157-3 at 12].

deadline for expert disclosures on their Counterclaim. This is because there was no expert-disclosure deadline separate from the general discovery deadline for Counterclaim discovery of September 16, 2019, which was extended to September 26, 2019, by stipulation and court order.

21.     Even though Defendants had (and have) no valid argument that SFM's disclosure of Dr. Herman was somehow untimely, SFM worked with Defendants in a good-faith effort to resolve their concerns and avoid the necessity of court involvement on the issue. In addition to agreeing to produce Dr. Herman for deposition after the September 26, 2019 discovery deadline, SFM also agreed to accept a post-deadline Request for Production from Defendants relating to Dr. Herman, and to shorten the time for SFM's response to it, so Defendants would receive responsive, non-objectionable documents in advance of Dr. Herman's deposition. Defendants agreed they would not move to strike Dr. Herman or his opinions on the grounds that his disclosure and Rule 26 report were untimely.

22.     The terms of this agreement regarding Dr. Herman-related discovery are documented in the undersigned's October 4, 2019, e-mail to Mr. Pivnik.[4] [ECF No. 157-3 at 1]. Pertinent to this Motion, the e-mail states "State Farm Mutual accepts Defendants' Request for Production served on 10/1/19 as timely and agrees **to respond** to the Request for production on or before 10/16/19, the day before Dr. Herman's deposition." *Id.* (emphasis supplied). This term is reiterated in Defendants' Agreed Motion to Extend Discovery Cutoff and Shorten Time for State Farm to Comply with Request to Produce Related to New Expert Witness, which states: "State Farm has also agreed to accept as timely a Request for Production that Defendants served on Oct. 1, 2019, as to State Farm's relationship with Dr. Herman and **to respond** to the discovery by Oct. 16, the day before Dr. Herman's deposition." [ECF No. 144 at 1] (emphasis

---

[4] Mr. Pivnik's return e-mail confirming his agreement to those terms is attached hereto as Exhibit "C."

supplied).

23.     As is made clear by the terms quoted in the preceding paragraph, SFM never agreed to waive, or otherwise not assert, objections to Defendants' Request for Production regarding Dr. Herman; nor would SFM ever do so. For example (and without limitation), Paragraph 1 of the Request for Production asks for "[a]ny and all communications with Dr. Herman regarding this case…." This request clearly violates the work product protection afforded an attorney's communications with experts regarding their Rule 26 report set forth in Florida Rule of Civil Procedure 26(b)(4). [ECF No. 157-6 at 2] & [ECF No. 157-7]. In response to this request, SFM raised a work product objection and withheld privileged documents. Yet, Defendants' Motion takes no issue with these objections because: a) they are clearly meritorious under Rule 26(b)(4); and b) Defendants well know SFM never agreed to waive, or not assert, objections to their Request for Production regarding Dr. Herman—including those at issue in their Motion.

24.     Just as SFM had promised, it served a Response, and produced non-objectionable documents responsive, to Defendants' Request for Production on October 16, 2019, the day before Dr. Herman's deposition. [ECF No. 157-6]. As an additional act of good-faith cooperation, and at Mr. Pivnik's request, SFM also served him with its Privilege Log associated with the Response on October 16, 2019, so he could use it at Dr. Herman's deposition, despite that it was not due until 14 days later pursuant to Local Rule 26.1(e)(2)(D). [ECF No. 157-7]

25.     On October 17, 2019, Mr. Pivnik deposed Dr. Herman and asked him questions about the documents produced and Privilege Log served by SFM in response to Defendants' post-discovery deadline Request for Production directed to Dr. Herman.

26.     In sum, it is irrefutable that: a) SFM timely disclosed Dr. Herman as its expert

witness and served his Rule 26 Expert Report on Defendants before the September 26, 2019, deadline for discovery on the Counterclaim; b) SFM offered to produce, and in fact produced, Dr. Herman for deposition after the discovery deadline; and c) SFM went even further to resolve Defendants' baseless assertion that Dr. Herman was not timely disclosed by agreeing to accept an untimely Request for Production after the deadline for discovery on the Counterclaim, shorten its response time to the Request, and produce responsive, non-objectionable documents before Dr. Herman's deposition, as promised. Simply put, SFM has done absolutely nothing wrong in the discovery related to Dr. Herman, much less anything that remotely justifies the extreme sanctions requested in Defendants' Motion.

### III.   LEGAL STANDARD FOR EXCLUDING EXPERT

Excluding or striking an expert witness is "an 'extreme' sanction, not normally to be imposed absent a showing of willful deception of 'flagrant disregard' of a court order by the proponent of the evidence." *Catalina Rental Apts., Inc. v. Pacific Ins. Co., Ltd.*, No. 06-cv-20532, 2007 WL 1050634, at *3 (S.D. Fla. Apr. 3, 2007) (quoting *Quinn v. Consolidated Freightways Corp. of Del.,* 283 F.3d 572, 576-77 (3rd Cir. 2002), and denying motion to strike); *Rubinstein v. Keshet Inter Vivos Trust*, No. 17-cv-61019, 2018 WL 6446575, at *2 (S.D. Fla. Dec. 10, 2018) ("Excluding expert testimony is a drastic sanction requiring careful consideration."); *Brooks v. United States*, 837 F.2d 958, 961 (11th Cir. 1988) (district court abused discretion in excluding expert). Further, when expert witnesses are excluded, that exclusion typically stems from an expert's failure to meet the requirements of *Daubert* or a party's egregious conduct for which there is no other remedy. As no extreme or egregious conduct occurred on the part of SFM, and Defendants do not (and cannot) argue that Dr. Herman is not qualified, Dr. Herman should not be excluded nor should his testimony be limited.

## IV.   ARGUMENT

**A.   Defendants fail to cite any authority that supports their request to strike Dr. Herman, limit his testimony, or impose an adverse inference, and those requested sanctions are prohibited under Eleventh Circuit precedent.**

As explained in the above timeline, Defendants' request to strike Dr. Herman, limit his testimony, or provide an adverse inference is utterly devoid of any factual foundation, as SFM has not engaged in any conduct even arguably justifying these sanctions. Consistent with this fact, the bulk of Defendants' Motion to Exclude is spent arguing the merits of SFM's objections to producing medical records of patients previously treated by Dr. Herman, who have no connection to this case.[5] [ECF No. 157 at 4-8]. Not until page eight of their motion, under the heading of "Prejudice – No ability to Cure," do Defendants even attempt to state grounds for striking Dr. Herman, limiting his testimony, or subjecting it to an adverse inference. Conspicuously absent from this four-sentence discussion is any citation to a rule, opinion, or other legal authority authorizing the relief requested by Defendants, or otherwise suggesting it is proper. This material omission is not surprising, as it would be an abuse of discretion to grant Defendants' requested relief under *Brooks v. U.S.*, 837 F. 2d 958 (11th Cir. 1988).

In *Brooks*, the plaintiff in a medical malpractice action served a supplemental interrogatory disclosing an expert witness on July 5, 1985, approximately two weeks before an extended discovery deadline of July 22, 1985, and less than a month before the start of the trial docket on August 5, 2019. *Brooks*, 837 F. 3d at 960. The defendant first scheduled the expert's deposition but then withdrew the notice and filed a motion to strike the expert. *Id.* The trial court granted the motion and struck the expert. *Id.* at 961. On appeal, the Eleventh Circuit ruled that

---

[5] These meritless discovery arguments are untimely under Magistrate Judge Becerra's discovery procedures interpreting Local Rule 26.1(g)(1) as discovery on Defendants' Counterclaim closed on October 17, 2019. Nonetheless, SFM addresses them in Section B below.

the trial court abused its discretion by striking the plaintiff's expert on numerous grounds. First, the trial court erred by entering such a "drastic" sanction, which substantially impaired the plaintiff's ability to prove her case. *Id.* Second, the trial court did not identify any legal authority that authorized striking plaintiff's expert. *Id.* Importantly, the Eleventh Circuit explained that Federal Rule of Civil Procedure 37(b)(2) ("Rule 37(b)(2)") did not authorize the trial court to strike the expert because the plaintiff had not violated a court order. *Id.* Finally, the court explained that there were "no findings that plaintiff did anything wrong." *Id.* at 963.

SFM has done absolutely nothing wrong regarding the discovery related to Dr. Herman. On the contrary, SFM went out of its way to accommodate Defendants' requests for discovery.[6] Moreover, Defendants' requested sanctions of striking Dr. Herman, limiting his testimony, or imposing an adverse inference on it under Rule 37(b)(2) are improper because SFM has not violated a court order that would authorize imposition of any of these Rule 37(b)(2) sanctions. Nor does the Motion even cite Rule 37.  SFM has simply exercised its right to raise objections to Defendants' Request for Production, which are well-grounded in the law. Simply put, there is no factual or legal foundation for imposing any of Defendants' requested sanctions on SFM. As such, the imposition of any of the requested sanctions is prohibited by *Brooks*' controlling authority contrary to the plain language of Rule 37(b)(2), which requires a violation of a court order for the sanctions requested by Defendants.

Next, Defendants' request for the Court to provide an adverse inference instruction to the jury speculating that Dr. Herman's records would have the same level of detail as Dr. Feijoo's is frivolous. Mot. [ECF No. 157 at 8]. An adverse inference instruction applies only when a party has *destroyed* evidence in bad faith, not merely when a party objects to producing documents.

---

[6] These are the same Defendants who represented to Judge Ruiz that *all discovery* relating to the Counterclaim could be completed in a mere seven days. *See supra* paragraph 13.

*See Slattery v. Precision Resp. Corp.*, 167 F. App'x 139, 141 (11th Cir. 2006); *Socas v. N.W. Mut. Life Ins. Co.*, No. 07-cv-20336, 2010 WL 3894142, at \*4 (S.D. Fla. Sept. 30, 2010); *Optowave Co., Ltd. v. Nikitin*, No. 6:05-cv-1083, 2006 WL 3231422, at \*8 (M.D. Fla. Nov. 7, 2006). Defendants cite no case law—nor can they—that offers a shred of support for an adverse inference. Thus, the remedies of exclusion and adverse inference Defendants seek are improper and unsupported by applicable legal authority.

**B.**     **Defendants' request for medical records of Dr. Herman's patients who have no connection to this case violates the patients' privacy rights and seeks information that is neither relevant nor discoverable.**

> *1.*     *Florida Statutes and the Florida Constitution prohibit disclosure of the patients' medical records, and no exceptions apply in this case.*

Defendants incorrectly assert they are entitled to discover the medical records of patients treated by Dr. Herman who are not at issue in this case. Florida Statute § 456.057(7) prohibits a health care practitioner from disclosing a patient's record to "any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient." Fla. Stat. § 456.057(7). The statute provides only very limited exceptions. Relevant here, § 456.057(7)(a)(3) provides that such records may be disclosed "[i]n any civil or criminal action, unless otherwise prohibited by law, ***upon the issuance of a subpoena from a court of competent jurisdiction and proper notice*** to the patient or the patient's legal representative by the party seeking such records." Fla. Stat. § 456.057(7)(a)(3) (emphasis added). Thus, Florida law prohibits Dr. Herman from disclosing the private medical records of his patients.

In their attempts to circumvent this statutory scheme as well as Florida's constitutional right to privacy, Defendants cite an inapplicable medical malpractice case, *Amente v. Newman*, 653 So. 2d 1030 (Fla. 1995), in which a plaintiff-patient sued her physician and claimed that his

method for delivering the plaintiff's baby caused injury to the baby. The plaintiff's claim focused on whether the physician's delivery method was appropriate for other similarly situated obese mothers, so the plaintiff sought records of other obese mothers whose babies were delivered by the physician. In deciding to allow the mother to obtain these records, the Court cited a narrow exception applicable only to medical negligence actions and similar actions where a health care provider is or will be named as a defendant. Fla. Stat. § 456.057(8) (formerly codified as Fla. Stat. § 55.241(2)). Contrary to Defendants' assertions, *Amente* did not render Florida's privacy statutes meaningless, but, rather, recognized the unusual circumstances of that case and allowed limited discovery to take place. *See Graham v. Dacheikh*, 991 So. 2d 932, 934 (Fla. Dist. Ct. App. 2008) ("The unusual circumstances in *Amente* are not grounds for trial courts and litigants to routinely disobey the unequivocal requirements of section 456.057(7) when seeking discovery from expert witnesses.").

Defendants recognize § 456.057(7)(a)'s application to the medical records of Dr. Herman's patients. They claim, however, that the strict prohibition against disclosing these records to third parties may be overcome by redacting the patients' names and other identifying information. This same argument was rejected under circumstances nearly identical to this case in *Graham*.

In *Graham*, the defendants in an automobile negligence action sought records and reports of non-parties from a physician who performed a medical examination of the plaintiff. *Id.* at 932. Significantly, the court noted that "[i]t appears that these medical reports of nonparties are desired not to discover evidence relevant to prove the plaintiffs' case, but merely to give their attorneys a basis to engage in impeachment of Dr. Sergay." *Id.* The court went on to analyze and distinguish the *Amente* case, and explained that *Amente* was not applicable to the *Graham* case

15

"for at least four reasons: (1) *Amente* was a medical negligence case; (2) the affected doctor was a party; (3) the discovery sought related to substantive issues in the case; and (4) the supreme court concluded that compliance with the statute was impossible." *Graham*, 991 So. 2d at 935.

The court further determined that redacting identifying information did not overcome the statute's prohibition on disclosing medical records, particularly where the patients had been involved in accidents from which they could be identified. *Id.* at 935. Ultimately, the court concluded that the defendants were not entitled to the medical records, that *Amente* did not eliminate § 456.057's notice and consent requirements, and that the patients' privacy rights are also implicated by the fundamental right to privacy contained in article I, section 23 of the Florida Constitution. *Id.* at 937. *See also USAA Cas. Ins. Co. v. Callery*, 66 So. 3d 315, 317 (Fla. Dist. Ct. App. 2011) (insurance company not required to disclose medical records of examining physician's last 20 medical examinations of personal injury plaintiffs, and court determined that ordering such disclosure would "depart[] from the essential requirements of the law"); *Daw v. Cowan*, Case No. 3:11-cv-96, 2013 WL 5838683, at *8-10) ("Florida courts have determined that individuals enjoy a right of privacy in their medical records under this provision of the state constitution.").

Here, Defendants are seeking to intrude on the privacy rights of individual patients who have nothing to do with this lawsuit solely in an attempt to distract from Defendants' own shortcomings with respect to their treatment of the patients who *are* at issue. Defendants suggest that the broad privacy rights afforded the patients wholly unconnected to this case over *their own medical records* under § 457.057(7) can be vitiated by simply redacting their names. In so doing, Defendants urge this Court to create a non-existent exception to these statutory protections. As explained in *Graham*, the patients' particular medical conditions, and the individualized care Dr.

Herman provided to them, renders the records irrelevant and, at best, a basis for inadmissible collateral impeachment. Simply put, SFM's objections to producing the medical records are correct and should be sustained. *Graham*, 991 So. 2d at 935-36; *see also U.S. v. Russo*, 796 F.2d 1443, 1454 (11th Cir. 1986) ( "There is no right to impeach a witness with respect to collateral or irrelevant matters."); *U.S. v. Ndiaye*, 434 F.3d 1270, 1282 (11th Cir. 2002) ("A matter is collateral if the matter itself is not relevant in the litigation to establish a fact of consequence, *i.e.,* not relevant for a purpose other than mere contradiction of the in-court testimony of the witness."); *Dyett v. N. Broward Hosp. Dist.*, No. 03-cv-60804, 2004 WL 5320629, at *1 (S.D. Fla. Feb. 13, 2004). Defendants' arguments under *Amente* fail for the reasons set forth in *Graham*.

2.   ***Defendants mischaracterize the court's rulings in the* Kugler *case and ignore critical distinctions in the court's analysis.***

Defendants next cite *State Farm Mut. Auto. Ins. Co. v. Kugler*, 840 F. Supp. 2d 1323 (S.D. Fla. 2011), in which SFM issued subpoenas to law firms in an unrelated case that is both factually and legally distinguishable from this case. Mot. [ECF No. 157 at 6-8]. In *Kugler*, SFM alleged that a group of medical providers engaged in a scheme to defraud SFM and SFM asserted claims under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and under state law. *Kugler*, 840 F. Supp. 2d at 1325. A key facet of the fraud scheme was the relationship between the defendants, other health care providers, and various personal injury law firms, so SFM issued subpoenas to these entities. *Id.* The law firms objected on various bases, including HIPAA and Florida privacy laws. Because the complaint contained both federal and state law claims, the court was faced with determining which claims predominated in order to establish whether state or federal privilege laws should apply. *Id.* at 1329-31. The court determined that the RICO claims were more important in the case than the state law claims,

17

which required the application of federal privilege and privacy laws—*i.e.* HIPAA protections—rather than the Florida statutes. *Id.* at 1331. Law firms are not "covered entities" under HIPAA and, therefore, not subject to HIPAA's regulations. *Id.* at 1328. Because federal law governed the issue, the court concluded Florida privacy law did not apply to the specific facts and claims in that case. *Id.* at 1329-31.

Here, SFM asserts only state law claims. Consequently, Florida's privilege and privacy laws govern, and Florida Statutes § 456.057(7) bars production of the medical records at issue. Further, in *Kugler*, SFM sought the records as evidence in support of key facets of the fraudulent scheme, not as a desperate attempt to attack a credible and competent expert witness through exploiting private medical records. Defendants ignore these critical distinctions and focus only on the court's conclusion that Florida privacy laws did not apply, without considering the specific reasons those laws were not applied.

Defendants' analysis of *Pierre-Paul v. ESPN, Inc.*, No. 16-cv-21156, 2016 WL 4530884 (S.D. Fla. Aug. 29, 2016), is equally unavailing. The *Pierre-Paul* court simply noted that § 456.057 covers health care providers and similar persons, but was not designed to cover a journalist who came into possession of medical records. *Id.* at *1. Here, Dr. Herman, a medical doctor, is clearly contemplated by the statute and restricted from producing medical records for his patients who are not at issue in this lawsuit. As a result, Defendants' arguments are misplaced, and the Motion should be denied.

**C.     The issue of whether any of Dr. Herman's opinions are cumulative of those of R. Patrick Jacob, M.D., is an evidentiary issue that should be resolved by Judge Ruiz at trial in light of the evidence presented, not on a motion for sanctions.**

Finally, with no citations to the record or case law, and no analysis, Defendants argue that Dr. Herman that some of his opinions should be excluded because they are cumulative of those of Patrick Jacob, M.D. This is an evidentiary issue that should be resolved by Judge Ruiz at trial,

and in the context of the evidence that has been admitted during the trial. *See Sampson v. Carnival Corp.*, No. 15-cv-24339, 2016 WL 11547658, at \*3 (S.D. Fla. Dec. 12, 2016). Accordingly, the Court should decline to rule on Defendants' argument that some of Dr. Herman's opinions are cumulative of those of Dr. Jacob in the context of Defendants' Motion and without a trial record.

Dated October 31, 2019.

Respectfully submitted,

*/s/ Kenneth P. Hazouri*
KENNETH P. HAZOURI
Fla. Bar No. 019800
khazouri@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075
aballentine@dsklawgroup.com
**deBeaubien, Simmons, Knight, Mantzaris and Neal, LLP**
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454

—and—

DAVID I. SPECTOR, ESQ.
Fla. Bar No. 086540
david.spector@hklaw.com
KAYLA L. PRAGID, ESQ.
Fla. Bar No. 098738
kayla.pragid@hklaw.com
**Holland & Knight LLP**
222 Lakeview Avenue, Ste. 1000
West Palm Beach, Florida 33401
Telephone: (561) 833-2000
Facsimile:  (561) 650-8399

*Attorneys for Plaintiff/Counter-Defendant*