UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 1:18-cv-23329-RAR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff/Counter-Defendant,

v.

MANUEL V. FEIJOO; and
MANUEL V. FEIJOO, M.D., P.A.,
a Florida professional association,

    Defendants/Counter-Plaintiffs.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULES 26(g) AND 37(d)(1)(A)(i)**

Plaintiff, State Farm Mutual Automobile Insurance Company ("SFM"), submits the following Response in Opposition to the Motion for Sanctions Pursuant to Rules 26(g) and 37(d)(1)(A)(i) (the "Motion") filed by Defendants, Manuel V. Feijoo, M.D. ("Dr. Feijoo") and Manuel V. Feijoo, M.D., P.A. (the "Clinic") (collectively "Defendants"), on October 25, 2019. [ECF No. 155].

**I.  FACTUAL BACKGROUND**

Throughout this litigation, SFM has produced over 515,000 pages of documents (not counting multi-page spreadsheets) requested by Defendants. This includes over 900 pages of information from the Potential Fraud Management Tool ("PFMT"), which is a database that maintains information relating to SFM's investigations of suspicious activity and potential fraud. Along the way, 30 pages of documents stored in a separate field of the PFMT database were inadvertently missed by the SFM employee who gathered the PFMT materials for production.

Immediately upon discovering these documents SFM produced the documents to Defendants on October 15, 2019 (the "Supplemental PFMT Information") and in accordance with Federal Rule of Civil Procedure 26(e)(1), which specifically addresses these types of inadvertent errors in discovery.

Following production of the Supplemental PFMT Information, SFM's counsel worked with Defendants' counsel in a good faith attempt to resolve their claims of prejudice. At Defendants' request, SFM agreed: (1) to make either Kathy Potter (data analyst) or Tim Banahan (as SFM's corporate representative) available for a deposition regarding the Supplemental PFMT Information;[1] (2) not to oppose a motion by Defendants to supplement their motion for summary judgment with testimony from that deposition; and (3) to join in a motion to continue the trial scheduled on the November 2019 docket. This agreement was memorialized in a Joint Motion for a Continuance of Trial Date [ECF No. 151] filed with the Court, which reads in part:

> Counsel for the parties conferred in a good faith effort to resolve the above-described situation, which has resulted in the following agreement between the Parties to cure the prejudice claimed by Defendants: a) Defendants may take the deposition of State Farm Mutual's corporate representative for the limited purpose of asking questions regarding designated topics relating to the information from the PFMT database that State Farm Mutual produced to Defendants on October 15, 2019, which may include (without limitation) questions on whether there are any additional documents or information relating to the designated topics that have not been previously produced by State Farm Mutual; b) if Defendants deem it appropriate, they may supplement their Motion for Summary Judgment with the newly discovery information from the PFMT and the deposition testimony of State Farm Mutual's corporate representative regarding them; and c) in light of the time needed to complete the deposition and possibility of Defendants supplementing their Motion for Summary Judgment, the Parties will jointly move the Court to continue the trial currently scheduled for the two-week docket beginning on November 12, 2019.

---

[1] Importantly, SFM offered to produce Mr. Banahan (who lives and works in central Florida) for a deposition in the Miami office of Dr. Feijoo's personal attorney, Kenneth Schurr, in Miami. Defendants' co-counsel, Jerry Pivnik, also has his office in Miami and, therefore, he would not have to travel to take the deposition.

2

[ECF No. 151, pp. 2-3]. The Joint Motion for Continuance that was agreed to and executed by Defendants' counsel expressly acknowledges that SFM's "failure to produce [the newly discovered PFMT documents] **was inadvertent**, **which inadvertency** State Farm Mutual corrected immediately upon becoming aware of it." *Id.* at 4 (emphasis supplied). Despite SFM's agreement to remedies requested by Defendants, the Court denied the parties' Joint Motion for Continuance, which was, of course, the Court's prerogative. [ECF 153]

Two days later, Defendants' counsel sent an e-mail to SFM's attorneys re-asserting Defendants' claimed prejudice from SFM's error in not earlier producing the Supplemental PFMT Information, and contending that in order to cure the prejudice SFM had to agree to the drastic remedy of striking SFM's employee and representative, Timothy Banahan as a trial witness. Of course, SFM would not agree to have Mr. Banahan stricken as a witness in the entirety. Mr. Banahan will be providing trial testimony on a broad range of facts essential to SFM's FDUTPA claim and defense of Defendants' Counterclaim. All, or the exceedingly vast majority of his testimony, will have no relationship to the information contained in the 30 pages of Supplemental PFMT Information.

On October 25, 2019, the parties' counsel attended a previously scheduled conference call to discuss pre-trial deadlines, during which they also discussed the Supplemental PFMT Information, and Defendants' demand for SFM to agree to Mr. Banahan being stricken as trial witness. SFM's attorneys advised that SFM did not agree to the striking of Mr. Banahan. However, in order to cure any prejudice claimed by Defendants, SFM again offered to produce a corporate representative for a deposition regarding the Supplemental PFMT Information. Defendants' counsel refused, claiming they did not have sufficient time to take a deposition relating to the 30 pages of Supplemental PFMT Information in the 17 days before the November 12, 2019, trial

docket. Defendants' counsel did not offer any other proposals for curing their claimed prejudice other than striking Mr. Banahan as a trial witness.

Immediately following the October 25, 2019, conference call, the undersigned sent Defendants' counsel an e-mail confirming SFM's offer to produce a representative for a deposition regarding the Supplementary PFMT documents and stating the offer of a deposition remained open if Defendants wished to accept it. A subsequent e-mail exchange ensued, in which the undersigned reconfirmed SFM's willingness to produce a corporate representative for a deposition regarding the Supplemental PFMT Information. A true and correct copy of the above the above-described e-mail exchange, with confidential information redacted, is attached hereto as Exhibit "A."

Defendants' Motion references the October 25, 2019, conference call between counsel, and SFM's refusal to agree to Mr. Banahan being stricken as a trial witness during the call. [ECF 155, p. 14, ¶s 66-67] Defendants, however, chose not to advise the Court that SFM has offered to produce a corporate representative for a deposition regarding the Supplementary PFMT Documents in order to cure their claimed prejudice.

Later in the afternoon of October 25, 2019, Defendants filed their 18 page, 91 paragraph Motion that is the subject of this Response.[2] [ECF 155] Even though Defendants' counsel had signed the Joint Motion for Continuance stating that SFM's "failure to produce [the newly discovered PFMT documents] **was inadvertent**, **which inadvertency** State Farm Mutual corrected immediately upon becoming aware of it," (e.s.) Defendants' current Motion directly contradicts these statements by repeatedly accusing both SFM and its counsel of intentionally

---

[2] The motion's length demonstrates that Defendants started preparing it long before the October 25, 2019, conference call between counsel, as they knew SFM would not agree to their unreasonable demand to strike Mr. Banahan as a trial witness, and they had no intention of trying to arrive at a reasonable resolution of the situation.

4

concealing the 30 pages of Supplemental PFMT Information.

Defendants have not offered a scintilla of evidence to support these patently false and outrageous accusations. Nor can they do so because the truth of the matter is that Tammy Lopez, the SFM employee who performed the task of locating and compiling information in the PFMT in Response to Defendants' Request for Production, inadvertently missed the information set forth in the Supplemental PFMT Information due to simple human error. Through an investigation, Ms. Lopez has confirmed that she did not identify the Supplemental PFMT Information because it is contained in a separate field within the PFMT, which she inadvertently failed to access when searching the PFMT for information relating to Dr. Feijoo. Ms. Lopez has concluded that her "failure to access that separate field in which the information contained within the 30 additional pages is located was inadvertent, and it is the reason [she] did not locate this information when [she] performed [her] search of the PFMT in or about May 2019." Ms. Lopez's affidavit attesting to the facts set forth above is attached hereto as Exhibit "B."

As explained below, Defendants' Motion should be denied for the following reasons:

- Defendants suffered no prejudice from the late production of the 30 pages of Supplemental PFMT Information, as they previously received the information in the documents through earlier productions.

- Any prejudice claimed by Defendants is curable by the deposition SFM has offered to them.

- SFM complied with its obligations under Federal Rule of Civil Procedure 26, including Rule 26(e)'s requirement to supplement production and Rule 26(g)'s requirement to conduct a reasonable inquiry when responding to discovery requests.

- SFM's corporate designee was properly prepared for deposition, testified accurately and adequately as to the topics presented, and fulfilled all requirements of Federal Rule of Civil Procedure 30(b)(6).

## II.  ARGUMENT

**A.     Defendants have not been prejudiced by SFM's inadvertent error because, contrary to the false statements in their Motion, Kathy Potter's involvement with opening the 2015 project file was disclosed to Defendants in May 2019.**

Defendants' argument for a showing of prejudice focuses exclusively on a SFM employee named Kathy Potter. Specifically, their Motion asserts that the Supplemental PFMT Information "reveal[s] for the first time the explosive information that Kathy Potter, the analyst who wrote the 2011 Feijoo Project Scope Memo, is the same person who opened the 2015 Feijoo Project." [ECF 155, p. 11, ¶ 47; emphasis supplied] Preliminarily, this information has an utter lack of "explosiveness" because, as Judge Jacqueline Becerra has previously ruled, information relating to SFM's 2011 project at best "might be marginally relevant to some of Defendants' defenses." [ECF 51]

More importantly, Defendants' statement that the Supplemental PFMT Information produced on October 15, 2019, "revealed for the first time" Kathy Potter's involvement with opening SFM's 2015 project on Dr. Feijoo *is false*. Five months earlier, on May 15, 2019, SFM produced to Defendants a fully searchable MS Excel spreadsheet in native format, which contains the following line item identifying Kathy Potter as a person involved with opening the 2015 project:

| Rec. Created Date | Created By | Rec. Submitted Date | Rec. Status | Project Rep Assigned | Name | TIN# | Street | City | State |
|---|---|---|---|---|---|---|---|---|---|
| 10/12/2015 | Kathy Potter | 12/1/2015 | Open Project | Jennifer Fuller | Manuel V Feijoo MD PA | ▮▮▮▮ | 8370 SW 8th St | Miami | Florida |

Furthermore, SFM redacted (in black) all of the other entries in the spreadsheet except this single line item because they contained confidential information unrelated to Defendants. As such, the above-quoted line item in the spreadsheet referencing Kathy Potter was completely open and obvious to Defendants. A true and correct copy of the spreadsheet with the above-quoted line item

6

produced to Defendants on May 15, 2019, Bates No. SFPROD000472228 and in PDF format, is attached hereto as Exhibit "C."

Defendants also state that the Supplemental PFMT Information "reveal[s] that Ms. Potter opened the Feijoo Project on October 12, 2015, which is "nearly two months before the date Mr. Banahan testified [in his deposition] the 2015 project was actually opened." [ECF 155, p. 11, ¶ 48; emphasis supplied] This statement is also false. As the spreadsheet above makes clear, on October 12, 2015 Ms. Potter recommended the project be opened and Ms. Potter's recommendation was submitted on December 1, 2019. This date is consistent with SFM's "Multi-Claim Investigation and Project Recommendation" memorandum (the "Project Recommendation Memo") (SFPROD000232266—SFPROD000232270; emphasis supplied), which is dated December 3, 2019. As the project had only been recommended on December 3, 2019, it had obviously not been opened before that date. These irrefutable facts are entirely consistent with Mr. Banahan's deposition testimony as SFM's corporate representative, and they are well known to Defendants.

Defendants' Motion does not articulate any grounds for a finding of prejudice other than those related to Kathy Potter. This is because much of the Supplemental PFMT Information was also included in SFM's prior document productions to Defendants. For example (and without limitation), the most substantive information in the Supplemental PFMT Information, is found under a heading entitled "Summary of Identified Issues/Concerns," and it was copied-and-pasted into the 12/3/19 Project Recommendation Memo produced to Defendants on April 5, 2019, which Defendants used to question Mr. Banahan at his deposition.

In sum, Defendants have no valid factual foundation for their claim of prejudice resulting from SFM's inadvertent error in not earlier producing the 30 pages of Supplemental PFMT

7

Information. Kathy Potter's involvement with recommending the opening of SFM's 2015 project on Dr. Feijoo was disclosed to Defendants on May 15, 2019, when SFM produced the spreadsheet attached hereto as Exhibit "C." This fact renders harmless SFM's inadvertent error in not earlier producing the Supplemental PFMT Information referencing Ms. Potter. *See, e.g., Miele v. Certain Underwriters at Lloyd's of London*, 559 Fed. App'x 858, 861-62 (11th Cir. 2014)(affirming the trial court's refusal to strike an untimely declaration of the defendant's expert because the information in the declaration was previously disclosed to the plaintiff in discovery); *Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019-Civ-Williams/Torres, 2018 WL 6446575 at *3 (S.D. Fla. Dec. 10, 2018)("A failure to timely make required disclosures might be harmless if substantially similar evidence has already been produced. . . ."). Accordingly, Defendants' Motion to exclude Mr. Banahan as a trial witness is factually baseless and should be denied.

**B.     Any prejudice claimed by Defendants due to SFM's error in not earlier producing the Supplemental PFMT Information may be cured by a deposition, and their request to strike Mr. Banahan as a trial witness is grossly disproportional and unrelated to their claimed prejudice.**

Mr. Banahan is a critically important trial witness for SFM. He will testify to a broad range of topics, including facts necessary to prove the essential elements of SFM's FDUPTA claim and defend the Counterclaim. On the other hand, the Supplemental PFMT Information contains a very narrow set of information put together within a 1 ½ month window of time before SFM even opened its investigation of Dr. Feijoo. Defendants have offered no legal authority suggesting that a court may permissibly strike a crucial trial witness who will testify on a broad range of topics, based on a party's error in not earlier producing a very small volume documents involving narrowly confined set of facts. This is because the law holds just the opposite.

"Excluding evidence, especially critical evidence, is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the

proponent of the evidence." *Grigorian v. FCA US, LLC*, No. 18-cv-24364, 2019 WL 2754154, at *5 (S.D. Fla. July 2, 2019)(internal quotation marks and brackets omitted). Striking an important trial witness is an especially "drastic" sanction that tremendously impairs a party's ability to prove its case at trial. *Brooks v. U.S.*, 837 F. 2d 958 (11th Cir. 1988). This sanction should only be considered after other alternatives have been exhausted. *See Lamothe v. Bal Harbour 101 Condo. Ass'n, Inc.*, No. 05-cv-23106, 2007 WL 781909, at *1 (S.D. Fla. Mar. 13, 2007); *see also Plaseyed v. PGA Nat'l, LLC*, No. 05-cv-60099, 2006 WL 8434621, at *1 (S.D. Fla. Mar. 2, 2006) (denying the plaintiff's request to impose "draconian sanctions" on the defendant, including a request to strike trial witnesses, where the defendant's "conduct was not in bad faith or reckless.").

SFM's inadvertent error in failing to earlier produce the Supplemental PFMT Information to Defendants clearly does not justify the drastic sanction of striking Mr. Banahan as a trial witness under the governing standards set forth in the above-cited authorities. Defendants' request for the court to do so is not designed to cure any prejudice they claim to have suffered as all, or the exceedingly vast majority, of Mr. Banahan's testimony will have no relationship whatsoever to the Supplemental PFMT Information. The transparent purpose of Defendants' request to strike Mr. Banahan is to prevent SFM from proving its case at trial. Under the above-cited authorities, including the Eleventh Circuit's decision in *Brooks*, it would be an abuse of discretion to strike Mr. Banahan as a trial witness under these circumstances.

The appropriate cure for any claimed prejudiced suffered by Defendants is to allow them to depose a SFM representative regarding the 30 pages of Supplemental PFMT Information in Miami where Defendants' co-counsel, Mr. Pivnik, maintains his law office. Defendants received the Supplemental PFMT Information on October 15, 2019, just shy of a month before the beginning of the November trial docket. The information is neither voluminous nor complex. Thus,

Defendants have had ample time to prepare for and take a basic deposition involving 30 pages of information. SFM should not lose a crucial trial witness because Defendants have unreasonably refused to accept SFM's offer of a deposition regarding he Supplemental PFMT Information.

C.  **Defendants' request to sanction SFM's counsel under rule 26(g) is based on an accusation of misconduct that Defendants' counsel knows is false, and knew was false when he drafted Defendants' Motion.**

Not satisfied with seeking to strike a crucial trial witness, Defendants have also moved for sanctions against SFM's undersigned counsel, Kenneth Hazouri, under Federal Rule of Civil Procedure 26(g). [ECF 155, pp. 14-16] One of the primary foundations of Defendants' request for these sanctions is their false accusation—made repeatedly in their Motion with no supporting evidence—that SFM and its counsel deliberately concealed the Supplementary PFMT Information. This baseless and unsupported accusation is proven false by Affidavit of Tammy Lopez attached hereto as Exhibit "B."

Defendants have, however, gone even farther by making an additional accusation of misconduct directly against Mr. Hazouri, which their attorney, Andrew Baratta, irrefutably knew was false at the time he drafted Defendants' Motion. This accusation is contained in Paragraph 45 of the Motion. There, Defendants' attorneys represent to this Court—with emphasis—that the Supplemental PFMT Information produced to Defendants on October 15, 2019, "are the <u>exact screening documents</u> . . . that Mr. Hazouri had stated unequivocally State Farm did not possess." [ECF 155, p. 10, ¶ 45; emphasis in original] This statement is categorically and demonstrably false.

Mr. Hazouri correctly and truthfully advised Defendants' counsel that a document called a "screening tool," which is a Microsoft Excel document SFM has generated in conjunction in other unrelated matters, did not exist in its investigation relating to Dr. Feijoo. As Defendants' counsel, Andrew Baratta, well knows from confidential document productions made by SFM in prior

10

litigations with him, the Microsoft Excel screening tool is not a part of, and is not stored in, the PFMT database from which the Supplemental PFMT Information was extracted. Simply put, the Microsoft Excel screening tool and the PFMT are two different things.

The e-mail communications between Mr. Hazouri and Mr. Baratta following SFM's production of the Supplemental PFMT Documents on October 15, 2019, are attached as Exhibit "F" to Defendants' Motion. [Doc. 155-6] SFM and Mr. Hazouri encourage the Court to carefully review this e-mail exchange. Upon doing so, it will see Mr. Baratta attempting to trump up the same false accusation that Mr. Hazouri had told him the Supplemental PFMT Documents did not exist, and Mr. Hazouri explaining to Mr. Baratta the inaccuracy of that accusation because the Microsoft Excel screening tool is different from the PFMT. In this regard, Mr. Hazouri's October 17, 2019, e-mail to Mr. Baratta states as follows:

> With regard to the substance of your email, you quote the following statement from my 5/15/19 e-mail to you: "As we understand your request for the 'screener tool' set forth [sic – in] your e-mails below, the request does not ask for a document related to Dr. Feijoo or his clinic that was created by State Farm Mutual and is in its possession, custody, or control." This was a statement of my understanding of your reference to the screener tool at the time, as I was not familiar with the term. Your e-mail below, however, omits the last sentence of the same paragraph in my 5/15/19 e-mail to you, which states: "If we are misunderstanding what you are requesting with reference to the 'screener tool,' then please advise and clarify."
>
> As your e-mail correctly states, you responded to this request for clarification with a May 16, 2019, e-mail to me stating: "<u>the screening tool **is a data collection template**</u> that was utilized in MCIU investigations in 2014 and 2015 (at least) in which hierarchical criteria and decision making is categorized, an overall assessment is indicated, and categories of information such as 'Claim Volume/Billing activity', Indicators of Potential fraud', and 'Ability to resist and deter non-meritorious payment of multiple claims' are graded on a sliding scale of Low, Medium, High, and Unable to Evaluate." (e.s.)  As you know from prior confidential document productions made by SFM outside of this case, the "data collection template" described by you is contained within a Microsoft Excel document, not the Potential Fraud Management Tool database. SF searched its records to look for the screening tool you described in your May 16, 2019 e-mail to me. As we have previously advised you, no such screening tool exists for the

11

> Feijoo project.  This remains true. The documents SFM produced to Defendants on Tuesday in its supplemental production are not the screening tool, and do not include the screening tool, as described in your May 16, 2019 e-mail to me, and as produced to you by SFM in prior confidential document productions outside of this case.  Continuing to suggest otherwise and attempting to tie the documents SFM produced Tuesday to our earlier discussions regarding the (non-existent) screening tool is incorrect and not productive.

[ECF 156-6, pp. 2-3] Mr. Baratta did not dispute any of these statements in his responsive e-mail to Mr. Hazouri. [ECF 156-6, pp. 1-2] He could not do so because they are verifiably truthful and accurate.

The above-quoted e-mail to Mr. Baratta establishes that at the time he drafted Defendants' Motion, Mr. Baratta understood the falsity of his accusation that the Supplemental PFMT Documents produced on October 15, 2019, "are the <u>exact screening documents</u> . . . that Mr. Hazouri had stated unequivocally State Farm did not possess." SFM and Mr. Hazouri respectfully submit that the Court should consider issuing an order directing Mr. Baratta to show cause why he should not be sanctioned for making this knowingly false statement to the Court pursuant to Federal Rule of Civil Procedure 11(c)(3). A court of law is no place for this type of conduct, and it is demeaning to the legal profession.

Finally, Defendants' Motion also quotes and emphasizes the portion of Mr. Hazouri's May 19, 2019, e-mail to Mr. Baratta, wherein Mr. Hazouri respectfully declined his request to personally review approximately 470,930 pages of documents that literally teams of attorneys and paralegals had compiled, and SFM had produced, to Defendants at that point. [ECF 155, p. 6, ¶ 24] In the preceding paragraph of Defendants' Motion, they incorrectly assert that Mr. Hazouri was required to personally engage in this review because he supposedly has a "duty to verify the accuracy and actual responsiveness of State Farm's document production, which he had signed off on as accurate." [ECF 155, p. 6, ¶ 24]

This incorrect assertion directly contradicts Paragraph 73 of Defendants' own Motion, which correctly states that under Rule 26(g), the attorney signing a discovery request "**is not required to certify the truthfulness of the client's response**, **only that he made a reasonable effort to insure that his clients provided all responsive documents and information**." [ECF 155, p. 15, ¶ 73 citing *Bernal v. All. Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1333 (S.D. Fla. 2007)(emphasis supplied)] Pursuant to this legal authority, Mr. Hazouri had no duty to personally verify the completeness of SFM's 470,930+ page, e-discovery document production as requested by Mr. Baratta, and he was correct in declining to do so. Defendants' assertion to the contrary is incorrect and contrary to the *Bernal* decision cited and quoted in their own Motion.

Mr. Hazouri, his colleagues, and SFM have all gone far beyond "reasonable efforts" to ensure, to the best of their ability, the completeness of SFM's responses to Defendants' tremendously voluminous and burdensome document requests. Teams of attorneys and paralegals have participated in this task. Mr. Hazouri has not violated Rule 26(g), and Defendants' assertion to the contrary and request for sanctions thereunder is factually and legally baseless. *See Gian Biologics, LLC v. Cellmedix Holdings, LLC*, No. 2:15-cv-645, 2016 WL 6568014, at *4 (M.D. Fla. Nov. 4, 2016) (quoting Fed. R. Civ. P. 26(g) 1983 cmt.)(explaining that the Rule 26(g) standard "depends heavily on the circumstances of each case, and the certification speaks as of the time it is made.")

**D.     Sanctions against SFM under Rule 37(d)(1)(a)(i) are not warranted because Mr. Banahan, provided   correct, appropriate, and clearly adequate testimony regarding the topics identified by defendants  pursuant to rule 30(b)(6).**

An organization being deposed pursuant to Federal Rule of Civil Procedure 30(b)(6) must "designate one or more officers, directors, or . . . other persons . . . to testify on its behalf," and these persons "must testify about information known or reasonably available to the organization."

13

*Penn Mutual Life Ins. Co., v. Imperial Premium Fin., LLC*, No. 11-mc-80818, 2011 WL 13228574, *2 (S.D. Fla. Sept. 14, 2011). "A deponent must be prepared to answer questions concerning relevant facts reasonably known to the corporation, but need not be prepared to answer about any potentially relevant fact known by any employee of the corporation." *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-cv-24687, 2018 WL 4258269, at *3 (S.D. Fla. Sept. 6, 2018). While a Rule 30(b)(6) deponent is required to be reasonably prepared to speak on behalf of the corporation regarding the designated topics, any "inadequacies in a deponent's testimony" are not sanctionable unless they are "egregious and not merely lacking in desired specificity in discrete areas." *Taffe v. Israel*, No. 16-cv-61595, 2017 WL 1709693, at *2 (S.D. Fla. May 3, 2017). This is so because "Rule 30(b)(6) is not designed to be a memory contest" and a deponent is not required to successfully answer every question posed. *Penn Mutual Life*, 2011 WL 13228574, at *4. "Nor is a witness expected to be omniscient or expected to have computer-like memory." *Lebron*, 2018 WL 4258269, at *3 (citing *Taffe*, 2017 WL 1709693, at *2).

Contrary to Defendants' bald assertions, SFM's corporate designee, Mr. Banahan, was properly prepared to provide, and did in fact provide, adequate testimony concerning the five topics in Defendants' Notice of Deposition. Defendants contend Mr. Banahan did not review a sufficient number of documents relating to Topics 1 and 2, which sought the following testimony:

> 1. The precise date on which any SIU/MCIU investigation concerning the defendants was commenced;
>
> 2. The events or information which triggered the commencement of the investigation and why they triggered the investigation.

[ECF No. 155 at ¶¶ 35-40 and ECF No. 155-3, p. 2.]

Given the discrete and easily ascertainable nature of these topics, Mr. Banahan was not required to review of a broad range of documents in order to testify to them. Indeed, the Project Recommendation Memo Mr. Banahan reviewed contained the approximate date on which SFM's

14

investigation of Dr. Feijoo commenced—December 3, 2019—as well as a thorough summary of the events triggering the investigation, and was more than sufficient to address these two topics. Further, Mr. Banahan studied a number of documents and spent approximately 20-30 hours preparing for the deposition. [ECF No. 155-4 at 5:18-7:4, 9:17-12:9.] He was able to answer nearly all questions directed to him.

Furthermore, the Supplemental PFMT Documents that are the basis of Defendant's Motion to strike Mr. Banahan as a trial witness have no material impact on his deposition testimony regarding Defendants' designated topics of: 1) "the precise date on which [the 2015] SIU/MCIU investigation concerning the Defendants was commenced"; and 2) the "events or information which triggered the investigation." This is because, as Mr. Banahan explained in response to questions from Mr. Baratta at his deposition, the 2015 SIU/MCIU investigation of Defendants did not begin until SFM's SIU/MCIU division received the December 3, 2015, Project Recommendation Memo prepared by SFM's screening department:

> Q.: And what is the date on which that [the 2015] investigation started?
>
> A.: The date on the project recommendation memo was December 3rd, 2015, I believe.
>
> Q.: That's not the date it started, though, right? I mean there has to be work leading up to a project recommendation memo?
>
> A.: But that – like I mentioned earlier, **they run numbers in our screening department that may never even get to us. The point of a recommendation memo – so the recommendation memo is recommending investigation at this point be started.**

This excerpt from Mr. Banahan's deposition testimony is attached hereto as Exhibit "D." Nothing in the Supplemental PFMT Information, which was prepared by SFM's screening department *before* the SIU/MCIU investigation of Dr. Feijoo was commenced, would or could alter this deposition testimony.

15

Through his substantial prior litigation experience with SFM, Mr. Baratta fully understands the difference between, and differing roles of, SFM's screening department and its SIU/MCIU division. Had Defendants wanted to learn about the actions of SFM's screening department before the commencement of the SIU/MCIU investigation of Dr. Feijoo, they could have designated that topic for a 30(b)(6) deposition, and SFM would have designated an appropriate representative to testify about it. They did not, however, do so.

In sum, Mr. Banahan's testimony fully satisfied the requirements of Rule 30(b)(6). Defendants' request for sanctions based on his testimony is meritless and should be denied.

### III. CONCLUSION

Based on the foregoing, SFM respectfully requests that the Court deny Defendants' Motion.

Dated:  October 31, 2019.

Respectfully submitted,

/s/ Kenneth P. Hazouri
KENNETH P. HAZOURI
Fla. Bar No. 019800
khazouri@dsklawgroup.com
ANDREW S. BALLENTINE
Fla. Bar No. 118075
aballentine@dsklawgroup.com
**deBeaubien, Simmons, Knight, Mantzaris and Neal, LLP**
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454

—and—

DAVID I. SPECTOR, ESQ.
Fla. Bar No. 086540
david.spector@hklaw.com
KAYLA L. PRAGID, ESQ.

Fla. Bar No. 098738
kayla.pragid@hklaw.com
**HOLLAND & KNIGHT LLP**
222 Lakeview Avenue, Ste. 1000
West Palm Beach, Florida 33401
Telephone: (561) 833-2000
Facsimile:  (561) 650-8399

*Attorneys for Plaintiff/Counter-Defendant*